UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: CHRYSLER PACIFICA FIRE RECALL
PRODUCTS LIABILITY LITIGATION

Case Number: 22-md-3040
Honorable David M. Lawson

MDL No. 3040

_____/

## PLAINTIFFS' MOTION FOR APPOINTMENT OF
## PROPOSED LEADERSHIP STRUCTURE

Pursuant to Federal Rule of Civil Procedure 23(g)(3), Plaintiffs Lauren Huntington, Scott Carney, Andrew Bersankis and Margaret Wilensky, Diahann Messeguer, Michael Keeth, Spence Voss, Diane and David Davidson, Alicia and David Maltz, Elizabeth Niemioja, Nicole and Stephen Costa, Tracy Whitman Brace, James Quattropani, Michael Christie, Andrew Ventura, Scott Olsen, Elias and Michelle Tinio Ramirez, Javin T. Olson, Kent Schumann, Veronica Bryan, Sean Clancy, Alexander Shusta, John Latacki, John Spruance, Tim Ferguson, Owen Ryan, Devlin Su, Tim Banas, Ruth Hoffman, Michael Natale, Scott Lewandowski, Matthew Bergantino, Jared Gadomski Littleton, Helen Bartek, Patricia Ransom, Shawn Sheehan, Richard Golland, Ami Benzur, Chad Fong, Salyi Vu, Jacob Kitzman, Christine Winter, Clea and Ladd Van Tol, Meagan and Cal Findeiss, Rodrigo Nieto Gomez, David Lawrence, Robyn Reilman, and Erica and James

Bagley (collectively "Plaintiffs"), respectfully request an entry of an Order appointing Steve Berman of Hagens Berman Sobol Shapiro, LLP ("Hagens Berman" or "HB") and E. Powell Miller of The Miller Law Firm, P.C. ("Miller Law Firm" or "MLF") as Interim Co-Lead Class Counsel ("Co-Leads") and Stephen R. Basser of Barrack, Rodos & Bacine ("Barrack"), Niall McCarthy of Cotchett, Pitre & McCarthy, LLP ("CPM"), and Gayle Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP ("Casey Gerry") as members of Plaintiffs' Executive Committee. In support of their motion to appoint the above proposed leadership structure (the "Leadership Structure"), Plaintiffs submit the Brief and exhibits filed concurrently herewith.

In accordance with LR 7.1(a), Plaintiffs' counsel sought the concurrence of Defendant's counsel in the relief sought by this Motion on September 9, 2022. Defendant takes no position on the motion.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter an Order appointing the proposed Leadership Structure and granting any and all other relief this Court deems necessary and just.

Dated: September 9, 2022

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
Thomas E. Loeser
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
toml@hbsslaw.com

**THE MILLER LAW FIRM, P.C.**
*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

**BARRACK RODOS & BACINE**
Stephen R. Basser
Samuel M. Ward
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
sbasser@barrack.com

**COTCHETT, PITRE & McCARTHY**
Niall McCarthy
Karin Swope
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
NMcCarthy@cpmlegal.com
kswope@cpmlegal.com

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
Gayle Blatt
Camille Guerra
110 Laurel Street
San Diego, CA 92101-1486
Telephone: (619) 238-1811
gmb@cglaw.com

*Attorneys for Plaintiffs*

-3-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE: CHRYSLER PACIFICA FIRE RECALL
PRODUCTS LIABILITY LITIGATION

Case Number: 16-md-02744
Honorable David M. Lawson

MDL No. 3040

_____/

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR**
**<u>APPOINTMENT OF PROPOSED LEADERSHIP STRUCTURE</u>**

## <u>ISSUE PRESENTED</u>

**Issue**: Should the Court grant the motion appointing interim class counsel as set forth in Plaintiffs' Unopposed Omnibus Motion for Appointment of Proposed Leadership Structure when all Plaintiffs' counsel have reached consensus regarding the proposed leadership structure, defense counsel takes no position, the members of the leadership structure have substantial credentials, satisfy Rule 23(g) and have demonstrated the ability to work cooperatively in the best interest of the putative class?

**Answer:**   Yes.

# INDEX OF MOST CONTROLLING AUTHORITIES

**Cases:**

*In re Air Crash Disaster at Fla. Everglades on December 29, 1972*, 549 F.2d 1006 (5th Cir. 1977)

*In re Bendectin Litig.*, 857 F.2d 290 (6th Cir. 1988)

*In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D. 184 (S.D.N.Y. 2008)

*In re New England Mut. Life Ins. Sales Practices Litig.*, 183 F.R.D. 33 (D. Mass. 1998)

*In re Parking Heaters Antitrust Litig.*, 310 F.R.D. 54 (E.D.N.Y. 2015)

*Parkinson v. Hyundai Motor Am.*, Nos. 8:06cv345, *et al*., 2006 U.S. Dist. LEXIS 59055 (C.D. Cal. Aug. 7, 2006)

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977)

**Other Authorities:**

*Manual for Complex Litig. (Fourth)* § 21.11

*Manual for Complex Litig. (Fourth)* § 21.272

*Manual for Complex Litig. (Fourth)* § 22.62

**Rules:**

Fed. R. Civ. P. 23(g)(1)(A)

Fed. R. Civ. P. 23(g)(1)(B)

Fed. R. Civ. P. 23(g)(3)

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................... 1

II.  BACKGROUND ............................................................... 3

III.  ARGUMENT.................................................................. 6

    A.  The Standard for Appointment of Interim Class Counsel ................. 6

    B.  The Proposed Leadership Structure Satisfies Rule 23(g) ................. 9

        1.  The Proposed Co-Leads and Executive Committee Reached Agreement on a Leadership Structure..................... 10

        2.  Proposed Interim Class Counsel Are Experienced in Handling Class Actions and Complex Litigation, and Possess Extensive Knowledge of the Applicable Law ................................................ 10

            a.  Hagens Berman................................................. 11

            b.  The Miller Law Firm, P.C. ................................. 14

            c.  Barrack Rodos & Bacine ............................... 16

            d.  Cotchett, Pitre & McCarthy........................... 19

            e.  Casey Gerry .................................................. 22

        3.  Proposed Interim Counsel Have Performed Substantial Work to Identify and Investigate Plaintiffs' Claims ........................................................ 23

        4.  The Proposed Leadership Structure are Prepared to Commit Significant Resources to Litigating this Case ................................................................... 24

IV.  CONCLUSION............................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*,
549 F.2d 1006 (5th Cir. 1977) ...............................................................7

*In re Bendectin Litig.*,
857 F.2d 290 (6th Cir. 1988) .................................................................7

*In re Cardinal Health, Inc. ERISA Litig.*,
225 F.R.D. 552 (S.D. Ohio 2005)...........................................................8

*Donaldson v. Pharmacia Pension Plan*,
No. 06-3-GPM, 2006 U.S. Dist. LEXIS 28607 (S.D. Ill. May 10,
2006) .......................................................................................................8

*FCA US LLC Monostable Elec. Gearshift Litig.*,
No. 2:16-md-02744-DML, Dkt. No. 4 (E.D. Mich. Oct. 18, 2016)....................6

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ...............................................................13

*In re Mun. Derivatives Antitrust Litig.*,
252 F.R.D. 184 (S.D.N.Y. 2008) .........................................................23

*In re New England Mut. Ins. Sales Practices Litig.*,
183 F.R.D. 33 (D. Mass. 1998).............................................................7

*In re Parking Heaters Antitrust Litig.*,
310 F.R.D. 54 (E.D.N.Y. 2015)...........................................................10

*Parkinson v. Hyundai Motor Am.*,
Nos. 8:06cv345, *et al.*, 2006 U.S. Dist. LEXIS 59055 (C.D. Cal.
Aug. 7, 2006) ..........................................................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
MDL No. 05-1720 (JG) (JO), 2006 U.S. Dist. LEXIS 45727
(E.D.N.Y. Feb. 24, 2006)........................................................................8

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ................................................................................7

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(g) ...........................................................................................7, 9

*Manual for Complex Litig. (Fourth)* (2005) ...................................................7, 8, 10

2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §
    9.35 (3d ed. 1992) ...............................................................................................7

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(g)(3), Plaintiffs Lauren Huntington, Scott Carney, Andrew Bersankis and Margaret Wilensky, Diahann Messeguer, Michael Keeth, Spence Voss, Diane and David Davidson, Alicia and David Maltz, Elizabeth Niemioja, Nicole and Stephen Costa, Tracy Whitman Brace, James Quattropani, Michael Christie, Andrew Ventura, Scott Olsen, Elias and Michelle Tinio Ramirez, Javin T. Olson, Kent Schumann, Veronica Bryan, Sean Clancy, Alexander Shusta, John Latacki, John Spruance, Tim Ferguson, Owen Ryan, Devlin Su, Tim Banas, Ruth Hoffman, Michael Natale, Scott Lewandowski, Matthew Bergantino, Jared Gadomski Littleton, Helen Bartek, Patricia Ransom, Shawn Sheehan, Richard Golland, Ami Benzur, Chad Fong, Salyi Vu, Jacob Kitzman, Christine Winter, Clea and Ladd Van Tol, Meagan and Cal Findeiss, Rodrigo Nieto Gomez, David Lawrence, Robyn Reilman, and Erica and James Bagley (collectively "Plaintiffs"), respectfully request entry of an Order appointing Steve W. Berman of Hagens Berman Sobol Shapiro, LLP ("Hagens Berman" or "HB") and E. Powell Miller of The Miller Law Firm, P.C. ("Miller Law" or "MLF") as Interim Co-Lead Class Counsel ("Co-Leads") and Stephen R. Basser of Barrack, Rodos & Bacine ("Barrack"), Niall McCarthy of Cotchett, Pitre & McCarthy, LLP ("CPM"), and Gayle Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP

("Casey Gerry") as members of Plaintiffs' Executive Committee ("PEC"). Defendant takes no position on the motion.

Plaintiffs propose a leadership structure that allows for the vast experience of the proposed Co-Leads and Plaintiffs' Executive Committee to work cooperatively towards a successful outcome for all Plaintiffs and putative class members. Co-Leads, working in conjunction with a PEC structure is the most effective use of the collective expertise of Hagens Berman, the Miller Law, Barrack, CPM and Casey Gerry. Counsel for all eight firms that have filed cases that have been transferred to this Court ("Pacifica Fire Actions") agree that this leadership structure is appropriate and that the proposed Co-Leads and PEC have the requisite experience and resources to prosecute this case.

The Co-Leads in this case will, in consultation with the PEC, make strategic and tactical decisions relating to the prosecution of the litigation, including assigning work to PEC members. The Co-Leads will also create work groups comprised of one Co-Lead and one or more PEC member to spearhead specific tasks, such as client management (including defensive discovery), fact investigation, motions to dismiss, affirmative discovery, class certification briefing, and the like. The Co-Leads will manage and supervise all work and will collect and review time submissions to ensure that the case is prosecuted efficiently.

## II.    BACKGROUND

The complaints before the Court assert FCA US purposefully and intentionally, or at least recklessly, produced and sold Chrysler Pacifica Hybrid minivans with defective hybrid drive systems that can spontaneously explode and burst into flames, even when the vehicles are in the "key-off" position and parked.

Plaintiffs allege that had FCA US conducted adequate pre-launch testing of the hybrid propulsion system in the Pacifica Hybrids, including stress and durability testing of the sort that is the norm for automobile manufacturers planning to market vehicles using volatile lithium ion batteries for propulsion, it would have learned of the unreasonable and catastrophic risks posed by the lithium-ion battery and the related components meant to enable the safe operation of the minivans in the Pacifica Hybrid in electric mode. FCA US was, therefore, at a minimum, reckless in its rush to release the first-ever plug-in electric hybrid minivan.

Plaintiffs' specific allegations are that Model year 2017 and 2018 Chrysler Pacifica Hybrid minivans contain a defect in the hybrid propulsion system that can cause vehicle fires and explosions, even when the vehicles are parked with the ignition in the "off" position (the "Spontaneous Fire Defect"). The Spontaneous Fire Defect exposes putative class members to an unreasonable risk of accident, injury, death, or property damage if their vehicle catches fire while in operation or, perhaps more commonly, spontaneously ignites while the vehicle is parked at a home, in a

garage, on a public street, or in a parking lot. The Spontaneous Fire Defect exposes passengers, other drivers on the road, neighbors, owners of other cars parked near the Fire Defect Vehicles, and other bystanders to an unreasonable risk of accident, injury, death, and/or property damage.

Plaintiffs allege FCA US is not offering owners and lessees of the Fire Defect Vehicles an adequate remedy. Instead, FCA US "is advising owners of these hybrid vehicles to refrain from charging them, and to park them away from structures and other vehicles." FCA US does not tell Fire Defect Vehicle owners just what constitutes a "safe" distance from an exploding vehicle or explain what owners should do with their vehicles if they have no such place to park them. This places an unfair burden on class members who are unable to use the electric propulsion system for which they paid a $6,000 premium and are unable to park in their garage (and may have to park quite far away from their homes in order to park away from other vehicles). Not being able to plug in and charge the Fire Defect Vehicles defeats the central purpose of having a plug-in hybrid electric vehicle. Absent charging, the Fire Defect Vehicles must run exclusively on their gasoline engine, causing owners of Fire Defect Vehicles to consistently purchase gasoline.

FCA US offers no actual remedy for the Spontaneous Fire Defect and offers limited, if any, reimbursement to Fire Defect Vehicle owners and lessees for out-of-pocket expenses, loss of use, and loss of value. Because no repair is available,

vehicle owners and lessees are left without a safely operable vehicle for an unknown and potentially lengthy period.

Had Plaintiffs and the putative class members known of the Spontaneous Fire Defect, then they would either not have purchased or leased those vehicles, or would have paid substantially less for them, or would have purchased non-hybrid versions of the vehicles, which cost at least $6,000 less. Fires in the Fire Defect Vehicles also necessitate expensive repairs, car rentals, car payments, towing charges, property damage, time off work, loss of use and other miscellaneous costs.

*Huntington*, the first-filed action, was filed in the Eastern District of Michigan on March 8, 2022. Over the ensuing six weeks, three other actions were filed in the Eastern District of Michigan (*Schumann*, *Findeiss* and *Ramirez*) and four single-plaintiff actions were filed in California (*Olsen*, *Reilman*, *Lawrence* and *Gomez*). On May 6, 2022, *Huntington* Plaintiffs, *Schumann* Plaintiffs, *Findeiss* Plaintiffs, and *Ramirez* Plaintiffs stipulated to the consolidation of their actions into a single action in the Eastern District of Michigan. On May 10, 2022, the *Bagley* action was filed in the Eastern District of Pennsylvania. On August 3, 2022, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated and centralized these actions pending against Defendant in the Eastern District of Michigan before this Court.

Shortly after the JPML consolidation order was entered, attorneys at Hagens Berman and The Miller Law Firm reached out to all Plaintiffs' counsel to obtain a

consensus regarding a structure to effectively and efficiently litigate this case. While consensus in MDL class actions has become increasingly rare, we are pleased to advise the Court that consensus has been reached as to a leadership structure in this case. This Court has in the past indicated that the main qualifications for leadership appointments include: "(1) willingness and ability to commit to a time-consuming process; (2) ability to work cooperatively with others; (3) professional experience in this type of litigation; and (4) access to sufficient resources to advance the litigation in a timely manner." *See, e.g.*, *FCA US LLC Monostable Elec. Gearshift Litig.*, No. 2:16-md-02744-DML (E.D. Mich. Oct. 18, 2016), ECF No. 4, p. 4. All counsel have carefully considered these criteria and believe that the Proposed Co-Lead Class Counsel and Plaintiffs' Executive Committee meets the criteria. Accordingly, Plaintiffs request that this Court appoint Interim Co-Lead Class Counsel and an Interim Plaintiffs' Executive Committee under Fed. R. Civ. P. 23(g) to manage this Consolidated Action in an effective and organized manner. Appointment of this Leadership Structure will benefit Plaintiffs, Defendant, and the Court during this litigation.

## III.   ARGUMENT

### A.   The Standard for Appointment of Interim Class Counsel

In complex class actions such as this, "[e]arly organization of the counsel who have filed the various cases transferred or consolidated for pretrial purposes is a

critical case-management task." *Manual for Complex Litig. (Fourth)* § 22.62 (2005) (the "*Manual*"). Rule 23(g)(3) permits courts to designate class counsel "to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[I]t is now almost standard practice for the court to issue an order at an early stage, defining the responsibilities of . . . lead counsel and the organization of the plaintiffs' attorneys." 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 9.35 (3d ed. 1992). Indeed, district courts routinely appoint lead counsel to coordinate the prosecution of complex class actions. *See*, *e.g.*, *In re Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774-75 (9th Cir. 1977); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1014-15 (5th Cir. 1977); *In re New England Mut. Life Ins. Sales Practices Litig.*, 183 F.R.D. 33, 47-48 (D. Mass. 1998).

The appointment of lead counsel has long been recognized as a means of promoting efficiency and avoiding delay, overlap, and duplication of effort. *See Parkinson v. Hyundai Motor Am.*, Nos. 8:06-cv-345, *et al.*, 2006 U.S. Dist. LEXIS 59055, at *5 (C.D. Cal. Aug. 7, 2006) (noting that rule 23(g) "authorizes [a] court to designate interim counsel during the pre-certification period . . . to protect the interests of the putative class" and that rule 23(g) "authorizes [a] court to designate interim counsel during the pre-certification period . . . to protect the interests of the

putative class."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, MDL No. 05-1720 (JG) (JO), 2006 U.S. Dist. LEXIS 45727, at *30 (E.D.N.Y. Feb. 24, 2006) ("The appointment of lead counsel is recognized as a useful and helpful way to avoid duplication of effort and a means to streamline what could otherwise be inefficient and unruly proceedings."); *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D 552, 555 (S.D. Ohio 2005) ("Complex litigation often involves numerous parties with similar interests. . . . Courts can effectively help manage such litigation by appointing lead . . . counsel."). As the *Manual* explains, interim class counsel should be appointed "at an early stage in the case . . . [where] there are a number of overlapping, duplicative, or competing suits . . . [because] designation of interim class counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as . . . negotiating settlement." *Manual* § 21.11; *see also Donaldson v. Pharmacia Pension Plan*, No. 06-3-GPM, 2006 U.S. Dist. LEXIS 28607, at *2-3 (S.D. Ill. May 10, 2006) (observing that "interim counsel [may be] necessary . . . [to] be . . . responsible for taking action to prepare the certification decision, . . . to make or respond to motions before certification, . . . [and] so that settlement may be discussed before certification" and that "in some cases there may be rivalry or uncertainty that makes formal designation of interim counsel appropriate.").

Rule 23(g) sets forth four considerations for the appointment of interim lead counsel: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Further, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The lawyers and their law firms proposed for Co-Lead and the PEC satisfy all of the considerations set forth in Rule 23(g) and should be appointed as requested herein. Due to the size and complexity of this case, these considerations weigh even more heavily in favor of appointing interim lead counsel.

**B.     The Proposed Leadership Structure Satisfies Rule 23(g)**

The attorneys and firms in the proposed leadership structure have demonstrated their ability to work together through their agreement on this leadership structure, possess extensive experience in litigating complex class action cases, and can and are willing to dedicate the necessary resources to effectively represent Plaintiffs and the class.

### 1. The Proposed Co-Leads and Executive Committee Reached Agreement on a Leadership Structure

The most common and desirable means of selecting class counsel is "private ordering." *Manual* § 21.272. Under this model, "[t]he lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests." *Id.* After all, it is counsel who "are best informed [about who is best suited to lead the case] and have the greatest incentive to keep attorney fees in check." *In re Parking Heaters Antitrust Litig.*, 310 F.R.D. 54, 58 (E.D.N.Y. 2015). Efforts of Plaintiffs' counsel to coordinate their activities among themselves should be encouraged. *Manual* § 10.22. Immediately after the JPML consolidated the related cases before this Court, Proposed Co-Lead Counsel reached out to all Plaintiffs' counsel to reach an agreement on a leadership structure. Through cooperative discussions, all counsel agreed that the Proposed Co-Leads and three-firm Plaintiffs' Executive Committee structure would be most effective to incorporate the skills and experience of counsel while still allowing the litigation to proceed efficiently. Counsel for all Plaintiffs agree and support this structure.

### 2. Proposed Interim Class Counsel Are Experienced in Handling Class Actions and Complex Litigation, and Possess Extensive Knowledge of the Applicable Law

Plaintiffs believe that litigation of this case directed by the proposed Co-Leads and PEC, presents an efficient and robust leadership team with the experience in

high profile national litigation that maximizes the chance for a successful resolution of this case for the class. The firms comprising the Leadership Structure have made a significant investment in this litigation, have sufficient resources to vigorously protect the interests of the class in this litigation, and have backgrounds of success as counsel or class counsel in national consumer class actions. The proposed Leadership Structure satisfies and exceeds the criteria listed in Rule 23(g). All of the above-mentioned firms bring a diversity of outstanding experience and reputation both at the national and local level, all of which will benefit the proposed class and this Court's oversight of the consolidated actions. The knowledge and expertise of the proposed Leadership Structure are detailed below.

### a.    Hagens Berman

Steve W. Berman is the managing partner of Hagens Berman ("HB"). His firm and MLF together filed the first Pacifica fire case. HB is a nationally recognized firm, with offices in Seattle, Berkeley, Boston, Chicago, Los Angeles, New York, Phoenix, San Diego, and London, England. HB is consistently rated by the National Law Journal in the top ten of plaintiffs' firms. HB has been class counsel and selected to leadership positions in hundreds of cases, including cases in this District.

HB is a juggernaut in class actions against auto manufacturers, including against FCA and multiple matters in this District. Below is a sampling of such cases:

- *Lead counsel in class cases in this District concerning defective high-pressure fuel pumps for diesel vehicles: Chapman v. General Motors*

*LLC*, No. 19-cv-12333 (E.D. Mich.) (Berg, J.) (class certification pending); *Droesser v. Ford Motor Co.*, No. 19-cv-12365 (E.D. Mich.) (Friedman, J.); *Withrow v. FCA US LLC*, No. 19-cv-13214 (E.D. Mich.) (Michelson, J.); *Sharp v. FCA US LLC*, No. 21-cv-12497 (E.D. Mich.) (Parker, J).

- Lead counsel in *Bledsoe v. FCA US LLC*, No. 16-cv-14024 (E.D. Mich.) (Berg, J.) (class certification pending) (alleging FCA vehicles contain defeat devices that cause the vehicles to pass emissions tests but emit several times legal limit in real-world driving).

- Lead counsel in *Raymo v. FCA US LLC*, No. 17-cv-12168 (E.D. Mich.) (Berg, J.) (recalled vehicles contain defective washcoat in emissions system).

- *Kiriacopoulos v. General Motors LLC*, No. 22-cv-10785 (E.D. Mich.) (Goldsmith, J.) (vehicles' PCV valve is prone to clogging in winter months, causing sudden loss of oil).

- *Plaintiffs' Steering Committee in In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 2:16-md-02744-DML-DRG (E.D. Mich.), alleging FCA fraudulently concealed and failed to remedy a design defect in 811,000 vehicles that can cause cars to roll away after they are parked, causing injuries and accidents. The case is presently in trial.

- *Co-Lead Counsel in In re Kia Engine Litig., No. 8:17-cv-00838-JLS-JDE (C.D. Cal.), alleging a defect in more than 4 million vehicles equipped with Theta II GDI engines.* Final approval in this District in May 2021 of a settlement package valued at up to $1.3 billion.

- *Co-Lead Counsel in In re General Motors LLC Ignition Switch Litig., No. 14-md-02543-JMF (S.D.N.Y), an ignition switch defect concealed by GM resulted in economic loss, injury, and death. Settled for $120 million.*

- *Co-Lead Counsel in In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices & Prods. Liab. Litig., No. 8:10-ml-02151-JVS-FMO (C.D. Cal.),* alleging sudden unintended acceleration. The case settled at up to $1.6 billion.

- *Co-Lead Counsel in In re MyFord Touch Consumer Litig.*, No. 3:13-cv-03072-EMC (N.D. Cal.), on behalf of owners of vehicles equipped with MyFord Touch, an in-car package, that put drivers at risk of an

accident. In 2019, the district court finally approved a $17 million dollar settlement.

- *Co-Settlement Class Counsel in In re Hyundai & Kia Fuel Econ. Litig.*, No. 2:13-md-2424-GW-FFM (C.D. Cal.), manufacturers overstated the MPG fuel economy ratings on 900,000 cars. The case resulted in a $255 million settlement; a lump-sum payment plan worth $400 million on a cash basis. In 2018 and 2019, HB successfully petitioned for *en banc* review of an adverse Ninth Circuit panel decision, argued, and obtained full affirmance of the settlement. *See id*, 926 F.3d 539, 552 (9th Cir. 2019).

Steve Berman and HB also have extensive experience litigating automotive emissions cases, such as: *Volkswagen Diesel Emissions Litigation* (Plaintiffs' Steering Committee); *Volkswagen Dealers Litigation* (Class Counsel); *Albers v. Mercedes-Benz USA, LLC*, No. 2:16-cv-00881 (D.N.J.) (Class Counsel); *Counts v. General Motors LLC*, No. 1:16-cv-12541 (E.D. Mich.); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg. Sales Practices, & Prods. Liab. Litig.*, No. 3:17-md-02777 (N.D. Cal.) (Steering Committee); *Bledsoe v. FCA US LLC*, No. 4:16-cv-14024 (E.D. Mich.); *In re Duramax Diesel Litig.*, No. 1:17-cv-11661 (E.D. Mich.).

Thomas E. Loeser, an HB partner based in its Seattle office, is a Martindale-Hubbell *AV Preeminent* Rated Super Lawyer and member of Law Dragon's *500 Leading Lawyers in America* and the National Trial Lawyers *Top 100 Trial Lawyers*. Mr. Loeser adds a hard-science background, and high-technology *bona fides*, to his 20 years of litigation experience. In 2002, Mr. Loeser was appointed an Assistant United States Attorney in Los Angeles, where Mr. Loeser resolved hundreds of criminal cases and brought over a dozen federal cases to trial and through appeal.

Mr. Loeser has found success in highly technical class cases, including many of the largest consumer class cases in U.S. history. These include the $17 billion Volkswagen "Clean Diesel" MDL and the related $1.3 billion Volkswagen Franchise Dealer litigation. Mr. Loeser's role touched on all key aspects of large, complex class litigation, including extensive interaction with the leadership structure and defense counsel, discovery, depositions, legal briefing, and settlement.

Additional details regarding Hagens Berman's qualifications and achievements are attached hereto as **Exhibit 1.**

### b. The Miller Law Firm, P.C.

E. Powell Miller and The Miller Law Firm ("Miller Law") have extensive experience litigating complex class actions throughout the United States and, particularly, in the Eastern District of Michigan. Miller Law has established a national reputation and is ranked Tier 1 in Detroit for Commercial Litigation by U.S. News, Best Lawyers. Miller Law has continuously prosecuted class actions since 1994, recovering billions of dollars for class members, and is proud of obtaining a rare achievement in class action practice: three separate cases of 100% net cash recovery for class members, plus attorneys' fees, paid by the defendants.

Mr. Miller served as Co-Chair of the ABA Sub-Committee for Multi-District Class Action Litigation and Mass Torts for a term ending in 2012. Super Lawyers Magazine recognized Mr. Miller as Michigan's number one ranked attorney in

2020, as well as one of Michigan's Top 10 lawyers every year from 2009 to 2022. Best Lawyers has named Mr. Miller "Lawyer of the Year" five times in the category of Bet-The-Company Litigation, and he is only one of eight in Michigan to receive the highest "Band 1" rating by Chambers USA.

Mr. Miller has served as lead or co-lead counsel in numerous complex national class actions or has had a substantial role in the prosecution of those cases. Miller Law currently serves as Lead Counsel and Chair of the Plaintiffs' Steering Committee in *In re FCA US LLC Monostable Elec. Gearshift LLC*, No. 16-cv-02744 (E.D. Mich.); Co-Lead Counsel in *Wood, et al. v. FCA US LLC*, No. 20-cv-11054 (E.D. Mich.); Co-Lead Counsel in *Weidman, et. al. v. Ford Motor Co.*, No. 18-cv-2719 (E.D. Mich.); Interim Lead Counsel in *In Re: Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*, No. 19-md-02901 (E.D. Mich.); Interim Co-Lead Counsel in *Altobelli, et. al. v. General Motors LLC*, No. 20-cv-13256 (E.D. Mich.); Interim Co-Lead Counsel in *Lyman, et. al. v. Ford Motor Co.*, No. 21-cv-10024 (E.D. Mich.); and Co-Lead Counsel in *Gamboa v. Ford Motor Co., et. al.*, No. 18-cv-10106 (E.D. Mich.).

Sharon Almonrode is a partner and Chair of Miller Law's Class Action Department. She currently serves as Interim Co-Lead Counsel in *Zimmerman, et al. v. The 3M Co., et. al.*, No. 17-cv-01062 (W.D. Mich.) and as member of the Plaintiffs' Steering Committee in *In re EpiPen (Epinephrine Injection, USP) Mktg,*

*Sales Practices & Antitrust Litig.*, No. 17-md-02785 (D. Kan.).  She served as Co-Lead Counsel in *Foster, et. al. v L-3 Commcn's EOTech, Inc.*, No. 15-cv-03519 (W.D. Mo.), obtaining a full recovery for the class net of attorneys' fees, valued at in excess of $50M. She served as Lead Counsel in *Davidson v Henkel Corp.*, No. 12-cv-14103 (E.D. Mich.), obtaining a 100% recovery for the class net of attorneys' fees. She successfully recovered $110M for a single client in a unique actuarial case.

Ms. Almonrode has been named a Michigan Super Lawyer every year since 2011; a Top 50 Women's Super Lawyer and Top 100 Super Lawyer since 2013; and a top 5 consumer lawyer in 2016. In 2010, she received the special distinction of Michigan Leader in the Law, awarded by *Michigan Lawyers' Weekly*.  In 2017, *Crain's Detroit Business* named her among the most notable women lawyers in Michigan. Recently, she was admitted to the inaugural class of *Michigan Lawyers' Weekly* Hall of Fame.

Additional details regarding Miller Law's qualifications and achievements are attached hereto as **Exhibit 2.**

### c.    Barrack Rodos & Bacine

Barrack Rodos & Bacine ("Barrack") is a nationally prominent 20 attorney litigation firm with offices in Philadelphia, New York and San Diego. Barrack possesses significant depth, experience, and resources in prosecuting major, complex class actions, including consumer, antitrust, and securities class actions,

seeking the recovery of economic losses. Barrack has successfully recovered over $15 billion for class members, with several cases securing recoveries in excess $1 billion, Barrack Abbreviated Firm Biography, **Exhibit 3** at 1-15, and has received numerous judicial accolades respecting its work and accomplishments. *Id*. at 15-18.

Stephen R. Basser, a Barrack partner for over 28 years, has been a lead counsel, co-lead counsel, executive committee member, and/or principal supporting team attorney in a variety of significant, complex class actions seeking economic loss recoveries, alleging acts of negligence, deceptive sales and marketing practices, the design, manufacture and sale of dangerously defective products and automobiles, misrepresentation, violations of the Racketeering Influence Corrupt Organizations Act ("RICO"), and/or the federal and state securities and antitrust laws and statutes, by domestic and foreign corporations. *Id*. at 12-13.

Among the more notable complex class actions seeking the recovery of economic losses he has handled, Mr. Basser served as a co-lead counsel in *In Re: McKesson HBOC Secs. Litig.*, No. CV-99-20743 RMW (N.D. Cal.), achieving settlements totaling $1.052 billion. He served as a co-lead and *de-facto* executive committee counsel working with a consortium of four firms in the so-called "*Senior Annuity Sales and Marketing Practices*" class actions litigated from 2005 through 2015, achieving settlements valued in the aggregate between $552 million and $1.273 billion, on behalf of senior citizen consumers, asserting claims against

several well-known insurance companies under consumer protection and elder abuse statutes, and RICO. **Exhibit 3** at 1.

Mr. Basser served as plaintiffs' co-lead counsel in *In re Bridgestone Tire Secs. Litig.*, No. 3-010017 (M.D. Tenn.) (settled for $30 million), which required mastery of complex, highly technical tire and Ford Explorer vehicle rollover related design and manufacturing facts and documents, and related company representations. In 2020, Mr. Basser was appointed to plaintiffs' executive committee in *In re Toyota Hybrid Brake Defect Litig.*, No. 4:20-CV-00127 ALM (E.D. Tex.). In 2021, he was appointed to plaintiffs' executive committee in *In re Nissan CVT Defect Litig.*, No. CV-00150 (M.D. Tenn.), concerning the design and manufacture of continuous variable transmissions, in which a recovery valued in excess of $300 million was approved by the court in March 2022.

He played a significant role in assisting lead counsel in identifying, retaining, and developing expert witness testimony in *In re Anthem Data Security Breach Litig.*, No. 5:15-md-02617-LHK (N.D. Cal.) ($115 million recovery), and in April, 2022, was enlisted by lead counsel to serve as a member of the Science and Expert Executive Subcommittee in *In re Philips CPAP, Bi-Level PAP Mechanical Ventilator Prods. Liab. Litig.*, No. 21-mc-1230-JFC, MDL No. 3014 (W.D. Pa.).

Notably, Mr. Basser was also lead counsel and lead trial attorney in the hard fought *In re Apollo Group, Inc. Secs. Litig.*, No. CV 04-2147-PHX-JAT (D. Ariz.),

which resulted in a $145 million recovery in 2012 after a unanimous jury verdict was rendered in favor of the class following over two months of trial. United States District Judge James A. Teilborg commented after the successful jury verdict that "trial counsel brought to this courtroom … **extraordinary** talent and preparation," adding that "[w]hat I have seen has been truly **exemplary**." **Exhibit 3** at 8, 11-13, 15-16 (emphasis in original).

Samuel M. Ward is a partner in Barrack's San Diego, California office. Mr. Ward was an integral member of the *Apollo* trial team led by Mr. Basser. He has represented plaintiffs in several class actions involving both complex litigation and highly technical products, including *In re Bridgestone Secs. Litig.*, No. 3:01-cv-0017 (M.D. Tenn.). Mr. Ward was also significantly involved in the prosecution of *Toyota Hybrid Brake Defect Litigation*, and *Nissan CVT Defect Litigation* class actions noted above. He is currently involved in the prosecution of the auto defect related class action *Sampson v. Subaru*, No. 1:21-cv-10284-CPO-SAK (D.N.J.). In addition to his considerable litigation experience amassed over 20 years, Mr. Ward has extensive, valuable experience rebuilding and refurbishing automobile engines and restoring classic automobiles.

### d. Cotchett, Pitre & McCarthy

For over 50 years, Cotchett Pitre & McCarthy ("CPM") has dedicated its services to prosecuting or defending socially just actions. Repeatedly recognized on

the "Plaintiff's Hot List" by the National Law Journal, CPM has earned a national reputation for the breadth of its practices and the diversity of its clients. CPM has secured billions of dollars for its clients and classes, and its attorneys have been honored with such prestigious accolades as induction to the American College of Trial Lawyers, named as Top 100 attorneys by "Super Lawyers" and the Daily Journal, and service on government commissions and the boards of numerous non-profit organizations. CPM's team of 38 trial lawyers are highly experienced in federal and state law and have litigated through trial innumerable cases like this Pacifica Fire Action which involve both. CPM has the organizational and technical expertise to handle complex cases and related discovery, as well as the financial resources to independently fund and litigate cases through trial and appeal. CPM has repeatedly demonstrated that commitment in many of the largest cases in the United States. A firm biography is attached as **Exhibit 4.**

Niall McCarthy has been named a Top 100 attorney in California many times by the Daily Journal and by Super Lawyers Magazine, as well as being repeatedly named to the Daily Journal's "Top Plaintiffs' Lawyers" list, most recently in 2021. Mr. McCarthy has received three California Lawyer Magazine Attorney of the Year (CLAY) Awards, most recently in 2021. He was also awarded the Trial Lawyer of the Year Award by the San Mateo County Trial Lawyers Association. Mr. McCarthy has been elected to the American Board of Trial Advocates (ABOTA), the

International Academy of Trial Lawyers, the International Society of Barristers, and the American College of Trial Lawyers. He is serving as President of the San Francisco ABOTA Chapter in 2022. Mr. McCarthy has handled many consumer fraud class actions. He has acted as Co-Lead National Class Counsel in actions against some of the largest banks and credit card companies in the country, which returned hundreds of millions of dollars to consumers. He has handled many diverse types of class actions.

Karin Swope, a partner based in CPM's Seattle Office, is a seasoned litigator with over 25 years of experience representing clients in consumer protection law, antitrust and securities litigation, financial fraud, environmental actions, privacy litigation and intellectual property litigation. Ms. Swope has a particular expertise in intellectual property and e-discovery. Ms. Swope has taught as an adjunct professor at the Seattle University Law School for the past 15 years in the Intellectual Property Art Law Clinic and has served as past President of the Washington State Bar Association Executive Committee of the Intellectual Property Section. Ms. Swope has been appointed as co-lead counsel and to steering committees in antitrust and consumer cases, including serving as Offensive Discovery and ESI Coordinator in the case *In re Apple Inc. Device Performance Litigation* which resulted in a historic settlement of up to $500 million to Apple iPhone customers, and worked as an attorney with co-lead counsel on the *In re Zoom Video Communications, Inc.*

*Privacy Litigation* case, which resulted in another ground-breaking settlement of $85 million to Zoom customers.

### e. Casey Gerry

Casey Gerry Schenk Francavilla Blatt & Penfield, LLP ("Casey Gerry") is one of the longest running plaintiffs' firms in California and has been protecting the rights of consumers for over seventy years. The firm's partners have extensive experience in consumer class actions, mass torts, and other complex litigation, and have served on a variety of court-appointed leadership committees in those cases. The firm's resume, attached as **Exhibit 5**, describes Casey Gerry's achievements in detail.

Gayle Blatt, head of Casey Gerry's complex litigation practice, joined the firm over 30 years ago. Her practice focuses on class actions, including consumer, product defect and data security litigation. A proven leader, Ms. Blatt has led or helped lead a wide range of complex litigation.

As is relevant here, Casey Gerry and Ms. Blatt have been involved in some of the notable automobile-related class actions in the United States, including:

- *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, No. 15-md-02672-CRB (N.D. Cal.) (*"VW Clean Diesel"*), in which a $14.5 billion landmark settlement was secured for over 500,000 owners and lessees of Volkswagen diesel vehicles equipped with illegal "defeat devices."

- *In re: Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prod. Liab. Litig.*, No. 17-md-02777-EMC (N.D. Cal.), related to alleged "defeat devices" which resulted in a $307.5 million settlement for

> approximately 100,000 owners and lessees of EcoDiesel Jeep Grand Cherokees and Ram 1500 trucks.

- *"Audi CO$_2$" Case in VW Clean Diesel*, No. 15-md-02672-CRB (N.D. Cal.), related to alleged emissions cheating and resulted in a $96.5 million settlement for over 100,000 owners and lessees of Audi vehicles.

- *"Porsche Gasoline" Case in VW Clean Diesel*, No. 15-md-02672-CRB (N.D. Cal.), related to alleged emissions cheating involving approximately 500,000 Porsche vehicles.

Casey Gerry Partner Camille Guerra, working with Gayle Blatt, has been with the firm for over 16 years and is a member of the complex litigation team. She has been heavily engaged in the automotive and other cases, working in depth on factual investigation and research, offensive and defensive discovery and works closely with technical and other experts, including attending vehicle testing. Ms. Guerra is a member of Consumer Attorneys of San Diego and has been member of its Educational Committee. In addition, Ms. Guerra is a member of diversity bar organizations where she participates as a mentor to various student law associations.

Casey Gerry routinely engages in complex and protracted litigation, requiring tremendous commitments of time and resources and is ready to commit the necessary investment here.

### 3.    Proposed Interim Counsel Have Performed Substantial Work to Identify and Investigate Plaintiffs' Claims

Courts routinely look to which counsel expended the most resources in identifying and investigating the potential claims of the class. *See In re Mun.*

*Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (concluding work done by counsel was a decisive factor). The efforts by the proposed Leadership Structure in the early stages of this litigation, their experience in consumer class actions, including auto-defect cases, their ability and willingness to commit the resources required to prosecute the Consolidated Action, and their expressed interest in working with others, make them the clear choice for leadership selection here.

### 4.   The Proposed Leadership Structure are Prepared to Commit Significant Resources to Litigating this Case

The proposed Leadership Structure has already devoted significant resources to representing the interests of Plaintiffs and the class, and will continue to devote the required resources to aggressively represent and advance the interests of Plaintiffs and the class. These resources, along with the proposed Leadership Structure's substantial subject-matter expertise, will allow them to pursue the prosecution of the complex claims raised in this litigation. All of the lawyers and firms proposed as members of the Leadership Structure are aware of the substantial time and financial commitment required to prosecute class actions and complex litigation, and are able and willing to commit the time and financial resources to what will likely be time-consuming and expensive litigation.

### IV.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order appointing Steve W. Berman of Hagens Berman and E. Powell Miller

of The Miller Law Firm as Interim Co-Lead Class Counsel and Stephen R. Basser

of Barrack Rodos, Niall McCarthy of Cotchett, Pitre & McCarthy and Gayle Blatt

of Casey Gerry to the Plaintiffs' Executive Committee.

Dated: September 9, 2022        Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
Thomas E. Loeser
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
toml@hbsslaw.com

**THE MILLER LAW FIRM, P.C.**
/s/ *E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

**BARRACK RODOS & BACINE**
Stephen R. Basser
Samuel M. Ward
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
sbasser@barrack.com

**COTCHETT, PITRE & McCARTHY**
Niall McCarthy
Karin Swope
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
NMcCarthy@cpmlegal.com
Kswope@cpmlegal.com

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
Gayle Blatt
Camille Guerra
110 Laurel Street
San Diego, CA 92101-1486
Telephone: (619) 238-1811
gmb@cglaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on September 9, 2022, a true and correct copy of the foregoing was electronically filed by CM/ECF, which caused notice to be sent to all counsel of record.

*/s/ E. Powell Miller*
E. Powell Miller
