UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: CHRYSLER PACIFICA FIRE RECALL
PRODUCTS LIABILITY LITIGATION

MDL No. 3040

Case Number 22-md-03040
Honorable David M. Lawson
Magistrate Judge Elizabeth S. Stafford

_____/

## PRETRIAL ORDER NO. 4: PROTOCOL FOR DISCOVERY OF ESI

At the status conference held on December 20, 2022, the Court and the parties discussed the entry of an order similar to those entered in other, similar litigation prescribing a protocol that would govern the discovery of electronically stored information (ESI).

Based on those discussions and the agreement of the parties, it is **ORDERED** as follows:

**I.     GENERAL GUIDELINES.**  This Proposed Stipulated Order Re: Discovery of Electronically Stored Information ("ESI Protocol") will govern the discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, the United States District Court for the Eastern District of Michigan Local Rules, and any other applicable orders and rules.  All disclosures and productions made pursuant to this Protocol are subject to any Stipulated Protective Order and any other Orders entered in this matter.

A.     The Parties desire to control and focus the production of documents and ESI to the needs of the case to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.  The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

B.     This Protocol is not intended to expand any document preservation or production requirements under the Federal Rules of Civil Procedure or limit any protection available to a Party under the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

C.      By agreeing to this Protocol, neither Party waives any of its rights under Federal Rule of Civil Procedure 26 or 34.

**II.      LIAISON.**  Each Party will designate an E-discovery Liaison (the "Liaison") knowledgeable about the Party's ESI and who will be responsible for discussing it.  Each ESI Liaison must:

A.      be knowledgeable about the respective party's e-discovery efforts;

B.      be, or have reasonable access to those who are, familiar with their party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

C.      be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

Plaintiffs have identified Karin Swope (Cotchett Pitre & McCarthy) and Dennis Lienhardt (The Miller Law Firm).  Defendant has identified Scott Morgan (Thompson Coburn).  Each party will notify the other of any changes of its designated E-Discovery Liaison.

**III.      PRESERVATION.** The parties have discussed their preservation obligations and needs and agree to the reasonable preservation of potentially relevant documents and ESI.  To reduce the costs and burdens of preservation while still ensuring the preservation of relevant information, the parties agree to continue to meet and confer, as appropriate, regarding preservation parameters.

**IV.      ESI DISCLOSURES**

A.      Within 42 days of a party serving the initial discovery requests, and within 28 days of a party serving subsequent discovery requests, the parties agree to exchange in writing

the information listed in items (1) through (6) below.  The parties agree and understand that their respective responses are based on their knowledge and understanding as of the date of the response, and each party agrees to amend or supplement its responses in a timely manner, throughout the course of discovery, if it learns that in some material respect its response is incomplete or incorrect:

1.      A list of custodians, including both current and former employees, likely to have relevant information, including job title and dates of employment, and a general description of the devices or storage systems on which the custodian's ESI is located;

2.      A general description of any systems for electronic communications and ESI storage, including custodial, non-custodial, or third party sources, that likely house potentially relevant data;

3.      A general description or, at the party's option, a copy of the party's operative document retention policies, throughout the relevant time period, pertaining to any electronic communications and ESI storage systems that likely house potentially relevant data;

4.      A description of the steps the party has taken to preserve likely relevant ESI;

5.      A description of any potentially relevant ESI that the party is aware of having been lost or destroyed, and description of the circumstances of such loss or destruction;

6.      A description of any likely relevant ESI that the party contends is inaccessible or only of limited accessibility and, hence, not producible by that party without undue burden or expense, including:

a.      The general nature of such information (e.g., correspondence, presentation, report, financial planning, budget, etc.);

b.      The reasons why the information is considered inaccessible

or bears only limited accessibility.

## V.      PRODUCTION FORMATS

A.      The parties agree that attending to issues relating to form of production at

the outset of the case facilitates the efficient and cost effective conduct of discovery.

B.      Exhibit A sets forth technical specifications that shall govern the form of

production of documents in this litigation, absent agreement by the parties or order by the Court.

C.      Among other things, the proposed technical specifications incorporate the

directive of Federal Rule of Civil Procedure 34(b)(2)(E)(iii) and provide that a party need not

produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as

contemplated in the technical specifications).

D.      The parties agree to produce documents in file formats as particularized in

Exhibit A. If particular documents warrant a different format, the parties will cooperate to arrange

for the mutually acceptable production of such documents. The parties agree not to degrade the

searchability of documents as part of the document production process.

E.      Deduplication of ESI is expected and the parties have and will continue to

meet and confer in good faith regarding the terms and conditions of deduplication; however, in

any event, deduplication will only apply to exact duplicates (as determined by matching a

document or document family's MD5 or SHA-1 hash values) in a given production, and is subject

to the parties' good faith agreement to provide the requesting party with information about other

custodians who possessed any specific ESI that would be available from that production but for

the MD5 hash value deduplication.  This information must be provided in the "Other Custodian"

metadata field as particularized in Exhibit A.  The deduplication of email must not break apart

families, and the full email header including the blind copy field (bcc) must be included when generating hash values.

F.      The parties share a desire to ensure that ESI is produced in an acceptable, searchable format.  To that end, the parties have discussed but have not yet identified potentially relevant ESI that would not be amenable to the proposed technical specifications.  The parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.  The parties also recognize that certain information to be produced in discovery may warrant production in an alternative form for purposes of depositions or trial.  To the extent that becomes necessary, the parties will meet and confer to reach agreement about such form and will seek Court intervention only if necessary.

G.      To the extent spreadsheets, executable files, videos, animations, audio files, and presentations that include video, animation, or audio shall be produced, these items shall be produced where practical in native format.   To the extent that documents produced in native format cannot be rendered or viewed without the use of proprietary software, the parties shall meet and confer to minimize any expense or burden associated with the review of such documents, including issues that may arise with respect to obtaining access to any such software or operating manuals. All documents produced as native files shall be produced along with a spacer image sheet that: (i) is in the format for static images explained above; (ii) indicates that the file was produced as a native file; and (iii) is marked with a production number.   That production number will be the production number of the corresponding native file.  The native file name shall include this production number.

H.      Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible

evidence.  These files are typically very large and would, if rendered to static image format (e.g., to accommodate redaction of confidential or irrelevant information), produce thousands of pages that would have little utility to a reviewer.   The producing party, upon mutual agreement with the requesting party, may opt to produce relevant and responsive information from databases in an alternative form, such as a report or data table.

    I.  Parent-child relationships shall be preserved.  For each document, all associated parent or child documents should also be produced as separate documents.  Bates numbering of a parent document and any child documents shall be sequential such that a parent document has the lowest value Bates number when compared to its children.

    J.  Email attachments and embedded files must be mapped to their parent document by the Bates number by including a "Beg Attach" field designating the beginning of each such attachment and "End Attach" field designating the end of each such attachment.  If attachments and embedded files cannot be separated from their parent documents, then "Beg Attach" and "End Attach" fields listing the unique beginning and ending Bates number for each attachment or embedded document must be included.  Non-substantive automatically-generated embedded files, such as logos, embedded, non-substantive formatting files such as .ole or .dll formats, or confidentiality legends need not be produced as separate attachments.

    K.  Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the party's electronic files.  A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread.  The parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential production may reduce all parties' costs of document review, production, and litigation-support hosting.  Threading is therefore permitted,

though not required.  For the avoidance of doubt, only email messages for which the parent

document and all attachments are contained in the more inclusive email message will be considered

less inclusive email messages that need not be produced; if the later message contains different

text (such as where the later message adds in-line comments to the body of the earlier message),

or does not include an attachment that was part of the earlier message, the earlier message must be

produced.

## VI.    DOCUMENT SEARCH PROTOCOL

A.    Document Collection.  Each Responding Party will collect documents from

custodians and from the locations agreed to between the parties or pursuant to Court order.

B.    ESI Search Methodology.  The parties will discuss and attempt to reach an

agreement on search methodologies.  Agreement on a search methodology does not relieve a party

of its obligations under the Federal Rules of Civil Procedure to conduct a reasonable search and

produce all relevant and responsive documents of which it is aware.

C.    Proposed Search Terms.

1.    The parties agree that, within 42 days of a party serving the initial

discovery requests, and 28 days of a party serving subsequent discovery requests, they will meet

and confer about methods to search ESI in order to identify ESI that is subject to production in

discovery and filter out ESI that is not subject to discovery.  The parties will aim to establish search

methodologies with the goal of minimizing the need for motion practice, and facilitating

production in accordance with the deadlines set by the Court or agreed upon by the parties.

2.    If a producing party intends to use search terms to (a) expand or limit

the number of documents collected, (b) cull documents prior to reviewing documents for relevance

and privilege, or (c) develop a "seed set" of documents for use in technology assisted review

("TAR"), the producing party shall first confer in good faith with the requesting party to determine the mutually agreeable search terms before using any search terms.

    3.    Prior to implementing search terms, the producing party should provide a list of proposed search terms to the requesting party and the parties will meet and confer regarding any additional terms proposed by the requesting party.

    4.    If the producing party contends that terms proposed by the requesting party would recall an excessive number of documents, the producing party will provide a search term hit list or hit report after global deduplication. The list or report should include the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list (including families).

    D.    TAR. If a producing party intends to use TAR, the producing party shall confer with the requesting party, in good faith, in advance of implementation of TAR, to determine the mutually agreeable parameters for using TAR. In the event a seed set is used, all documents that are reviewed as a function of the seed set, coded relevant, aside from privileged documents, will be produced to the requesting party pursuant to the protective order, to ensure that the documents identified and selected for TAR will likely yield relevant, responsive information.

    E.    Additional Terms. If the Requesting Party objects to the sufficiency of the Responding Party's proposed search terms, the Requesting Party may propose modifications to the Responding Party's terms, or a list of additional terms.

    F.    Application of Agreed Terms. Each Responding Party will proceed with the application of: (1) its own proposed search terms, and (2) the search terms from the Requesting Party's proposed search term list to which the Responding Party does not object ("Agreed Terms").

The results of these searches will then be reviewed for responsiveness and privilege, and for necessary redactions.

G.    Disputed Search Terms.  To the extent that a Responding Party believes that any of the remaining search terms (the "Disputed Terms") proposed by a Requesting Party are unreasonably overbroad or will result in the identification of disproportionate numbers of irrelevant documents, the Responding Party will produce a report that contains the following information:

1.    the aggregate hits for each of the Disputed Terms (i.e. the number of documents returned by a search term), including on a "by custodian" level;

2.    the number of hits for each term including family members;

3.    the number of unique hits for each of the Disputed Terms (the number of documents which contain the particular search term, but no other), including on a "by custodian" level; and

4.    the nature and type of irrelevant documents that the search term is returning.

With respect to any search term for which the Responding Party believes there exists a modification that will reduce the number of irrelevant documents returned by the search term, the Responding Party will meet and confer with the Requesting Party to discuss in good faith any such modification.  For any terms that a Responding Party believes are burdensome, overly broad, or objectionable and for which there does not appear to be any modification that would resolve such issues, the Responding Party will meet and confer with the Requesting Party to discuss in good faith its objections to such search terms.  As part of that process, the Responding Party will, upon request, provide the Requesting Party with the quantitative information discussed

above and a random sample of non-privileged responsive documents returned by the disputed search terms.

**VII.    PRIVILEGE LOGS.**  Where a document is withheld from production entirely or in part by redaction because of attorney-client privilege or work product, the producing party must produce a privilege log containing the information set forth in Federal Rule of Civil Procedure 26(b)(5)(A) in an Excel file allowing text searching and organization of data.  A producing party will produce a separate privilege log for each production within 28 days after the production of documents for which a privilege is asserted.  Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**VIII.   PRODUCTION OF HARD COPY DOCUMENTS.**  The parties will produce images of hard copy documents unitized to the extent the original documents appeared to be units in physical form, with attachments following parents, and with information that identifies the folder (or container) structure, to the extent such structure exists.   The receiving party may request to view the original documents for good cause shown.

**IX.    MODIFICATION.**  This Order may be modified by the Court or by agreement of the parties.

**X.    ENGLISH LANGUAGE.**  If any document exists in more than one language, the document shall be produced in English.

It is so **ORDERED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   December 23, 2022

**EXHIBIT A TO ESI ORDER: METADATA FIELDS**

| Field | Name Example / Format | Description |
|---|---|---|
| **BEGNO** | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| **ENDNO** | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| **BEGATTACH** | ABC0000001 (Unique ID Parent-Child | The Document ID number associated with the first page of the parent document. |
| **ENDATTACH** | ABC0000008 (Unique ID Parent-Child | The Document associated with the last page of the last attachment. |
| **SENTDATE** | MM/DD/YYYY | The date the e-mail or calendar entry was sent. |
| **SENTTIME** | HH:MM | The time the e-mail or calendar entry was sent. |
| **RECEIVEDDATE** | MM/DD/YYYY | The date the document was received. |
| **RECEIVEDTIME** | HH:MM | The time the document was received. |
| **CREATEDATE** | MM/DD/YYYY | The date the document was created. *Note that CREATEDATE may be subject to change during collection or processing as a result of auto date function or other processes. |
| **CREATETIME** | HH:MM | The time the document was created. *Note that CREATETIME may be subject to change during collection or processing as a result of auto date function or other processes. |
| **LASTMODDATE** | MM/DD/YYYY | The date the document was last modified. |
| **LASTMODTIME** | HH:MM | The time the document was last modified. |
| **MEETING START DATE** | MM/DD/YYYY | Start date of calendar entry |
| **MEETING START TIME** | HH:MM | Start time of calendar entry |
| **MEETING END DATE** | MM/DD/YYYY | End date of calendar entry |
| **MEETING END TIME** | HH:MM | End time of calendar entry |
| **FILEPATH** | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both e-mail and e-files and separated by semicolons. |
| **AUTHOR** | Jsmith | The author of a document from extracted metadata. |
| **LAST SAVED BY** | jsmith | The name of the last person and date to edit the document from extracted metadata. |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and e-mail address of the author of an e-mail/calendar item. An e-mail address should always be |

| | | provided. |
|---|---|---|
| **TO** | Joe Smith <jsmith@email.com> | The display name and e-mail address of the recipient(s) of an e- mail/calendar item. An email address should always be provided for every e-mail if a recipient existed. |
| **CC** | Joe Smith <jsmith@email.com> | The display name and e-mail of the copyee(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a copyee existed. |
| **BCC** | Joe Smith <jsmith@email.com> | The display name and e-mail of the blind copyee(s) of an e-mail or calendar item. An e-mail address should always be provided for every e-mail if a blind copyee existed. |
| **SUBJECT** | | The subject line of the e-mail/calendar item. |
| **IMPORTANCE** | Normal, Low, High | E-mail Importance Flag |
| **TITLE** | | The extracted document title of a document. |
| **CUSTODIAN-ALL** | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| **ATTACH COUNT** | Numeric | The number of attachments to a document. |
| **FILEEXT** | XLS | The file extension of a document. |
| **FILENAME** | Document Name.xls | The file name of a document. |
| **FILESIZE** | Numeric | The file size of a document (including embedded attachments). |
| **HASH** | The MD5 or SHA-1 Hash value | The same hash method (MD5 or SHA-1) should be used throughout production. |
| **CONVERSATION INDEX** | | ID used to tie together e-mail threads. |
| **REDACTED** | YES or Blank | If a document contains a redaction, this field will display 'YES'. |
| **TIMEZONE PROCESSED** | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| **NATIVELINK** | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| **FULLTEXT** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E- mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the |

| | | attachment or e-file does not extract any text, then OCR for the document should be provided. |
|---|---|---|
| **EMAIL THREAD** | F00017850 | Email thread identifier generated during e-mail threading process. |
| **EMAIL THREAD PATH** | F00017850+0000+0000+0000+ | Email thread path showing the record's level within the e-mail thread |