UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION<br><br>MDL No. 3040<br><br>*This document relates to: ALL CASES* | Case No. 2:22-cv-03040-DML-EAS<br><br>Honorable David M. Lawson<br>Magistrate Judge Elizabeth S. Stafford |

**PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED MASTER COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................iv

STATEMENT OF ISSUES PRESENTED........................................................... xiii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
     AUTHORITY ...........................................................................................xvi

I.     INTRODUCTION ............................................................................................1

II.    LEGAL STANDARD ....................................................................................3

III.   ARGUMENT..................................................................................................4

     A.     Plaintiffs' Implied Warranty Claims Are Well-Pled............................4

          1.     Plaintiffs' implied warranty claims are timely. .........................4

          2.     Plaintiffs' claims do not fail for lack of privity. .......................5

          3.     The class vehicles are not merchantable.....................................8

          4.     Plaintiffs' implied warranty claims do not fail for
                lack of pre-suit notice..............................................................12

     B.     Plaintiffs Properly Plead Their Magnuson-Moss
         Warranty Act Claim ...........................................................................12

     C.     Plaintiffs Adequately Plead Claims for Breach of Express
         Warranty ............................................................................................13

          1.     FCA's express warranty covers the defect. ..............................13

          2.     Plaintiffs sufficiently allege FCA breached the
                express warranty. .....................................................................15

          3.     Plaintiffs' express warranty claims are not barred
                by the statute of limitations......................................................18

          4.     Pre-suit notice: express warranty. ...........................................20

     D.     The Court Should Uphold Plaintiffs' Fraud-Based Claims ...............20

1.    FCA's affirmative misrepresentations show the materiality of its alleged omissions and give rise to a duty to disclose.................................................20

2.    A duty to disclose also arises when an omission impacts the safety of a product. .................................20

3.    Plaintiffs plausibly allege FCA's pre-sale knowledge of the Spontaneous Fire Risk. ...............21

4.    Plaintiffs state claims of fraud by omission............28

5.    The economic loss rule poses no bar to Plaintiffs' claims. ..................................................................30

    a.    States where FCA falsely claims *all* fraud claims for economic loss are barred. ...........30

    b.    States where FCA falsely claims common law fraud claims for economic loss are barred. .......................................................32

6.    FCA had a duty to disclose the Spontaneous Fire Risk. ...................................................................34

7.    Plaintiffs' consumer protection claims are not time-barred. .............................................................37

8.    FCA's additional arguments against Plaintiffs' consumer protection claims generally fail ................38

    a.    Omissions are actionable under the California FAL and the OCSPA.....................38

    b.    The class action bars raised by FCA are trumped by Fed. R. Civ. P. 23. ......................39

    c.    Plaintiffs' Iowa consumer protection claim may proceed as a class action .........................40

    d.    Federal law gives the Court jurisdiction over the Rhode Island consumer protection claim. ...............40

E.    Plaintiffs Complied With the Applicable Pre-Suit Notice Requirements for Their Consumer Protection, Implied Warranty, and Express Warranty Claims ...............................................41

F.    Plaintiffs Properly Plead Unjust Enrichment Claims .........................42

    1.    Plaintiffs plead their unjust enrichment claims in the alternative. ...........................................................................42

    2.    Plaintiffs conferred a benefit on FCA. ......................................44

    3.    The statute of limitations does not bar Plaintiffs' unjust enrichment claims. .........................................................46

    4.    Plaintiffs may plead a claim for unjust enrichment as a standalone cause of action. .................................................46

G.    Plaintiffs' Nationwide Claims Should Proceed ................................48

IV.    CONCLUSION...............................................................................................50

011086-11/2120550 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*4D-Enters., LLC v. Aalto Hyperbaric Oxygen, Inc.*,
  2020 WL 13200492 (E.D. Va. May 22, 2020) ...................................................32

*Albers v. Mercedes-Benz USA, LLC*,
  2020 WL 1466359 (D.N.J. Mar. 25, 2020) ................................................35, 37

*Arc Welding Supply Co., Inc.*,
  2017 WL 4012106 (S.D. Ind. Sept. 21, 2017)...................................................30

*Ayres v. Ocean Loan Servicing, LLC*,
  129 F. Supp. 3d 249 (D. Md. 2015)....................................................................38

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017) .............................................................41

*Benkle v. Ford Motor Co.*,
  2017 WL 9486154 (C.D. Cal. Dec. 22, 2017)....................................................18

*Benson v. Newell Brands, Inc.*,
  2020 WL 1863296 (N.D. Ill. Apr. 14, 2020)......................................................48

*Bergeron v. Dupont*,
  350 A.2d 627 (N.H. 1976) ..................................................................................37

*Bledsoe v. FCA US LLC*,
  378 F. Supp. 3d 626 (E.D. Mich. 2019) .............................................................36

*Bossart v. Gen. Motors LLC*,
  2021 WL 5278191 (E.D. Mich. May 19, 2021) .................................................28

*Campbell v. CGM, LLC*,
  2017 WL 78474 (D.N.H. Jan. 9, 2017) ..............................................................38

*Chapman v. Gen. Motors LLC*,
  531 F. Supp. 3d 1257 (E.D. Mich. 2021) ....................................................*passim*

*City of Rome v. Glanton*,
  958 F. Supp. 1026 (E.D. Pa. 1997).....................................................................37

*Corbett v. Remington Arms Co., LLC*,
 2016 WL 1755456 (D. Idaho May 2, 2016) ..........................................................6

*Counts v. Gen. Motors, LLC*,
 2022 WL 2079757 (E.D. Mich. June 9, 2022) ......................................20, 36, 37

*Crawford v. FCA US LLC*,
 2021 WL 3603342 (E.D. Mich. Aug. 13, 2021)....................................................42

*Delcavo v. Tour Resource Consultants, LLC*,
 2022 WL 1062269 (D. Kan. Apr. 8, 2022)..........................................................39

*DMC Mach. Am. Corp. v. Heartland Mach. & Eng'g, LLC*,
 2019 WL 175272 (S.D. Ind. Jan. 11, 2019)........................................................30

*Driz v. FCA US LLC*,
 2022 WL 4348470 (N.D. Cal. Sept. 19, 2022)....................................................32

*Earl v. NVR, Inc.*,
 990 F.3d 310 (3d Cir. 2021) ...............................................................................33

*Elward v. Electrolux Home Prods., Inc.*,
 214 F. Supp. 3d 701 (N.D. Ill. 2016)....................................................................8

*Epperson v. Roloff*,
 719 P.2d 799 (Nev. 1986)..........................................................................35, 37

*Estate of Pilgrim v. General Motors LLC*,
 2022 WL 989322 (E.D. Mich. Mar. 31, 2022)..............................................48, 49

*Fimbel v. DeClark*,
 695 N.E.2d 125 (Ind. Ct. App. 1998) ................................................................37

*Finney v. Ford Motor Co.*,
 2018 WL 2552266 (N.D. Cal. Jun. 4, 2018) ......................................................33

*Flores v. FCA US LLC*,
 2021 WL 1122216 (E.D. Mich. 2021)................................................................27

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
 960 S.W.2d 41 (Tex. 1998).................................................................................32

011086-11/2120550 V1

*Foulkrod v. Ford Motor Co.*,
  2019 WL 3064478 (C.D. Cal. Apr. 10, 2019) .............................................18, 19

*Foxworthy, Inc. v. CMG Life Servs., Inc.*,
  2012 WL 1269127 (N.D. Ga. Apr. 16, 2012)....................................................30

*Francis v. Gen. Motors, LLC*,
  504 F. Supp. 3d 659 (E.D. Mich. 2020) ....................................................*passim*

*Gamboa v. Ford Motor Co.*,
  381 F. Supp. 3d 853 (E.D. Mich. 2019) ............................................................29

*Genaw v. Garage Equip. Supply Co.*,
  856 F. App'x 23 (6th Cir. 2021) ........................................................................26

*Gonzalez v. Pepsico, Inc.*,
  489 F. Supp. 2d 1233 (D. Kan. 2007) .................................................................6

*Gregorio v. Ford Motor Co.*,
  522 F. Supp. 3d 264 (E.D. Mich. 2021) .....................................................14, 17

*Hall v. Gen. Motors, LLC*,
  2020 WL 1285636 (E.D. Mich. Mar. 18, 2020)................................................27

*Hanover Ins. Co. v. Hermosa Constr. Grp., LLC*,
  57 F. Supp. 3d 1389 (N.D. Ga. 2014)................................................................30

*Heldenbrand v. Multipoint Wireless, LLC*,
  2012 WL 5198479 (D. Nev. Oct. 18, 2012) ......................................................35

*Hennigan v. Gen. Elec. Co.*,
  2010 WL 3905770 (E.D. Mich. Sept. 29, 2010) ...........................................4, 19

*Hinkle v. Continental Motors, Inc.*,
  2017 WL 4776992 (D.S.C. Oct. 20, 2017) ..........................................................6

*Hodsdon v. Mars, Inc.*,
  162 F. Supp. 3d 1016 (N.D. Cal. 2016)..............................................................38

*In re Auto. Parts Antitrust Litig.*,
  50 F. Supp. 3d 869 (E.D. Mich. 2014) ...............................................................45

011086-11/2120550 V1

*In re AZEK Bldg. Prods., Inc., Mktg. & Sales Pracs. Litig.*,
    82 F. Supp. 3d 608 (D.N.J. 2015) ........................................................8

*In re Cardizem CD Antirust Litig.*,
    105 F. Supp. 2d 618 (E.D. Mich. 2000) ............................................45

*In re Chevrolet Bolt EV Battery Litig.*,
    2022 WL 4686974 (E.D. Mich. Sept. 30, 2022) ........................*passim*

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    2017 WL 1382297 (E.D. Mich. Apr. 18, 2017) .........................11, 12

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    280 F. Supp. 3d 975 (E.D. Mich. 2017) .....................................*passim*

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    355 F. Supp. 3d 582 (E.D. Mich. 2018) .....................................*passim*

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    446 F. Supp. 3d 218 (E.D. Mich. 2020) ....................................42, 43

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
    406 F. Supp. 3d 618 (E.D. Mich. 2019) ...............................21, 22, 27

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*,
    393 F. Supp. 3d 871 (N.D. Cal. 2019) ................................................18

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. 2017) .......................................11, 36

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) ....................................................45

*In re MyFord Touch Consumer Litig.*,
    291 F. Supp. 3d 936 (N.D. Cal. 2018) ................................................9

*In re Nat'l Prescription Opiate Litig.*,
    440 F. Supp. 3d 773 (N.D. Ohio 2020) ............................................32

*In re Porsche Cars N. Am., Inc.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ..............................................39

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016) .......................................................7

*In re Subaru Battery Drain Prods. Liab. Litig.*,
  2021 WL 1207791 (D.N.J. Mar. 31, 2021) ...........................................4

*In re Takata Airbag Prods. Liab. Litig.*,
  396 F. Supp. 3d 1101 (S.D. Fla. 2019) ..............................................11

*In re Takata Airbag Prods. Liab. Litig.*,
  462 F. Supp. 3d 1304 (S.D. Fla. 2020) ...........................36, 43, 44, 45

*In re Takata Airbag Prods. Liab. Litig.*,
  464 F. Supp. 3d 1291 (S.D. Fla. 2020) ..........................................4, 46

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
  Pracs., & Prods. Liab. Litig.*,
  2012 WL 12929769 (C.D. Cal. May 4, 2012) ...................................36

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
  Pracs., & Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................17

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
  2017 WL 1902160 (D.N.J. May 8, 2017)......................................6, 33

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
  --- F. Supp. 3d ---, 2022 WL 522484 (C.D. Cal. Feb. 9, 2022)..........19

*Johnson v. FCA US LLC*,
  555 F. Supp. 3d 488 (E.D. Mich. 2021) ...........................................48

*Kempf v. Lumber Liquidators, Inc.*,
  2017 WL 4288903 (W.D. Ky. Sept 27, 2017)...................................39

*Kimbrough v. Reed*,
  943 P.2d 1232 (Idaho 1997) .............................................................38

*Lawson v. Citizens & S. Nat'l Bank of S.C.*,
  193 S.E.2d 124 (S.C. 1972) ..............................................................35

*Lee v. Samsung Elecs. Am., Inc.*,
  2022 WL 4243957 (S.D. Tex. Sept. 13, 2022)..................................47

*Luisburg Bldg. & Dev. Co., L.L.C. v Albright*,
    45 Kan. App. 2d 618 (Kan. Ct. App. 2011) ........................................................31

*Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*,
    223 F.3d 873 (8th Cir. 2000) ...............................................................................31

*Matanky v. Gen. Motors LLC*,
    370 F. Supp. 3d 772 (E.D. Mich. 2019) ...................................................9, 28, 29

*McGill v. Nat'l Specialty. Ins. Co.*,
    2013 WL 331256 (D. Ariz. Jan. 29, 2013) ...........................................................5

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*,
    848 F.2d 674 (6th Cir. 1988) ...............................................................................21

*Milisits v. FCA US LLC*,
    2021 WL 3145704 (E.D. Mich. July 26, 2021) ................................8, 15, 21, 40

*Miller v. Ford Motor Co.*,
    2022 WL 3229503 (E.D. Cal. Aug. 10, 2022) ......................................................5

*Milwaukee Area Tech. Coll. v. Frontier Adjusters*,
    752 N.W.2d 396 (Wis. Ct. App. 2008) .................................................................7

*Monopoli v. Mercedes-Benz USA, LLC*,
    2022 WL 409484 (N.D. Ga. Feb. 10, 2022) .......................................................26

*Morris v. Tyson Chicken, Inc.*,
    2015 WL 7188479 (W.D. Ky. Nov. 13, 2015) ....................................................31

*Northrop Corp. v. Gen. Motors Corp.*,
    807 N.E.2d 70 (Ind. Ct. App. 2004) ...................................................................35

*NuCal Foods, Inc. v. Quality Egg LLC*,
    918 F. Supp. 2d 1023 (E.D. Cal. 2013) ..............................................................33

*Persad v. Ford Motor Co.*,
    2018 WL 3428690 (E.D. Mich. July 16, 2018) ......................................13, 21, 35

*Plastic Packaging Corp. v. Sun Chem. Corp.*,
    136 F. Supp. 2d 1201 (D. Kan. 2001) .................................................................35

*Plumlee v. Pfizer, Inc.*,
   2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ......................................................38

*Ponzio v. Mercedes-Benz USA, LLC*,
   447 F. Supp. 3d 194 (D.N.J. 2020) ....................................................................26

*Powers v. Lycoming Engines*,
   272 F.R.D. 414 (E.D. Penn. 2011).........................................................................6

*Preez v. Benchmark Maid, LLC*,
   2022 WL 16842054 (M.D. Tenn. Nov. 9, 2022)................................................34

*Raymo v. FCA US LLC*,
   475 F. Supp. 3d 680 (E.D Mich. 2020) ...................................................28, 29, 47

*Renfro v. Champion Petfoods USA, Inc.*,
   25 F.4th 1293 (10th Cir. 2022) ..........................................................................36

*Reynolds v. FCA US LLC*,
   546 F. Supp. 3d 635 (E.D. Mich. 2021) ...........................................3, 15, 16, 40

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) ................................................................................25, 33

*Rollolazo v. BMW of N. Am., LLC*,
   2017 WL 1536456 (C.D. Cal. Feb. 3, 2017) .....................................................48

*Sanchez-Knutson v. Ford Motor Co.*,
   52 F. Supp. 3d 1223 (S.D. Fla. 2014) ..................................................................6

*Sandee's Catering v. Agri Stats, Inc.*,
   2021 WL 963812 (N.D. Ill. Mar. 15, 2021) ......................................................47

*Schechner v. Whirlpool Corp.*,
   237 F. Supp. 3d 601 (E.D. Mich. 2017) .............................................................43

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393. (2010)..........................................................................................39

*Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*,
   650 F. Supp. 2d 1213 (S.D. Fla. 2009) ..............................................................33

- x -

*Smith v. Gen. Motors LLC*,
    988 F.3d 873 (6th Cir. 2021) ......................................................................22, 26

*Smith v. Pfizer Inc.*,
    688 F. Supp. 2d 735 (M.D. Tenn. 2010) .........................................................35

*Snyder-Hill v. Ohio State Univ.*,
    48 F.4th 686 (6th Cir. 2022) ...........................................................................2

*Solo v. United Parcel Serv. Co.*,
    819 F.3d 788 (6th Cir. 2016) ...........................................................................43

*State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*,
    849 F.3d 328 (6th Cir. 2017) ...........................................................................31

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*,
    110 So. 3d 399 (Fla. 2013) ..............................................................................33

*Torch v. Windsor Surry Co.*,
    2019 WL 6709379 (D. Or. Dec. 9, 2019) ........................................................7

*Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*,
    615 F.3d 622 (6th Cir. 2010) ...........................................................................3

*Tucker v. BMW of N. Am. LLC*,
    2020 WL 5701844 (W.D. Wash. Sept. 24, 2020) ...........................................5

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
    160 F. Supp. 3d 1214 (D. Or. 2016) ................................................................37

*Veasman v. Nuance Commc'ns, Inc.*,
    2022 WL 2964411 (C.D. Cal. June 29, 2022) .................................................47

*Weiss v. Gen. Motors LLC*,
    418 F. Supp. 3d 1173 (S.D. Fla. 2019) ............................................................6

*Westlake Vinyls, Inc. v. Goodrich Corp.*,
    518 F. Supp. 2d 955 (W.D. Ky. 2007).............................................................31

*Wickenhauser v. Lehtinen*,
    734 N.W.2d 855 (Wis. 2007)............................................................................34

011086-11/2120550 V1

*Wozniak v. Ford Motor Co.*,
  2019 WL 108845 (E.D. Mich. Jan 4, 2019) ........................................................29

*Wyle v. Lees*,
  33 A.3d 1187 (N.H. 2011) .................................................................................31

*Yetter v. Ford Motor Co.*,
  2019 WL 3254249 (N.D. Cal. July 19, 2019) ....................................................32

*Yvon v. Baja Marine Corp.*,
  495 F. Supp. 2d 1179 (N.D. Fla. 2007) ..............................................................8

STATUTES

Iowa Code § 714H.5(1) ...........................................................................................40

Kan. Stat. § 50-634(d) .............................................................................................39

O.R.S. 646.638(6) ...................................................................................................38

Ohio Rev. Code § 1345.09(B) .................................................................................39

Tenn. Code § 47-18-110 ..........................................................................................38

Tex. Bus. & Comm. Code § 17.65 ..........................................................................38

Va. Code § 8.01-249 ...............................................................................................38

OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(3) .............................................................................................43

## STATEMENT OF ISSUES PRESENTED

1.    Should the Court deny FCA's motion to dismiss the implied warranty of merchantability claims where FCA's fraudulent concealment of the defect equitably tolled the statute of limitations?

      Plaintiffs' answer: Yes.

2.    Should the Court deny FCA's motion to dismiss the implied warranty of merchantability claims for lack of privity where the states at issue either do not require privity or recognize an exception to the privity requirement, and because courts have repeatedly held that the issue of whether privity is required to maintain an implied warranty claim is fact-intensive and better suited for the summary judgment stage?

      Plaintiffs' answer: Yes.

3.    Should the Court deny FCA's motion to dismiss the implied warranty of merchantability claims where Plaintiffs adequately alleged that the defect rendered their vehicles unfit for their ordinary purpose, because this District has repeatedly held, contrary to FCA's contention, that merchantability requires that a vehicle provide more than basic transportation, and because this Court has held that, when a manufacturer sells a defective product that causes the consumers to be misled at the point of sale, the consumers suffered an injury in fact even if the defect does not manifest in every unit?

      Plaintiffs' answer: Yes.

4.    Should this Court deny FCA's motion to dismiss the Magnuson-Moss Warranty Act claim where Plaintiffs pled viable state law implied warranty claims, and because Plaintiffs pled their Magnuson-Moss Warranty Act claim as a nationwide claim and any further inquiry is premature at the motion to dismiss stage?

      Plaintiffs' answer: Yes.

5.    Should the Court deny FCA's motion to dismiss the express warranty claims where Plaintiffs alleged that the defect may be a design, manufacturing, and/or assembly defect?

Plaintiffs' answer: Yes.

6.   Should the Court deny FCA's motion to dismiss the express warranty claims where Plaintiffs adequately alleged that FCA breached the express warranty by failing to remedy the defect, and because presentment of Plaintiffs' vehicles for repair would be futile where FCA does not know the root cause of the defect, and despite being aware of the defect for many years, FCA has been unable to offer a remedy to actually fix the defect?

Plaintiffs' answer: Yes.

7.   Should the Court deny FCA's motion to dismiss the California and Michigan express warranty claims on the basis that they are time-barred by the four-year statute of limitations because the California and Michigan Plaintiffs adequately alleged that their express warranty claims were tolled by FCA's fraudulent concealment of the defect?

Plaintiffs' answer: Yes.

8.   Do Plaintiffs adequately plead their claims for fraud and their claims under various state consumer protection statutes where FCA's affirmative misrepresentations are relevant to demonstrate the materiality of FCA's alleged omissions regarding the safety of the Pacifica Hybrids, and give rise to the duty to disclose the Spontaneous Fire Risk in the Pacificas?

Plaintiffs' answer: Yes

9.   Do Plaintiffs adequately plead their fraud-by-omissions and consumer protection act claims under the laws of various states, where they have alleged multiple concurrent factors showing FCA's pre-sale knowledge of the Spontaneous Fire Risk, including direct advisement by NHTSA, and a range of pre-sale testing by FCA that would have revealed the Spontaneous Fire Risk in the lithium-ion battery, when consumer complaints demonstrate that fires began occurring in Pacificas soon after purchase?

Plaintiffs' answer: Yes.

10.  For each of their claims, have Plaintiffs complied with the applicable statute of limitations?

Plaintiffs' answer: Yes

11.     Should this Court deny the motion to dismiss Plaintiffs' claims for common law fraudulent omission and for violation of the consumer fraud statutes in various states when the economic loss doctrine does not apply to any claim alleged by Plaintiffs?

        Plaintiffs' answer: Yes

12.     For each of their claims, have Plaintiffs provided adequate pre-filing notice where required by applicable statutes when they sent notice on March 8, 2022, and the Consolidated Master Complaint was filed in November 2022?

        Plaintiffs' answer: Yes

13.     Should the Court deny FCA's motion to dismiss Plaintiffs' unjust enrichment claims where this Court has held that an unjust enrichment claim may be pled in the alternative, Plaintiffs' alleged that they conferred a benefit on FCA, the statutes of limitations for the unjust enrichment claims are tolled due to FCA's fraudulent concealment, and Plaintiffs' may allege a standalone cause of action for unjust enrichment under the laws of California, Massachusetts, New Hampshire, New Jersey, and Texas?

        Plaintiffs' answer: Yes.

14.     Should the Court deny FCA's motion to dismiss or strike Plaintiffs' nationwide claims on the basis of standing when courts in this District have rejected the same argument, and because a determination as to whether nationwide claims may be certified under Rule 23 is premature at the motion to dismiss stage?

        Plaintiffs' answer: Yes.

011086-11/2120550 V1

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITY

1.  As to Plaintiffs' implied warranty claims being timely:

    - *Hennigan v. Gen. Elec. Co.*, 2010 WL 3905770 (E.D. Mich. Sept. 29, 2010)

    - *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d. 1257 (E.D. Mich. 2021)

    - *In re Takata Airbag Prods. Liab. Litig.*, 464 F. Supp. 3d 1291 (S.D. Fla. 2020)

    - *Tucker v. BMW of N. Am. LLC*, 2020 WL 5701844 (W.D. Wash. Sept. 24, 2020)

    - *McGill v. Nat'l Specialty. Ins. Co.*, 2013 WL 331256 (D. Ariz. Jan. 29, 2013)

2.  As to privity not being required for Plaintiffs' implied warranty claims:

    - *Miller v. Ford Motor Co.*, --- F. Supp. 3d ---, 2022 WL 3229503 (E.D. Cal. Aug. 10, 2022)

    - *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233 (D. Kan. 2007)

    - *Powers v. Lycoming Engines*, 272 F.R.D. 414 (E.D. Penn. 2011)

    - *Hinkle v. Continental Motors, Inc.*, 2017 WL 4776992 (D.S.C. Oct. 20, 2017)

    - *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 (D.N.J. May 8, 2017)

    - *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S.D. Fla. 2014)

    - *Corbett v. Remington Arms Co., LLC*, 2016 WL 1755456 (D. Idaho May 2, 2016)

    - *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974 (E.D. Mich. Sept. 30, 2022)

    - *Milwaukee Area Tech. Coll. v. Frontier Adjusters*, 752 N.W.2d 396 (Wis. Ct. App. 2008)

    - *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582 (E.D. Mich. 2018)

- *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772 (N.D. Ill. 2016)
- *Milisits v. FCA US LLC*, 2021 WL 3145704 (E.D. Mich. July 26, 2021)

3. As to Plaintiffs' implied warranty claims adequately pleading that the Fire Risk Vehicles are not merchantable:

- *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)
- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017)
- *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d. 1257 (E.D. Mich. 2021)
- *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772 (E.D. Mich. 2019)
- *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936 (N.D. Cal. 2018)
- *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101 (S.D. Fla. 2019)

4. As to Plaintiffs' Magnuson-Moss Warranty Act claims being well pled:

- *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974 (E.D. Mich. Sept. 30, 2022)
- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297 (E.D. Mich. Apr. 18, 2017)

5. As to whether Plaintiffs adequately plead that FCA's express warranty covers the alleged defect:

- *Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018)
- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017)
- *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264 (E.D. Mich. 2021)
- *Milisits v. FCA US LLC*, 2021 WL 3145704 (E.D. Mich. July 26, 2021)

6. As to whether Plaintiffs adequately allege that the express warranty was breached:

- *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635 (E.D. Mich. 2021)

- *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010)

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017)

7. As to Plaintiffs' express warranty claims surviving FCA's statute of limitations arguments:

- *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871 (N.D. Cal. 2019)

- *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2022 WL 522484 (C.D. Cal. Feb. 9, 2022)

8. As to FCA's affirmative misrepresentations showing the materiality of its omissions and giving rise to a duty to disclose:

- *Counts v. Gen. Motors, LLC*, 2022 WL 2079757 (E.D. Mich. June 9, 2022)

9. As to Plaintiffs adequately pleading FCA's pre-sale knowledge of the Spontaneous Fire Risk:

- *Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018)

- *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)

- *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. 2019)

- *Genaw v. Garage Equip. Supply Co.*, 856 F. App'x 23 (6th Cir. 2021)

- *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d. 1257 (E.D. Mich. 2021)

10. As to Plaintiffs adequately pleading their claims for fraud by omission:

- *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680 (E.D Mich. 2020)

- *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772 (E.D. Mich. 2019)

- *Wozniak v. Ford Motor Co.*, 2019 WL 108845 (E.D. Mich. Jan 4, 2019)

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017)

- *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d. 1257 (E.D. Mich. 2021)

- *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853 (E.D. Mich. 2019)

11.   As to the inapplicability of the economic loss rule to Plaintiffs' claims:

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582 (E.D. Mich. 2018)

- *Foxworthy, Inc. v. CMG Life Servs., Inc.*, 2012 WL 1269127 (N.D. Ga. Apr. 16, 2012)

- *DMC Mach. Am. Corp. v. Heartland Mach. & Eng'g, LLC*, 2019 WL 175272 (S.D. Ind. Jan. 11, 2019)

- *Luisburg Bldg. & Dev. Co., L.L.C. v Albright*, 45 Kan. App. 2d 618 (Kan. Ct. App. 2011)

- *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328 (6th Cir. 2017)

- *Wyle v. Lees*, 33 A.3d 1187 (N.H. 2011)

- *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773 (N.D. Ohio 2020)

- *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998)

- *4D-Enters., LLC v. Aalto Hyperbaric Oxygen, Inc.*, 2020 WL 13200492 (E.D. Va. May 22, 2020)

- *Driz v. FCA US LLC*, 2022 WL 4348470 (N.D. Cal. Sept. 19, 2022)

- *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399 (Fla. 2013)

- *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 (D.N.J. May 8, 2017)

- *Preez v. Benchmark Maid, LLC*, 2022 WL 16842054 (M.D. Tenn. Nov. 9, 2022)

- *Wickenhauser v. Lehtinen*, 734 N.W.2d 855 (Wis. 2007)

12.    As to FCA's duty to disclose the Spontaneous Fire Risk:

- *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d. 1257 (E.D. Mich. 2021)

- *Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018)

- *Northrop Corp. v. Gen. Motors Corp.*, 807 N.E.2d 70 (Ind. Ct. App. 2004)

- *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201 (D. Kan. 2001)

- *Epperson v. Roloff*, 719 P.2d 799 (Nev. 1986)

- *Albers v. Mercedes-Benz USA, LLC*, 2020 WL 1466359 (D.N.J. Mar. 25, 2020)

- *Smith v. Pfizer Inc.*, 688 F. Supp. 2d 735 (M.D. Tenn. 2010)

- *In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304 (S.D. Fla. 2020)

- *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372 (S.D.N.Y. 2017)

- *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2012 WL 12929769 (C.D. Cal. May 4, 2012)

13.    As to none of Plaintiffs' consumer protection claims being time-barred:

- *Plumlee v. Pfizer, Inc.*, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014)

- *Kimbrough v. Reed*, 943 P.2d 1232 (Idaho 1997)

- *IUE-CWA Local 901 v. Spark Energy*, *LLC*, 440 F. Supp. 3d 969 (N.D. Ind. 2020)

- *Ayres v. Ocean Loan Servicing, LLC*, 129 F. Supp. 3d 249 (D. Md. 2015)

- *Campbell v. CGM*, *LLC*, 2017 WL 78474 (D.N.H. Jan. 9, 2017)

- *Mayernik v. CertainTeed LLC*, 476 F. Supp. 3d 625 (S.D. Ohio 2020)

- O.R.S. 646.638(6)

- Tenn. Code § 47-18-110

- Tex. Bus. & Comm. Code § 17.65
- Va. Code § 8.01-249

14.   As to omissions being actionable under the California FAL and OCSPA:

- *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016 (N.D. Cal. 2016)

- *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio 2012)

15.   As to Fed. R. Civ. P. 23 surviving state class action bans:

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582 (E.D. Mich. 2018)
- *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635 (E.D. Mich. 2021)
- *Milisits v. FCA US LLC*, 2021 WL 3145704 (E.D. Mich. July 26, 2021)

16.   As to Plaintiffs complying with pre-suit notice requirements for all of their claims:

- *Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017)
- *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)
- *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974 (E.D. Mich. Sept. 30, 2022)

17.   As to Plaintiffs properly pleading their unjust enrichment claim:

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218 (E.D. Mich. 2020)
- *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)
- *Crawford v. FCA US LLC*, 2021 WL 3603342 (E.D. Mich. Aug. 13, 2021)
- *In re Cardizem CD Antirust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000)

18.   As to why Plaintiffs' nationwide class action claims should proceed:

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017)

- *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974 (E.D. Mich. Sept. 30, 2022)

- *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d. 1257 (E.D. Mich. 2021)

- *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488 (E.D. Mich. 2021)

011086-11/2120550 V1

## I.    INTRODUCTION

FCA's motion to dismiss the Consolidated Master Complaint should be denied. FCA sold model year 2017-2018 Chrysler Pacifica Hybrid plug-vehicles ("Pacificas" or "Fire Risk Vehicles") "that were dangerous and prone to catching fire and exploding." ¶ 2.[1] FCA now admits that, as the result of a defect, the Pacificas "may experience a fire … with the ignition in the 'OFF' mode." PageID.957 (CMC Ex. 3, Recall Letter). Though it is virtually certain that the fires are the result of "thermal runaway propagation" in the lithium-ion batteries that power the Pacificas when they are in electric mode,[2] FCA is not offering a fix that would prevent further fires and explosions in the Pacificas. ¶¶ 15-16.

Instead of replacing the batteries in all of the Fire Risk Vehicles as it should, FCA is offering in the first instance only a software update to "monitor" the battery pack "for conditions that could lead to a fire in the battery pack." *Id.*[3] FCA's purported "fix" is no fix at all, as it has *no impact* on the dangerous battery packs that are prone to spontaneous combustion. ¶ 16. The promise of a warning of an

---

[1] Unless otherwise indicated, references to "¶" are to the Consolidated Master Complaint ("CMC"), ECF No. 24.

[2] "Thermal runaway" occurs when a "lithium-ion cell enters an uncontrollable, self-heating state." ¶ 176. "Thermal runaway propagation" (or "runaway propagation") occurs when thermal runaway "propagate[s] to nearby cells in a domino effect" that ultimately results in fires and explosions. ¶ 178.

[3] FCA will only replace the battery pack in those Pacificas when it deems replacement "necessary" after an "inspection." ¶ 16.

imminent fire is cold comfort to Pacifica owners who park their cars in their garages or near other vehicles or property. While FCA cavalierly suggests that the 16 or more known catastrophic fires in a pool of 16,000 Pacificas is nothing to worry about, the law demands an actual fix and full redress for owners and lessees. Moreover, FCA's untimely and inadequate fix does nothing to compensate owners who paid a premium, and thus overpaid, for hybrid minivans that FCA admits have faulty hybrid batteries.

FCA now seeks dismissal of Plaintiffs' claims on numerous grounds, none of which has merit. FCA ignores allegations that belie its arguments, even though this Court must "'construe the complaint in a light most favorable to plaintiffs, accept all plausible well-pled factual allegations as true, and draw all reasonable inferences in plaintiffs' favor.'" *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 697-98 (6th Cir. 2022) (citation omitted). For example, FCA argues that certain consumer protection claims are barred by the statute of limitations while *simply ignoring* the discovery rule and Plaintiffs' well-pled allegations that they could not have discovered the fire risk until shortly before the filing of the CMC. And, while heavily relying on argumentation by string-cite that often doesn't support its position, FCA ignores the

- 2 -

precedent that undermines its arguments. FCA's motion should be denied nearly in its entirety.[4]

## II.    LEGAL STANDARD

To survive FCA's motion to dismiss, Plaintiffs "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010).[5] Fraud claims are subject to the Rule 9(b) pleading standard. *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 646 (E.D. Mich. 2021). But fraud by omission claims like those alleged here face "a slightly more relaxed pleading burden." *Id.* These claims "can succeed without the same level of specificity required by a normal fraud claim," because "a plaintiff alleging an omission-based fraud 'will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'" *Id.* (citation omitted). For fraud claims, "'[t]he adequacy of 9(b) pleadings in the face of a motion to dismiss under 12(b)(6) are analyzed under the *Twombly/Iqbal* framework' and only 'general allegations about the defendant's knowledge' are required." *Id.*

---

[4] Plaintiffs concede that their claims under the IDCSA (Count XXIX) and the OCSPA (Count LVIII) are properly dismissed.

[5] Unless otherwise specified, all internal citations and quotation marks are omitted herein.

## III.   ARGUMENT

**A.    Plaintiffs' Implied Warranty Claims Are Well-Pled**

**1.     Plaintiffs' implied warranty claims are timely.**

FCA incorrectly contends that Plaintiffs' implied warranty claims are time-barred by the U.C.C.'s four-year statute of limitations. ECF No. 30 at PageID.1199-1201. FCA's fraudulent concealment equitably tolled the four-year statute of limitations. "To properly toll a statute of limitations under fraudulent concealment, '[t]he plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment and must prove that the defendant committed affirmative acts of misrepresentation that were designed to prevent subsequent discovery.'" *Hennigan v. Gen. Elec. Co.*, 2010 WL 3905770, at *6 (E.D. Mich. Sept. 29, 2010). FCA contends that the discovery rule does not apply, but it fails to acknowledge that each state at issue recognizes either the discovery rule or that a defendant's fraudulent concealment equitably tolls the statute of limitations where the defendant took affirmative steps to conceal the nature of the defect. *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1282-84 (E.D. Mich. 2021) (concluding that under California and Pennsylvania law, an implied warranty claim may be tolled under the discovery rule); *In re Takata Airbag Prods. Liab. Litig.*, 464 F. Supp. 3d 1291, 1319-20 (S.D. Fla. 2020) (concluding fraudulent concealment applies to toll breach of implied warranty claims under laws of California, Maryland, Michigan, New Jersey, and Pennsylvania); *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021

WL 1207791, at *18 (D.N.J. Mar. 31, 2021) ("Under New Jersey law, equitable tolling applies to implied warranties where defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action."); *Tucker v. BMW of N. Am. LLC*, 2020 WL 5701844, at *4-5 (W.D. Wash. Sept. 24, 2020) (declining to dismiss implied warranty claim under Washington law because "[t]he fraudulent concealment of a cause of action tolls the statute of limitations"); *McGill v. Nat'l Specialty. Ins. Co.*, 2013 WL 331256, at *10 (D. Ariz. Jan. 29, 2013) ("Under Arizona law, the discovery rule tolls limitations until the plaintiff possesses a minimum knowledge sufficient to recognize that a wrong occurred and caused injury."). Here, Plaintiffs adequately plead that FCA affirmatively concealed the defect such that Plaintiffs could not discover the defect or their cause of action for breach of implied warranty. ¶¶ 6, 219-226. Therefore, FCA's fraudulent concealment tolled the statute of limitations on their implied warranty claims and these claims should not be dismissed.

### 2.    Plaintiffs' claims do not fail for lack of privity.

Plaintiffs' implied warranty claims also do not fail for lack of privity, as the states at issue either do not require privity or recognize an exception to the privity requirement. Under the laws of several states, privity is not required to state a claim for breach of implied warranty. ***Colorado***: *Miller v. Ford Motor Co.*, 2022 WL 3229503, at *10 (E.D. Cal. Aug. 10, 2022) ("Privity is not a required element of a

warranty claim in Colorado."); ***Kansas***: *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1246 (D. Kan. 2007) (concluding privity is not required to maintain implied warranty claim under Kansas law); ***Minnesota***: *Powers v. Lycoming Engines*, 272 F.R.D. 414, 420 (E.D. Penn. 2011) (concluding Minnesota law does not require privity to maintain implied warranty claim where only economic losses are involved); ***South Carolina***: *Hinkle v. Continental Motors, Inc.*, 2017 WL 4776992, at *3 (D.S.C. Oct. 20, 2017) (under South Carolina law, "[p]rivity is not required to assert a warranty claim" (citing S.C. Code § 36-2-318)).

Moreover, several states recognize the third-party beneficiary exception to privity. ***Connecticut***: *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *16 (D.N.J. May 8, 2017) (recognizing third-party beneficiary exception and denying dismissal of implied warranty claim under Connecticut law); ***Florida***: *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014) (applying third-party beneficiary exception to implied warranty claim under Florida law); *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1183 (S.D. Fla. 2019) (noting that, but for a third-party beneficiary exception, "a manufacturer would always be able to shield itself from implied warranty claims even though it knows that its intended consumer is not the dealership"); ***Idaho***: *Corbett v. Remington Arms Co., LLC*, 2016 WL 1755456, at *2 (D. Idaho May 2, 2016) ("[I]n a product liability action, UCC warranties apply only to those in privity of contract with the

- 6 -

manufacturer and those who qualify as third party beneficiaries of the underlying sales contract."); ***Oregon***: *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at \*37 (E.D. Mich. Sept. 30, 2022) ("Oregon courts allow claims under an implied warranty to proceed by a person within 'the distributive chain' of a product." (quoting *Crawford v. FCA US LLC*, 2021 WL 3603342, at \*7 (E.D. Mich. Aug. 13, 2021))); *Torch v. Windsor Surry Co.*, 2019 WL 6709379, at \*11 n.5 (D. Or. Dec. 9, 2019) (under Oregon law, recovery is restricted to those in distributive chain); ***Washington***: *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at \*37 (concluding Washington recognizes third-party beneficiary exception to privity requirement); ***Wisconsin***: *Milwaukee Area Tech. Coll. v. Frontier Adjusters*, 752 N.W.2d 396, 404 (Wis. Ct. App. 2008) (recognizes third-party beneficiary exception). Plaintiffs pled and have established that they are third-party beneficiaries in their purchases of Pacificas. ¶¶ 218, 460 (Connecticut), 488 (Florida), 582 (Idaho), 1131 (Oregon), 1419 (Washington), 1449 (Wisconsin).

Further, privity may be established where the defendant issues a warranty, as FCA did here. *See* ¶¶ 132, 241-244, 373, 422, 541, 588, 634, 804, 829, 900, 940, 987, 1139, 1184, 1281, 1331, 1382. ***Ohio***: *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 596 (E.D. Mich. 2018) (concluding under Ohio law privity may be established upon issuance of express warranty); ***Illinois***: *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772,

806-07 (N.D. Ill. 2016) (privity exception applied where there were direct-to-consumer advertisements and warranties).

Finally, courts have repeatedly held that the issue of whether privity is required to maintain an implied warranty claim is fact-intensive and better suited for summary judgment. *Milisits v. FCA US LLC*, 2021 WL 3145704, at *6-7 (E.D. Mich. July 26, 2021) (concluding privity question is complex and "more appropriately resolved on summary judgment upon a full record and more detailed briefing from the parties"). *See also Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 704-05 (N.D. Ill. 2016) ("Given 'the fact-intensive nature' of the privity inquiry, a determination as to whether privity exists is often 'not appropriate at the motion-to-dismiss stage[.]'"); *In re AZEK Bldg. Prods., Inc., Mktg. & Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 618 (D.N.J. 2015) ("The fact-intensive nature of privity frequently renders dismissal at the pleading stage premature."); *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007) ("[T]he issue of whether there was or was not privity cannot be determined by motion to dismiss.").

### 3.     The class vehicles are not merchantable.

Plaintiffs adequately allege that the defect underlying the Spontaneous Fire Risk rendered their vehicles unfit for ordinary use, as required for an implied warranty claim. FCA's contention that Plaintiffs cannot plead an implied warranty claim due to "prolonged use of the vehicle without substantial issue" is simply

another way of arguing that, because the vehicles provided transportation, Plaintiffs' implied warranty claims fail. But a vehicle must provide more than just transportation in order to be merchantable. As this Court has stated, "[f]ederal courts considering implied warranty claims in auto defect litigation consistently have held that an automobile is merchantable or fit for its intended purpose only where it is able reliably to operate in a 'safe condition' or to provide 'safe transportation.'" *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 676 (E.D. Mich. 2020). *See also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1015 (E.D. Mich. 2017); *Chapman*, 531 F. Supp. 3d at 1275-76; *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 785-86 (E.D. Mich. 2019) (California, Georgia, Michigan, and South Carolina); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 945-49 (N.D. Cal. 2018) ("[C]ourts reject the notion that a vehicle is fit for its ordinary purpose 'merely because it provides transportation from point A to point B.... In contrast, courts have recognized that vehicles may be unmerchantable even if they can be used to provide basic transportation when a defect presents symptoms in a persistent manner that can be said to impair safety, reliability, or operability over an extended period of time.") (denying summary judgment on implied warranty claims under California, New Jersey, North Carolina, Ohio, and Virginia law).

Here, Plaintiffs' vehicles are dangerous, unsafe, and unreliable because of the unreasonable risk of fire. ¶¶ 2-22, 145-156, 245. Plaintiffs' vehicles are "prone to

- 9 -

catching fire and exploding," and may spontaneously ignite "while the vehicle is parked at the class member's home, on a public street, or in a public parking lot." ¶¶ 2, 4. It is difficult to imagine a defect that renders a vehicle more unmerchantable than one that can cause a vehicle to spontaneously explode. Moreover, FCA's October 2022 recall does not cure the safety risks because it neither remedies the defect nor eliminates the possibility of a fire. As FCA admits, its "fix" is merely a software update that will "monitor battery pack assembly operational status for conditions that could lead to a fire in the battery pack assembly." ¶ 210. Thus, if a class member happens to be in the Fire Risk Vehicle when the defective battery begins to fail, she might get a warning, but there is no effective warning in the event of a parked-car fire (which is more common), and the recall does nothing to actually prevent the fire from occurring. *See* ¶¶ 209-213. FCA's cited cases, which are nothing more than a smattering of mostly out-of-district, unreported cases from up to 24 years ago, are contrary to well-established precedent in this District. The Fire Risk Vehicles are neither reliable nor do they provide safe transportation. Thus, Plaintiffs have adequately alleged that their vehicles are not fit for their ordinary purpose.

FCA also incorrectly argues that Plaintiffs' warranty claims should be dismissed for failure to allege manifestation of the defect. ECF No. 30 at PageID.1204-1205. FCA admits that "a defect in the hybrid propulsion system can

cause the Fire Risk Vehicles to spontaneously burst into flames." ¶ 145. Thus, the class vehicles suffer from the defect. Even if a Plaintiff's vehicle has not yet caught fire, the defect has not been remedied; any Pacifica could ignite at any time. In *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1123 (S.D. Fla. 2019), the court explained that the "manifestation of defect" argument had repeatedly been rejected during the litigation, stating that "Plaintiffs' allegations were that ammonium nitrate was innately unstable; so 'by definition' this alleged instability would mean that the defective airbags *might* protect vehicle occupants, or *may not* protect vehicle occupants at all, or the airbags *may* even create a more dangerous situation than having no airbag at all by expelling metal shrapnel." *Id.* The court further explained that "because there was 'no way to know whether the airbags at issue would perform satisfactorily in an accident,' the Court refused to 'require an explosion to demonstrate manifestation of a defect.'" *Id.*; *see also In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 458 n.30 (S.D.N.Y. 2017) ("[I]t would be perverse to require [plaintiff] to be involved in an accident to prove that her car manifested the defect."). The same reasoning applies here. Plaintiffs should not be required to experience a spontaneous fire in order to illustrate that the known defect in their vehicles renders them unmerchantable.

Further, this Court in *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297, at *5 (E.D. Mich. Apr. 18, 2017), explained that "[w]hen a

011086-11/2120550 V1

manufacturer sells a product that is defective, which causes consumers to be misled at the point of sale into paying more and getting less than they believed they were purchasing, the consumers suffer an injury in fact, even if that defect does not manifest itself in every individual unit." *Id.* (citing *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013)). Accordingly, this Court should decline to dismiss Plaintiffs' implied warranty claims.

> **4.    Plaintiffs' implied warranty claims do not fail for lack of pre-suit notice.**

Plaintiffs refer the Court to Section E, *infra*, where Plaintiffs detail how pre-suit notice requirements were satisfied for each of Plaintiffs' claims.

## B.    Plaintiffs Properly Plead Their Magnuson-Moss Warranty Act Claim

Contrary to FCA's contention, Plaintiffs properly plead a claim under the Magnuson-Moss Warranty Act ("MMWA") because they properly plead their state law implied warranty claims, as discussed above. MMWA claims "stand or fall" with state law warranty claims. *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at *38. Additionally, Plaintiffs allege a nationwide MMWA claim, which is supported by viable implied warranty claims, and any further inquiry is premature at the motion to dismiss stage. *See In re FCA US LLC Monostable*, 280 F. Supp. 3d at 1017 (denying motion to dismiss nationwide MMWA claim).

**C.    Plaintiffs Adequately Plead Claims for Breach of Express Warranty**

**1.    FCA's express warranty covers the defect.**

FCA's argument that its Limited Warranty does not cover design defects has

been rejected numerous times by courts in this District, including this Court. The

Limited Warranty's broad coverage of defects "in material, workmanship or factory

preparation," ECF No. 30-1 at PageID.1230, does not exclude coverage of the

Spontaneous Fire Risk. Indeed, at the motion to dismiss stage, "courts have rejected

efforts to create an artificial distinction between design and materials/workmanship

defects." *Persad v. Ford Motor Co.*, 2018 WL 3428690, at *5 (E.D. Mich. July 16,

2018). *See also In re FCA US LLC Monostable*, 280 F. Supp. 3d at 1011 ("At this

early stage of the case, without the benefit of any factual development as to the cause

and origin of the alleged defect, dismissal of the express warranty claims is not

justified by a premature and uninformed classification of the alleged defect as being

categorically in the realm of 'design' or 'manufacturing.'"). FCA cherry picks

certain allegations in the complaint, while ignoring others, to argue that Plaintiffs

allege a design defect. Plaintiffs allege that "[t]he design, manufacturing, and/or

assembly defect existed at the time the Fire Risk Vehicles containing the defective

hybrid propulsion systems left the possession or control of FCA." ¶ 1100.

Specifically, Plaintiffs allege that the Spontaneous Fire Risk is likely the result of

the defective high-voltage lithium batteries, and "[a] lithium-ion cell can heat up and

catastrophically fail under one of several scenarios: a *manufacturing defect* in a cell, improper electrical charging and/or discharging, mechanical damage associated with significant bending or puncturing of a cell, and thermal abuse, wherein the cell is subjected to high temperatures." ¶ 161. Plaintiffs also allege that "[a]ccording to GM, the fires that led to the Bolt recall were caused by manufacturing defects in the LGES Li-ion batteries," "LGES Li-ion batteries are also used to power the Fire Risk Vehicles in their electric mode," and [t]hese facts make it overwhelmingly likely that the Spontaneous Fire Risk is in fact the result of defectively designed, manufactured, or installed batteries." ¶¶ 163-164. Thus, this Court should reject FCA's attempt to create an artificial distinction between design and material/workmanship defects at the pleading stage.

FCA also argues that, by bringing a class action and alleging a uniform defect, Plaintiffs reinforce that the defect is a design defect, not a manufacturing defect. ECF No. 30 at PageID.1208-1209. This is simply not true. In fact, "just because Plaintiffs plead allegations involving a class of vehicles does not preclude the possibility of a manufacturing defect." *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 288 (E.D. Mich. 2021); *see also Francis*, 504 F. Supp. 3d at 673 ("The defendant insists that if 'all' of its transmissions are affected, then the defect necessarily must be one caused by design and not method of manufacture. But it is logically possible that either could be the case; perhaps the transmissions work badly

- 14 -

even though built as designed; or maybe they all were badly built, even though well-patterned."). Here, it is "logically possible that either" the Spontaneous Fire Risk is the result of a flaw in the design of the lithium-ion batteries or that the batteries "*all* were badly built, even though well-patterned." *Id.*

Thus, where, as here, a party pleads "facts consistent with a defect that could be due to either poor design, or to poor materials and workmanship," the resolution of that question should "await development of the [factual] record." *Francis*, 504 F. Supp. 3d at 673; *see also In re FCA US LLC Monostable*, 280 F. Supp. 3d at 1011 (similar); *Milisits*, 2021 WL 3145704, at *4 (where a party pleads "facts consistent with a defect that could be due to either poor design, or to poor materials and workmanship," the question should await factual development of the record). FCA's request to dismiss Plaintiffs' claims on this basis should be rejected.

### 2.    Plaintiffs sufficiently allege FCA breached the express warranty.

FCA's other attacks on Plaintiffs' express warranty claim also lack merit. First, several Plaintiffs presented their vehicles to FCA-authorized dealerships to receive the recall repair. ¶¶ 28, 30, 34, 36, 56, 59, 63, 65, 69, 77, 80, 82, 87, 89, 91, 93, 104, 107, 111, 116, 120, 122, 124. FCA's warranty promises to repair any defect, but "where a plaintiff plausibly alleges that a defendant 'has not adequately repaired their vehicle,' the fact that the defendant has attempted repair does not absolve it from liability under its warranty." *Reynolds*, 546 F. Supp. 3d at 649 (quoting *In re*

*Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 631 (E.D. Mich. 2019)). Here, FCA's warranties cover "the cost of all parts and labor needed to repair any item on your vehicle" covered by the warranties. ECF No. 30-1 at PageID.1230. "Implicit therein is a promise that such repairs will actually remedy the problem at issue." *Reynolds*, 546 F. Supp. 3d at 649 (declining to dismiss express warranty claims where plaintiffs alleged the defect was not cured by defendant's repair effort). Here, Plaintiffs allege that FCA has not offered any remedy for the Fire Risk defect. ¶ 204. Prior to October 2022, FCA had merely advised "Fire Risk Vehicle owners and lessees 'to refrain from charging them, and to park them away from structures and other vehicles.'" ¶ 204. Moreover, FCA's October 2022 recall "repair" does not address the dangerous flaw in the battery that is causing the Spontaneous Fire Risk. The "repair" is a software update, which allows the BPCM "to monitor battery pack assembly operational status for conditions that could lead to a fire in the battery pack assembly." ¶ 210. But, as Plaintiffs allege, "[w]hile this monitoring software may provide a vehicle occupant with sufficient warning to evacuate a Fire Risk Vehicle that is about to explode," it does nothing to fix "the faulty battery packs and their propensity to explode." ¶ 211. Thus, FCA's "repair" has done nothing to "actually remedy the problem at issue." *Reynolds*, 546 F. Supp. 3d at 649.

Second, presentment of the vehicle for repair, even within the warranty period, would have been futile. A repair-or-replace warranty "fails its essential purpose when the seller is either unwilling or unable to repair the vehicle." *Gregorio*, 522 F. Supp. 3d at 290. When compliance with a manufacturer's dispute resolution procedure or exclusive remedy provision would be futile, the requirement may be excused. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) ("At the pleadings stage, the Court cannot say whether attempts to comply with the informal dispute settlement procedure put in place by Toyota are futile."); *see also In re FCA US LLC Monostable*, 280 F. Supp. 3d at 1010 (declining to dismiss express warranty claim where "plaintiffs have alleged that the defendant failed or refused to repair" an allegedly defective part); *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at *32-33 (declining to dismiss express warranty claims where plaintiffs established futility by alleging "a defect common to all class vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient"). FCA claims not to know the root cause of the defect, but that is not an excuse for its failure to replace the defective hybrid batteries with non-defective batteries. And despite being aware of the defect for many years, FCA has been unable or unwilling to offer a remedy that actually fixes it. Plaintiffs, therefore, "have plausibly alleged a breach of express warranty on the theory that Defendant

failed to provide adequate repairs under the terms of its Limited Warranty." *Benkle v. Ford Motor Co.*, 2017 WL 9486154, at *12 (C.D. Cal. Dec. 22, 2017) (holding presentment was futile because plaintiffs alleged a defect common to all vehicles at issue and alleged that a repair would have been inadequate).

### 3. Plaintiffs' express warranty claims are not barred by the statute of limitations.

FCA erroneously contends that Plaintiff Olsen's express warranty claim under California law, Cal. Com. Code § 2725(2), and Plaintiff Kitzman's express warranty claim under Michigan law, M.C.L. § 440.2725, are time-barred by the four-year statutes of limitation. Contrary to FCA's contention, Plaintiff Olsen's California express warranty claim was tolled under the "discovery rule." *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 884 (N.D. Cal. 2019) ("The 'discovery rule postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.'" (quoting *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *7 (N.D. Cal. July 7, 2015))); *Foulkrod v. Ford Motor Co.*, 2019 WL 3064478, at *2 (C.D. Cal. Apr. 10, 2019) ("In California, a breach of warranty claim brought under the Song-Beverly Consumer Warranty Act is subject to the four-years limitation period under the California Commercial Code and accrues at the time a plaintiff discovers, or reasonably should discover, the breach ('the discovery rule')" (citing Cal. Com. Code § 2725)); *Foulkrod*, 2019 WL 3064478 at *2 ("Under the discovery rule, the statute of limitations begins to run

once a plaintiff 'has notice or information of circumstances to put a reasonable person on inquiry[.]'"). As Plaintiffs allege, because FCA concealed the existence of the Spontaneous Fire Risk, Plaintiff Olsen had no way of knowing about the unreasonable risk of fire to his vehicle. ¶¶ 6, 172-193, 219. Accordingly, Plaintiff Olsen's claim was tolled until he had "notice or information of circumstances to put a reasonable person on inquiry." *Foulkrod*, 2019 WL 3064478, at *2.

Plaintiff Kitzman's Michigan claim was also tolled. Although "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued" under Michigan law, "[t]his section does not alter the law on tolling of the statute of limitations." *Hennigan*, 2010 WL 3905770, at *3 (quoting M.C.L. § 440.2725(1), (4)). "Under Michigan law, 'the statute of limitations is tolled when a party conceals the fact that the plaintiff has a cause of action.'" *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, --- F. Supp. 3d ---, WL 2022 WL 522484, at *120 (C.D. Cal. Feb. 9, 2022) (quoting *Romeo Inv. Ltd. v. Mich. Consol. Gas Co.*, 2007 WL 1264008, at *3 (Mich. Ct. App. May 1, 2007)). Plaintiffs have adequately alleged that FCA knew about the Spontaneous Fire Risk and actively concealed its existence from Plaintiffs. ¶¶ 172-193, 223, 254-268. Accordingly, due to FCA's fraudulent concealment, Plaintiff Kitzman could not have discovered that he had a cause of action for breach of warranty. Plaintiffs' California and Michigan express warranty claims should not be dismissed.

- 19 -

4.      **Pre-suit notice: express warranty.**

Plaintiffs refer the Court to Section E, *infra*, where Plaintiffs detail how pre-suit notice requirements were satisfied for each of Plaintiffs' claims.

D.      **The Court Should Uphold Plaintiffs' Fraud-Based Claims**

1.      **FCA's affirmative misrepresentations show the materiality of its alleged omissions and give rise to a duty to disclose.**

Plaintiffs' fraud claims rest on omissions, not misrepresentations. But the misrepresentations in marketing material and elsewhere are relevant to prove that the alleged omissions are material to a reasonable consumer, and to give rise to a duty to disclose information that renders the representations false. In *Counts v. Gen. Motors, LLC*, 2022 WL 2079757, at *10 (E.D. Mich. June 9, 2022), the court found that "Defendants omitted material information [concerning noxious emissions] that a reasonable consumer would consider important. This finding is reinforced by the opinion testimony of Plaintiffs' experts, who note that Defendants' marketing campaigns touted the eco-friendly nature of the" cars at issue. Moreover, in certain states, "'a duty to disclose the whole truth' arises when a manufacturer 'voluntarily discloses information." *Id.* at *24 (Texas common law) (citation omitted).

2.      **A duty to disclose also arises when an omission impacts the safety of a product.**

For fraud claims based on material omissions, many of the states at issue impose a duty to disclose information concerning the safety of the product. *See Francis*, 504 F. Supp. 3d at 685-86 (defendant had duty to disclose safety defects

under laws of Illinois, New Jersey, Ohio, Pennsylvania, and South Carolina); *Milisits*, 2021 WL 3145704, at *11 (defendant had duty to disclose safety defects under laws of Pennsylvania, South Carolina, and Texas); *In re Gen. Motors Air Conditioning*, 406 F. Supp. 3d at 639 (defendant had duty to disclose safety defect under laws of California and Tennessee). Here, the real risk of spontaneous fires and explosions in the hybrid battery bank unquestionably affects the safety of the Pacificas, a fact FCA admitted by initiating a *safety recall*. As a result, FCA had a duty to disclose the Spontaneous Fire Risk in its Pacifica Hybrid vehicles at the time of sale.

### 3.   Plaintiffs plausibly allege FCA's pre-sale knowledge of the Spontaneous Fire Risk.

Notwithstanding FCA's protestations, Rule 9 allows Plaintiffs to allege FCA's knowledge generally because it is in FCA's rather than Plaintiffs' possession. *See Persad*, 2018 WL 3428690, at *3 ("To the extent Defendant contend[s] that Plaintiffs have failed to plead Defendant's knowledge of the defect with particularity, the argument is not well-taken. Plaintiffs have generally alleged such knowledge, and that is all that is required by Rule 9(b)."); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988) ("Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control."). Moreover, FCA improperly "attempts to parse the allegations regarding the various

sources of its alleged knowledge and consign each to immateriality, but that is not how pleadings are read by federal courts. The allegations are construed as a whole and read in a light most favorable to the plaintiffs, not piecemeal and in a vacuum as the defendant would take them." *Francis*, 504 F. Supp. 3d at 683; *see also In re Gen. Motors Air Conditioning*, 406 F. Supp. 3d at 637 (plaintiffs' allegations of knowledge, "[w]hen taken together and accepted as true for the purposes of [defendant's] motion to dismiss, these allegations … plausibly establish [defendant's] knowledge of the [defect]").

In contending that Plaintiffs do not adequately allege its pre-sale knowledge of the Spontaneous Fire Risk, FCA erroneously relies on *Smith v. Gen. Motors LLC*, 988 F.3d 873 (6th Cir. 2021). In *Smith*, the plaintiffs did not sufficiently allege pre-sale knowledge of a defective dashboard that "could turn the plastic dashboards into deadly projectiles during a crash." *Id.* at 875. In *Smith*, unlike here, "no class member, or any other GM customer, experienced that dangerous scenario." *Id.* And the court held that "Plaintiffs cannot rely on pre-production test and post-hoc complaints to show knowledge of a defect that only arose after extended use." *Id.* at 886.

Unlike in *Smith* or FCA's other authorities, Plaintiffs provide detailed allegations about the contemporaneous knowledge of the risks of spontaneous combustion of lithium-ion batteries like those used in the Pacificas. *See* ¶¶ 159-160,

172-179. The spontaneous fires occur as a result of "thermal runaway propagation," or "runaway propagation," throughout the lithium-ion cells that make up the battery. Thermal runaway occurs when a "lithium-ion cell enters an uncontrollable, self-heating state" (¶ 176), and runaway propagation occurs when thermal runaway "propagate[s] to nearby cells in a domino effect" that ultimately results in fires and explosions (¶ 178). Indeed, batteries made by LGES, who also made the Pacifica batteries, have been implicated in spontaneous fires occurring in GM Bolts and Hyundai Vehicles, and elsewhere. ¶¶ 151-154, 163, 172.

Importantly, the CMC details express and directly applicable guidance from NHTSA to car manufacturers in 2017 that warned of the dangers of Li-Ion batteries like those in the Pacificas and mandated extensive pre-sale testing that Plaintiffs allege FCA either failed to conduct or simply disregarded the results. *See* ¶¶ 172-179.

> 173.   The 2017 NHTSA Report on lithium-ion battery safety issues is particularly revealing because it documents the well-known fire risks, cites to the vast body of academic and engineering studies on those risks, and recommends rigorous design and testing protocols to protect against those risks. All of this would have been known to FCA at the time it launched the Fire Risk Vehicles.
>
> 174.   NHTSA reiterated that all ***car manufacturers had a duty "to conduct their own due diligence safety testing and analysis, while the industry is working to develop a consensus."*** Unfortunately for Plaintiffs and the putative Class and Subclasses, FCA recklessly or intentionally breached this solemn duty in order to pad its profits.

> 175.   A central focus of the NHTSA Report is the fire risk associated with the use of Li-ion batteries, and recommended protection methods and rigorous testing required to mitigate that risk. The major cause of these fires is the propagation of thermal runaway.

¶¶ 172-175 (emphasis added). Plaintiffs further allege:

> 180.   As the 2017 NHTSA report noted in a statement that has been sadly prophetic for Plaintiffs and all other owners and lessees of the Fire Risk Vehicles, as of 2017 car manufacturers were not adequately designing and testing electric and plug-in-hybrid electric systems powered by highly volatile Li-ion batteries—indeed, the "safety standards" employed by car manufactures such as FCA appeared "to trail—rather than lead—technology development."

¶ 180 (citing CMC Exhibit 2, 2017 NHTSA Report).

The CMC details a range of contemporaneously available safety protocols to prevent runaway propagation, operating at the cellular, modular, and battery pack levels. ¶¶ 181-186. On information and belief, FCA skimped on available protection measures. ¶ 188. For example, FCA chose lithium-ion batteries with very large cells. ¶ 150. While large-cell batteries are cheaper to produce than small-cell batteries like those used by TESLA, they are more susceptible to thermal runaway because each cell contains more flammable material. *Id.* Because of the risk of catastrophic runaway propagation, the 2017 NHTSA Report stressed that car manufacturers had the duty "to conduct their own due diligence safety testing and analysis" before launching lithium-ion powered vehicles. ¶ 174. The CMC also describes the wide range of safety standards and testing protocols that were available to FCA and

- 24 -

alleges that "any adequate testing of the Fire-Risk Vehicle would have revealed the Li-ion batteries' propensity to spontaneously combust as the result of runaway propagation." ¶¶ 190-193.

Plaintiffs also provide detailed allegations of consumer complaints demonstrating that pre-launch testing would necessarily have revealed the Spontaneous Fire Risk. *See* ¶¶ 197-198. Indeed, Pacifica owners informed NHTSA that their cars burst into flames within as little as two weeks after the vehicles were purchased as new. *Id.* In addition to the four consumer complaints detailed in the Complaint, FCA admits to knowledge of at least 12 other spontaneous fires in Pacificas by December 2021, and that it was investigating "a potential trend in fires" in the Pacificas by August 31, 2021—before several of the Plaintiffs bought their Pacificas. ¶¶ 200-202. While FCA suggests that 16 reported catastrophic fires in a pool of approximately 16,000 Pacificas is an insignificant number, ECF No. 30 at PageID.1184-1186, there is "no bright line rule requiring a particular number of consumer complaints to plausibly allege pre-sale knowledge of a defect." *Robinson*, 2021 WL 3036353, at *6. That is especially true here given the catastrophic consequences of runaway propagation and the relatively high percentage of Pacificas that have experienced spontaneous fires and explosions. The cavalier suggestion that it is okay that one in 1,000 Pacificas can burst into flames without warning is hardly

a defense to any claim in this action and displays a disturbing disregard for the safety and well-being of families to whom FCA expressly marketed the Pacificas.

The allegations that the battery fires and explosions began almost immediately following the release of the Pacificas support Plaintiffs' contention that FCA was aware of the Spontaneous Fire Risk and its safety consequences. In *Smith*, in contrast, the Sixth Circuit held that "Plaintiffs cannot rely on pre-production test and post-hoc complaints to show knowledge of a defect that only arose after extended use." *Smith*, 988 F.3d at 886. But in *Genaw*, the Sixth Circuit held that, "[u]nlike *Smith*, there is no indication here that the lift's alleged defect would take several years to manifest itself, such that it could not be identified through pre-production testing. Accordingly, Genaw's allegations with respect to pre-production testing and quality control procedures were sufficient to plead constructive knowledge." *Genaw v. Garage Equip. Supply Co.*, 856 F. App'x 23, 28 n.2 (6th Cir. 2021) (citing *Smith*, 988 F.3d at 886). This case is like *Genaw*, not *Smith*, because the consumer complaints show that the defect arose quickly, so that FCA's pre-sale testing would necessarily have revealed the defect.[6] The detail concerning the contemporaneous

---

[6] *See also Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 228-29 (D.N.J. 2020) ("Unlike cases where allegations were speculative, here Plaintiffs extensively detail the testing, on paint, that 'would have' revealed the Paint Defect[.]"); *Monopoli v. Mercedes-Benz USA, LLC*, 2022 WL 409484, at *8 (N.D. Ga. Feb. 10, 2022) (allegations of pre-sale knowledge sufficient where plaintiffs list "specific tests" and describe "how the test would have revealed that the latch pin was prone to breaking under normal operation").

knowledge of the risks of runaway propagation, the available testing protocols, and the short time before runaway propagation occurred distinguish this case from FCA's authorities holding that mere generalized allegations of testing do not show pre-sale knowledge.[7]

Moreover, FCA's internal investigation supports Plaintiffs' claim of pre-sale knowledge, particularly with respect to Plaintiffs who purchased in 2020 or later.[8] According to FCA's Recall Report, FCA opened an investigation into the spontaneous fires on August 31, 2021. ¶ 200. Reports of those claims began in April 2019—nearly three years before FCA finally began notifying Fire Risk Vehicle owners of the danger. ¶¶ 200-202 (footnote omitted). *Cf. In re Gen. Motors Air Conditioning*, 406 F. Supp. 3d at 637 n.15 ("'It is reasonable to infer' that automakers have knowledge of potential defects before they issue technical service bulletins because 'presumably, the [bulletins are] proceeded by an accretion of knowledge.'") (citation omitted).

---

[7] *See Hall v. Gen. Motors, LLC*, 2020 WL 1285636, at *3-4 (E.D. Mich. Mar. 18, 2020) ("Plaintiffs have not alleged any *facts* about GM's pre-production testing."); *Flores v. FCA US LLC*, 2021 WL 1122216, at *21 (E.D. Mich. 2021) (contained no specific "factual allegations about … testing" and included only "generic allegations of FCA's access to 'testing' and 'analysis'").

[8] Plaintiffs Berzankis and Wilensky (Jan. 9, 2021) (¶ 55); Quattropani (Jan. 14, 2021) (¶ 61); Ferguson (Dec. 4, 2020) (¶ 66); Su (Feb. 5, 2022) (¶ 70); Littleton (Oct. 14, 2021) (¶ 98); Sheehan (Sept. 18, 2020) (¶ 119).

The fact that the consumer complaints were made after many (but not all) Plaintiffs purchased their vehicles does not make those complaints irrelevant. As the court found in *Bossart*, although "consumer complaints were submitted after certain named plaintiffs purchased their class vehicles, plaintiffs have included enough information in the complaint to survive defendant's motion to dismiss." *Bossart v. Gen. Motors LLC*, 2021 WL 5278191, at *11 (E.D. Mich. May 19, 2021).

Another recent decision cogently demonstrates the flaw in FCA's argument. *Chapman* held that "looking at all of Plaintiffs' allegations, it is evident that at *some* point within the timeframe covered by the allegations in the SAC, the balance of available evidence would have tipped the scale towards knowledge." *Chapman*, 531 F. Supp. 3d at 1289-90. For the same reasons, Plaintiffs' allegations here suffice and "further clarification will likely emerge in discovery." *Id.* at 1290. Ultimately, the issue of when FCA had knowledge should be resolved at summary judgment. *Id.*

### 4. Plaintiffs state claims of fraud by omission.

To maintain fraud by omission (or "fraudulent concealment") claims, Plaintiffs must specify "the who, what, when, where, and how" of FCA's omissions. *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 690 (E.D Mich. 2020); *Matanky*, 370 F. Supp. 3d at 789 (citing *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255-56 (6th Cir. 2012)). "'[B]ecause a plaintiff alleging an omission-based fraud will not be able to specify the time, place, and specific content of an omission

as precisely as would a plaintiff in a false representation claim,'" fraudulent concealment claims are evaluated under "'a slightly more relaxed pleading burden … [and] can succeed without the same level of specificity….'" *Matanky*, 370 F. Supp. 3d at 789 (quoting *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751 (E.D. Mich. 2017)). Plaintiffs must allege: "(1) precisely what was omitted; (2) who should have made the representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Raymo*, 475 F. Supp. 3d at 705; *see also Wozniak v. Ford Motor Co.*, 2019 WL 108845, at *3 (E.D. Mich. Jan 4, 2019) (omissions claims viable where plaintiffs allege "that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect"). Plaintiffs have done so here by alleging that FCA failed to disclose the Spontaneous Fire Risk to induce Plaintiffs to pay more than they otherwise would have for their Pacificas. *See* ¶¶ 261-266. These allegations are sufficient and FCA's half-hearted claim that Plaintiffs fail to allege "reliance" or that they read particular ads are without merit. *See In re FCA US LLC Monostable*, 280 F. Supp. 3d at 1001-02; *Chapman*, 531 F. Supp. 3d at 1287-88; *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 872-73 (E.D. Mich. 2019).

5.     **The economic loss rule poses no bar to Plaintiffs' claims.**

In a series of string-cites, FCA argues that the economic loss rule bars *all* of Plaintiffs' fraud claims under the laws of Colorado, Georgia, Indiana, Kansas, Kentucky, Minnesota, Missouri, Ohio, New Hampshire, North Carolina, Texas, and Virginia, and Plaintiffs' common law fraud claims in California, Florida, Maryland, Michigan, Pennsylvania, South Carolina, Tennessee and Wisconsin. ECF No. 30 at PageID.1186-1187. FCA is wrong. As set forth below, its cases are inapposite or misapplied.

a.     **States where FCA falsely claims *all* fraud claims for economic loss are barred.**

*Colorado*: *In re FCA US LLC Monostable*, 355 F. Supp. 3d at 590 (no bar to claims premised on breach of duty that arises separately from contract). *Georgia*: FCA's authority concerns only common law claims and not consumer protection claims. *See Foxworthy, Inc. v. CMG Life Servs., Inc.*, 2012 WL 1269127, at *3 (N.D. Ga. Apr. 16, 2012). And "[t]he economic loss rule is inapplicable in the presence of passive concealment or fraud," and whenever "the plaintiff identified a statutory or common law duty that would have existed absent the underlying contract." *Hanover Ins. Co. v. Hermosa Constr. Grp., LLC*, 57 F. Supp. 3d 1389, 1396-98 (N.D. Ga. 2014). *Indiana*: FCA's authority does not concern Indiana's consumer protection statute. *See Arc Welding Supply Co., Inc.*, 2017 WL 4012106, at *8 (S.D. Ind. Sept. 21, 2017). Moreover, the economic loss rule does not apply to fraud claims. *DMC*

*Mach. Am. Corp. v. Heartland Mach. & Eng'g, LLC*, 2019 WL 175272, at *4 (S.D. Ind. Jan. 11, 2019). **Kansas**: FCA's authority does not concern Kansas' consumer protection statute**.** *See Luisburg Bldg. & Dev. Co.*, *L.L.C. v Albright*, 45 Kan. App. 2d 618, 658-59 (Kan. Ct. App. 2011). **Kentucky**: The economic loss doctrine does not apply to consumer transactions in Kentucky. *See State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 335 (6th Cir. 2017). FCA's superseded authority does not concern Kentucky's consumer protection statute. *See Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 955, 968 (W.D. Ky. 2007). And the economic loss rule never barred Plaintiffs' claims that they were fraudulently induced into entering the transaction. *Morris v. Tyson Chicken, Inc.*, 2015 WL 7188479, at *5 (W.D. Ky. Nov. 13, 2015). **Minnesota**: FCA cites no Minnesota authority for either consumer protection or common law fraud claims, but Plaintiffs note that this Court held in *In re FCA US LLC Monostable*, 355 F. Supp. 3d at 591, common law fraud claims based on post-sale conduct are not barred in Minnesota, and that the alleged fraud continues to this day with the October 2022 recall offering no actual fix. **Missouri**: FCA cites *no* authority concerning Missouri law. Instead, it cites *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 885 (8th Cir. 2000), and mistakenly claims the case concerns Missouri law. **New Hampshire**: FCA cites no authority with respect to New Hampshire's consumer protection statute. Nor does the economic loss rule bar Plaintiffs' common law fraud claims. *See Wyle v. Lees*, 33

A.3d 1187, 1191 (N.H. 2011) (economic loss rule does not bar tort claims where plaintiff "is owed an independent duty of care outside the terms of the contract").

**North Carolina**: *In re FCA US LLC Monostable*, 355 F. Supp. 3d at 592 (fraud claims are not barred); *see also Francis*, 504 F. Supp. 3d at 688 ("recent decisions by North Carolina courts … have cabined the application of the [economic loss] rule to negligence claims"). **Ohio**: *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 815-16 (N.D. Ohio 2020) (economic loss doctrine does not apply to intentional torts). **Texas**: *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 43 (Tex. 1998) (economic loss rule does not bar fraud claims).

**Virginia**: FCA cites no authority with respect to Virginia's consumer protection statute. And, with respect to Plaintiffs' common law fraud claims, *see 4D-Enters., LLC v. Aalto Hyperbaric Oxygen, Inc.*, 2020 WL 13200492, at * 3 (E.D. Va. May 22, 2020) (fraud claims are not barred by economic loss rule "because an actual fraud claim relies on the duty to be truthful, which is a duty imposed by law, not by contract").

### b. States where FCA falsely claims common law fraud claims for economic loss are barred.

*California*: The economic loss rule does not bar Plaintiffs' claim that FCA fraudulently induced them to buy their Pacificas by omitting to disclose material information. *Driz v. FCA US LLC*, 2022 WL 4348470, at *3 (N.D. Cal. Sept. 19, 2022); *accord Yetter v. Ford Motor Co.*, 2019 WL 3254249, at *7 (N.D. Cal. July

19, 2019); *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 989-90 (2004)

("Tort damages have been permitted in contract cases ... where the contract was

fraudulently induced."). Under the better-reasoned California cases, *all* fraudulent

concealment claims are immune from the economic loss rule. *See Finney v. Ford

Motor Co.*, 2018 WL 2552266, at *9 (N.D. Cal. Jun. 4, 2018); *NuCal Foods, Inc. v.

Quality Egg LLC*, 918 F. Supp. 2d 1023 (E.D. Cal. 2013). **Florida**: *Tiara Condo.

Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 407 (Fla.

2013) (economic loss rule has no application outside products liability context); *see

also Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d

1213, 1234 (S.D. Fla. 2009) ("economic loss rule does not bar tort actions based on

fraudulent inducement"). **Maryland**: *In re FCA US LLC Monostable*, 355 F. Supp.

3d at 590 (no bar in cases of concealment of serious safety defect). **Michigan**: *id.* at

591 (no bar to claims premised on "deceit intended to entice a party to engage in a

transaction"). **Pennsylvania**: *In re FCA US LLC Monostable*, 280 F. Supp. 3d at

1005-06 (economic loss rule does not bar either statutory or common law fraud

claims); *see also Earl v. NVR, Inc.*, 990 F.3d 310, 314 (3d Cir. 2021) ("[T]he

economic loss doctrine no longer may serve as a bar to UTPCPL claims.") **South

Carolina**: *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at

*18. **Tennessee**: Once again, FCA cites no authority for the suggestion that the

economic loss rule bars Plaintiffs' claims for violations of Tennessee's consumer

- 33 -

protection statute. With respect to Plaintiffs' common law fraud claims, *see Preez v. Benchmark Maid, LLC*, 2022 WL 16842054, at *8 (M.D. Tenn. Nov. 9, 2022) (denying motion to dismiss under economic loss rule and noting that Tennessee has not broadly applied the rule outside of a "sophisticated commercial relationship." **Wisconsin**: *Wickenhauser v. Lehtinen*, 734 N.W.2d 855, 868-69 (Wis. 2007) (no bar to claims premised on deception intended to entice a party to enter into a transaction).

### 6.   FCA had a duty to disclose the Spontaneous Fire Risk.

FCA erroneously contends that (i) *all* consumer protection and common law fraudulent concealment claims require allegations of a specific duty to disclose and (ii) such a duty can only arise where there is a "special relationship" between the parties. In fact, many consumer protection statutes *themselves* impose disclosure obligations, and, where either statutory or common law claims require the pleading of a specific duty, that requirement is satisfied where, as here, the defrauding party has exclusive knowledge of the defect and/or makes partial disclosures that are rendered false by omitted or concealed information and/or the defect concerns the safety of the product.

*First*, as FCA concedes, under the laws of many of the states at issue, a manufacturer with superior knowledge of a defect has a duty to disclose that defect. *See* ECF No. 30 at PageID.1190 (conceding that this is the rule in California, Idaho, Kentucky, Massachusetts, Minnesota, Missouri, North Carolina, Rhode Island, and

- 34 -

Washington). As Plaintiffs have alleged such knowledge, *see* Section III.D.3, *supra*, FCA had disclosure duties in those states.

The same rule also applies in Florida, Georgia, Indiana, Kansas, Nevada, New Jersey, Pennsylvania, South Carolina, and Tennessee. ***Florida***: *Chapman*, 531 F. Supp. 3d at 1291. ***Georgia***: *Persad*, 2018 WL 3428690, at * 3. ***Indiana***: *Northrop Corp. v. Gen. Motors Corp.*, 807 N.E.2d 70 (Ind. Ct. App. 2004) (duty to disclose may arise when "(1) the material fact is known or accessible only to the defendant; and (2) the defendant knows that the plaintiff is unaware of the fact or cannot reasonably discover the undisclosed fact"). ***Kansas***: *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1205 (D. Kan. 2001). ***Nevada***: *See Epperson v. Roloff*, 719 P.2d 799 (Nev. 1986); *Heldenbrand v. Multipoint Wireless, LLC*, 2012 WL 5198479, at *5 (D. Nev. Oct. 18, 2012). ***New Jersey***: *Albers v. Mercedes-Benz USA, LLC*, 2020 WL 1466359, at *12 (D.N.J. Mar. 25, 2020). ***Pennsylvania***: *Persad*, 2018 WL 3428690, at *3. ***South Carolina***: *Lawson v. Citizens & S. Nat'l Bank of S.C.*, 193 S.E.2d 124 (S.C. 1972). ***Tennessee***: *Smith v. Pfizer Inc.*, 688 F. Supp. 2d 735, 752-53 (M.D. Tenn. 2010).

*Second*, FCA also concedes that partial disclosures can give rise to the duty of full disclosure under the laws of Arizona, California, Connecticut, Idaho, Iowa, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, Virginia, and Washington. ECF No. 30 at PageID.1191-1192. And Plaintiffs allege exactly that.

*See*, *e.g.*, ¶ 262 ("FCA also had a duty to disclose because it made many affirmative representations about the safety and quality of the Fire Risk Vehicles and touted the ability of the vehicles[;] these representations were misleading, deceptive, and incomplete without the disclosure of the Spontaneous Fire Risk."); *id.* at ¶¶ 137-144 (examples of such statements). FCA erroneously claims the representations about safety are mere puffery. ECF No. 30 at PageID.1192. That is false, as many courts hold that marketing a vehicle as safe is not puffery where plaintiffs allege a carmaker is aware of a safety defect. *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304, 1318 (S.D. Fla. 2020); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 457; *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2012 WL 12929769, at *18 (C.D. Cal. May 4, 2012); *see also Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 649 (E.D. Mich. 2019) (defendants' statements regarding fuel efficiency were more than puffery when they had knowledge that fuel efficiency was an important consideration to customers). But even if the safety representations can be characterized as puffery, they still created a duty of full disclosure. *See Counts*, 2022 WL 2079757, at *21 (puffery "created a duty" of full disclosure).

The same rule also applies in Colorado, Indiana, Nevada, New Hampshire, New Jersey, Oregon, Pennsylvania, and Texas. ***Colorado***: *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1303 (10th Cir. 2022) (when parties are not in a

"special relationship," a party has a duty to disclose when it "has done something to create a false impression"). **Indiana**: *Fimbel v. DeClark*, 695 N.E.2d 125, 128 (Ind. Ct. App. 1998) ("One cannot be allowed, under the law, to *partially* disclose the facts as he knows them to be, yet create a false impression in the mind of the hearer by failing to fully reveal the true state of affairs."). **Nevada**: *See Epperson*, 719 P.2d at 799. **New Hampshire**: *Bergeron v. Dupont*, 350 A.2d 627, 628-29 (N.H. 1976). **New Jersey**: *Albers*, 2020 WL 1466359, at *12. **Oregon**: *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 160 F. Supp. 3d 1214, 1223-24 (D. Or. 2016). **Pennsylvania**: *City of Rome v. Glanton*, 958 F. Supp. 1026, 1038 (E.D. Pa. 1997). **Texas**: *Counts*, 2022 WL 2079757, at *24 (citing *Curocom Energy LLC v. Eem*, 2016 WL 4150837, at *6 (Tex. Ct. App. Aug. 4, 2016)).

### 7.     Plaintiffs' consumer protection claims are not time-barred.

Ignoring Plaintiffs' controlling allegations that they could not have discovered the concealed Spontaneous Fire Risk until February 2022 when FCA finally notified consumers of the defect, ¶¶ 219-226, FCA argues that some of Plaintiffs' consumer protection claims are time-barred. ECF No. 30 at PageID.1193-1195. FCA is wrong and, as many of the authorities FCA cites expressly reference the discovery and fraudulent concealment rules that obviate FCA's position, its arguments are often frivolous, if not downright specious.

*California*: The discovery rule tolls the statute of limitations governing both the UCL and CLRA claims. *See, e.g.*, *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014). *Idaho*: *Kimbrough v. Reed,* 943 P.2d 1232, 1235-36 (Idaho 1997) (discovery rule applies to all fraud claims). *Maryland*: *Ayres v. Ocean Loan Servicing, LLC*, 129 F. Supp. 3d 249, 272 (D. Md. 2015) (MDCPA claims are subject to discovery rule). *New Hampshire*: *Campbell v. CGM*, *LLC*, 2017 WL 78474, at *12 (D.N.H. Jan. 9, 2017) (NHCPA claims are subject to discovery rule). *Oregon*: O.R.S. 646.638(6) (discovery rule applies to OUTPA claims). *Tennessee*: Tenn. Code § 47-18-110 (discovery rule applies to TCPA claims). *Texas*: Tex. Bus. & Comm. Code § 17.65 (discovery rule applies to TDTPA claims). *Virginia*: Va. Code § 8.01-249 (discovery rule applies to VCPA claims).

### 8. FCA's additional arguments against Plaintiffs' consumer protection claims generally fail

#### a. Omissions are actionable under the California FAL and the OCSPA.[9]

*California FAL*: FAL claims may proceed where, as here, "the defendant actually made a statement, but omitted information that undercuts the veracity of the statement." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016).

---

[9] ECF No. 30 at PageID.1195-96. Plaintiffs concede that omissions are not actionable under the WDTPA.

**OCSPA**: Material omissions are actionable under the OCSPA. *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 871 (S.D. Ohio 2012).

> **b.     The class action bars raised by FCA are trumped by Fed. R. Civ. P. 23.**

FCA wrongly argues that Plaintiffs' statutory fraud claims may not be brought as class actions as the result of procedural rules in Colorado, Georgia, Kansas, Kentucky, Ohio, Tennessee, and Virginia. In reality, (i) class actions are *not* banned under Ohio law,[10] Kansas law,[11] or Kentucky law,[12] and, in any event, (ii) "Federal Rule 23 will always supersede contrary state law." *In re FCA US LLC Monostable*, 355 F. Supp. 3d at 599 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 416. (2010)). Plaintiffs recognize that there is a split of authority in this District as to whether Rule 23 trumps class action bans, but under a fair reading of *Shady Grove*, Rule 23 governs class actions in federal court. In *In re FCA US LLC Monostable*, 355 F. Supp. 3d at 600, this Court held that class actions are *not* barred by the provisions of Colorado, Georgia, and Iowa law that FCA cites here.

---

[10] *See* Ohio Rev. Code § 1345.09(B) (claims for actual (but not treble) damages can be brought as class actions under Ohio statute).

[11] *See, e.g.*, *Delcavo v. Tour Resource Consultants, LLC*, 2022 WL 1062269, at *8-9 (D. Kan. Apr. 8, 2022) (certifying class based on material omissions claim under Kansas Consumer Protection Act). FCA has failed to read the language of Kan. Stat. § 50-634(d), which specifically authorizes class actions by "a consumer who suffers loss as a result of a violation of" the Act.

[12] *See Kempf v. Lumber Liquidators, Inc.*, 2017 WL 4288903, at *4 (W.D. Ky. Sept 27, 2017) ("class actions are not prohibited by the KCPA").

Similarly, in *Reynolds*, the court held that the class action bars in the consumer protection statutes of Tennessee and Georgia do not apply in federal court. 546 F. Supp. 3d at 656-57. FCA's position is even weaker with respect to the Virginia CPA, which does not contain a bar in class actions—that is, "[t]he absence of a class action right … is the 'default' position under Virginia law, rather than a provision of the VCPA itself." *Milisits*, 2021 WL 3145704, at *12. Hence, the bar is plainly procedural rather than substantive and does not apply in federal court. *Id.* (collecting cases).

### c.   Plaintiffs' Iowa consumer protection claim may proceed as a class action

Contrary to FCA's argument based on a case that has since been superseded by statute, *see* ECF No. 30 at PageID.1197, the Iowa consumer protection statute expressly provides a private right of action for consumers. Iowa Code § 714H.5(1). Moreover, the attorney general certification requirement is a procedural rule that does not bar class actions in federal court. *In re FCA US LLC Monostable*, 355 F. Supp. 3d at 600.

### d.   Federal law gives the Court jurisdiction over the Rhode Island consumer protection claim.

FCA frivolously argues that Plaintiffs' Rhode Island consumer protection claim cannot be brought in federal court. ECF No. 30 at PageID.1197. Nonsense. FCA cites no decision questioning the authority of congress to provide jurisdiction over state law claims in federal court under 28 U.S.C. § 1332(d)(2) and (6).

- 40 -

**E.    Plaintiffs Complied With the Applicable Pre-Suit Notice Requirements for Their Consumer Protection, Implied Warranty, and Express Warranty Claims**

FCA erroneously argues that Plaintiffs did not give adequate pre-suit notice under the laws of all states implicated in this suit. ECF No. 30 at PageID.1197, 1205, 1210. In fact, Plaintiffs gave FCA notice of its alleged wrongdoing by a letter dated March 8, 2022. ¶¶ 329, 360, 382, 414, 431, 529, 692, 709, 787, 796, 979, 1072, 1132, 1177, 1223, 1253, 1313, 1321, 1372, 1421. This letter was sent nearly *eight months before* the operative complaint was filed on November 4, 2022. *Cf. Beck*, 273 F. Supp. 3d at 748 (concluding notice sent at least 30 days before operative complaint was filed satisfies CLRA 30-day notice requirement). FCA was also put on notice "by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing," as well as from the operative complaint. ¶¶ 381, 414, 430, 504, 505, 549, 550, 596, 597, 642, 643, 692, 709, 796, 812, 813, 837, 838, 908, 909, 948, 949, 979, 995, 996, 1072, 1102, 1132, 1147, 1148, 1177, 1192, 1193, 1223, 1253, 1289, 1290, 1321, 1339, 1340, 1372, 1390, 1391, 1421.

Plaintiffs also provided FCA with notice under Ohio and Pennsylvania law, where filing a civil action satisfies the notice requirement. *See Francis*, 504 F. Supp. 3d at 679.

Finally, courts in this District have held that, when plaintiffs "allege providing at least some notice, the question of adequacy and timeliness of notice becomes one of fact, and the claim should not be defeated at the motion to dismiss stage." *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at \*34 (citing *Chapman*, 531 F. Supp. 3d at 1279). FCA's claims that Plaintiffs' pre-suit notice was inadequate should not derail any of Plaintiffs' claims. The "purpose of the notification requirement is 'to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.'" *Francis*, 504 F. Supp. 3d at 679. For that reason, "dismissal for want of notice is inappropriate" in situations where "the defendant has made no showing that it was prejudiced by being deprived of a seasonable opportunity to remedy the problem." *Id.* That analysis applies equally here.

## F.   Plaintiffs Properly Plead Unjust Enrichment Claims

### 1.   Plaintiffs plead their unjust enrichment claims in the alternative.

Plaintiffs' unjust enrichment claims should proceed, as many courts have held in auto defect cases similar to this one. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 228-29 (E.D. Mich. 2020); *Francis*, 504 F. Supp. 3d at 694; *Crawford*, 2021 WL 3603342, at \*11-12. FCA fails to explain why this Court should depart from its previous rulings on these issues (where FCA and other defendants made these same arguments).

First, FCA argues that Plaintiffs cannot maintain their unjust enrichment claims where there is an express warranty. ECF No. 30 at PageID.1211-1212. But that is not true, as Fed. R. Civ. P. 8(a)(3) specifically allows a party to plead in the alternative. *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 797 (6th Cir. 2016); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017); *In re Takata Airbag*, 462 F. Supp. 3d at 1326 ("[R]egardless of whether Plaintiffs' allegations are sufficient under the laws of each state to preclude dismissal on express warranty grounds, Plaintiffs are allowed to assert equitable unjust enrichment claims in the alternative to their legal claims."). Moreover, since FCA explicitly contends that the Spontaneous Fire Risk defect is a design defect not covered by the express warranty, there is a live dispute as to whether the express warranty covers the defect, and Plaintiffs' unjust enrichment claims should proceed. *See In re FCA Monostable*, 446 F. Supp. 3d at 228-29 (concluding that because FCA argued plaintiffs alleged a "design defect" not covered by the express warranty, "there presently is a live dispute over whether the warranty covers the defect, and, if it does not, the unjust enrichment claim could proceed").

FCA also incorrectly contends that Plaintiffs cannot maintain claims for unjust enrichment because they failed to plead facts showing their legal remedies are inadequate. ECF No. 30 at PageID.1212-1213. But, again, Plaintiffs are entitled to plead in the alternative in the event they are unable to obtain an adequate legal

remedy. *Francis*, 504 F. Supp. 3d at 694; *In re Takata Airbag*, 462 F. Supp. 3d at 1326 ("[E]ven though 'equitable relief ultimately may not be awarded [because] there exists an adequate remedy at law,' Plaintiffs "certainly may plead alternative equitable relief" at this stage.").

### 2.     Plaintiffs conferred a benefit on FCA.

Further, contrary to FCA's argument, Plaintiffs conferred a benefit on FCA.[13] *See In re FCA US LLC Monostable*, 280 F. Supp. 3d at 1008-09 (concluding "the courts dismiss such claims only where the plaintiffs fail to allege facts showing that they have bestowed some sort of benefit upon the defendant that the defendant ought not keep in equity and good conscience"). Here, Plaintiffs alleged that "FCA has benefitted from selling, leasing, and distributing the Fire Risk Vehicles for more than they were worth as a result of FCA's conduct," and as a result of FCA's conduct, "have overpaid for the Fire Risk Vehicles and been forced to pay other costs." ¶ 282. Plaintiffs paid a substantial premium for the plug-in hybrid propulsion system in the Fire Risk Vehicles, and "FCA knowingly accepted the benefits of its unjust conduct." *Id*. ¶¶ 135, 286. "As a result of FCA's conduct, the amount of its unjust enrichment should be determined in an amount according to proof." *Id*. ¶ 287.

---

[13] FCA does not contend that a direct benefit is required under the laws of Arizona, Illinois, Iowa, Kansas, and Nevada. ECF No. 30 at PageID.1213.

Moreover, Plaintiffs do not have to show that they purchased their Pacificas *directly* from FCA to prevail on their unjust enrichment claims. Indeed, "[w]hether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct." *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000) (applying law of California, Illinois, Michigan, Minnesota, North Carolina, Tennessee, and Wisconsin). *See also In re Takata Airbag*, 462 F. Supp. 3d at 1326-33 (concluding plaintiff does not have to confer direct benefit on defendant to maintain unjust enrichment claims under laws of Connecticut, Florida, Michigan, Pennsylvania, and Wisconsin); *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 897 (E.D. Mich. 2014) (same under Arizona, Florida, Iowa, Kansas, Michigan, Minnesota, North Carolina, Rhode Island, and South Carolina); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 543-46 (D.N.J. 2004) (same under the laws of the fifty states). Finally, although Plaintiffs are not required to show that they purchased their vehicles directly from FCA, "a direct benefit is conferred on an automotive manufacturer where a plaintiff purchases or leases his vehicle from a dealership affiliated with the automotive manufacturer." *In re Takata Airbag*, 462 F. Supp. 3d at 1326-32 (applying laws of Arizona, California, Connecticut, Florida, Georgia, Illinois, Indiana, Massachusetts, Michigan, Nevada,

- 45 -

New Jersey, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, West Virginia, Washington, and Wisconsin).

**3.      The statute of limitations does not bar Plaintiffs' unjust enrichment claims.**

FCA incorrectly contends that Plaintiffs' unjust enrichment claims are barred under each state's statute of limitations. However, as addressed previously in regard to the tolling of Plaintiffs' express and implied warranty claims, Plaintiffs' claims are tolled due to FCA's fraudulent concealment of the defect. *See also In re Takata Airbag*, 464 F. Supp. 3d at 1317 (concluding plaintiffs' Georgia, North Carolina, and Texas unjust enrichment claims are not time-barred because "fraudulent concealment tolling applies to the unjust enrichment claims under the laws of these states"). Plaintiffs have adequately alleged that their claims are tolled due to FCA's fraudulent concealment preventing Plaintiffs from discovering the defect. ¶¶ 219-220. Accordingly, the statute of limitations for Plaintiffs' unjust enrichment claims should also be tolled.

**4.      Plaintiffs may plead a claim for unjust enrichment as a standalone cause of action.**

FCA erroneously argues that the unjust enrichment claims under the laws of California, Massachusetts, New Hampshire, New Jersey, and Texas should be dismissed because these states do not recognize unjust enrichment as a standalone cause of action. As this Court has previously held, under Texas law, "[u]njust enrichment is an independent cause of action." *In re FCA US LLC Monostable*, 355

F. Supp. 3d at 600; *see also Lee v. Samsung Elecs. Am., Inc.*, 2022 WL 4243957 (S.D. Tex. Sept. 13, 2022) ("In Texas, the Texas Supreme Court and Fifth Circuit have previously acknowledged unjust enrichment as an independent cause of action."). This Court has also concluded that a claim for unjust enrichment may be maintained under Massachusetts law. *In re FCA US LLC Monostable*, 280 F. Supp. 3d at 1008.

Unjust enrichment claims may also be maintained under the remaining states. While, "in general, California courts have held that there is no standalone unjust enrichment claim in California," the Ninth Circuit holds that a "district court should not dismiss where a plaintiff raising an unjust enrichment claim has provided a 'straightforward statement … sufficient to state a quasi-contract cause of action." *Veasman v. Nuance Commc'ns, Inc.*, 2022 WL 2964411, at *7 (C.D. Cal. June 29, 2022) (quoting *Astiana v. Hain Celestial Grp. Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015)). As for New Hampshire, the "cases have found an exception for indirect purchaser plaintiffs to bring unjust enrichment claims in New Hampshire as standalone claims." *Sandee's Catering v. Agri Stats, Inc.*, 2021 WL 963812, at *3 (N.D. Ill. Mar. 15, 2021). Unjust enrichment is also viable under New Jersey law. *See Raymo*, 475 F. Supp. 3d at 710-11 (applying New Jersey law) (citing *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). Accordingly, Plaintiffs may maintain their unjust enrichment claims at this stage of the proceedings.

G.    **Plaintiffs' Nationwide Claims Should Proceed**

Plaintiffs' nationwide claims should not be dismissed or stricken. Courts in this District and others have repeatedly explained that plaintiffs can pursue claims on behalf of a nationwide class. *See In re FCA US LLC Monostable*, 280 F. Supp. 3d at 1017 (denying motion to dismiss nationwide MMWA claim); *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at *7-9 (upholding nationwide claims at pleadings stage); *Chapman*, 531 F. Supp. 3d at 1274; *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 495 (E.D. Mich. 2021); *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 1536456, at *17 (C.D. Cal. Feb. 3, 2017) (same); *Benson v. Newell Brands, Inc.*, 2020 WL 1863296, at *5 (N.D. Ill. Apr. 14, 2020) (collecting cases and denying motion to dismiss nationwide unjust enrichment claim as premature before class certification).

FCA incorrectly relies on *Estate of Pilgrim v. General Motors LLC*, 2022 WL 989322, at *4 (E.D. Mich. Mar. 31, 2022), for the proposition that Plaintiffs' nationwide claims should be dismissed because the laws may differ among the states. However, the *Chevy Bolt* court recently rejected the same argument based on *Pilgrim*, explaining that "in *Pilgrim*, the Sixth Circuit specifically suggested that the possibility that 'a nationwide class covering claims governed by the laws of various States could overcome [the problem of differing state laws] by demonstrating considerable factual overlap,' but concluded that *Pilgrim* was 'not such a case'

- 48 -

because of the substantial factual differences in various plaintiffs' claims." *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at *8 (quoting *Pilgrim*, 660 F.3d at 947). Many "courts in the Sixth Circuit have distinguished *Pilgrim*" on this basis and declined to strike nationwide claims. *Id.* Accordingly, *Pilgrim* does not support FCA's argument that Plaintiffs' claims could not be certified under Rule 23.

Moreover, "state law does not need to be universal in order to justify nationwide class certification," and "[c]ourts must exercise caution when striking class allegations based solely on the pleadings." *Id.* ("It is not wholly clear that Defendants have born [sic] the burden of showing that the state laws that would apply to the claims of each possible class members are so different that these nationwide classes could not possibly be certified."). Thus, FCA's general contention that certification is not possible because state laws differ lacks merit. Such a determination is premature at the motion to dismiss stage and better suited for later proceedings, after Plaintiffs have moved for class certification with the benefit of discovery. *Id.* at *9 ("Plaintiffs have not yet moved to certify any class. As this litigation develops, Plaintiffs may, as they argue, 'conclude that some other grouping may be appropriate depending on how the facts develop."). Accordingly, this Court should decline to dismiss Plaintiffs' nationwide claims at this stage of the proceedings.

011086-11/2120550 V1

## IV.   CONCLUSION

For the reasons set forth above, and with the exception of Plaintiffs' claims under the WDTPA (as to omissions) and the IDCSA and OCSPA, which Plaintiffs concede are properly dismissed, Defendant's Motion should be denied.

DATED: January 23, 2023                    Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com

E. Powell Miller (P39487)
**THE MILLER LAW FIRM PC**
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Email: epm@millerlawpc.com

*Plaintiffs' Co-Lead Counsel*

- 50 -

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 23, 2023, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steve W. Berman*
STEVE W. BERMAN

011086-11/2120550 V1