**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION, | Case No.: 22-cv-03040 |
| | Hon. David M. Lawson |
| MDL No. 3040 | Magistrate Judge Elizabeth A. Stafford |

**DEFENDANT FCA US LLC'S MOTION TO COMPEL
ARBITRATION AND MEDIATION**

Pursuant to 9 U.S.C. §§ 3 and 4 of the Federal Arbitration Act ("FAA"), Defendant FCA US LLC ("FCA US") respectfully moves the Court to enter an order compelling the following Plaintiffs to arbitrate their claims against FCA US and either staying or dismissing their lawsuits:

1. Andrew Berzanskis and Margaret Wilensky (Colorado)

2. Veronica Bryan (California)

3. Michael Christie (Oregon)

4. Christopher Dorn (Kentucky)

5. Meagan and Cal Findeiss (Texas)

6. Chad Fong (North Carolina)

7. Ruth Hoffman (Maryland)

8. James and Alicia Kappes (Arizona)

9. Michael Keeth (Idaho)

10. Diahann Messeguer (Florida)

11. Scott Olsen (California)

12. Alexander Shusta (California)

13. John Spruance (Georgia)

14. Andrew Joseph Ventura (Virginia)

The Court also should compel Plaintiff Spence Voss (Illinois) to mediate his claims against FCA US and, if mediation is unsuccessful, submit his claims to binding arbitration, and either stay or dismiss his lawsuit.

In support of this motion, FCA US relies on the attached brief and accompanying exhibits.

Pursuant to Local Rule 7.1(a), counsel for FCA US conferred with counsel for Plaintiffs, explained the nature and legal bases of this motion, and requested—but did not obtain—concurrence in the relief sought.

Respectfully submitted,


By: */s/ Brandon L. Boxler*
Stephen A. D'Aunoy
Thomas L. Azar, Jr.
Scott H. Morgan
**THOMPSON COBURN LLP**
One US Bank Plaza
St. Louis, Missouri  63101
T: (314) 552-6000
sdaunoy@thompsoncoburn.com
tazar@thompsoncoburn.com
smorgan@thompsoncoburn.com

Fred J. Fresard (P43694)
Ian K. Edwards (P82021)
**KLEIN THOMAS LEE & FRESARD**
101 W. Big Beaver Rd., Ste. 1400
Troy, Michigan 48084
T: (602) 935-8300
fred.fresard@kleinthomaslaw.com
ian.edwards@kleinthomaslaw.com

Brandon L. Boxler
**KLEIN THOMAS LEE & FRESARD**
919 E. Main St., Ste. 1000
Richmond, Virginia 23219
T: (703) 621-2109
brandon.boxler@kleinthomaslaw.com

*Attorneys for Defendant FCA US LLC*

3

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................................................ ii

STATEMENT OF THE ISSUES ........................................................... viii

CONTROLLING AUTHORITY ............................................................. ix

INDEX OF EXHIBITS..............................................................................x

INTRODUCTION .....................................................................................1

BACKGROUND .......................................................................................1

LEGAL STANDARDS .............................................................................5

ARGUMENT .............................................................................................7

    I.    An Arbitrator Must Decide Whether The Claims Are Arbitrable. .............7

    II.    Arbitration Is Required Even If The Court Addresses Arbitrability. .......12

        A.  Valid Arbitration Agreements Cover The Claims. .............................12

            1.  The Arbitration Agreements Are Valid........................................12

            2.  The Arbitration Agreements Cover The Claims.........................15

        B.    As A Nonsignatory, FCA US Can Enforce The Arbitration Agreements Against Plaintiffs. ..........................................................18

            1.  Plain Language.........................................................................18

            2.  Equitable Estoppel. .................................................................20

            3.  Third-Party Beneficiary............................................................24

CONCLUSION ......................................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agnew v. Honda Motor Co.*,
  2009 U.S. Dist. LEXIS 53914 (S.D. Ind. May 20, 2009)....................................22

*Arnold v. Arnold Corp.*,
  920 F.2d 1269 (6th Cir. 1990)................................................................21

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009)...........................................................................20

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)............................................................................5

*AT&T Techs. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)............................................................................6

*Becker v. Delek US Energy, Inc.*,
  39 F.4th 351 (6th Cir. 2022)..................................................................7

*Blanton v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020)........................................................8, 10, 11

*Bossart v. GM, LLC*,
  2022 U.S. Dist. LEXIS 149465 (E.D. Mich. Aug. 19, 2022).............................10

*Chevrolet Bolt EV Battery Litig.*,
  -- F. Supp. 3d --, 2022 U.S. Dist. LEXIS 179604 (E.D. Mich. Sept. 30, 2022).....9

*Ciccio v. SmileDirectClub, LLC*,
  2 F.4th 577 (6th Cir. 2021)...................................................................11

*Clearwater REI, Ltd. Liab. Co. v. Boling*,
  155 Idaho 954 (2014)..........................................................................23

*Collins v. BMW of N. Am., Ltd. Liab. Co.*,
  2021 U.S. Dist. LEXIS 13405 (S.D. Cal. Jan. 25, 2021) ................................25

*Cunningham v. Ford Motor Co.*,
  2022 U.S. Dist. LEXIS 127786 (E.D. Mich. July 19, 2022) ..................................9

*CVS Pharmacy, Inc. v. Gable Family Pharmacy*,
  2012 U.S. Dist. LEXIS 191047 (D. Ariz. Oct. 19, 2012) ...................................22

*Danley v. Encore Capital Grp., Inc.*,
  680 F. App'x 394 (6th Cir. 2017) ...........................................................10

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985) ........................................................................5

*Decisive Analytics Corp. v. Chikar*,
  75 Va. Cir. 337 (Va. Cir. Ct. 2008) ........................................................24

*Ervin v. Nokia, Inc.*,
  349 Ill. App. 3d 508 (2004) ................................................................23

*Felisilda v. FCA US LLC*,
  53 Cal. App. 5th 486 (2020) ............................................................ 21, 23

*Fisher v. GE Med. Sys.*,
  276 F. Supp. 2d 891 (M.D. Tenn. 2003) .....................................................6

*Gallo v. Moen Inc.*,
  813 F.3d 265 (6th Cir. 2016) ...............................................................18

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*,
  -- U.S. --, 140 S. Ct. 1637 (2020) ........................................................20

*Green Tree Fin. Corp. v. Randolph*,
  531 U.S. 79 (2000) ........................................................................6

*Guarantee Tr. Life Ins. Co. v. Platinum Supplemental Ins., Inc.*,
  2016 IL App (1st) 161612 ..................................................................23

*Harper v. GM, LLC*,
  2023 U.S. Dist. LEXIS 47532 (E.D. Mich. Mar. 21, 2023) ....................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  -- U.S. --, 139 S. Ct. 524 (2019) ..................................................... *passim*

*Household Fin. Corp. II v. King*,
    2010 Ky. App. Unpub. LEXIS 780 (Ct. App. Oct. 8, 2010)................................23

*Huffman v. Hilltop Cos., LLC*,
    747 F.3d 391 (6th Cir. 2014) ..................................................................................17

*In re Auto. Parts Antitrust Litig.*,
    2017 U.S. Dist. LEXIS 183609 (E.D. Mich. Apr. 18, 2017)................................22

*In re StockX Customer Data Sec. Breach Litig.*,
    19 F.4th 873 (6th Cir. 2021)............................................................................5, 11

*Javitch v. First Union Sec., Inc.*,
    315 F.3d 619 (6th Cir. 2003) ....................................................................................6

*Kassell v. Crafton*,
    2013 U.S. Dist. LEXIS 177189 (W.D. Tex. Dec. 18, 2013)........................ 20, 24

*Lamps Plus, Inc. v. Varela*,
    -- U.S. --, 139 S. Ct. 1407 (2019) ..........................................................................5

*Lyman v. Ford Motor Co.*,
    2023 U.S. Dist. LEXIS 52875 (E.D. Mich. Mar. 28, 2023) ............................8, 11

*Mance v. Mercedes-Benz USA*,
    901 F. Supp. 2d 1147 (N.D. Cal. 2012) .................................................................23

*Mann v. Equifax Info. Servs.*,
    2013 U.S. Dist. LEXIS 103210 (E.D. Mich. May 24, 2013) ................................18

*McGee v. Armstrong*,
    941 F.3d 859 (6th Cir. 2019)..................................................................................11

*Meyer v. WMCO-GP, LLC*,
    211 S.W.3d 302 (Tex. 2006) ..................................................................................24

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
    186 Cal. App. 4th 696 (2010) ................................................................................20

*Morsey Constructors, LLC v. Burns & Roe Enters.*,
    2008 U.S. Dist. LEXIS 61847 (W.D. Ky. Aug. 12, 2008)....................................23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...................................................................................19

*O'Connor v. BMW of N. Am., LLC*,
    2020 U.S. Dist. LEXIS 162920 (D. Colo. July 22, 2020) ....................25

*Order Homes, LLC v. Iverson*,
    300 Ga. App. 332 (2009) .......................................................................23

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010)............................................................................ 6, 12

*Reykhel v. BMW of North America LLC*,
    2019 U.S. Dist. LEXIS 233073 (N.D. Cal. Aug. 12, 2019) .................22

*Santich v. VCG Holding Corp.*,
    2019 CO 67 ............................................................................................23

*Seawright v. Am. Gen. Fin., Inc.*,
    507 F.3d 967 (6th Cir. 2007)................................................................12

*Sherer v. Green Tree Servicing LLC*,
    548 F.3d 379 (5th Cir. 2008)........................................................ 18, 19

*Simon v. Pfizer Inc.*,
    398 F.3d 765 (6th Cir. 2005).................................................................17

*Smith Jamison Constr. v. Apac-Atlantic, Inc.*,
    257 N.C. App. 714 (2018).....................................................................24

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000).................................................................12

*Straub v. Ford Motor Co.*,
    2021 U.S. Dist. LEXIS 211130 (E.D. Mich. Nov. 2, 2021) .................22

*Swiger v. Rosette*,
    989 F.3d 501 (6th Cir. 2021)....................................................... *passim*

*Tattoo Art, Inc. v. TAT Int'l, LLC*,
    711 F. Supp. 2d 645 (E.D. Va. 2010) ..................................................24

*Tyman v. Ford Motor Co.*,
   521 F. Supp. 3d 1222 (S.D. Fla. 2021) ....................................................23

*Valencia Energy Co. v. Ariz. Dep't of Revenue*,
   191 Ariz. 565 (Ariz. 1998) ....................................................................23

*VIP, Inc. v. KYB Corp.*,
   951 F.3d 377 (6th Cir. 2020) .................................................................11

*Watson Wyatt & Co. v. SBC Holdings, Inc*,
   513 F.3d 646 (6th Cir. 2008) .................................................................17

*Westbard Apartments, LLC v. Westwood Joint Venture, LLC*,
   181 Md. App. 37 (2007) .........................................................................24

*Willis v. Nationwide Debt Settlement Grp.*,
   2012 U.S. Dist. LEXIS 200879 (D. Or. May 22, 2012) ........................24

**Statutes**

710 Ill. Comp. Stat. Ann. 5/1 ........................................................................13

9 U.S.C. § 2 ....................................................................................................5

9 U.S.C. § 4 ....................................................................................................5

Ariz. Rev. Stat. § 12-1501 ............................................................................12

Cal. Civ. Proc. Code § 1281 .........................................................................13

Colo. Rev. Stat. § 13-22-206(1) ...................................................................13

Fla. Stat. Ann. § 682.02(1) ...........................................................................13

Ga. Code Ann. § 9-9-3 ..................................................................................13

Idaho Code § 7-901 .......................................................................................13

Ky. Rev. Stat. § 417.050 ...............................................................................13

Md. Code Ann., Cts. & Jud. Proc. § 3-206(a) ..............................................13

N.C. Gen. Stat. § 1-569.6(a) .........................................................................13

Or. Rev. Stat. Ann. § 36.620(1) ....................................................................13

S.C. Code Ann. § 15-48-10(a) ....................................................................14

Va. Code Ann. § 8.01-581.01 .....................................................................14

**Other Authorities**

American Arbitration Association, Commercial Arbitration Rules and Mediation
    Procedures (Sept. 1, 2022).....................................................................11

## <u>STATEMENT OF ISSUES</u>

1.    Whether the Court should compel Plaintiffs Andrew Berzanskis, Margaret Wilensky, Veronica Bryan, Michael Christie, Christopher Dorn, Meagan and Cal Findeiss, Chad Fong, Ruth Hoffman, James and Alicia Kappes, Michael Keeth, Diahann Messeguer, Scott Olsen, Alexander Shusta, John Spruce, and Andrew Ventura to arbitrate their claims against FCA US, including any dispute over whether the claims are arbitrable.

   Answer: Yes.

2.    Whether the Court should compel Plaintiff Spence Voss to mediate and then arbitrate (if necessary) his claims against FCA US, including any dispute over whether the claims are subject to mediation or arbitration.

   Answer: Yes.

3.    Alternatively, if the Court reaches the question of whether the claims are subject to arbitration or mediation, whether the Court should hold that Plaintiffs' claims are arbitrable and mediatable and refer them to arbitration or mediation.

   Answer: Yes.

## <u>CONTROLLING AUTHORITY</u>

- *Becker v. Delek US Energy, Inc.*, 39 F.4th 351 (6th Cir. 2022)

- *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020)

- *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577 (6th Cir. 2021)

- *Henry Schein, Inc. v. Archer & White Sales, Inc.*, -- U.S. --, 139 S. Ct. 524, (2019)

- *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021)

- *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010)

- *Swiger v. Rosette*, 989 F.3d 501 (6th Cir. 2021)

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Retail Installment Sale Contract With Arbitration for Andrew Berzanskis and Margaret Wilensky (Colorado) |
| B | Retail Installment Sale Contract for Veronica Bryan (California) |
| C | Retail Installment Contract for Michael Christie (Oregon) |
| D | Retail Installment Sale Contract for Christopher Dorn (Kentucky) |
| E | Retail Installment Sale Contract for Meagan Findeiss and James Findeiss (South Carolina) |
| F | Retail Buyer's Order for Chad Fong (North Carolina) |
| G | Vehicle Buyer's Order and Retail Installment Sale Contract for Ruth Hoffman (Maryland) |
| H | Retail Order and Retail Installment Contract for James Kappes and Alicia Kappes (Arizona) |
| I | Retail Purchase Agreement and Retail Installment Sale Contract for Michael Keeth (Idaho) |
| J | Buyer's Order and Retail Installment Sale Contract for Diahann Messeguer (Florida) |
| K | Retail Installment Sale Contract for Scott Olsen (California) |
| L | Retail Installment Contract for Alexander Shusta (California) |
| M | Motor Vehicle Lease Agreement – Closed End for John Spruance (Georgia) |
| N | Vehicle Invoice for Andrew Ventura (Virginia) |
| O | Retail Installment Contract for Spence Voss (Illinois) |
| P | American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures |

## **INTRODUCTION**

Plaintiffs in these consolidated cases claim they leased or purchased defective vehicles manufactured by FCA US.  Although FCA US has moved to dismiss the Consolidated Master Complaint ("CMC"), the parties recently started to conduct discovery.  Early discovery efforts have revealed that, when they purchased or leased their vehicles, many Plaintiffs signed sales contracts or other paperwork containing an arbitration agreement that covers their claims against FCA US and requires an arbitrator to resolve any disputes about arbitrability.

Because the arbitration agreements "preclude[ ] courts from resolving any threshold arbitrability disputes," *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021), the Court should compel these Plaintiffs to arbitration.  Even if the Court reaches the arbitrability issue, it still should compel arbitration based on the plain language of the agreements, equitable estoppel, or the third-party beneficiary doctrine.  In all events, these Plaintiffs belong in arbitration, not this Court.

## **BACKGROUND**

In February 2022, FCA US announced a voluntary recall of certain model-year 2017-2018 Chrysler Pacifica Plug-In Hybrid Electric Vehicles after detecting a potential problem with their battery connector.  *See* CMC ¶ 145, Dkt. 24 (PageID.351).  The fifty-eight Plaintiffs in this multidistrict litigation allege they purchased a defective Pacifica Hybrid subject to the recall.  They assert claims under

1

the laws of various states, including claims for breach of express warranty, breach of implied warranty, and violation of consumer protection statutes.

FCA US moved to dismiss the complaint in December 2022. *See* Mot. to Dismiss, Dkt. 30 (PageID.1149). The parties then filed a joint Rule 26(f) report, *see* Dkt. 31 (PageID.1260), and have started conducting discovery. The early stages of discovery have revealed that many Plaintiffs—including those at issue in this motion—signed arbitration agreements when purchasing or leasing their vehicles.

Plaintiffs Veronica Bryan, Michael Christie, Christopher Dorn, Ruth Hoffman, James and Alicia Kappes, Michael Keeth, Diahann Messeguer, Scott Olsen, Alexander Shusta, and Andrew Ventura signed sales contracts with dealerships that include an arbitration agreement providing, among other things:

> Any claim or dispute, whether in contract, tort, statute or otherwise (*including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute*), between you and us or our employees, agent, successors or assigns, *which arises out of or relates to your credit application, purchase or condition of this vehicle*, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration.

Ex. B at 7 (Bryan) (emphases added); *see also* Ex. C at 4 (Christie); Ex. D at 2 (Dorn); Ex. G at 15 (Hoffman); Ex. H at 5 (Kappes); Ex. I at 6 (Keeth); Ex. J at 10 (Messeguer); Ex. K at 5 (Olsen); Ex. L at 6 (Shusta) Ex. N at 2 (Ventura).[1]

---

[1] Plaintiff Ventura's arbitration agreement is identical to the quoted language, except his agreement says "this Arbitration Clause" instead of "this Arbitration Provision."

2

Plaintiffs Meagan and Cal Findeiss signed a sales contract stating in relevant part:

> DISPUTES SUBJECT TO ARBITRATION. Disputes subject to arbitration are any claim or dispute, whether in contract, tort, statute or otherwise (*including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute*), between Customer and [dealership] or our employees, agents, successors or assigns, *which arise out of or relate to Customer's credit application, purchase or condition of this vehicle*, Customer's purchase or financing contract or any resulting transaction or relationship.

Ex. E at 5 (Findeiss) (emphases added).

Plaintiff Chad Fong signed a buyer's order providing, among other things:

> Any claim or dispute, whether in contract, tort, statute or otherwise (*including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute*), between you and us or our employees, agents, successors or assigns, *which arises out of or relates to your credit application, purchase, lease, or condition of the vehicle*, any retail installment sale contract or lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign your purchase, lease agreement, or financing contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Ex. F at 2 (Fong) (emphases added).

Plaintiffs Andrew Berzanskis and Margaret Wilensky signed a sales contract that states in relevant part:

> You or we may elect to resolve *any* claim, dispute or controversy arising under or relating to this contract or the vehicle purchase agreement by binding arbitration. . . . A "claim" includes without limitation contract claims and tort claims. "Claim" also includes constitutional, statutory, common law, regulatory and equitable claims. "*Claim" includes any claims regarding the contract's validity, enforceability or scope*.

3

Ex. A at 4 (Berzanskis and Wilensky) (emphases added).

Plaintiff John Spruance signed a lease agreement for his Pacifica Hybrid that provides in relevant part:

> At your or our election, any claim or dispute in contract, tort, statute or otherwise between you and use or our employees, agents, successors or assigns that arises out of, or relates to your credit application, this Lease *or any related transaction or relationship* is to be decided by neutral, binding arbitration.  Also, to the extent allowed by law, *the validity, scope, and interpretation of this Arbitration Agreement is to be decided by neutral, binding arbitration*.

Ex. M at 4 (Spruance) (emphases added).

Finally, Plaintiff Spence Voss signed a sales contract providing in relevant part:

> Any claim arising out of or related in any way to the aforesaid purchase order/agreement, or any other part of the aforesaid transaction, by and between Purchaser/Lessee and [dealership], except as otherwise provided herein, shall first be subject to mediation as a condition precedent to binding arbitration.  **The right to the institution of legal or equitable proceedings by either party, is hereby WAIVED, except as otherwise agreed [below].**

Ex. O at 5 (Voss) (emphasis in original).  Arbitration, if necessary, "shall be in accordance with the arbitration rules and/or procedures of the American Arbitration Association currently in effect and applicable to commercial disputes." *Id.*[2]

---

[2] As discovery continues, FCA US will likely locate arbitration agreements that cover the claims of additional Plaintiffs.  When such agreements are located, FCA US will bring them to the Court's attention in additional motions to compel or by other means that may be appropriate under the circumstances.

4

## LEGAL STANDARDS

The FAA preempts state law and provides that arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The statute reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and quotation marks omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *see also* 9 U.S.C. § 4 (allowing parties to petition district courts for an order compelling arbitration).

"[A]rbitration is a matter of contract, meaning courts must rigorously enforce arbitration agreements according to their terms." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021) (quotation marks omitted). This rule applies to agreements requiring an arbitrator to "decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, -- U.S. --, 139 S. Ct. 524, 529 (2019) (quotation marks omitted); *see also Lamps Plus, Inc. v. Varela*, -- U.S. --, 139 S. Ct. 1407, 1416 (2019) ("Parties may generally shape such agreements

to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, [and] the rules by which they will arbitrate.").

"When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529.  This holds true "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.*  A delegation clause is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

When a contract contains an arbitration clause, "there is a presumption of arbitrability." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).  Any doubts "should be resolved in favor of arbitration." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quotation marks omitted).[3]

---

[3] This brief uses the word "arbitration" to encompass arbitration and mediation, which Plaintiff Voss's sales contract requires in the first instance. *See* Ex. O at 5. The differences between arbitration and mediation make no difference for purposes of this motion, as both types of alternative dispute resolution are covered by the FAA, *see Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 893 (M.D. Tenn. 2003), and Voss's contract requires arbitration after any unsuccessful mediation.  His contract also incorporates the rules of the American Arbitration Association for purposes of the mediation.  *See* Ex. O at 5.  Regardless, even as a matter of pure contract law, Voss "**WAIVED**" his right to file this lawsuit and must mediate his claims.  *Id.*

## ARGUMENT

### I.    An Arbitrator Must Decide Whether The Claims Are Arbitrable.

When purchasing or leasing their vehicles, these Plaintiffs signed contracts delegating to an arbitrator all "gateway questions of arbitrability." *Henry Schein*, 139 S. Ct. at 529 (quotation marks omitted).   Because these delegation clauses "clearly and unmistakably show[ ] that the parties agreed to arbitrate issues of arbitrability," the Court "must" compel arbitration. *Swiger*, 989 F.3d at 506-07.

*Swiger* is controlling.  The plaintiffs in that case signed a loan contract with a bank stating that "any dispute related to this agreement will be resolved through binding arbitration."  989 F.3d at 503 (quotation marks omitted).  She later filed suit alleging that the loan was predatory.  Her complaint named as a defendant the alleged "mastermind" of the predatory scheme, Kenneth Rees, who moved to compel arbitration.  *Id.* at 504.  The district court denied the motion, but the Sixth Circuit reversed.  It held that a "valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear 'wholly groundless.'"  *Id.* at 505 (quoting *Henry Schein*, 139 S. Ct. at 529).   Because the plaintiff signed a contract with an arbitration agreement requiring her to arbitrate disputes over the scope of the agreement, the arbitrability issue "must be considered by an arbitrator." *Id.* at 507 (quotation marks omitted); *see also Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) (reaffirming *Swiger*).

7

The Sixth Circuit reached the same result in *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020), which affirmed an order referring to arbitration a dispute about whether nonsignatory Domino's Pizza could enforce an arbitration agreement in a contract between a franchisee and the franchisee's employee. *Blanton* reasoned that a court may not "disregard" a contract in which a party has "agreed to arbitrate 'arbitrability.'" *Id.* at 844.

This Court has applied these same rules to compel plaintiffs to arbitrate claims against an automaker when the plaintiff signed a sales contract with an arbitration agreement containing a delegation clause. For example, *Harper v. GM, LLC*, 2023 U.S. Dist. LEXIS 47532 (E.D. Mich. Mar. 21, 2023) (Lawson, J.), compelled the plaintiffs to arbitrate their claims against General Motors because they "signed sales paperwork at their respective dealerships that contained an arbitration clause." *Id.* at *3. The clause stated that any claims relating to the purchase of the vehicle, "including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute," shall "be resolved by neutral, binding arbitration." *Id.* at *4. Relying on *Henry Schein*, *Lamps Plus*, and other cases, the Court compelled arbitration even though General Motors did not sign the underlying sales contract. *Id.* at *15-16.

The same rules compelled the same result in *Lyman v. Ford Motor Co.*, 2023 U.S. Dist. LEXIS 52875 (E.D. Mich. Mar. 28, 2023) (Drain, J.). The *Lyman*

8

plaintiffs brought claims against Ford based on alleged defects in their pickup trucks, but many of the plaintiffs had signed sales contracts with an arbitration provision and a delegation clause. *See id.* at *5. The language mirrored the clause in *Harper*: "Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), . . . shall . . . be resolved by neutral, binding arbitration and not by a court action." *Id.* at *5-6. *Lyman* reasoned that, "under binding Sixth Circuit precedent . . . , where an arbitration agreement contains a clear delegation clause, the arbitrator must determine issues of arbitrability—including any challenge to Ford's ability to enforce the arbitration agreement as a non-signatory." *Id.* at *10.

Yet again in *Cunningham v. Ford Motor Co.*, 2022 U.S. Dist. LEXIS 127786 (E.D. Mich. July 19, 2022) (Leitman, J.), the Court compelled arbitration of claims against Ford because an "arbitration provision in the Sales Contracts clearly delegates to the arbitrator the authority to decide questions of arbitrability." *Id.* at *3. Thus, "it is for the arbitrator, not this Court, to decide whether Ford, as a non-party to the Sales Contracts, may compel [plaintiffs] to arbitrate their claims. . . . *Swiger* compels that conclusion." *Id.* at *14; *see also In re Chevrolet Bolt EV Battery Litig.*, -- F. Supp. 3d --, 2022 U.S. Dist. LEXIS 179604, at *38-45 (E.D. Mich. Sept. 30, 2022) (Berg, J.) (following *Swiger* to compel arbitration of claims against

nonsignatory General Motors); *Bossart v. GM, LLC*, 2022 U.S. Dist. LEXIS 149465, at *13-14 (E.D. Mich. Aug. 19, 2022) (Friedman, J.) (similar).

So too here. These Plaintiffs signed contracts with arbitration agreements that delegate questions of arbitrability to an arbitrator. *See supra* pages 2-4. Indeed, the relevant language in many of these agreements is identical to the delegation clauses from *Harper*, *Lyman*, and *Cummingham* and is more explicit than the language in *Swiger*. *Compare* Exs. B (Bryan), C (Christie), D (Dorn), E (Findeiss), F (Fong), G (Hoffman), H (Kappes), I (Keeth), J (Messeguer), K (Olsen), L (Shusta), and N (Ventura) (requiring arbitration of "the arbitrability of the claim or dispute"), *and* Exs. A (Berzanskis and Wilensky) and M (Spruance) (requiring arbitration of disputes about "validity" or "scope"), *with Swiger*, 989 F.3d at 506 (requiring arbitration of disputes concerning the "validity, enforceability, or scope" of the arbitration agreement), *and Danley v. Encore Capital Grp., Inc*., 680 F. App'x 394, 398 (6th Cir. 2017) (holding that arbitration agreement "clearly and unmistakably" delegated the issue of arbitrability because it provided for arbitration of any disputes about its "application, enforceability, or enforceability").

Plaintiffs cannot avoid arbitration by arguing that FCA US did not sign the underlying sales agreements. As *Swiger* and *Blanton* explain, that argument raises an arbitrability dispute that must be resolved in arbitration. When a signatory opposes arbitration "by arguing that the nonsignatory seeking to compel arbitration

10

'lacked ability to invoke the arbitration agreement,'" the signatory necessarily raises "an issue of 'enforceability' under the delegation provision in the contract, and thus it [is] a 'question of arbitrability that the arbitration agreement delegated to an arbitrator.'" *In re StockX*, 19 F. 4th at 878-80 (quoting *Swiger*, 989 F.3d at 506-07).

Finally, although the contract for Plaintiff Voss does not itself contain an express delegation clause, it incorporates the rules of the "American Arbitration Association currently in effect and applicable to commercial disputes." Ex. O at 5. Those rules—which apply to mediation and arbitration—contain an express delegation clause: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." AAA, Commercial Arbitration Rules and Mediation Procedures, at R-7 (Sept. 1, 2022) (Ex. P).

The "incorporation of the AAA Rules shows that the parties 'clearly and unmistakably' agreed that the arbitrator would decide questions of arbitrability." *Blanton*, 962 F.3d at 846 (citing *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019) and *VIP, Inc. v. KYB Corp.*, 951 F.3d 377, 382 (6th Cir. 2020)); *see also Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021) ("By incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability."); *Lyman*, 2023 U.S. Dist. LEXIS 52875, at *14 (similar).

11

## II.     <u>Arbitration Is Required Even If The Court Addresses Arbitrability.</u>

If the Court decides to determine arbitrability, it still should compel arbitration because (i) the arbitration agreements are valid contracts that cover the claims Plaintiffs assert; and (ii) FCA US can enforce the arbitration agreements by their plain language, under doctrine of equitable estoppel, or as a third-party beneficiary.

### A.     <u>Valid Arbitration Agreements Cover The Claims.</u>

Whether a valid arbitration agreement exists is "a matter of contract." *Rent-A-Center*, 561 U.S. at 67. As such, the enforceability of an arbitration agreement is governed by "the applicable state law of contract formation." *Seawright v. Am. Gen. Fin., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007).

#### 1.     <u>The Arbitration Agreements Are Valid.</u>

All of the arbitration agreements are governed by the laws of states that recognize "the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provision." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (quotation marks omitted). All relevant states have enacted statutes that extend this cardinal rule to arbitration agreements, consistent with the FAA:

- <u>Arizona</u> (Kappes). *See* Ariz. Rev. Stat. § 12-1501; *see also* Ex. H at 5 ("Federal law and the law of the state of the Seller's address shown on the front of this contract [Arizona] apply to this contract.").

12

- <u>California</u> (Bryan, Olsen, and Shusta).  *See* Cal. Civ. Proc. Code § 1281; *see also* Ex. B at 5 (Bryan) ("Federal law and California law apply to this contract."); Ex. K at 4 (Olsen) (same); Ex. L at 4 (Shusta) (same).

- <u>Colorado</u> (Berzanskis and Wilenski).  *See* Colo. Rev. Stat. § 13-22-206(1); *see also* Ex. A at 3 ("Federal law and Colorado law apply to this contract.").

- <u>Florida</u> (Messeguer).  *See* Fla. Stat. Ann. § 682.02(1); *see also* Ex. J at 6 ("Federal law and the law of the state of our address shown above [Florida] apply to this contract.").

- <u>Georgia</u> (Spruance).  *See* Ga. Code Ann. § 9-9-3; *see also* CMC ¶ 62 (PageID.289) (alleging that Plaintiff Spruance leased his vehicle from a dealership in Georgia).

- <u>Idaho</u> (Keeth).  *See* Idaho Code § 7-901; *see also* Ex. I at 3 ("Federal law and the law of the state of our address shown above [Idaho] apply.").

- <u>Illinois</u> (Voss).  *See* 710 Ill. Comp. Stat. Ann. 5/1; *see also* Ex. O at 4 ("Federal law and the law of the state of our address shown on the front of this contract [Illinois] apply.").

- <u>Kentucky</u> (Dorn).  *See* Ky. Rev. Stat. § 417.050; *see also* Ex. D at 2 ("Federal law and the law of the state of our address shown on the front of this contract [Kentucky] apply to this contract.").

- <u>Maryland</u> (Hoffman).  *See* Md. Code Ann., Cts. & Jud. Proc. § 3-206(a); *see also* Ex. G at 9 ("Federal law and Maryland law apply.").

- <u>North Carolina</u> (Fong).  *See* N.C. Gen. Stat. § 1-569.6(a); *see also* CMC ¶ 97 (PageID.320) (alleging that Plaintiff Fong "is a resident and citizen of Carthage, North Carolina); Ex. F at 1 (reflecting the sales agreement was executed in North Carolina with a dealership based in North Carolina).

- <u>Oregon</u> (Christie).  *See* Or. Rev. Stat. Ann. § 36.620(1); *see also* Ex. C at 1 ("Federal law and the law of the state of Oregon apply to this contract.").

13

- <u>South Carolina</u> (Findeiss).  *See* S.C. Code Ann. § 15-48-10(a); *see also* Ex. E at 4 ("Federal law and the law of the state of our address shown on the front of this contract [South Carolina] apply to this contract.").

- <u>Virginia</u> (Ventura).  *See* Va. Code Ann. § 8.01-581.01; *see also* Ex. N at 1 (noting that buyer and seller reside in Virginia); CMC ¶ 123 (PageID.341) (alleging Plaintiff is "a resident and citizen of Waynesboro, Virginia").

The contracts that these Plaintiffs signed start with conspicuous language identifying the arbitration agreement and then explaining that "any" covered dispute is subject to arbitration.  For example, Plaintiffs Bryan, Christie, Dorn, Hoffman, Kappes, Keeth, Messeguer, Olsen, Shusta, and Ventura signed contracts with the following bold, all-caps headings:

**ARBITRATION PROVISION**

**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHTS TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

14

Ex. B at 7 (Bryan); *see also* Ex. C at 4 (Christie); Ex. D at 2 (Dorn); Ex. G at 15 (Hoffman); Ex. H at 5 (Kappes); Ex. I at 6 (Keeth); Ex. J at 10 (Messeguer); Ex. K at 5 (Olsen); Ex. L at 6 (Shusta); Ex. N at 2 (Ventura).

The arbitration agreements for the other Plaintiffs similarly warn about what rights are being released under a prominent heading such as "**ARBITRATION POLICIES AND PROCEDURES**," Ex. E at 5 (Findeiss); "**ARBITRATION**," Ex. A at 4 (Berzanskis and Wilensky); "**ARBITRATION AGREEMENT**," Ex. F at 2 (Fong); "Arbitration Agreement," Ex. M at 4 (Spruance); or "**MEDIATION AND ARBITRATION AGREEMENT**," Ex. O at 5 (Voss).

In sum, these Plaintiffs all signed clear, valid, and enforceable arbitration agreements under the laws of the relevant states.

### 2.   The Arbitration Agreements Cover The Claims.

The expansive language in the arbitration agreements covers the claims in this case. The agreement that Plaintiffs Megan and James Findeiss signed covers "*any* claim or dispute, whether in contract, tort, statute or otherwise . . . which *arise[s] out of or relate[s] to* Customer's credit application, *purchase or condition of this vehicle*, Customer's purchase or financing contract or *any resulting transaction or relationship*." Ex. E at 5 (Findeiss) (emphases added).

The agreements for Plaintiffs Bryan, Christie, Dorn, Hoffman, Kappes, Keeth, Messeguer, Olsen, Shusta, and Ventura similarly apply to "*[a]ny* claim or dispute,

whether in contract, tort, statute or otherwise, which *arises out of or relates to* your credit application, *purchase or condition of this vehicle*, this contract or *any resulting transaction or relationship*." *E.g.*, Ex. B at 7 (Bryan) (emphases added).  Plaintiff Fong's agreement contains substantively identical language.  Ex. F at 2 (Fong).

For Plaintiffs Berzanskis and Wilensky, their agreement states that "any claim, dispute or controversy arising under or relating to this contract" shall be resolved by "binding arbitration."  Ex. A at 4.  For Plaintiff Spruance, his agreement states that "any claim or dispute" that "arises out of, or relates to," the lease "or any related transaction or relationship is to be decided by neutral, binding arbitration."  Ex. M at 4.  For Plaintiff Voss, his agreement says that "[a]ny claim arising out of or related in any way to the aforesaid purchase order/agreement . . . shall first be subject to mediation" and, if that fails, "by binding arbitration."  Ex. O at 5 (emphasis omitted).

Plaintiffs' claims fall within the scope of these arbitration agreements because all claims in the CMC arise out of or relate to the purchase, lease, or condition of a Pacifica Hybrid.  The unifying premise of all claims is that FCA US breached alleged duties "by selling Chrysler Pacifica Hybrid plug-in electric minivans that were dangerous and prone to catching fire and exploding."  CMC ¶ 2 (PageID.254).  FCA US supposedly concealed the alleged defect at the time of lease or purchase in breach of "express warranties."  *Id.* ¶ 21 (PageID.264).  According to Plaintiffs, had they known about the allege defect, "they would either not have purchased or leased

those vehicles, or would have paid substantially less for them." *Id.* ¶ 21 (PageID.265). In short, the claims relate to the purchase and condition of the vehicles, and such claims fall within the broad scope of the arbitration provisions.

The claims also relate to a covered "relationship" resulting from the sales or lease contract—namely, the relationship between Plaintiffs and FCA US. *E.g.*, Ex. B at 7 (Bryan); Ex. E at 5 (Findeiss); Ex. F at 2 (Fong). By signing the contracts, Plaintiffs purchase or leased the vehicles that are the basis of their claims against FCA US. There would be no express warranty for an express warranty claim against FCA US but for the contracts that Plaintiffs signed to buy or lease their vehicles and receive an express warranty. No contract, no vehicle, no claim.

"[B]roadly written arbitration clauses must be taken at their word." *Watson Wyatt & Co. v. SBC Holdings, Inc*, 513 F.3d 646, 650 (6th Cir. 2008). "When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration." *Simon v. Pfizer Inc*., 398 F.3d 765, 775 (6th Cir. 2005). Only an express exclusion or "the most forceful evidence of a purpose to exclude the claim from arbitration" will avoid arbitration. *Id.* (quotation marks omitted).

No such evidence for exclusion exists here. Because Plaintiffs cannot rebut the "strong presumption in favor of arbitration," *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395 (6th Cir. 2014), the Court should compel them to arbitration.

**B.**     **As A Nonsignatory, FCA US Can Enforce The Arbitration Agreements Against Plaintiffs.**

Although FCA US did not sign the arbitration agreements, it can still compel Plaintiffs to arbitration under the plain language of the agreements, the doctrine of equitable estoppel, or as a third-party beneficiary.

**1.**     **Plain Language.**

Except for Plaintiffs Berzanskis, Wilensky, and Voss, all of these arbitration agreements cover claims related to "any" resulting "relationship."  The word "any" makes these provisions "extremely broad."  *Mann v. Equifax Info. Servs.*, 2013 U.S. Dist. LEXIS 103210, at *13 (E.D. Mich. May 24, 2013).

As explained above, the relationship between Plaintiffs and FCA US was created when Plaintiffs signed the sales or lease contracts for their vehicles.  But for signing those contracts, Plaintiffs would have no relationship with FCA US.  The arbitration agreements therefore allow a non-signatory like FCA US to compel arbitration because the relationship between FCA US and Plaintiffs resulted from the contract.  If FCA US could *not* compel arbitration, language in the agreements covering claims related to third parties or resulting relationships would be superfluous.  *See Gallo v. Moen Inc.*, 813 F.3d 265, 273 (6th Cir. 2016) (noting rule of construction that "courts should interpret contracts to avoid superfluous words").

The Fifth Circuit's decision in *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379 (5th Cir. 2008), is instructive.  The *Sherer* plaintiff signed a loan agreement with

18

a bank requiring arbitration of all disputes "arising from or relating to this Agreement *or the relationships which result from this Agreement*." *Id.* at 380 (cleaned up; emphasis added). Green Tree Servicing LLC—a non-signatory to the loan agreement—later obtained servicing rights to the loan. *Id.* The plaintiff sued Green Tree, and the district court refused to compel arbitration. The Fifth Circuit reversed:

> According to the broad terms of the Loan Agreement, [the plaintiff] has agreed to arbitrate any claims arising from "the relationships which result from the agreement." A loan servicer, such as Green Tree, is just such a "relationship." Indeed, without the Loan Agreement, there would be no loan for Green Tree to service . . . . Based on the Loan Agreement's language, [the plaintiff] has validly agreed to arbitrate with a nonsignatory, such as the loan servicer Green Tree.

*Id.* at 382.

Except for Plaintiffs Berzanskis, Wilensky, and Voss, these Plaintiffs also agreed to arbitrate any claims arising from any "relationship" that resulted from their lease or purchase, and the relationship between Plaintiffs and FCA US "is just such a 'relationship.'" *Sherer*, 548 F.3d at 382. Any doubts about that conclusion "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Further, all of the agreements—*including* those of Plaintiffs Berzanskis, Wilensky, and Voss—cover "any" claim "relating to" or "related to" the purchase or lease. Claims for alleged defects in the thing purchased or leased—the vehicle—are plainly covered regardless of whether a "relationship" also might be covered.

19

### 2.    **Equitable Estoppel.**

FCA US can compel arbitration for the independent reason that Plaintiffs are equitably estopped from resisting arbitration.  "[T]he FAA permits a nonsignatory to rely on state-law equitable estoppel doctrines to enforce an arbitration agreement." *GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, -- U.S. --, 140 S. Ct. 1637, 1644 (2020); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (recognizing that "traditional principles" of state law allow a contract to be enforced" via "estoppel" (quotation marks omitted)).

Equitable estoppel applies when someone signs an agreement with an arbitration clause and brings claims against a nonsignatory, and the claims depend on, or are founded in, the underlying agreement.  *See Molecular Analytical Sys. v. Ciphergen Biosystems, Inc*., 186 Cal. App. 4th 696, 715 (2010).  In these situations, the signatory may not use the terms the agreement "as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." *Id.* (quotation marks omitted).

"The reason for this equitable rule is that one should not be permitted to rely on an agreement containing an arbitration clause for his claims, while at the same time repudiating the arbitration provision contained in the same contract." *Kassell v. Crafton*, 2013 U.S. Dist. LEXIS 177189, at *31 (W.D. Tex. Dec. 18, 2013).  If a signatory could "avoid the practical consequences of an agreement to arbitrate by

naming nonsignatory parties as defendants in his complaint, . . . the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (quotation marks omitted) (allowing non-signatory to compel signatory to arbitration).

Courts have used this doctrine when allowing automakers to compel plaintiffs to arbitrate claims based on arbitration agreements in sales contracts with dealerships.  For example, the plaintiffs in *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486 (2020), alleged that FCA US breached a vehicle warranty.  *Id.* at 497.  The plaintiffs, however, had signed sales contracts that included an agreement to arbitrate "any dispute" that "*arises out of or relates to . . . the condition of this vehicle.*"  *Id.* at 490 (emphasis in original).  That same language is in many of the contracts here. *See* Exs. B, C, D, G, H, I, J, K, L, N.  The plaintiffs in *Felisilda* argued that FCA US could not enforce the arbitration agreement because their claims arose not from the *sales contract* but from "the non-signatory manufacturer's warranty."  *Id.* at 491. The court disagreed, explaining that the claims against FCA US were "founded on or intimately connected with the sales contract" because they "relate[ ] directly to the condition of the vehicle."  *Id.* at 496.  And because the plaintiffs had "expressly agreed to arbitrate claims arising out of the condition of the vehicle—even against third party nonsignatories to the sales contract—they [are] estopped from refusing to arbitrate their claim against FCA."  *Id.*

21

Another example is *Reykhel v. BMW of North America LLC*, 2019 U.S. Dist. LEXIS 233073 (N.D. Cal. Aug. 12, 2019), which held that because BMW's duty to comply with its warranty arose when the plaintiffs signed a lease agreement with an arbitration clause, the plaintiffs could "not evade one contract term in seeking to enforce others." *Id.* at *11-12. Without the lease agreement, there would be no express warranty. Thus, the warranty-related claims arose "directly out of the Lease Agreement, and allowing Defendant to enforce the Lease Agreement's arbitration clause [is] justified under principles of equitable estoppel." *Id.* at *1; *see also Agnew v. Honda Motor Co.*, 2009 U.S. Dist. LEXIS 53914, at *12-13 (S.D. Ind. May 20, 2009) (allowing Honda to compel arbitration based on a sales contract with a dealer because the "purchase of the auto was essential" to plaintiff's claims against Honda).

"'Whether a nonsignatory to an agreement containing an arbitration clause may compel a signatory to arbitrate pursuant to equitable estoppel is governed by state law.'" *Straub v. Ford Motor Co.*, 2021 U.S. Dist. LEXIS 211130, at *21 (E.D. Mich. Nov. 2, 2021) (quoting *In re Auto. Parts Antitrust Litig.*, 2017 U.S. Dist. LEXIS 183609, at *189 (E.D. Mich. Apr. 18, 2017)). All of the relevant states recognize this doctrine, and many courts in these states have applied it to allow a nonsignatory to enforce an arbitration agreement against a signatory.

- <u>Arizona</u> (Kappes). *See, e.g.*, *CVS Pharmacy, Inc. v. Gable Family Pharmacy*, 2012 U.S. Dist. LEXIS 191047, at *12-13 (D. Ariz. Oct. 19, 2012) (estopping signatories from resisting arbitration of claims against a

nonsignatory); *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 576 (Ariz. 1998) (articulating elements of equitable estoppel).

- <u>Colorado</u> (Berzanskis and Wilensky).  *See, e.g.*, *Santich v. VCG Holding Corp.*, 2019 CO 67, ¶ 1 (holding that a nonsignatory can use equitable estoppel to compel a signatory to arbitration).

- <u>California</u> (Bryan, Olsen, and Shusta).  *See, e.g.*, *Felisilda*, 53 Cal. App. 5th at 496; *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1153-57 (N.D. Cal. 2012) (allowing Mercedes to enforce arbitration provision in a sales contract between plaintiff and dealership).

- <u>Florida</u> (Messeguer).  *See, e.g.*, *Tyman v. Ford Motor Co.*, 521 F. Supp. 3d 1222, 1227 (S.D. Fla. 2021) (granting Ford's motion to compel arbitration based on arbitration clause in the plaintiff's sale contract with a dealer).

- <u>Georgia</u> (Spruance).  *See, e.g.*, *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 338 (2009) (using equitable estoppel to allow a nonsignatory to compel a signatory to arbitration).

- <u>Idaho</u> (Keeth).  Although no state court appears to have squarely considered whether a nonsignatory may compel a signatory to arbitration, courts have recognized that equitable estoppel may apply in the arbitration context.  *See, e.g.*, *Clearwater REI, Ltd. Liab. Co. v. Boling*, 155 Idaho 954, 961 (2014).

- <u>Kentucky</u> (Dorn).  *See, e.g.*, *Morsey Constructors, LLC v. Burns & Roe Enters.*, 2008 U.S. Dist. LEXIS 61847, at *20 (W.D. Ky. Aug. 12, 2008) (allowing non-signatory to compel signatory to arbitration); *Household Fin. Corp. II v. King*, 2010 Ky. App. Unpub. LEXIS 780, at *11-14 (Ct. App. Oct. 8, 2010) (same).

- <u>Illinois</u> (Voss).  Illinois courts are divided on this issue, with some courts refusing to allow a non-signatory to compel a signatory to arbitration, *see, e.g.*, *Guarantee Tr. Life Ins. Co. v. Platinum Supplemental Ins., Inc.*, 2016 IL App (1st) 161612, ¶¶ 42-43, but others finding "that a nonsignatory can enforce an arbitration clause if it is determined that the nonsignatory qualifies as a third-party beneficiary of the agreement," *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 514 (2004) (citing cases).

- <u>Maryland</u> (Hoffman).  *See, e.g.*, *Westbard Apartments, LLC v. Westwood Joint Venture, LLC*, 181 Md. App. 37, 51 (2007) (articulating when nonsignatory can compel signatory to arbitration).

- <u>North Carolina</u> (Fong).  *See, e.g.*, *Smith Jamison Constr. v. Apac-Atlantic, Inc.*, 257 N.C. App. 714, 717 (2018) (recognizing that a nonsignatory "may, in certain situations, compel a signatory to the clause to arbitrate . . . claims against the nonsignatory" (quotation marks omitted)).

- <u>Oregon</u> (Christie).  *See, e.g.*, *Willis v. Nationwide Debt Settlement Grp.*, 2012 U.S. Dist. LEXIS 200879, at *21 (D. Or. May 22, 2012) (recognizing that "equity . . . may justify a nonsignatory's enforcement of an arbitration clause . . . against signatories").

- <u>Texas</u> (Findeiss).  *See, e.g.*, *Kassell*, 2013 U.S. Dist. LEXIS 177189, at *33 (estopping plaintiffs "from denying the applicability of the arbitration provision" when a nonsignatory sought to enforce the provision); *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006).

- <u>Virginia</u> (Ventura).  *See, e.g.*, *Tattoo Art, Inc. v. TAT Int'l, LLC*, 711 F. Supp. 2d 645, 654 (E.D. Va. 2010); *Decisive Analytics Corp. v. Chikar*, 75 Va. Cir. 337, 343 (Va. Cir. Ct. 2008) (describing Fourth Circuit precedent applying the equitable estoppel doctrine to allow non-signatories to compel arbitration as "instructive").

Because none of Plaintiffs' claims would exist without their acceptance of the sales contracts containing an arbitration agreement, and because their claims against FCA US are intertwined with the sales contracts and the relationships and duties that resulted from them, Plaintiffs are equitably estopped from resisting arbitration.

### 3.    <u>Third-Party Beneficiary.</u>

The Court should compel these Plaintiffs to arbitration for the independent reason that FCA US is a third-party beneficiary of the arbitration agreements.

24

"To compel arbitration as a third-party beneficiary, the third-party must be more than incidentally benefitted by the contract." *Collins v. BMW of N. Am., Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 13405, at *8 (S.D. Cal. Jan. 25, 2021) (quotation marks omitted). The beneficiary need not be identified in the agreement so long as he "shows that he is a member of a class of persons for whose benefit the arbitration agreement was made." *Id.* (quotation marks and alterations omitted).

Again, with only two exceptions (Exs. A and O), the arbitration provisions here cover disputes related to a "relationship" that results from the underlying contracts, which includes a "relationship" with FCA US. Indeed, many of the provisions expressly contemplate claims involving "third parties who do not sign this contract." *E.g.*, Exs. B, C, D, G, H, I, J, K, L, N. The parties to these agreements clearly "intended for third-party beneficiaries to fall within the scope of the contract." *O'Connor v. BMW of N. Am., LLC*, 2020 U.S. Dist. LEXIS 162920, at *8 (D. Colo. July 22, 2020) (construing substantively identical language).

## <u>CONCLUSION</u>

The Court should (i) compel Plaintiffs Berzanskis and Wilensky, Bryan, Christie, Dorn, Meagan and James Findeiss, Fong, Hoffman, Kappes, Keeth, Messeguer, Olsen, Shusta, Spruance, and Ventura to arbitrate their claims; (ii) compel Plaintiff Voss to mediate his claims and, if mediation is unsuccessful, arbitrate the claims; and (iii) either stay or dismiss their lawsuits.

Respectfully submitted,

By: */s/ Brandon L. Boxler*
    Stephen A. D'Aunoy
    Thomas L. Azar, Jr.
    Scott H. Morgan
    **THOMPSON COBURN LLP**
    One US Bank Plaza
    St. Louis, Missouri  63101
    T:  (314) 552-6000
    sdaunoy@thompsoncoburn.com
    tazar@thompsoncoburn.com
    smorgan@thompsoncoburn.com

    Fred J. Fresard (P43694)
    Ian K. Edwards (P82021)
    **KLEIN THOMAS LEE & FRESARD**
    101 W. Big Beaver Rd., Ste. 1400
    Troy, Michigan 48084
    T:  (602) 935-8300
    fred.fresard@kleinthomaslaw.com
    ian.edwards@kleinthomaslaw.com

    Brandon L. Boxler
    **KLEIN THOMAS LEE & FRESARD**
    919 E. Main St., Ste. 1000
    Richmond, VA 23219
    T:  (703) 621-2109
    brandon.boxler@kleinthomaslaw.com

    *Attorneys for Defendant FCA US LLC*

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 1, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

*/s/ Brandon L. Boxler*