# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION, | Case No. 2:22-cv-03040 |
| | Honorable David M. Lawson |
| MDL No. 3040 | Magistrate Judge Elizabeth A. Stafford |
| *This document relates to: ALL CASES* | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US LLC'S
## MOTION TO COMPEL ARBITRATION AND MEDIATION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF ISSUES PRESENTED................................................vi

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
    AUTHORITY ......................................................................... vii

I.     INTRODUCTION ........................................................................1

II.    STANDARDS OF LAW ...............................................................1

III.   PLAINTIFFS DID NOT AGREE TO ARBITRATE THE
      ARBITRABILITY OF THEIR CLAIMS .................................3

      A.    FCA fails to prove with clear and unmistakable evidence
           that Plaintiffs agreed to arbitrate the arbitrability of their
           claims....................................................................................3

      B.    The cases cited by FCA do not support its arbitrability
           argument. ..............................................................................5

IV.   THIS COURT SHOULD NOT ORDER ARBITRATION .........................14

      A.    Plaintiffs' agreements do not provide for arbitration of
           their claims. .........................................................................14

      B.    Equitable estoppel does not apply.......................................19

      C.    FCA is not a third-party beneficiary of the arbitration
           contracts...............................................................................25

V.    CONCLUSION..............................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agnew v. Honda Motor Co.*,
  2009 WL 1813783 (S.D. Ind. May 20, 2009)....................................................22

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)..............................................................................................1

*Anderson v. Hansen*,
  47 F.4th 711 (8th Cir. 2022) ...............................................................................19

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009)..............................................................................................22

*Banh v. Am. Honda Motor Co.*,
  2020 WL 5035095 (C.D. Cal. July 28, 2020)....................................................24

*Becker v. Delek US Energy, Inc.*,
  39 F.4th 351 (6th Cir. 2022) .............................................................................7, 8

*Blanton v. Domino's Pizza Franchising LLC*,
  2019 WL 5543027 (E.D. Mich. Oct. 25, 2019)....................................................5

*Blanton v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020) ...............................................................................2

*Bossart v. Gen. Motors, LLC*,
  2022 WL 3573855 (E.D. Mich. Aug. 19, 2022)................................................12

*In re Chevrolet Bolt EV Battery Litig.*,
  2022 WL 4686974 (E.D. Mich. Sept. 30, 2022) ...............................................12

*Clearwater REI, Ltd. Liab. Co. v. Boling*,
  155 Idaho 954 (2014)...........................................................................................23

*Cunningham v. Ford Motor Co.*,
  2022 WL 2819115 (E.D. Mich. July 19, 2022)...........................................11, 12

*CVS Pharm., Inc. v. Gable Family Pharm.*,
  2012 U.S. Dist. LEXIS 191047 (D. Ariz. Oct. 19, 2012)..................................23

011086-11/2243685 V1

*Danley v. Encore Capital Grp., Inc.*,
    680 F. App'x 394 (6th Cir. 2017) ........................................................................9

*Decisive Analytics Corp. v. Chikar*,
    75 Va. Cir. 337 (Va. Cir. Ct. 2008) ................................................................24

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ....................................................................................14

*Felisilda v. FCA US LLC*,
    53 Cal. App. 5th 486 (2020) ...........................................................................21

*Fin. Corp. II v. King*,
    2010 Ky. App. Unpub. LEXIS 780 (Ct. App. Oct. 8, 2010) ...........................24

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) .......................................................................2, 3, 13, 14

*Ford Motor Warranty Cases*,
    306 Cal. Rptr. 3d 611 (Ct. App. 2023) ....................................................*passim*

*Griggs v. Evans*,
    205 Md. App. 64 (2012) ..................................................................................24

*Harper v. Gen. Motors, LLC*,
    2023 WL 2586298 (E.D. Mich. Mar. 21, 2023) ..........................................2, 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) .....................................................................................2, 7

*Huffman v. Hilltop Cos., LLC*,
    747 F.3d 391 (6th Cir. 2014) ..........................................................................19

*Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*,
    533 F.3d 1342 (11th Cir. 2008) ......................................................................19

*Jody James Farms, JV v. Altman Grp., Inc.*,
    547 S.W.3d 624 (Tex. 2018) ...........................................................................24

*Kassell v. Crafton*,
    2013 WL 6709447 (W.D. Tex. Dec. 18, 2013) ...............................................24

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019)..........................................................................3

*Lyman v. Ford Motor Co.*,
2023 WL 2667736 (E.D. Mich. Mar. 28, 2023)................................12

*Mance v. Mercedes-Benz USA*,
901 F. Supp. 2d 1147 (N.D. Cal. 2012)............................................22

*Mann v. Equifax Info. Servs.*,
2013 WL 3814257 (E.D. Mich. July 22, 2013)............................17, 18

*Meyer v. WMCO-GP, LLC*,
211 S.W.3d 302 (Tex. 2006) .............................................................24

*Morsey Constructors, LLC v. Burns & Roe Enters.*,
2008 WL 3833588 (W.D. Ky. Aug. 13, 2008)..................................23

*N.A. Rugby Union LLC v. United States of Am. Rugby Football Union*,
442 P.3d 859 (Colo. 2019)................................................................25

*Ngo v. BMW of N. Am., LLC*,
23 F.4th 942 (9th Cir. 2022) ....................................................*passim*

*O'Connor v. BMW of N. Am., LLC*,
2020 WL 5260416 (D. Colo. July 23, 2020)....................................25

*Order Homes, LLC v. Iverson*,
300 Ga. App. 332 (2009) ..................................................................23

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010).........................................................................2, 6

*Reykhel v. BMW of North America LLC*,
2019 WL 10056984 (N.D. Cal. Aug. 12, 2019) ..........................21, 22

*Santich v. VCG Holding Corp.*,
443 P.3d 62 (Colo. 2019)..................................................................23

*Sherer v. Green Tree Servicing LLC*,
548 F.3d 379 (5th Cir. 2008) ............................................................18

*Simon v. Pfizer Inc.*,
  398 F.3d 765 (6th Cir. 2005) ...............................................................................19

*Smith Jamison Constr. v. Apac-Atlantic, Inc.*,
  257 N.C. App. 714 (2018) ...................................................................................24

*Sosa v. Onfido, Inc.*,
  8 F.4th 631 (7th Cir. 2021) .............................................................................23, 25

*In re StockX Customer Data Sec. Breach Litig.*,
  19 F.4th 873 (6th Cir. 2021) .........................................................................2, 8, 9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)..................................................................................12, 13, 14

*Swiger v. Rosette*,
  989 F.3d 501 (6th Cir. 2021) .....................................................................10, 11, 12

*Tattoo Art, Inc. v. TAT Int'l, LLC*,
  711 F. Supp. 2d 645 (E.D. Va. 2010) ..................................................................24

*Tyman v. Ford Motor Co.*,
  521 F. Supp. 3d 1222 (S.D. Fla. 2021) ................................................................23

*Valencia Energy Co. v. Ariz. Dep't of Revenue*,
  191 Ariz. 565 (Ariz. 1998)...................................................................................23

*Volt Info. Scis. v. Bd. of Trs.*,
  489 U.S. 468 (1989).................................................................................................3

*Westbard Apartments, LLC v. Westwood Joint Venture, LLC*,
  181 Md. App. 37 (2007)........................................................................................24

*Willis v. Nationwide Debt Settlement Grp.*,
  2012 WL 13055512 (D. Or. May 22, 2012).........................................................24

011086-11/2243685 V1

## STATEMENT OF ISSUES PRESENTED

1.    Whether the Court should compel Plaintiffs Andrew Berzanskis, Margaret Wilensky, Veronica Bryan, Michael Christie, Christopher Dorn, Meagan and Cal Findeiss, Chad Fong, Ruth Hoffman, James and Alicia Kappes, Michael Keeth, Diahann Messeguer, Scott Olsen, Alexander Shusta, John Spruance, and Andrew Ventura to arbitrate their claims against FCA US LLC, including any dispute over whether the claims are arbitrable, when their sales contracts with dealerships limit delegation of the arbitrability issue to claims and disputes between "you and us or our employees, agents, successors or assigns" and where those contracts provide only that such claims and dispute "shall, at *your or our election*, be resolved by neutral, binding arbitration."

      Plaintiffs' answer: "No"

2.    Whether the Court should compel Plaintiff Spence Voss to mediate and then arbitrate (if necessary) his claims against FCA US LLC, including any dispute over whether the claims are subject to mediation or arbitration, when Voss's contract limits arbitration to disputes between him and the dealership.

      Plaintiffs' answer: "No"

3.    Whether the Court should determine that Plaintiffs' claims are arbitrable and mediatable and refer them to arbitration or mediation, when arbitration and (in one case) mediation are limited to claims and disputes between Plaintiffs and their dealerships or the dealerships' employees, agents, successors, or assigns, and when most agreements explicitly authorize only the plaintiff or dealership to seek to compel arbitration.

      Plaintiffs' answer: "No"

011086-11/2243685 V1

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITY

- *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013)

- *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018)

- *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)

- *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019)

- *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019)

- *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010)

- *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)

- *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468 (1989)

- *Becker v. Delek US Energy, Inc.*, 39 F.4th 351 (6th Cir. 2022)

- *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020)

- *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021)

- *Swiger v. Rosette*, 989 F.3d 501 (6th Cir. 2021)

- *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942 (9th Cir. 2022)

- *Ford Motor Warranty Cases*, 306 Cal. Rptr. 3d 611 (Ct. App. 2023)

011086-11/2243685 V1

## I.   INTRODUCTION

FCA's motion to compel arbitration should be denied in its entirety. FCA first fails to provide "clear and unmistakable" evidence that Plaintiffs agreed to arbitrate the arbitrability of their claims in this matter. All but one arbitration agreement at issue limits delegation of the arbitrability issue to claims and disputes between the plaintiff and the dealership or its "employees, agents, successors or assigns." FCA does not even try to argue that it falls within that description. The other agreement incorporates American Arbitration Association rules but limits arbitration to claims between the plaintiff and dealer, thus providing no "clear and unmistakable" basis for delegating the arbitrability issue regarding claims against FCA to an arbitrator.

Second, FCA fails to prove that Plaintiffs' claims are arbitrable under their sales contracts. Again, all but one of the contracts at issue limits arbitration to claims and disputes with the dealership or its "employees, agents, successors or assigns." Moreover, those contracts routinely provide that those claims or disputes "shall, at *your or our election*, be resolved by neutral, binding arbitration." Thus, Plaintiffs' claims here are not arbitrable. Nor are the claims by the remaining plaintiff arbitrable because he agreed to arbitrate only claims between himself and his dealer.

## II.   STANDARDS OF LAW

"[A]rbitration is a matter of contract." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Parties "may agree to have an arbitrator decide not only

the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quotation marks and citation omitted). Parties' arbitrability choices are "typically evidenced in a so-called 'delegation' clause or provision." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021).

When "parties delegate to the arbitrator the 'threshold arbitrability questions,' they must do so in the agreement by 'clear and unmistakable evidence.'" *Harper v. Gen. Motors, LLC*, 2023 WL 2586298, at *2 (E.D. Mich. Mar. 21, 2023) (quoting *In re StockX*, 19 F.4th at 878). "[C]ourts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Henry Schein*, 139 S. Ct. at 531 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The clear and unmistakable standard "pertains to the parties' *manifestation of intent*." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 n.1 (2010). "[T]his rule reverses the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020).

Moreover, clear and unmistakable evidence must prove that a plaintiff agreed to arbitrate the arbitrability of the *particular* dispute. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute,

… so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options*, 514 U.S. at 943. That "flow[s] inexorably from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Id.* (emphasis added).

As to whether the claims against FCA should be submitted to arbitration, the Supreme Court has consistently held that parties to an arbitration agreement "may generally shape such agreements to their liking by specifying with whom they will arbitrate." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019). Thus, "the FAA does not … prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989).

### III.   PLAINTIFFS DID NOT AGREE TO ARBITRATE THE ARBITRABILITY OF THEIR CLAIMS

**A.   FCA fails to prove with clear and unmistakable evidence that Plaintiffs agreed to arbitrate the arbitrability of their claims.**

FCA erroneously argues that Plaintiffs agreed to arbitrate the arbitrability of their claims. *See* ECF No. 46, PageID.1461-1465. FCA does not mention the terms of Plaintiffs' sales contracts, but careful consideration of those contracts shows that Plaintiffs did *not* clearly and unmistakably agree to delegate the arbitrability issue.

The purchase contracts signed by eleven plaintiffs contain arbitration clauses that do not delegate arbitrability to an arbitrator. Ten of those clauses state:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

*See* Ex. B at 7; Ex. C at 4; Ex. D at 2; Ex. G at 15; Ex. H at 5; Ex. I at 6; Ex. J at 10; Ex. K at 5; Ex. L at 6; Ex. N at 2.[1] The arbitration agreement signed by Plaintiff Fong is identical but refers to leases as well as purchases Ex. F at 2.

The delegation clause does not encompass Plaintiffs' claims here. It provides for "arbitrability of the claim or dispute" and is embedded in a phrase that defines "claim or dispute" as a "claim or dispute … between you and us or our employees, agents, successors or assigns." Plaintiffs' claims against FCA are not "between you and us," because "us" means the dealer, not FCA. Ex. B at 1; Ex. C at 1; Ex. D at 1; Ex. E at 1; Ex. G at 9; Ex. H at 2; Ex. I at 2; Ex. J at 1; Ex. K at 1; Ex. L at 1; Ex. M at 3; Ex. O at 1. And FCA does not (and cannot) contend that it is an "employee, agent, successor or assign" of its dealers.

The other arbitration agreements also do not delegate the arbitrability issue. Spruance's contract does not refer to arbitrability and limits arbitration to claims "between you and us or our employees, agents, successors or assigns." Ex. M at 4.

---

[1] The exhibits cited herein are attached to ECF No. 46.

The Berzanskis and Wilensky contract does mention arbitrability and states only that "[y]ou or we may elect" arbitration. Ex. A at 4. The Findeiss agreement delegates arbitrability but only, as FCA acknowledges, as to claims "between Customer and [dealership] or our employees, agents, successors or assigns." *See* ECF No. 46, PageID.1457.

Finally, Plaintiff Voss did not agree to arbitrate arbitrability. His agreement states that "all disputes *between you and LIBERTY AUTO CITY* will be resolved by MEDIATION OR BINDING ARBITRATION." Ex. O at 5 (emphasis added). FCA erroneously contends that the incorporation of AAA rules "shows that the parties clearly and unmistakably agreed that the arbitrator would decide questions of arbitrability." ECF No. 46, PageID.1465 (quotation marks and citation omitted). FCA ignores that "the parties" are Mr. Voss and Liberty Auto City, *not* FCA. In contrast, Domino's *was* included within the meaning of "Company" in *Blanton*. *See Blanton v. Domino's Pizza Franchising LLC*, 2019 WL 5543027, at *2 (E.D. Mich. Oct. 25, 2019) ("Domino's, as the franchisor of Wilson Pizza, is included in the definition of 'the Company."). But FCA does not cite a single case that applies such a rule to arguments by nonsignatories.

## B.    The cases cited by FCA do not support its arbitrability argument.

FCA does not even discuss the terms of Plaintiffs' sales contracts in support of its arbitrability argument, let alone try to show that they clearly and unmistakably

- 5 -

delegate arbitrability to an arbitrator. Instead, it cites inapposite cases in which the plaintiffs claimed a delegation clause was invalid even if it clearly and unmistakably delegated arbitrability to an arbitrator. None of those cases supports its argument.

FCA cites *Rent-A-Center*, in which the defendant moved to compel arbitration under the plaintiff's employment contract, which "provided for arbitration of all 'past, present or future' disputes arising out of [his] employment with Rent-A-Center, including 'claims for discrimination' and 'claims for violation of any federal law.'" *Rent-A-Ctr.*, 561 U.S. at 65-66. The plaintiff argued solely that the agreement was unconscionable. The Supreme Court held that "because Jackson challenged the validity of the Agreement *as a whole*, the issue was for the arbitrator." *Id.* at 66. The Court explained that the "clear and unmistakable" requirement "pertains to the parties' *manifestation of intent*, not the agreement's *validity*," so that "'[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'" *Id.* at 69 n.1 (citation omitted). But the "*validity* of a written agreement to arbitrate (whether it is legally binding, as opposed to whether it was in fact agreed to—including, of course, whether it was void for unconscionability) is governed by § 2's provision that it shall be valid 'save upon such grounds as exist at law or in equity for the revocation of any contract.' Those grounds do not include, of course, any requirement that its lack of unconscionability must be 'clear and unmistakable.'" *Id.*

Here, unlike in *Rent-A-Center*, the issue is whether Plaintiffs' sales contracts clearly and unmistakably manifest Plaintiffs' intent to arbitrate the arbitrability of their claims against FCA. And as discussed above, FCA presents no such evidence. Conversely, the issue in *Rent-A-Center* was whether the delegation provision and arbitration agreement as a whole were invalid because they were unconscionable, which had to be resolved by the arbitrator. But Plaintiffs here do not argue that the delegation provision is invalid.

Nor is FCA's argument supported by its citation to *Henry Schein*, in which the Court held that if an agreement delegates an arbitrability question to an arbitrator, courts cannot "decide the arbitrability question themselves if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.'" *Henry Schein*, 139 S. Ct. at 527-28. Plaintiffs do not argue that a "wholly groundless" exception applies, but instead argue that their agreements do *not* clearly and unmistakably delegate the arbitrability issue to an arbitrator in the first place.

FCA cites another inapposite case, *Becker v. Delek US Energy, Inc.*, 39 F.4th 351 (6th Cir. 2022), in which the Sixth Circuit did not even mention the "clear and unmistakable" evidentiary standard. The plaintiff relied "on a single circumstance, that Delek is a non-signatory to the employment agreement, to challenge the enforceability of both the arbitration agreement and the delegation provision." *Id.* at 356. Thus, he did not "separate his analysis of the enforceability of the delegation

provision from his analysis of the enforceability of the arbitration agreement as a whole." *Id.*

In contrast, Plaintiffs here do not rely on the single circumstance that FCA is a non-signatory to their sales contracts or argue that FCA can seek arbitration *only* if it was a signatory. Instead, Plaintiffs argue that there is no clear and unmistakable evidence that they agreed to arbitrate their claims against FCA. Moreover, Plaintiffs separate their analysis of the delegation provisions in their contracts from their analysis of whether the arbitration agreements are enforceable as a whole. *First*, they argue that their sales contracts delegate "arbitrability of the claim or dispute" *only* for any claim or dispute "between you and us or our employees, agents, successors or assigns," which does not include FCA. *Second*, as discussed below, Plaintiffs argue that the arbitration agreements as a whole are not enforceable by FCA on the different factual ground that their agreements provide that claims "shall, at *your or our election*, be resolved by neutral, binding arbitration and not by a court action."

FCA's argument is also not supported by *In re StockX*, in which plaintiffs sued StockX for "allegedly failing to protect millions of StockX user's personal account information obtained through a cyber-attack in May 2019." *In re StockX*, 19 F.4th at 876. The plaintiffs had agreed to StockX's terms of service, which provided "clear and unmistakable evidence requiring that an arbitrator shall decide the 'applicability, enforceability,' or validity of both the arbitration provision and the entire contract"

between the users and StockX. *Id.* at 879. The plaintiffs did not argue that the terms of the arbitration agreement excluded their claims. Instead, they argued solely that "'no enforceable arbitration agreement exists'" and that the delegation provision is "'invalid' and 'unenforceable' as to the minor plaintiffs under the infancy doctrine." *Id.* at 878. Here, in contrast, Plaintiffs make no such challenges to the validity of the delegation provisions or agreements as a whole.

FCA briefly cites *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394 (6th Cir. 2017), which held that debt collectors could enforce the terms of an agreement between a debtor and bank, because it provided that "'[a]ll claims relating to your account … are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement.'" *Id.* at 398. No such broad agreement is at issue here. And the *Danley* plaintiffs "did not acknowledge their delegation provisions, let alone challenge them (below, or on appeal)." *Id.* at 399.

FCA next relies on this Court's opinion in *Harper*, which is inapposite. This Court explained that the plaintiff's "sole ground for resisting enforcement of the contract including the arbitration term is her claim that she did not consent to the agreement." 2023 WL 2586298, at *4. Plaintiffs here argue, in contrast, that the arbitration agreements to which they agreed do not clearly and unmistakably delegate to an arbitrator any authority to determine whether Plaintiffs' claims against FCA are arbitrable.

- 9 -

FCA also relies on *Swiger v. Rosette*, 989 F.3d 501 (6th Cir. 2021), which is inapposite. In *Swiger*, the plaintiff alleged "an illegal 'rent-a-tribe' scheme when she accepted a $1200 loan at an interest rate exceeding 350% from online lender Plain Green LLC." The plaintiff sued three Plain Green executives, "complaining of the loan's illegality." *Id.* at 504. One executive moved to compel arbitration. The district court denied the motion.

The Sixth Circuit reversed. The Court explained that "Swiger's agreement requires her to arbitrate 'any issue concerning the validity, enforceability, or scope of this ... Agreement to Arbitrate.' This constitutes a delegation clause, clearly and unmistakably showing that the parties agreed to arbitrate issues of arbitrability." *Id.* at 506. Swiger did not argue otherwise but instead argued only that the "'arbitration clauses in Plain Green's loan documents are void and unenforceable.'" *Id.* (quoting complaint). But the Court explained that "unless a party challenges the delegation provision specifically, the court must leave any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 505 (cleaned up). That holding is irrelevant here because Plaintiffs do not challenge the validity of their agreements.

FCA also cites four decisions in this District that misconstrue *Swiger* and other Sixth Circuit cases. The courts in those cases erroneously held that if an arbitration agreement clearly and unmistakably delegates arbitrability to an arbitrator as to *any* claim against *any* party, the arbitrator must decide arbitrability issues as to *all claims*

- 10 -

against *anyone* that "bear some relation to the contract." *See, e.g.*, *Cunningham v. Ford Motor Co.*, 2022 WL 2819115, at \*6 (E.D. Mich. July 19, 2022).

Those holdings cannot withstand scrutiny. In *Cunningham*, the plaintiff sued Ford for alleged defects in a tailgate latch release switch. Ford moved to compel arbitration under a sales agreement between the plaintiff and a dealership. The court granted the motion, rejecting the plaintiffs' argument that "they agreed (at most) that the other *parties* to the Sales Contracts – which did not include Ford – could enforce the Delegation Clause." *Id.* at \*6. The court held—incorrectly—that "*Swiger* makes clear that under these circumstances – i.e., where a plaintiff has signed a contract with an arbitration provision and a delegation clause and where a non-party to the contract seeks to compel the plaintiff to arbitrate claims that bear some relation to the contract – the question is *not* whether the plaintiff specifically intended that the non-party could enforce the delegation clause." *Id.*

*Swiger* held nothing of the sort but instead explained that the plaintiff clearly and unmistakably *agreed* "that 'any dispute ... related to this agreement will be resolved through binding arbitration.'" *Swiger*, 989 F.3d at 503. Indeed, the agreement in *Swiger* defined "dispute" as "'any claim or controversy of any kind between you and Plain Green or otherwise involving this Agreement or the Loan'...." *Id.* The claim in *Swiger* "related to" the agreement and "involv[ed]" the loan, because the plaintiff complained "of the loan's illegality." *Id.* at 504. Thus, the

plaintiff did not even argue that there was no clear and unmistakable evidence that she agreed to arbitrate her claims in that case. Instead, she *solely* "challenged the enforceability of the whole arbitration agreement and nowhere mentioned the delegation clause." *Id.* at 506.

*Swiger* plainly did *not* hold that a delegation clause applies to *all* claims that "bear some relation" to a sales agreement, even if the agreement does not clearly and unmistakably delegate the arbitrability issue to an arbitrator as to those claims. To the contrary, it merely enforced arbitration terms to which the plaintiff had agreed. And *Cunningham* does not cite *any* case that supports its "bear some relation" test.

Two other cases cited by FCA also misconstrue arbitration law, because each applied *Cunningham*'s "bear some relation" standard. *See Bossart v. Gen. Motors, LLC*, 2022 WL 3573855, at *4 (E.D. Mich. Aug. 19, 2022); *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at *11 (E.D. Mich. Sept. 30, 2022). In those two cases and another cited by FCA, the court compelled arbitration without discussing that the delegation provisions applied only to claims "between you and us or our employees, agents, successors or assigns." *See Lyman v. Ford Motor Co.*, 2023 WL 2667736, at *5 (E.D. Mich. Mar. 28, 2023).

All four district court decisions are inconsistent with *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 666 (2010), in which the Supreme Court granted certiorari "to decide whether imposing class arbitration on parties whose

arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act." The Court first repeated the long-standing principle that "parties may specify *with whom* they choose to arbitrate their disputes." *Id.* at 683. It then explained that the Court of Appeals had "regarded the agreement's silence on the question of class arbitration as dispositive." *Id.* at 684. But that "conclusion is fundamentally at war with the foundational FAA principle that arbitration is a matter of consent." *Id.* So, "consistent with our precedents emphasizing the consensual basis of arbitration, we see the question as being whether the parties agreed to authorize class arbitration. Here, where the parties stipulated that there was 'no agreement' on this question, it follows that the parties cannot be compelled to submit their dispute to class arbitration." *Id.* at 687.

Similarly, here, the holdings in the four district court cases cited by FCA are fundamentally at war with the principle that arbitration rests on consent. Neither the Supreme Court nor the Sixth Circuit has held that if clear and unmistakable evidence shows that a party agreed to arbitrate *some* arbitrability issues as to *some* parties, it must arbitrate the arbitrability of claims by non-signatories that "bear some relation to the contract." Indeed, *Stolt-Nielsen* cited *First Options* as "noting that 'one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate' contrary to their expectations."

*Id.* at 686 (quoting *First Options*, 514 U.S. at 945).

## IV.   THIS COURT SHOULD NOT ORDER ARBITRATION

**A.   Plaintiffs' agreements do not provide for arbitration of their claims.**

As the Supreme Court has stated: "[W]e have often observed that the Arbitration Act requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes[.]'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Am. Express Co.*, 570 U.S. at 233). FCA violates that principle when it ignores key contractual language when it erroneously argues that the "expansive language in the arbitration agreements covers the claims in this case." ECF No. 46, PageID.1469. As to the sales agreements for eleven plaintiffs, FCA omits key contractual language without using an ellipsis when it claims that they "apply to '*[a]ny* claim or dispute, whether in contract, tort, statute or otherwise, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship.' E.g., Ex. B at 7 (Bryan) (emphases added)." ECF No. 46, PageID.1469-1470. This hides the fact that arbitration is expressly limited to claims "between you and us or our employees, agents, successors or assigns." Ex. B at 7. And FCA omits the contractual restriction that those claims and disputes "shall, at *your or our election*, be resolved by neutral, binding arbitration…." *Id.* (emphasis added). *See also* Ex. C at 4; Ex. D at 2; Ex. G

at 15; Ex. H at 5; Ex. I at 6; Ex. J at 10; Ex. K at 5; Ex. L at 6; Ex. N at 2. Under those terms, Plaintiffs' claims are not arbitrable because their agreements do not cover claims against FCA and provide that *only* the purchaser and the dealership can pursue arbitration.

The Ninth Circuit has recently explained why the other contractual language emphasized by FCA (while omitting other key language) does not make Plaintiffs' claims arbitrable. In *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 948 (9th Cir. 2022), the court interpreted the identical arbitration agreement that is at issue here and held that while it "allows for arbitration of certain claims concerning third parties, it still gives only Ngo, the dealership, and the assignee the power to compel arbitration." *Id.* The same holds true here.

Similarly, a California court recently interpreted the same arbitration language in rejecting Ford's motion to compel arbitration. *Ford Motor Warranty Cases*, 306 Cal. Rptr. 3d 611 (Ct. App. 2023). The court held that "[w]e do not read this … language as consent by the purchaser to arbitrate claims with third party nonsignatories." *Id.* at 620. "Rather, we read it as a further delineation of the *subject matter* of claims the purchasers and dealers agreed to arbitrate. They agreed to arbitrate disputes between *themselves*—you and us—arising out of or relating to relationships, including relationships with third parties who did not sign the sale contracts, resulting from the purchase, or condition of the vehicle, or the sale

contract." *Id.* (cleaned up). As the court stated, purchasers "can elect to buy insurance, theft protection, extended warranties and the like from third parties, and they can finance their transactions with those third parties under the sale contracts. The 'third party' language in the arbitration clause means that if a purchaser asserts a claim against the dealer (or its employees, agents, successors or assigns) that relates to one of these third party transactions, the dealer can elect to arbitrate that claim. It says nothing of binding the purchaser to arbitrate with the universe of unnamed third parties." *Id.* That analysis refutes FCA's erroneous claim that if it "could not compel arbitration, language in the agreements covering claims related to third parties or resulting relationships would be superfluous." ECF No. 46, PageID.1472.

The holdings in *Ngo* and *Ford Motor Warranty Cases* are dispositive as to the claims of the California plaintiffs at issue (Bryan and Olsen), and the reasoning in those cases shows that the other agreements at issue also do not require arbitration. FCA again omits key language when it argues that the arbitration agreement signed by the Findeisses covers "'any claim or dispute, whether in contract, tort, statute or otherwise … which *arise[s] out of or relate[s] to* Customer's credit application, *purchase or condition of this vehicle*, Customer's purchase or financing contract or *any resulting transaction or relationship*.'" ECF No. 46, PageID.1469 (emphasis in original). The ellipsis hides key language, which FCA acknowledges in its statement of facts, that limits arbitration to a "any claim or dispute … between Customer and

[dealership] or our employees, agents, successors or assigns." *Id.*, PageID.1457 (bracketed word added by FCA). Again, that language excludes the Findeisses' claims against FCA.

FCA once again omits key language when it argues that Plaintiff Spruance's "agreement states that any claim or dispute' that 'arises out of, or relates to,' the lease 'or any related transaction or relationship is to be decided by neutral, binding arbitration.' Ex. M at 4." ECF No. 46, PageID.1470. Arbitration is available in that agreement *only* for claims "between you and us or our employees, agents, successors or assigns." Ex. M. at 4. And FCA further omits that arbitration is available only "[a]t your or our election," not at FCA's election. *Id.*

FCA also omits key language when it states that Voss's "agreement says that [a]ny claim arising out of or related in any way to the aforesaid purchase order/agreement … shall first be subject to mediation' and, if that fails, 'by binding arbitration.' Ex. O at 5 (emphasis omitted)." In fact, arbitration is available only for "all disputes by and between Purchaser/Lessee and LIBERTY AUTO CITY." *Id.* This case is not between Voss and Liberty Auto, and Voss's claims are not "under the purchase order/agreement" but rather under common law and statutory law.

Because of the contractual language ignored by FCA, two cases it cites are inapposite. In *Mann*, the plaintiff entered into an installment sales contract with a dealer, which assigned the contract to Nissan. The plaintiff sued Nissan for

- 17 -

wrongfully reporting an alleged overdue balance on that contract. The court compelled arbitration under the contract, which provided for arbitration of claims "between you and us or our … *assigns*, which arise out of or relate to your credit application." *Mann v. Equifax Info. Servs.*, 2013 WL 3814257, at *1 (E.D. Mich. July 22, 2013) (emphasis added). Unlike Nissan in that case, FCA is not an assign of Plaintiffs' sales contracts. Similarly, the other case cited by FCA is inapposite. In *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 380 (5th Cir. 2008), Green Tree obtained servicing rights to a loan and allegedly charged an unlawful pre-payment penalty under the loan contract. The court compelled arbitration because the plaintiff "agreed to arbitrate any claims arising from 'the relationships which result from th[e] [a]greement.' A loan servicer, such as Green Tree, is just such a 'relationship.'" *Id.* at 382. Unlike in *Sherer*, Plaintiffs' claims do not arise from their contracts, and the provision in *Sherer* was not limited to claims between "you and us."

Finally, FCA erroneously claims this Court should grant its motion because "[t]here would be no express warranty for an express warranty claim against FCA US *but for* the contracts that Plaintiffs signed to buy or lease their vehicles and receive an express warranty. No contract, no vehicle, no claim." ECF No. 46, PageID.1471 (emphasis added). FCA does not cite a single case that applies a "but for" standard, while numerous Circuit Courts have rejected it. For example, the Eighth Circuit rejected an arbitration argument where the "'parties could each have

fulfilled all of their duties under" the agreement containing the arbitration clause and yet they "[would] still be embroiled in the dispute alleged in [t]he [tort] claims.'" *Anderson v. Hansen*, 47 F.4th 711, 717 (8th Cir. 2022). Similarly, the dealers and Plaintiffs fulfilled their obligations under the contracts here, but Plaintiffs and FCA are still embroiled in their controversy. *See also Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, 533 F.3d 1342, 1347 (11th Cir. 2008) ("a dispute does not 'arise out of or in connection with' a contract just because the dispute would not have arisen if the contract 'had never existed'") (citation omitted). The cases cited by FCA do not apply a "but for" standard and are inapposite. *See Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395 (6th Cir. 2014) ("omission of the arbitration clause in the survival clause did not clearly imply that the arbitration clause had no post-expiration effect"); *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (the "claims are not covered by the arbitration clauses at issue").

**B.   Equitable estoppel does not apply.**

Recent cases explain why FCA's equitable estoppel argument is incorrect. *See* ECF No. 46, PageID.1474-1477. In *Ford Motor Warranty Cases*, the court of appeal interpreted the identical arbitration clause at issue here. It explained that under California law, "equitable estoppel allows a nonsignatory defendant to invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined

with the underlying contract obligations." 306 Cal. Rptr. 3d at 618 (quotation marks and citation omitted). The court held that "manufacturer vehicle warranties that accompany the sale of motor vehicles without regard to the terms of the sale contract between the purchaser and the dealer are independent of the sale contract." *Id.* at 619-20. Moreover, the "contracts disclaim any warranty on the part of the dealers, while acknowledging no effect on 'any warranties covering the vehicle that the vehicle manufacturer may provide.'" *Id.* at 620. Thus, "Plaintiffs' claims in no way rely on the sale contracts. Equitable estoppel does not apply." *Id.* at 621. Similarly, most agreements at issue here disclaim a dealership warranty while admitting no effect on "any warranties covering the vehicle that the vehicle manufacturer may provide." *See* Ex. A at 3; Ex. B at 5; Ex. C at 4; Ex. D at 2; Ex. E at 2; Ex. G at 10; Ex. H at 4; Ex. I at 3; Ex. J at 2, 8; Ex. K at 4; Ex. L at 4; Ex. O at 4. And the other contracts do not provide any basis for warranty claims against FCA. Ex. F at 1 ("no warranties, express or implied"); Ex. M at 2 (checkbox for "manufacturer's warranty" *not* checked); Ex. N at 2 (vehicle "is not covered by any dealer warranty").

In *Ngo*, the Ninth Circuit similarly rejected an equitable estoppel argument by BMW. The court held that "BMW is mistaken that, under the Song-Beverley and the Magnuson-Moss Warranty Acts, Ngo's claims are inextricably intertwined with terms of the purchase agreement." *Ngo*, 23 F.4th at 949. The court also rejected BMW's argument that "if Ngo had not signed the purchase agreement with the

dealership, she would not have been able to purchase her car; if she had not purchased her car, BMW would have issued no warranties; and if BMW had issued no warranties, Ngo could not bring statutory claims." *Id.* The court explained that "this 'attenuated chain of reasoning' has been rejected by California courts." *Id.*

FCA ignores those cases and instead cites four cases that were decided before *Ford Motor* and *Ngo*. In *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486 (2020), the plaintiff sued *both* the dealership *and* FCA for breach of warranty. The *dealership* moved to compel arbitration. The trial court granted the motion. The court of appeal affirmed, noting that the dealer argued the "claim against both the dealership and manufacturer should be arbitrated," so that the "trial court had the prerogative to compel arbitration of the claim against FCA." *Id.* at 499 (footnote omitted).

*Felisilda* has no bearing here. *Ford Motor Warranty Cases* "disagree[d] with *Felisilda* that 'the sales contract was the source of [FCA's] warranties at the heart of this case.'" 306 Cal. Rptr. 3d at 619 (quoting *Felisilda*, 53 Cal. App. 5th at 496). And unlike *Felisilda*, but like *Ford Motor Warranty Cases*, the Ninth Circuit held in *Ngo* that BMW's warranty "obligations to Ngo arose independently of her agreement with the dealership." *Ngo*, 23 F.4th at 949. Moreover, *Ngo* explained that *Felisilda* "does not address the situation we are confronted with here, where the non-signatory manufacturer attempted to compel arbitration on its own." *Id.*

Second, FCA mistakenly relies on *Reykhel v. BMW of North America LLC*,

2019 WL 10056984 (N.D. Cal. Aug. 12, 2019). The contract in *Reykhel* "explicitly

provides for the arbitration of claims against an 'affiliate' of the signatories." *Id.* at

\*3. FCA does not argue that the agreements here allow affiliates to seek arbitration.

Third, FCA cites *Agnew v. Honda Motor Co.*, 2009 WL 1813783, at \*1 (S.D. Ind.

May 20, 2009), which construed an agreement different from those at issue here and

held that warranty claims "necessarily assume that the warranties were provided as

part of [the dealer's] sale to [the plaintiff]." *Id.* Indiana law is not at issue. Further,

the warranties at issue here were *not* provided as part of the dealers' sales, as *Ngo*

and *Ford Motor Warranty Cases* explain. Fourth, FCA cites *Mance v. Mercedes-

Benz USA*, 901 F. Supp. 2d 1147 (N.D. Cal. 2012), which held that equitable estoppel

allowed the manufacturer to compel arbitration, because "Mercedes–Benz's duty to

comply with its warranty arose only when Mr. Mance bought the car." *Id.* at 1157.

*Ngo* later rejected that reasoning, overruling *Mance*.

 As to Plaintiffs from states other than California, FCA does not even try to

show that equitable estoppel applies under the facts of this case. To assess a claim

of equitable estoppel by a nonsignatory, a court must decide "whether the relevant

state contract law recognizes equitable estoppel as a ground for enforcing contracts

against third parties, what standard it would apply, and whether petitioners would be

entitled to relief under it." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632

(2009) (remanding for consideration of those questions). FCA fails to satisfy *Arthur*

*Andersen* when it merely states that "these states have applied [equitable estoppel] to allow a nonsignatory to enforce an arbitration agreement against a signatory." ECF No. 46, PageID.1476. Indeed, the cases cited by FCA do not support its argument at all, as the following discussion of its cited cases demonstrates:

- <u>Arizona</u>. *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 576-77 (Ariz. 1998) (equitable estoppel requires proof that "party to be estopped commits acts inconsistent with a position it later adopts" and "reliance by the other party"); *CVS Pharm., Inc. v. Gable Family Pharm.*, 2012 U.S. Dist. LEXIS 191047, at *32 (D. Ariz. Oct. 19, 2012) (plaintiffs' agreement not to claim title "is inconsistent with later asserting a trade secret misappropriation claim based on that information").

- <u>Colorado</u>. *Santich v. VCG Holding Corp.*, 443 P.3d 62, 66 (Colo. 2019) ("nonsignatories to a contract containing an arbitration provision might be able to compel arbitration on equitable estoppel grounds, but to do so they would need to prove all four traditionally defined elements of the doctrine, including, but not limited to, the element of detrimental reliance").

- <u>Florida</u>. *Tyman v. Ford Motor Co.*, 521 F. Supp. 3d 1222, 1225 (S.D. Fla. 2021) (contracts "provide[d] for the arbitration of any disputes with the affiliates of the company that financed Plaintiff's lease").

- <u>Georgia</u>. *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 334 (2009) (plaintiffs sued signatory *and* non-signatories for defects in their home, where "any construction defect claim" was subject to arbitration).

- <u>Idaho</u>. *Clearwater REI, Ltd. Liab. Co. v. Boling*, 155 Idaho 954, 961 (2014) (assessing whether a nonsignatory could be compelled to arbitrate).

- <u>Illinois</u>. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 641 (7th Cir. 2021) (under Illinois law, nonsignatory defendant "failed to present any evidence of its detrimental reliance on any … representation").

- <u>Kentucky</u>. *Morsey Constructors, LLC v. Burns & Roe Enters.*, 2008 WL 3833588, at *6 (W.D. Ky. Aug. 13, 2008) (holding that "by invoking the

[AAA] rules in the Disputes clause, *the parties* agreed that question of arbitrability itself would be decided by an arbitrator" but not addressing whether non-signatory can piggyback on such an agreement) (emphasis added); *Fin. Corp. II v. King*, 2010 Ky. App. Unpub. LEXIS 780, at *12 (Ct. App. Oct. 8, 2010) (allegation of "'concerted misconduct by both the nonsignatory and one or more of the signatories to the contract'").

- Maryland. *Westbard Apartments, LLC v. Westwood Joint Venture, LLC*, 181 Md. App. 37, 52 (2007) (estoppel applied because plaintiffs "rely on the Lease and the Agreement"). *Cf. Griggs v. Evans*, 205 Md. App. 64, 90 (2012) (nonsignatory could not compel arbitration where plaintiffs "do not 'invoke any rights under the terms' of the Mortgage Agreement").

- North Carolina. *Smith Jamison Constr. v. Apac-Atlantic, Inc.*, 257 N.C. App. 714, 721 (2018) (claims were "premised upon duties created by North Carolina common law or statutes," not "upon the Subcontract duties or provisions," so "estoppel does not apply to these claims").

- Oregon. *Willis v. Nationwide Debt Settlement Grp.*, 2012 WL 13055512, at *7 (D. Or. May 22, 2012) (estoppel can apply where the "claims against signatories and nonsignatories are intertwined with the agreement"). *See Banh v. Am. Honda Motor Co.*, 2020 WL 5035095, at *7 (C.D. Cal. July 28, 2020) ("Since Honda is neither an employee, agent, successor, or assign of the signatory, it may not enforce the agreement.").

- Texas. *Kassell v. Crafton*, 2013 WL 6709447, at *11 n.12 (W.D. Tex. Dec. 18, 2013) (agreement covered claims against "'parents, subsidiaries, and affiliates'"); *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006) claims against signatory *and* nonsignatories allowed arbitration). *Cf. Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018) ("'when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law,' direct-benefits estoppel is not implicated").

- Virginia. FCA cites two cases in which equitable estoppel applied because the plaintiff alleged concerted misconduct by a signatory *and* nonsignatory in violation of the contract. *See Tattoo Art, Inc. v. TAT Int'l, LLC*, 711 F. Supp. 2d 645, 654 (E.D. Va. 2010); *Decisive Analytics Corp. v. Chikar*, 75 Va. Cir. 337, 345-46 (Va. Cir. Ct. 2008).

- 24 -

## C.    FCA is not a third-party beneficiary of the arbitration contracts.

The Ninth Circuit has explained that FCA is not a third-party beneficiary under the arbitration language at issue here. The contract "allows for arbitration of certain claims concerning third parties," but it "still gives only Ngo, the dealership, and the assignee the power to compel arbitration." *Ngo*, 23 F.4th at 948. *Accord*, *Ford Motor Warranty Cases*, 306 Cal. Rptr. 3d at 623. And FCA cites only one case for the false claim that Plaintiffs "clearly 'intended for third-party beneficiaries to fall within the scope of the contract.'" ECF No. 46, PageID.1479 (quoting *O'Connor v. BMW of N. Am., LLC*, 2020 WL 5260416, at *3 (D. Colo. July 23, 2020)). Without analysis, *O'Connor* stated it dictum that "it appears the parties intended for third-party beneficiaries to fall within the scope of the contract." 2020 WL 5260416, at *3. That dictum ignores that the "critical fact … is whether the underlying agreement manifest[s] an intent to confer *specific legal rights* upon [the nonsignatory]." *N.A. Rugby Union LLC v. United States of Am. Rugby Football Union*, 442 P.3d 859, 865-66 (Colo. 2019) (quotation marks and citation omitted). *See also Sosa*, 8 F.4th at 639 (if the defendant "ultimately incidentally incurred a benefit" from the contract, "that is not sufficient to demonstrate that [it] qualifies as a third-party beneficiary").

## V.    CONCLUSION

FCA's motion to compel arbitration should be denied in its entirety.

011086-11/2243685 V1

DATED: June 15, 2023

Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com

E. Powell Miller (P39487)
**THE MILLER LAW FIRM PC**
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Email: epm@millerlawpc.com

*Plaintiffs' Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 15, 2023, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steve W. Berman*
STEVE W. BERMAN

011086-11/2243685 V1