UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: CHRYSLER PACIFICA FIRE RECALL
PRODUCTS LIABILITY LITIGATION

MDL No. 3040

Case Number 22-3040
Honorable David M. Lawson
Magistrate Judge Elizabeth S. Stafford

_____/

**OPINION AND ORDER DENYING
MOTION TO COMPEL ARBITRATION**

The plaintiffs in this multidistrict litigation allege that defendant FCA US LLC manufactured and sold them Chrysler Pacifica Plug-in Hybrid minivans that are defective because they have been known to combust spontaneously. The defendant has identified 18 plaintiffs named in the Consolidated Master Complaint (CMC) who signed sales agreements with their respective dealerships that contain various forms of arbitration clauses. Those clauses state, in essence, that either party to the sales contract, and their respective agents, may elect to have disputes related to the purchase or condition of the vehicles resolved by binding arbitration. FCA now moves to compel arbitration by those plaintiffs who signed agreements containing the arbitration clauses. However, FCA has challenged the viability of the CMC in a detailed motion to dismiss and otherwise pursued the litigation in this Court under the pretrial orders. Its litigation conduct is plainly inconsistent with any reliance on the arbitration agreements. Sixth Circuit precedent deems conduct of that sort to constitute a waiver of the right to arbitrate. The motion to compel arbitration, therefore, will be denied.

I.

The factual background of the case is discussed extensively in the Court's opinion granting in part and denying in part the defendant's motion to dismiss, ECF No. 67.

The plaintiffs bring claims of deceptive practices and warranty breaches against defendant FCA, which is the manufacturer of the Chrysler Pacifica Plug-in Hybrid minivan. The plaintiffs say that, either due to defects in their design or problems during the manufacturing process, the large battery plant incorporated into the powertrain of the vehicles has a tendency spontaneously to enter a "thermal runaway" state resulting in combustion or explosion of the vehicle. The spontaneous ignition of the batteries, the plaintiffs say, may occur unpredictably at any time, even when the vehicles are parked and the ignition is off. Due to the risk of spontaneous fires, the plaintiffs say that they are unable to drive or leave the vehicles unattended with peace of mind, and they are forced to seek parking locations far removed from structures or other vehicles due to the risk of damage to any nearby property if the vehicles suddenly burst into flames. The plaintiffs acknowledge that FCA conducted a voluntary recall of the class vehicles based on the fire risk, but they allege that the measures implemented by the recall are insufficient to cure the problem, because the recall remedy consists merely of a software patch intended to "monitor" the battery system for conditions that may lead to thermal runaway, and no repair or replacement of the battery pack is offered unless Chrysler deems it "necessary" after an inspection. It appears that the defendant did not determine that replacement was a necessary measure for any of the plaintiffs' vehicles (or, apparently, for almost all of the other thousands of class vehicles currently in service).

In the 1,450-paragraph CMC, which spans more than 430 pages, including attached exhibits, the plaintiffs pleaded 81 causes of action sounding in breaches of express and implied warranties and violations of various state laws governing consumer sales, deceptive marketing, and unfair trade practices.

This multidistrict litigation was initiated on August 3, 2022 by an order of the Judicial Panel on Multidistrict Litigation (JPML) transferring to this Court for pretrial proceedings four

civil actions pending in various districts for consolidation with three cases filed in this district. Subsequent orders by the JPML transferred more cases raising the same claims, which altogether comprise 11 putative class actions with 69 named plaintiffs who have pleaded, cumulatively, more than 81 counts under the laws of 31 states. On October 17, 2022, the Court consolidated the related cases and established initial deadlines for filing and challenging consolidated pleadings. The plaintiff's CMC was filed on November 3, 2022. On December 19, 2022, the defendant filed its motion under Federal Rule of Civil Procedure 12(b)(6) challenging the viability of all of the claims pleaded in the CMC. Five months later, on May 1, 2023, the defendant filed its motion to compel arbitration.

The Court has established a timeline for discovery and motion practice relating to class certification and the merits of the claims. The plaintiffs are due to file their motion for class certification by April 10, 2024, all discovery must be completed by August 14, 2024, and dispositive motions are due by September 11, 2024.

II.

FCA argues that all of the identified plaintiffs signed retail sales contracts with their authorized dealers that included arbitration clauses, and the arbitration agreements reserve for the arbitrator all questions involving the scope of the clauses and whether the plaintiffs' claims are subject to arbitration. It also insists that the arbitrator must decide whether FCA, as a non-party to the contract, may invoke the arbitration clause, a question that it believes would be decided in its favor, because the agreements to arbitrate cover "any dispute" arising from the sale of the subject vehicles.

The plaintiffs disagree, insisting that the contract language does not manifest a clear and unequivocal intent to submit questions about the arbitrability of the dispute to the arbitrator, the arbitration clauses expressly limit arbitration to disputes arising between the purchaser and dealer

concerning the transaction, and the terms do not embrace warranty claims against the non-party manufacturer of the vehicles.

These issues, although certainly important, must take a back seat to the question whether the defendant's invocation of the right to arbitrate was untimely, and therefore whether it waived or forfeited its privilege to seek resolution in a non-judicial forum.

Arbitration clauses of the type found in the dealership agreements are contractual provisions which "courts must 'rigorously enforce'" "according to their terms." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). The parties may designate the issues that they will submit to the arbitrator. *Lamps Plus, Inc. v. Varela*, 587 U.S. ---, 139 S. Ct. 1407, 1416 (2019). And those issues may include "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, --- U.S. ---, 139 S. Ct. 524, 529 (2019). To include those gateway questions, the parties must specify them in the agreement "by 'clear and unmistakable evidence.'" *In re StockX*, 19 F.4th at 878 (quoting *Henry Schein*, 139 S. Ct. at 530). "Such a choice is typically evidenced in a so-called 'delegation' clause or provision." *Ibid.*

It is true that there is a strong federal policy reflected in the Federal Arbitration Act that favors arbitration, but that derives from the sanctity of contracts that is recognized generally in the jurisprudence. The "Supreme Court has clarified[] that [the] policy 'is to make arbitration agreements as enforceable as other contracts, but not more so.'" *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, No. 22-3148, 2023 WL 1777387, at *2 (6th Cir. Feb. 6, 2023) (quoting *Morgan v. Sundance*, 596 U.S. 411, 418 (2022); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

As with other contractual rights, the right to arbitrate may be waived. *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 357 (6th Cir. 2022) (citing *Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 318 (6th Cir. 1950)). Courts do not "lightly infer that a party has waived its right to arbitration." *Ibid.* (quoting *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012)). But the Sixth Circuit has not hesitated to find a waiver when the party seeking to compel arbitration has "tak[en] actions that are completely inconsistent with any reliance on an arbitration agreement" or has "delay[ed] its assertion to such an extent that the opposing party incurs actual prejudice." *Ibid.* (quotations marks omitted). *Dorsa*'s rule was abrogated in part by the Supreme Court's recent ruling in *Morgan*, where the Court explained that "the usual federal rule of waiver does not include a prejudice requirement," and consequently held "that prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Morgan*, 596 U.S. at 419.

The Sixth Circuit has held that the filing of a motion to dismiss challenging the merits of claims plainly is inconsistent with a defendant's reliance on an arbitration agreement. However, "'[n]ot every motion to dismiss is inconsistent with the right to arbitration.'" *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) (quoting *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009)). "For example, the Eighth Circuit has held that a motion to dismiss raising 'jurisdictional and quasi-jurisdictional grounds' but seeking 'no action with respect to the merits of the case' is not inconsistent with later seeking arbitration." *Ibid.* (quoting *Dumont v. Sask. Gov't Ins.*, 258 F.3d 880, 886-87 (8th Cir. 2001)). "Similarly, where a complaint asserts a mix of arbitrable and nonarbitrable claims, 'the portions of the motion [to dismiss] addressed to nonarbitrable claims do not constitute a waiver.'" *Ibid.* (quoting *Sweater Bee by Banff, Ltd. v. Manhattan Indus.*, 754 F.2d 457, 463 (2d Cir. 1985)). "On the other hand, a

motion to dismiss that seeks 'a decision on the merits' and 'an immediate and total victory in the parties' dispute' is entirely inconsistent with later requesting that those same merits questions be resolved in arbitration." *Ibid.* (quoting *Hooper*, 589 F.3d at 922). "A party may not use a motion to dismiss 'to see how the case [is] going in federal district court,' while holding arbitration in reserve for 'a second chance in another forum.'" *Ibid.* (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995); *Hurley*, 610 F.3d at 339).

This case falls squarely within the rubric established by *Dorsa*, as modified by *Morgan*, and as applied in *Solo* and similar decisions in other circuits. FCA's immediate response to the CMC was a motion to dismiss that challenged every cause of action in the consolidated amended complaint, asserting dozens of legal arguments frontally attacking the merits of the plaintiffs' entire case, and seeking from the Court "a decision on the merits" and "an immediate and total victory in the parties' dispute." That approach to the litigation is "entirely inconsistent with later requesting that those same merits questions be resolved in arbitration." *Solo*, 947 F.3d at 975. This is not a case where a narrowly focused preliminary motion to dismiss engaging merely jurisdictional or procedural grounds was presented, not touching on merits issues. Under *Morgan*, the Court need not find that the plaintiffs were prejudiced, only that the defendant relinquished the right to arbitrate by acting inconsistently with that right in the litigation. It has done so here, by seeking (and now having obtained) a comprehensive dispositive ruling from the Court (in which it prevailed in part).

As *Morgan* held, waiver may be found where, as here, the defendant's initial approach to the litigation focuses on the merits and not forum choice, and where the demand for arbitration is not presented until months later. *Morgan*, 596 U.S. at 414-15. At oral argument, the defendant explained that it did not file the motion to compel arbitration until it was eight months into the case

because only then did it learn that some of its dealers used paperwork that contained arbitration clauses. But it taxes credulity to posit that FCA was not aware of the standard sales documents its dealers were using. And even if that were accurate, it does not change the reality that FCA sought "an immediate and total victory" from this Court by pursuing its motion to dismiss all claims in the CMC. *See Solo*, 947 F.3d at 975 ("UPS's motion to dismiss was thoroughly enmeshed in the merits. It sought dismissal of all claims on the basis that Solo and BleachTech misinterpreted contractual language. By asking the court to decide the meaning of the key contractual language, UPS sought 'immediate and total victory'" (quoting *Hooper*, 589 F.3d at 922)).

As the Sixth Circuit held in *Dorsa* (notwithstanding is partial abrogation), waiver may be found even where the issue of arbitration is raised explicitly, but the defendant takes inconsistent positions with respect to questions of arbitrability. In *Dorsa*, the court of appeals held that there was a waiver where the defendant initially sought a ruling from the district court on the question of arbitrability, and, when the ruling was not in its favor, then filed a second motion to compel arbitration in which it argued that the question of arbitrability was for an arbitrator and not the district court to decide. The Sixth Circuit concluded that by seeking a decision from the court on the question of arbitrability the defendant had waived its right to submit that question to an arbitrator. *Dorsa*, 33 F.4th at 357 ("Miraca may not first ask the district court to determine arbitrability and then later argue that the court cannot decide [the question] after receiving an unfavorable ruling.").

The Sixth Circuit confronted a similar situation in *Solo* and readily concluded that by litigating the merits of the claims and filing a motion to dismiss the complaint on the merits, the defendant had waived its right to arbitrate. Defendant UPS had filed a motion to dismiss attacking the merits of the claims, which was granted by the district court, but the decision was reversed on

appeal. After remand, UPS moved to compel arbitration and limit discovery. The court rejected UPS's attempt to rely on the arbitration agreement, reasoning that "[b]y waiting to attempt to enforce its arbitration rights until after the appellate court entered an unfavorable decision on its merits arguments, UPS's actions were inconsistent with reliance on an arbitration agreement." *Solo*, 947 F.3d at 975. UPS asserted that it had reserved the right to compel arbitration by so stating in its motion to dismiss. The court rejected that argument as well. "A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court." *Id.* at 976.

Other courts also have held that a party waives the right to arbitrate by seeking a decision on the merits of claim from a district court. *E.g.*, *Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 265 (6th Cir. 2015) ("[I]t was only after NPC obtained unfavorable rulings on its initial dispositive motions that it moved to dismiss or compel arbitration. This is a factor weighing in favor of finding waiver, for it suggests that NPC's delay, instead of being attributable to an innocent or otherwise excusable purpose, was deliberately motivated by some perceived tactical advantage."); *accord Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015-16 (9th Cir. 2023) ("Obviously, seeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum. For good reason, we have held that a defendant waived the right to arbitrate after litigating in federal court for two years and then filing a motion to dismiss on the merits. Likewise, a party that litigated in federal court for over a year, filed a motion to dismiss on a key merits issue, and received an adverse ruling before moving to compel arbitration was found to have waived the right to arbitration."); *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 473 (9th Cir. 2023) ("[T]ere can be little doubt that XBS acted inconsistently with its right to compel arbitration under the 2002 DRP. As the detailed factual and procedural history of this case

reveals — and as explored further below — XBS exerted a significant amount of energy challenging the merits of the legal theory underlying the claims that Hill raised personally and on behalf of the class members, including the 2002 DRP signatories."); *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 340 (3d Cir. 2023) ("Although motions to dismiss will not always evince an intent to litigate instead of arbitrate, Samsung clearly sought to have this case dismissed by a court on the merits. Only after it was apparent that further litigation would be required, and it could not get the case fully dismissed before discovery, did Samsung attempt to arbitrate the remaining claim."); *Gramercy Distressed Opportunity Fund II L.P. v. Piazza*, No. 22-8050, 2023 WL 6296948, at *2 (10th Cir. May 10, 2023) ("[A] party can waive the right to pursue arbitration by simultaneously pursuing merits relief in the courts. After all, one seeking arbitration is contending that judicial review is inappropriate. To pursue adjudication on the merits by the court is contrary to the purported desire to have the claims resolved by an arbitrator in the first instance."). Similarly here, FCA sought and received, at least in part, a decision on the merits of the plaintiffs' several claims. Seeking arbitration now amounts to asking for "a second chance in another forum." *Solo*, 947 F.3d at 975.

When a defendant has acted promptly at the outset of the litigation to compel arbitration before engaging in substantive litigation, this Court readily has granted such motions. *E.g.*, *Harper v. Gen. Motors, LLC*, No. 21-12907, 2023 WL 2586298, at *1 (E.D. Mich. Mar. 21, 2023). But that is not the tack that the defendant took in this case. Here, the defendant waited too long to broach the topic of arbitration, and consequently it waived its right to the alternative forum by first seeking dispositive relief in this Court and then, months later, attempting to invoke its arbitration right.

III.

The defendant waived or forfeited its right to compel arbitration by waiting to file its motion seeking to compel a transfer of the cases of the 18 plaintiffs to a nonjudicial forum until after it actively had engaged with the merits of the case and filed a motion to dismiss challenging all of the pleaded claims on the merits.  That conduct plainly was inconsistent with reliance on the arbitration agreements.

Accordingly, it is **ORDERED** that the motion to compel arbitration (ECF No. 46) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 5, 2024