## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION<br><br>MDL No. 3040 | Case No. 2:22-cv-03040-DML<br><br>Hon. David M. Lawson |

## PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER FROM REQUIRING PLAINTIFFS TO TRAVEL TO THE EASTERN DISTRICT OF MICHIGAN FOR IN-PERSON DEPOSITIONS

Plaintiffs submit this Motion for Protective Order pursuant to Federal Rules of Civil Procedure 26(c)(1)(b). The undersigned counsel certifies that counsel personally spoke to, and communicated in writing, with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

1.     On December 11, 2023, the Court entered its Opinion Granting in Part and Denying in Part Defendant FCA US LLC's ("Defendant" or "FCA") Motion to Dismiss. ECF No. 67.

2.     Two days later, on December 13, 2023, counsel for FCA served a letter on Plaintiffs' counsel to request, in part, dates for in-person depositions of Plaintiffs to take place within the Eastern District of Michigan between mid-January and February.

3.     On January 10, 2024, the Parties met and conferred regarding this

request and Plaintiffs' proposal to appear for depositions via videoconference. FCA has refused Plaintiffs' proposal.

4.  Plaintiffs seek this Protective Order because in-person depositions in Michigan will cause undue burden and expense, annoyance, and oppression. Further, due to COVID-19 cases increasing again, especially in Michigan, combined with surges of flu, RSV, and other winter respiratory pathogens, travelling for in-person depositions presents a significant health threat, that is wholly unnecessary to subject on Plaintiffs, their loved ones, and others. Additionally, remote depositions have become efficient, commonplace, and are cost-effective.

5.  Pursuant to Fed. R. Civ. P. 30(b)(4) ("…the court may on motion order—that a deposition be taken by telephone or other remote means") and the reasons explained herein, Plaintiffs respectfully request that this Court enter a Protective Order that the depositions of Plaintiffs must occur via remote video deposition.

Dated: February 6, 2024

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

/s/ *E. Powell Miller*_____
E. Powell Miller (P39487)
Dennis A. Lienhardt (P81118)
Dana E. Fraser (P82873)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com

dal@millerlawpc.com
def@millerlawpc.com

**HAGENS BERMAN SOBOL
SHAPIRO LLP**
Steve W. Berman
Thomas E. Loeser
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
toml@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs
and the Proposed Class*

**BARRACK RODOS & BACINE**
Stephen R. Basser
Samuel M. Ward
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
sbasser@barrack.com

**COTCHETT, PITRE &
McCARTHY**
Niall McCarthy
Karin Swope
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
NMcCarthy@cpmlegal.com
Kswope@cpmlegal.com

**CASEY GERRY SCHENK
FRANCAVILLA BLATT &
PENFIELD LLP**
Gayle Blatt
Camille Guerra
110 Laurel Street

3

San Diego, CA 92101-1486
Telephone: (619) 238-1811
gmb@cglaw.com

*Interim Plaintiffs' Steering Committee*
*for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION | Case No. 2:22-cv-03040-DML |
| | Hon. David M. Lawson |
| MDL No. 3040 | |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER FROM REQUIRING PLAINTIFFS TO TRAVEL TO THE EASTERN DISTRICT OF MICHIGAN FOR IN-PERSON DEPOSITIONS

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ........................................................................... ii

ISSUE PRESENTED ..................................................................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............................. v

I.     INTRODUCTION ........................................................................... 1

II.    LEGAL STANDARD ...................................................................... 2

     A.    Health Concerns Related to COVID-19 And Other Winter Pathogens Constitute Good Cause for Remote Depositions ................................... 2

     B.    Requiring In-Person Depositions in the Eastern District of Michigan Would be Unduly Burdensome and Pose Significant Hardships on Plaintiffs ................................................................................ 8

     C.    Remote Depositions Via Videoconference Have Long Been Effective Alternatives to In-Person Depositions and Would Not Unduly Prejudice FCA ....................................................................... 14

IV.    CONCLUSION ............................................................................. 18

i

# TABLE OF AUTHORITIES

## CASES

*Arellano v. Calderon*,
   2023 WL 2646435 (S.D. Cal. Mar. 27, 2023)........................................5

*Chamberlain v. Menard, Inc.*,
   2021 WL 5277154 (E.D. Mich. May 25, 2021)....................................4

*Crawford v. FCA US LLC*,
   2022 WL 15898431 (E.D. Mich. Aug. 4, 2022) .................................14

*Damron v. Liberty Mut. Ins. Co.*
   2020 WL 3071850 (E.D. Mich. June 10, 2020)....................................3

*Faford v. Grand Trunk W. R.R. Co.*,
   335 F.R.D. 503 (E.D. Mich. 2020)...................................................3, 6

*Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n*,
   2022 WL 1467650 (6th Cir. May 10, 2022)......................................17

*Grundy, et al. v. FCA US LLC*,
   2022 WL 909351 (E.D. Mich. Mar. 28, 2022)..................................3, 4

*In re Broiler Chicken Antitrust Litig.*,
   2020 WL 3469166 (N.D. Ill. June 25, 2020) .......................................7

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   2017 WL 4216193 (E.D. Mich. Sept. 22, 2017) ................................13

*Jahr v. IU Int'l Corp.*,
   109 F.R.D. 429 (M.D.N.C. 1986)......................................................14

*Kamradt v. Esurance Ins. Co.*,
   2023 WL 8355892 (W.D. Wash. Dec. 1, 2023)....................................4

*Kelmendi v. Hogan*,
   2023 WL 8440494 (E.D. Mich. Nov. 1, 2023) ...............................2, 17

*Learning Res., Inc. v. Playgo Toys Enterprises Ltd.*,
   335 F.R.D. 536 (N.D. Ill. June 16, 2020)...........................................16

*Llewellyn-Jones v. Metro Prop. Grp., LLC*,
   2014 WL 12659589 (E.D. Mich. Dec. 17, 2014)................................. 11, 15, 18

*Maccarone v. Lineage Law, LLC*,
   2018 WL 11541970 (M.D. La. Apr. 9, 2018) ....................................11

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
   2023 WL 1469030 (S.D.N.Y. Feb. 2, 2023) ........................................5

*PC-41 DOE v. Poly Prep Country Day School*,
   2022 WL 420619 (E.D.N.Y. Jan. 20, 2022).................................. 12, 16

*Powerhouse Licensing, LLC v. Checkfree Servs., Corp.*,
   2013 WL 5874814 (E.D. Mich. Oct. 30, 2013) ....................................2

*Pursley v. City of Rockford*,
2020 WL 6149578 (N.D. Ill. Oct. 20, 2020) .......................................................16
*Reynolds v. FCA US, LLC*,
2022 WL 21842693 (E.D. Mich. May 26, 2022) ........................................ *passim*
*Rouviere v. DePuy Orthopaedics, Inc.*,
471 F. Supp. 3d 571 (S.D.N.Y. 2020) ..................................................................15
*Schoenherr v. Smith*,
2013 WL 2239304 (E.D. Mich. May 21, 2013) ..................................... 11, 14, 15
*Sherrod, Teed, Vanderhagen and Ware v. VNA*,
2022 WL 965025 (E.D. Mich. Mar. 30, 2022) .................................................4, 17
*Sun Life Assurance Co. of Canada v. Conestoga Trust Servs.*
2016 WL 9781803 (E.D. Tenn. Jan. 4, 2016) ........................................................2
*Swenson v. GEICO Cas. Co.*,
336 F.R.D. 206 (D. Nev. 2020), *objections overruled*, 2020 WL 8871311
(D. Nev. Aug. 26, 2020) ....................................................................................7, 14
*Tummings v. CSP Comm. Owner, LP*,
2019 WL 13257810 (E.D.N.C. Apr. 3, 2019) ......................................................10
*Usov v. Lazar*,
2015 WL 5052497 (S.D.N.Y. Aug. 25, 2015) ......................................................15
*Vargas v. Evergreen Prof. Recoveries, Inc.*,
2022 WL 856991 (W.D. Wash. Mar. 23, 2022) ......................................................3
*Wilkens v. ValueHealth, LLC*,
2020 WL 2496001 (D. Kan. May 14, 2020) ...........................................................3

## OTHER AUTHORITIES

8A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2112 (3d
ed. 2021) .............................................................................................................12

## RULES

Fed. R. Civ. P. 26(c)(1) ................................................................................................2
Fed. R. Civ. P. 30(a)(1) ................................................................................................2
Fed. R. Civ. P. 30(b)(4) ................................................................................... 2, 17, 18

iii

## <u>ISSUE PRESENTED</u>

1.     Whether the Court should enter a Protective Order requiring that Plaintiffs' deposition must proceed remotely via videoconference?

Plaintiffs Answer: YES

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Crawford v. FCA US LLC*,
  2022 WL 15898431 (E.D. Mich. Aug. 4, 2022)

*Grundy, et al. v. FCA US LLC*,
  2022 WL 909351 (E.D. Mich. Mar. 28, 2022)

*Kelmendi v. Hogan*,
  2023 WL 8440494 (E.D. Mich. Nov. 1, 2023)

*Llewellyn-Jones v. Metro Prop. Grp., LLC*,
  2014 WL 12659589 (E.D. Mich. Dec. 17, 2014)

*PC-41 DOE v. Poly Prep Country Day School*,
  2022 WL 420619 (E.D.N.Y. Jan. 20, 2022)

*Reynolds v. FCA US, LLC*,
  2022 WL 21842693 (E.D. Mich. May 26, 2022)

## I.   __INTRODUCTION__

For many years, but especially since 2020, attorneys and witnesses have regularly participated in depositions, court hearings, and trials through videoconference, which: (1) protects witnesses and attorneys from the significant health risks posed by COVID-19, the flu, RSV, and other pathogens, and (2) alleviates the significant burden and expense of requiring individuals to travel across the country for a deposition when remote options are available and sufficient. As the legal industry has learned over the past four years, these proceedings can be conducted effectively, efficiently, and obstacle-free through remote means.

Despite the availability of remote methods, FCA seeks to force nearly sixty Plaintiffs to travel across the country in the middle of winter. Not only will these three-day trips unnecessarily expose Plaintiffs to COVID-19 and other diseases, but it will also require many of them to take unpaid time off work, find and pay for childcare, and abstain from their personal and familial responsibilities. The specific hardships this would pose for each Plaintiff is included in Exhibit A. FCA contends that if Plaintiffs fail to make these sacrifices, then they should not be able to prosecute their claims as to the dangerous Spontaneous Fire Risk Defect in the vehicles FCA manufactured, advertised, and sold to nearly 20,000 consumers nationwide. FCA's blatant attempts to discourage Plaintiffs from litigating their claims should be rejected and remote depositions should be ordered by the Court.

## II.   <u>LEGAL STANDARD</u>

"The decision to grant a Motion for Protective Order is within the trial court's discretion." *Powerhouse Licensing, LLC v. Checkfree Servs., Corp.*, 2013 WL 5874814, at *2 (E.D. Mich. Oct. 30, 2013) (internal citations omitted). Pursuant to Rule 30(a)(1) of the Federal Rules of Civil Procedure, a party may take a deposition of another party, but the court may limit the manner, means and locations of such depositions. When "the parties have a dispute over the location of a deposition, courts have wide discretion in resolving the matter." *Kelmendi v. Hogan*, 2023 WL 8440494, at *1 (E.D. Mich. Nov. 1, 2023) (citing *Sun Life Assurance Co. of Canada v. Conestoga Trust Servs.* 2016 WL 9781803, at *1 (E.D. Tenn. Jan. 4, 2016)).

A court may grant a party's request to virtually depose a witness, "for good cause," in order to protect a party from "undue burden or expense." *Reynolds v. FCA US, LLC*, 2022 WL 21842693, *1 (E.D. Mich. May 26, 2022) (citing Fed. R. Civ. P. 26(c)(1)). Indeed, Rule 30(b)(4) expressly provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means."

## III.   ARGUMENT

### A.   Health Concerns Related to COVID-19 And Other Winter Pathogens Constitute Good Cause for Remote Depositions

The circumstances surrounding the rise in COVID-19, as well as surges of the flu, RSV, and other winter pathogens demonstrate good cause to support the issuance

2

of a protective order requiring the depositions of Plaintiffs to take place via videoconference. Courts around the country, including in this District, have issued such orders to protect parties from these significant health risks. *Reynolds*, 2022 WL 21842693, at *1 (granting plaintiffs' motion for protective order to appear for depositions remotely and explaining that, among other reasons, "the substantial health risk posed by the COVID-19 pandemic is a compelling reason to allow depositions to proceed remotely"); *Grundy, et al. v. FCA US LLC*, 2022 WL 909351 (E.D. Mich. Mar. 28, 2022) (overruling defendant's objections and adopting the Special Master's Report and Recommendation that plaintiffs' motion for a protective order to conduct remote depositions be granted due to COVID-19 concerns); *Damron v. Liberty Mut. Ins. Co.* 2020 WL 3071850, at *1 (E.D. Mich. June 10, 2020) (holding that during the current pandemic, "[v]ideo or teleconference depositions and preparation are the 'new normal' and most likely will be for some time") (citing *Wilkens v. ValueHealth, LLC*, 2020 WL 2496001, at * 2 (D. Kan. May 14, 2020)); *Faford v. Grand Trunk W. R.R. Co.*, 335 F.R.D. 503, 506 (E.D. Mich. 2020) ("depositions by videoconference have emerged as the preferred method of coping with the complications and perils this pandemic has wrought."); *Vargas v. Evergreen Prof. Recoveries, Inc.*, 2022 WL 856991, at *1-2 (W.D. Wash. Mar. 23, 2022) (granting plaintiff's protective order to appear for a deposition remotely and explaining that "[t]he pandemic is not over").

In *Sherrod, Teed, Vanderhagen and Ware v. VNA*, 2022 WL 965025 (E.D.

Mich. Mar. 30, 2022), Judge Levy held that "[s]everal courts have found that the

risks posed by COVID-19 can constitute 'compelling circumstances' sufficient to

permit remote testimony." *Id.* at *1 (collecting cases) (allowing a trial witness to

testify via live video feed). Additionally, Judge Kumar explained in the *Grundy*

opinion,

> [G]iven . . . how swiftly new variants can emerge and spread, the
> potentially waning protection of vaccinations and boosters, and the fact
> that these depositions would require travel, as well as several hours in
> a confined space for the examination itself, remote depositions continue
> to be prudent and reasonable in this instance.

*Grundy*, 2022 WL 909351, at *4 (citing *Chamberlain v. Menard, Inc.*, 2021 WL

5277154, at *2 (E.D. Mich. May 25, 2021)).

Courts across the country continue to find that COVID-19 remains a valid

concern that calls for depositions to proceed remotely. *Kamradt v. Esurance Ins.

Co.*, 2023 WL 8355892, at *3 (W.D. Wash. Dec. 1, 2023) (rejecting defendant's

"attempts to downplay Plaintiff's hardship concerns by noting that the states of

emergency previously occasioned by the COVID pandemic have been lifted on both

a state and national level," and instead finding that COVID remains a valid concern

and the virus, along with the lived and learned experience of the Court during the

pandemic, is "an active consideration that the Court must routinely confront in

conducting the business of the Court"); *Monterey Bay Mil. Hous., LLC v. Ambac*

*Assurance Corp.*, 2023 WL 1469030, at *1 (S.D.N.Y. Feb. 2, 2023) (Letter-motion to compel party to produce a witness for an in-person deposition denied after concerns expressed over potential COVID-19 exposure); *Arellano v. Calderon*, 2023 WL 2646435, at *2 (S.D. Cal. Mar. 27, 2023) (allowing deposition to be conducted remotely "in light of the COVID-19 pandemic and the travel costs related to attending the deposition in person"). Yet, in the face of these wholly unnecessary risks, FCA seeks to force Plaintiffs to endanger their health by traveling to Michigan for in-person depositions.

FCA, in its response to this Motion, will undoubtedly argue that COVID-19 no longer poses the same risks it did two or three years ago, but the ongoing dangers should not be dismissed. CBS News recently reported that, according to the CDC, COVID-19 (as well as the flu and RSV) cases are on the rise and facing some of the steepest increases in many months, especially in Michigan. *See* Exhibit B, *COVID-19 now increasing again, especially in Midwest and Mid-Atlantic, CDC says*, CBS NEWS, December 1, 2023, https://www.cbsnews.com/news/covid-19-increasing-again-cdc-midwest-mid-atlantic/. "Close to 2 million Americans are now living in counties deemed to have 'high' levels of COVID-19 hospitalizations, where the CDC urges masking in public and other precautions to curb the threat posed by the virus." *Id.*

Further JN.1 is the fastest growing variant in the U.S. and is facing "rapid

growth" compared to other strains. *See* Exhibit C, *What to Know About the New COVID-19 Variant JN.1*, U.S. NEWS, December 14, 2023 https://www.usnews.com/news/health-news/articles/2023-12-14/what-to-know-about-the-new-covid-19-variant-jn-1. Between the rise in COVID, as well as the reported surges of the flu, RSV, and other winter pathogens, *see* Exhibit D, *Forget the 'tripledemic.' The U.S. is headed for a 'syndemic' this winter—and experts warn we're not prepared*, FORTUNE WELL, December 1, 2023 https://fortune.com/well/2023/12/01/flu-covid-rsv-syndemic-tripledemic-winter-2023-respiratory-virus/, in-person depositions pose significant health risks.

FCA's request for in-person depositions in Michigan is clearly burdensome and oppressive because it would unnecessarily expose Plaintiffs and their loved ones to risks of getting sick. *Faford*, 335 F.R.D. at 505 ("Although most other lawyers have warmed to the idea of technology, defense counsel refuses to budge . . . [T]hey stand on soft ground."). FCA's request would require nearly sixty Plaintiffs who live outside of Michigan and filed suit in the Eastern District of Michigan, where FCA is headquartered, to travel (likely over the course of three days) for a deposition that could be easily conducted remotely. Their exposure to COVID-19 and other pathogens would not only exist on the airplane and airport, but also in the deposition room itself, where they would be required to spend multiple hours in a closed conference room near other persons whose vaccination status or recent exposure to

COVID-19 will be unknown, then travel home and potentially spread COVID-19 or other viruses to their families.

Some Plaintiffs have explained how they are particularly susceptible and concerned about COVID-19 exposure. *See* Exhibit A. But this should not even be necessary to grant a protective order here as "[d]emanding that deponents establish how medically vulnerable they are, or how risk-averse they have been in other contexts, would turn this Court into an epidemiological prognosticator—a role it declines to perform." *Reynolds*, 2022 WL 21842693, at *2.

In sum, FCA asks Plaintiffs to choose to either participate in this litigation (by appearing in-person for a deposition) or to protect themselves and their loved ones from an increased exposure to COVID-19 and other pathogens. Remote depositions would not only resolve Plaintiffs' concerns and the burdens they would face, but also pose no prejudice to FCA. *See Swenson v. GEICO Cas. Co*., 336 F.R.D. 206, 210 (D. Nev. 2020), *objections overruled*, 2020 WL 8871311 (D. Nev. Aug. 26, 2020) (finding that "remote depositions [are] an effective and appropriate means to keep cases moving forward"); *In re Broiler Chicken Antitrust Litig*., 2020 WL 3469166, at *8 (N.D. Ill. June 25, 2020) (finding remote depositions appropriate "to protect the safety and health of witnesses, counsel, court reporters, videographers, and other persons, and to move this case through the pretrial process at an acceptable pace during a time when in-person depositions may present risks to the health and

safety of people participating in them.").

In fact, over the past four years, defendants in this District (including FCA and its counsel) have either been ordered to or voluntarily chose to take plaintiff depositions remotely. *See, e.g.*, *Bledsoe, et al v. FCA US LLC, et al.*, Case No. 4:16-cv-14024 (Berg, J.) (nine plaintiffs deposed remotely); *Weidman, et al. v. Ford Motor Co.*, Case No. 2:18-cv-12719 (Drain, J.) (approximately 15 plaintiffs deposed remotely); *In re General Motors Corp. Air Conditioning Mktg. and Sales Practices Litig.*, Case No. 2:18-md-02818 (Leitman, J.) (approximately 15 plaintiffs deposed remotely); *Won v. General Motors Co.*, Case No. 2:19-cv-11044 (Lawson, J.) (approximately 39 plaintiffs deposed remotely); *Grundy, et al. v. FCA US LLC*, Case No. 2:20-cv-11231 (Kumar, J.) (over 20 plaintiffs deposed remotely); *Crawford v. FCA US LLC*, No. 2:20-CV-12341 (Murphy, J.) (more than 20 plaintiffs deposed remotely). Plaintiffs are unaware of a single instance in any of these cases where the defendant (including FCA) sought a second, in-person deposition because the remote deposition was insufficient to obtain needed testimony. Any such concerns raised by FCA constitute nothing more than self-serving conjecture.

**B.** **Requiring In-Person Depositions in the Eastern District of Michigan Would be Unduly Burdensome and Pose Significant Hardships on Plaintiffs**

As explained in Exhibit A, many Plaintiffs would suffer significant hardships if forced to travel to Michigan for their depositions. Examples of these hardships

include taking unpaid time off work (if time can be taken off at all without risking employment), leaving sick, elderly, or young family members that they care for, paying for childcare, etc. Plaintiffs provided these hardships to FCA on January 16, 2024, but FCA responded on January 26, 2024, and stated that it would not agree to Plaintiffs' proposal. *See* Exhibit E. For three Plaintiffs (Quattropani, Natale, and Vu), FCA states it will agree to remote depositions only if the three Plaintiffs provide a declaration verifying those circumstances "and verifying that, if they persist through trial, those same circumstances will preclude [their] attendance and ability to represent any class there." In essence, FCA seeks a sworn statement from the Plaintiffs that at some unknown time in the future, if similar circumstances persist, they will agree to not appear at trial. Plaintiffs refuse to take any position on their availability to attend a trial at some future date.

For the remaining Plaintiffs, FCA questions that in-person depositions in Michigan would actually require three days of travel. But surely, given the distance these Plaintiffs have to travel, they will need to fly to Michigan the day before the deposition. Then, the deposition itself may last up to seven hours on the record (a period of time that FCA and its counsel have fully utilized in depositions in other cases), likely ending in the late afternoon. Given the distance from the deposition location to the airport and the limited availability of evening flights, it is very likely that a return flight home will not be possible until the following morning.

Finally, FCA states that "FCA US offered to consider remote depositions for any plaintiff who would attest in a declaration to not having traveled in the past on account of that concern, not presently traveling, and not having any plans to travel for the foreseeable future, including to attend trial (since viruses will obviously exist at that point too)." But again, FCA misunderstands the reasoning behind Plaintiffs' request. Not only do these viruses increase the health risks to Plaintiffs and their families, *reasonable and effective alternatives exist to avoid those risks*. FCA itself (through its same counsel as here) has taken dozens of plaintiff depositions in this District with no complaints that a second, in-person deposition was needed due to an inability to adequately obtain testimony from the deponent. The fact that a Plaintiff may have had to fly in the past or will do so at some point in the future, does not belie Plaintiffs' request here and should not be the standard employed to determine whether requiring in-person depositions is unduly burdensome or oppressive.

Given that Plaintiffs' hardships satisfy the standard for a protective order and FCA has been unwilling to cooperate with remote deposition scheduling, Plaintiffs have sought Court intervention. *Tummings v. CSP Comm. Owner, LP*, 2019 WL 13257810, at *2 (E.D.N.C. Apr. 3, 2019) (finding good cause to order remote deposition since party explained he would suffer lost wages, had just started a new job and did not have enough vacation time, and leaving four children at home with

wife would be burdensome); *Maccarone v. Lineage Law, LLC*, 2018 WL 11541970, at *4 (M.D. La. Apr. 9, 2018) (finding good cause to order remote deposition when party claimed that traveling would be burdensome as she is needed at home to provide medical assistance to her parents).

Courts have also held that "[the] concern for costs is a sufficient basis to allow for remote depositions." *Reynolds*, 2022 WL 21842693, at *2 (citing *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 2014 WL 12659589, at *1 (E.D. Mich. Dec. 17, 2014) (allowing plaintiffs to appear virtually for their depositions "to limit the costs of the litigation," noting: "Rule 30(b)(4) serves to allow parties to control costs")); *Schoenherr v. Smith*, 2013 WL 2239304, at *2 (E.D. Mich. May 21, 2013) (finding that plaintiff had shown "good cause" for a remote deposition under Rule 26, observing: "parties routinely conduct depositions via videoconference, and courts encourage the same because doing so minimizes travel costs . . . ."). The Court in *Reynolds* considered plaintiffs' request that the depositions of *seven* named plaintiffs be conducted remotely and reasoned that "removing the necessity that … Plaintiffs and counsel on all sides book accommodations for travel and lodging—would significantly reduce the costs of litigation." *Id.* That same reasoning surely applies here with nearly sixty depositions being requested and FCA cannot refute the fact that remote depositions will be more expedient and cost-effective.

In-person depositions will undoubtedly result in last-minute cancellations due

to a Plaintiff or counsel becoming ill. This will necessitate wasted costs on flights and hotel accommodations, as well as any sacrifice (time off work, etc.) the Plaintiff made to travel to Michigan. Further, the logistics of scheduling nearly sixty depositions in Michigan cannot be understated. Between gathering availability for Plaintiffs, Plaintiffs' counsel, FCA's counsel, and court reporters, it is likely to take many months to complete these depositions. This would cause unnecessary delays that can and should be avoided.

Further, any argument that Plaintiffs should be forced to travel to Michigan for a deposition because they chose to file here should be rejected. The court in *PC-41 DOE v. Poly Prep Country Day School*, 2022 WL 420619 (E.D.N.Y. Jan. 20, 2022) rejected defendant's reliance on pre-pandemic cases and went on to hold that "[e]ven in a non-pandemic era, the argument [about plaintiffs selecting the forum] bears little weight on deciding the location of a deposition, where the reason the plaintiff sued in a district was not convenience, but a result of the location of the events in question." *Id.* (citing 8A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2112 (3d ed. 2021) ("If plaintiff has sued in a court far distant from home because the transactions in question occurred in that district, and a suit elsewhere would probably have been transferred in any event, the usual rule requiring plaintiff to come to the forum for his or her deposition seems inappropriate.")).

Similarly, Plaintiffs who filed their complaint in this case did not do so out of "convenience." They did so because they assumed (correctly) that FCA would argue that Michigan is the proper venue for this case. *See* Exhibit F, FCA's Opposition to Motion to Transfer Actions to the Northern or Central District of California for Coordinated or Consolidated Pretrial Purposes, MDL No. 3040, Dkt. 23 ("…FCA US has already filed motions seeking transfer of three class actions pending in California to Michigan under the first-to-file rule and 28 U.S.C. § 1404…To the extent an MDL is established, the Eastern District of Michigan is the most logical and convenient forum."). If each Plaintiff had filed suit in their home jurisdiction (a wasteful and ineffective practice), the more than thirty cases would have undoubtedly been consolidated and transferred to this District.

Plaintiffs are cognizant of this Court's ruling in *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 4216193 (E.D. Mich. Sept. 22, 2017), requiring plaintiffs to appear for depositions in the jurisdictions they filed suit in. This Motion differs from *Monostable* in numerous respects. First, plaintiffs in *Monostable* "did not [] proffer any specific information relating to their individual or financial personal circumstances." *Id.* at *2. Plaintiffs do so here in Exhibit A. Second, the crux of plaintiffs' request in *Monostable* was to schedule in-person depositions near where each plaintiff resided, which the Court rejected and found that traveling from state to state would be more inefficient and time consuming than

13

deposing plaintiffs in a central location. *Id.* at *4. Finally, the availability and ease of using videoconference services has greatly improved due to pandemic mandates. Courts have held trials via Zoom and many courts continue to use Zoom for hearings or status conferences. The recent case law from across the country supports the use of Zoom depositions to minimize cost and time inefficiencies, especially when a party has shown good cause that an in-person deposition would be unduly burdensome, as Plaintiffs have done here.

## C.   Remote Depositions Via Videoconference Have Long Been Effective Alternatives to In-Person Depositions and Would Not Unduly Prejudice FCA

Once the movant makes a showing of good cause, the burden shifts to the opposing party to show how it would be prejudiced if the depositions were taken remotely. *Jahr v. IU Int'l Corp.*, 109 F.R.D. 429, 431 (M.D.N.C. 1986). Plaintiffs' request for remote depositions is not only not prejudicial to FCA, but has long been, and continues to be a reasonable, manageable, "effective and appropriate means to keep cases moving forward." *Crawford v. FCA US LLC*, 2022 WL 15898431, at *1 (E.D. Mich. Aug. 4, 2022) (quoting *Swenson v. Geico Cas. Co.*, 336 F.R.D. at 210).

In fact, this court explained in the *Reynolds* opinion that, "a video deposition provides for an adequate assessment of credibility by allowing counsel to view the 'deponent's mannerisms and demeanor,' *Schoenherr*, 2013 WL 2239304, at *2, and thus it may 'actually [ ] provide a better opportunity for ... counsel to observe the

demeanor of the witness' than an in-person deposition, at which the deponent may (understandably) prefer to remain masked, *Rouviere*, 471 F. Supp. 3d at 576." *Reynolds*, 2022 WL 21842693, at *3.

In *Reynolds* this court rejected defendant's arguments that virtual depositions (i) render it difficult to assess the deponents' credibility, (ii) create a risk of attorneys providing off-camera cues or of deponents improperly accessing materials mid-deposition, and (iii) introduce unnecessary technological difficulties, and found that *remote depositions pose no significant risk of prejudice*. *Id*. The court reasoned that even the need to use voluminous and highly detailed exhibits does not establish prejudice for a video deposition as it can be managed efficiently via Zoom or other accessible virtual online platforms. *Id*.

Moreover, many resources are available to facilitate remote depositions, including the use of screen share and the assistance provided by videoconferencing staff before and during depositions. Commonplace usage and advances in videoconferencing technology have made remote depositions an acceptable means for discovery long before the pandemic. *See, e.g.*, *Llewellyn-Jones*, 2014 WL 12659589, at *1; *Schoenherr*, 2013 WL 2239304, at *2; *Rouviere v. DePuy Orthopaedics, Inc*., 471 F. Supp. 3d 571, 575–76 (S.D.N.Y. 2020) ("remote depositions are 'a presumptively valid means of discovery'") (citing *Usov v. Lazar*, 2015 WL 5052497, at *2 (S.D.N.Y. Aug. 25, 2015)).

Remote depositions via streaming video allow the deposing party to assess the witnesses' demeanor while they testify under oath. *Pursley v. City of Rockford*, 2020 WL 6149578, at *2 (N.D. Ill. Oct. 20, 2020); *Learning Res., Inc. v. Playgo Toys Enterprises Ltd.*, 335 F.R.D. 536, 539 (N.D. Ill. June 16, 2020) ("[M]any courts have held that remote videoconference depositions offer the deposing party a sufficient opportunity to evaluate a deponent's nonverbal responses, demeanor, and overall credibility."). The court in *Poly Prep*, 2022 WL 420619, at *1 analyzed this issue and explained that, "[r]emote depositions are the 'new normal' and 'the more recent court decisions permitting remote depositions during the pandemic build on pre-pandemic case law that liberally allowed for and encouraged remote depositions as the technology for taking depositions in that way has improved significantly over time." *Id.* (quoting *Rouviere*, 471 F. Supp. 3d at 574).

The court in *Poly Prep* also rejected defendant's "conclusory arguments about remote depositions—cues being provided to a witness, inability to judge demeanor, and technological limitations" and considered them "groundless, generic assertions that have no basis in this case, and are insufficient to require an in-person deposition." *Id.* at *2 (collecting cases). "Technology has developed, and lawyers are quite capable, two years into the pandemic . . . to conduct depositions remotely without court intervention and to resolve dispute[s] regarding in-person depositions and to agree on remote deposition protocols." *Id.* (collecting cases). Similarly, the

16

court in *Sherrod* held that "several courts have managed to hold entire trials using zoom technology." *Sherrod*, 2022 WL 965025, at *1. Indeed, this Court in *Reynolds* reasoned that "[i]f this court has successfully conduct[ed] remote trials, it expects that counsel can manage remote depositions." *Reynolds*, 2022 WL 21842693, at *3 (citing *Jones v. Prudential Security, Inc.*, Case No. 18-cv-11960 (four-day jury trial complete with jury selection, the presentation of voluminous exhibits, and the testimony of six witnesses conducted entirely over Zoom with minimal technological difficulties); *Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n*, 2022 WL 1467650, at *4 (6th Cir. May 10, 2022) (decision resulting from remote seven-day bench trial, including complex expert testimony and voluminous exhibits, upheld over due process challenge based on technology difficulties, and recognized that "a sizeable portion of the population has adopted videoconferencing technology for everyday use…")).

Even just recently, this Court reiterated that generalized concerns about a remote deposition being inferior to an in-person one is insufficient to overcome a legitimate reason to conduct a remote deposition. *See Kelmendi*, 2023 WL 8440494, at *2 (noting that videoconferencing technology allows parties to see and hear each other and respond to questions in real time). Allowing a deposition to proceed when a person has a legitimate reason to not be physically present, as Plaintiffs do here, would effectively render Rule 30(b)(4) toothless. *Id.* at 575 (rejecting defendant's

17

preference for an in-person deposition given that "if the lack of being physically present with the witness were enough prejudice to defeat the holding of a remote deposition, then Rule 30(b)(4) would be rendered meaningless").

As the court in *Llewellyn-Jones* explained, "if the defendants find, after taking the depositions via video conference facilities, that they are not able to obtain all the information that they might have obtained in an in-person deposition, and can describe such prejudice with particularity, the Court will permit them to re-apply for an order to compel the plaintiffs to appear in this district for further depositions." *Llewellyn-Jones*, 2014 WL 12659589, at *1. The same can be ordered here.

Any claim by FCA that remote depositions cannot successfully be utilized in this case is without merit and contrary to FCA's own experience. As mentioned above, FCA and numerous other defendants in similar class actions have successfully taken remote depositions of dozens of plaintiffs without issue. FCA's arguments should be rejected, and remote depositions should be ordered.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Protective Order and require that depositions be conducted remotely.

Dated: February 6, 2024

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

/s/ *E. Powell Miller*_____
E. Powell Miller (P39487)
Dennis A. Lienhardt (P81118)
Dana E. Fraser (P82873)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dal@millerlawpc.com
def@millerlawpc.com

**HAGENS BERMAN SOBOL
SHAPIRO LLP**
Steve W. Berman
Thomas E. Loeser
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
toml@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs
and the Proposed Class*

**BARRACK RODOS & BACINE**
Stephen R. Basser
Samuel M. Ward
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
sbasser@barrack.com

**COTCHETT, PITRE &
McCARTHY**
Niall McCarthy
Karin Swope

19

840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
NMcCarthy@cpmlegal.com
Kswope@cpmlegal.com

**CASEY GERRY SCHENK
FRANCAVILLA BLATT &
PENFIELD LLP**
Gayle Blatt
Camille Guerra
110 Laurel Street
San Diego, CA 92101-1486
Telephone: (619) 238-1811
gmb@cglaw.com

*Interim Plaintiffs' Steering Committee
for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, certify that on February 6, 2024, the foregoing was electronically filed using the CM/ECF system which will send notification of such filing to the e-amil address registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ E. Powell Miller*
E. Powell Miller
