# UNITED STATES DISTRICT COUR
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE:  CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION | Case No. 2:22-MD-03040-DML-EAS |
| | Honorable David M. Lawson |
| MDL No. 3040 | Magistrate Judge Elizabeth A. Stafford |
| *This Document Relates to:  ALL CASES* | |

# DEFENDANT FCA US LLC'S OPPOSITION
# TO PLAINTIFFS' MOTION FOR CURATIVE NOTICE
# PURSUANT TO RULE 23(d)

# TABLE OF CONTENTS

Page

ISSUE PRESENTED ................................................................................1

CONTROLLING OR MOST APPROPRIATE AUTHORITY ...............................2

I.  INTRODUCTION ..............................................................................1

II. RELEVANT FACTS ..........................................................................3

      A.     NHTSA Recall No. 22V-077. ..............................................3

      B.     Plaintiffs' Proposed "Corrective" Notice...............................7

III.  ARGUMENT ...................................................................................9

      A.     Rule 23(d) Does Not Authorize Plaintiffs' Blatant Solicitation Effort.9

      B.     Plaintiffs' "Corrective Notice" Is Preempted......................14

      C.     Other Reasons To Deny Plaintiffs' Motion. ........................21

IV.  CONCLUSION................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................22

*Center for Auto Safety v. Dole*, 846 F.2d 1532 (D.C. Cir. 1988) ...........................20

*Cherner v Transitron Electronic Corp.*, 201 F.Supp. 934 (D.Mass. 1962)................13

*Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374 (S.D.Ill.
    2008) ..........................................................................................................23

*Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Cir. 2016)........................................22

*Diaz v. Ford Motor Co.*, 2023 WL 6164455 (E.D.Mich. 2023).............................18

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974) ...........................................23

*Fox v. Cnty. of Saginaw by Bd. of Commissioners*, 2022 WL 597244
    (E.D.Mich. 2022) .......................................................................................1, 9

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000)...........................................17

*Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923 (9th
    Cir. 2010) ......................................................................................................20

*In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL
    1382297 (E.D.Mich. 2017)........................................................................18, 19

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. &
    Sales Pracs. Litig.*, 65 F.4th 851 (6th Cir.), *cert. denied sub nom.*
    *Lloyd v. Ford Motor Co.*, 144 S. Ct. 332 (2023).................................................15

*James v. Detroit Prop. Exch.*, 2019 WL 9098024 (E.D.Mich. 2019) ...........9, 11, 12

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) .....................................................20

*Maximus, Inc. v. Apryl Tyler*, 2024 WL 340811 (E.D.Mich. 2024)......................22

*McDaniel v. Upsher-Smith Labs.*, 893 F.3d 941 (6th Cir. 2018) ...........................15

*McKenzie v. Federal Exp. Corp.*, 765 F.Supp.2d 1222 (C.D.Cal. 2011) ...............22

**Statutes and Constitutional Provisions**

49 U.S.C. § 30101 ................................................................................................17

49 U.S.C. § 30103(b)(1) ......................................................................................21

49 U.S.C. § 30118 .........................................................................................*passim*

49 U.S.C. § 30119 ...............................................................................2, 4, 16, 17

49 U.S.C. § 30120 ..........................................................................................16, 19

**Other Authorities**

49 C.F.R. § 1.95 .................................................................................2, 16, 17

49 C.F.R. § 501.1 ................................................................................................16

49 C.F.R. § 501.2 ................................................................................................16

49 C.F.R. § 554.1 ................................................................................................16

49 C.F.R. § 573 .............................................................................................3, 4, 19

49 C.F.R § 1.94 ....................................................................................................5

49 C.F.R § 554.5 ............................................................................................7, 19

**ISSUE PRESENTED**

1.    Should Plaintiffs' request for a "corrective notice" be denied when it falls outside the scope of Rule 23(d), the relief is preempted, and Plaintiffs have otherwise failed in their burden to establish the relief is available and necessary?

      The Court should respond:  "Yes."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

49 C.F.R § 1.94

49 C.F.R § 554.5

49 U.S.C. § 301, *et seq.*

Advisory Committee Notes to Fed. R. Civ. P. 23

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 871 (2000)

*Diaz v. Ford Motor Co.*, 2023 WL 6164455, *4 (E.D.Mich. 2023)

*Fox v. Cnty. of Saginaw by Bd. of Commissioners*, 2022 WL 597244, *2 (E.D.Mich. 2022)

## I.  INTRODUCTION

Plaintiffs move this Court for unprecedented relief in the form of a purported "corrective notice," asking this Court to tell thousands of vehicle owners that a recall communication FCA US was required to send under the Motor Vehicle Safety Act—which the National Highway Traffic Administration ("NHTSA") reviewed and approved—is "misleading."[1]  Even if there were a factual basis for that claim in the record (there is not), there is no legal basis for sending the so-call "corrective notice."

As an initial matter, Plaintiffs' motion is based entirely on Rule 23(d).  Yet any notice under that Rule is "restricted to the minimum necessary to correct the effects of improper conduct under Rule 23."  *Fox v. Cnty. of Saginaw by Bd. of Commissioners*, 2022 WL 597244, *2 (E.D.Mich. 2022).  Notably, there are zero allegations in Plaintiffs' Motion about FCA US engaging in "improper conduct under Rule 23" (*e.g.*, improper solicitation of releases, exclusions or objections).  Instead, Plaintiffs are asking for something entirely outside of Rule 23(d).  Specifically, they ask this Court to make a premature determination on the merits before discovery closes—based solely on two affidavits—that FCA US's recall does not work, and then inform vehicle owners of that determination.

---

[1] *See, generally*, Motion for Curative Notice Pursuant to Rule 23(d) (ECF #77) (PageID.3984-4008) ("Pl. Mtn.").

In other words, Plaintiffs are asking for a summary judgment finding on whether a defect still exists, and then a class notice saying it does, all without filing a summary judgment motion, moving for class certification, or trying to meet the requirements of Rules 23 and 56. And, worse yet, the notice they propose does the opposite of "correcting" improper conduct under Rule 23. Indeed, the notice itself is a highly improper solicitation because Plaintiffs want the Court to invite vehicle owners, pre-certification, to contact "interim co-lead counsel." *See* Pl. Mtn. at Ex. 3, p. 2 (PageID.4024).

While Rule 23 does not permit the relief Plaintiffs seek, preemption absolutely prohibits it. The NHTSA is the only entity with authority to supervise and facilitate recall communications with vehicle owners, and a comprehensive scheme of federal regulations occupy the field. *See*, *e.g.*, 49 C.F.R. §§ 1.94-1.95. Indeed, 49 U.S.C. §§ 30118 and 30119 specifically proscribe the timing and contents of communications with vehicle owners in connection with ongoing recalls, and specifically provide for "additional notifications" where needed.

With their motion, Plaintiffs attempt to usurp the NHTSA's exclusive authority in this area. And, if Plaintiffs are dissatisfied with the recall-related notices NHTSA has approved, their avenue for recourse is a petition to the NHTSA. *See* 49 U.S.C. § 30118(e) ("[*a*]*ny interested person may make written and oral*

- 2 -

*presentations of information, views, and arguments on whether the manufacturer has reasonably met the notification requirements*") (emphasis added).

But, rather than file a petition with the NHTSA, Plaintiffs are asking the Court to tread into the agency's territory based on a novel construction of Rule 23(d) and issue a rebuke of a NHTSA-approved communication in an on-going recall.

## II. RELEVANT FACTS

**A.    NHTSA Recall No. 22V-077.**

On August 31, 2021, FCA US's Technical Safety and Regulatory Compliance group detected a potential trend in certain model-year 2017 and 2018 Chrysler Pacifica Plug-In Hybrid Electric Vehicles ("PHEVs") where a fire could occur while the vehicle was parked.  *See* Declaration of Dave Case ("Case Decl."), ¶ 5.  Up until that point, vehicle owners had reported a total of two vehicle fires.  *Id.*  While the investigation was ongoing, FCA US identified another ten potentially related vehicle fires for a total of twelve.  *Id.*

Based on its investigation, FCA US announced it would initiate a voluntary safety recall.  *Id.* at ¶ 6.  On February 11, 2022, FCA US submitted its "Part 573 Safety Recall Report," pursuant to 49 C.F.R. § 573, to the NHTSA's Office of Defect Investigation.  *Id.*

FCA US reported to the NHTSA that the root cause of these fires was still being investigated and that an underlying defect had not yet been identified.  *Id.* at

¶ 7.   Within a business day, the NHTSA (i) acknowledged FCA US's report, (ii) advised that FCA US's recall would be "conducted pursuant to Federal law," and (iii) formally initiated NHTSA Recall No. 22V-077.  *Id.*

Both as a general matter and specifically as it relates to Recall No. 22V-077, the NHTSA is responsible for reviewing and approving a manufacturer's planning and execution of recall campaigns, including updates and additional notices along the way.  *See id.* at ¶ 8; *see also*, *e.g.*, 49 U.S.C. §§ 30118-30119.  And, for those notices, the rules require that the NHTSA review and approve the communications to vehicle owners about recall-related information.  *See* Case Decl., ¶ 8; *see also*, *e.g.*, 49 U.S.C. § 30119(d)(3) ("In addition to the notification required under paragraphs (1) and (2), if the Secretary decides that public notice is required for motor vehicle safety, public notice shall be given by the manufacturer ***in the way required by the Secretary*** after consulting with the manufacturer.  In deciding whether public notice is required, ***the Secretary*** shall consider—(A) the magnitude of the risk to motor vehicle safety caused by the defect or noncompliance; and (B) the cost of public notice compared to the additional number of owners the notice may reach.") (emphasis added).

The NHTSA also corroborates the manufacturer's compliance with the relevant legal requirements, including, for instance, (i) investigating and verifying the root cause of the problem giving rise to the recall, (ii) determining which vehicles

are or may be subject to the recall, (iii) identifying and implementing the appropriate remedy, (iv) planning and coordinating the remedy's roll-out to the field, and (v) using the specific text and content that the NHTSA has reviewed and approved for the manufacturer's communications with owners of the affected vehicles.  *See* Case Decl., ¶ 9; *see also*, *e.g.*, 49 U.S.C. § 30118(c), (f) (notification campaigns); *id.* at § 30119 (notification procedures); *id.* at § 30120(c)(3), (d) (adequacy of repairs and remedy program); 49 C.F.R § 1.94(b) (tasking the NHTSA with "investigating safety-related defects and non-compliance in motor vehicles and motor vehicle equipment and administering related recalls").

For the recall at issue here, FCA US sent notices under the NHTSA's purview to authorized dealers about the issue it had identified and advised vehicle owners that a remedy for the condition was not yet available, but that vehicle owners should "refrain from recharging [the vehicles], and to park them away from structures and other vehicles."  *See* Case Decl., ¶ 10.

As its investigation continued, for the twelve fires it had identified, FCA US concluded that the components involved were part of the vehicles' battery pack assemblies, but no uniform defect or cause for the fires could be determined.  *Id.* at ¶ 11.  Thus, FCA US sent another notice, updating vehicle owners again:

### WHY DOES MY VEHICLE NEED REPAIRS?

Some of the [2014-2018 model-year (RU) Chrysler Pacifica] Plug-in Hybrid Electric Vehicles (PHEV) may experience a fire potentially

originating in the center of the vehicle underbody with the ignition in the "OFF" mode.  A vehicle fire can result in increased risk of occupant injury and/or injury to persons outside the vehicle, as well as property damage.

> **<u>FCA is advising owners of these hybrid vehicles to refrain from recharging the high voltage battery, and to park them away from structures and other vehicles until your vehicle is remedied.</u>**

> **HOW DO I RESOLVE THIS IMPORTANT SAFETY ISSUE?**

> FCA US will repair your vehicle free of charge (parts and labor).  To do this, your dealer will update the High Voltage Battery Pack Control Module (BPCM) software to monitor battery pack assembly operational status for conditions that could lead to a fire in the battery pack assembly.  In addition, we will inspect and if necessary, replace the battery pack assembly.  Inspection involves charging and a full diagnostic assessment of the high voltage battery.  The estimated repair time is **1.5 to 2 days**.  While your vehicle is serviced FCA US will provide you a rental vehicle or courtesy transportation free of charge.

*See id.* (emphasis in original).

As of January 2024, out of a total recall population of 16,741 vehicles: (i) 12,584 had undergone the recall remedy, (ii) 204 could not be contacted, and (iii) 1,010 were either scrapped, stolen, or exported.  *Id.* at ¶¶ 12-13.

On January 16, 2024, after reports of post-recall fires, including the same ones upon which Plaintiffs rely, ***the NHTSA, exercising its ongoing oversight functions, opened its own independent investigation into the reports***, and its investigation is ongoing:

The [NHTSA's] Office of Defects Investigation (ODI)[2] is opening this Recall Query (RQ) *to review the effectiveness of the original recall remedy*, *understand the root cause* of the battery fires, *investigate additional reports* of Pacifica PHEV HV battery fires, *and to increase monitoring of the manufacturer root cause investigation*.

*See id.* at ¶ 14.[3]

## B.    Plaintiffs' Proposed "Corrective" Notice.

Plaintiffs submit declarations by two Pacifica PHEV owners who attest their vehicles underwent the recall remedy and then experienced a fire thereafter, in November 2022 and November 2023, respectively.  *See* Pl. Mtn. at Exs. 1 and 2 (PageID.4011-4021).  FCA US has not yet deposed these declarants or finished investigating their allegations.  Their two vehicles account for 0.015% of all vehicles that have undergone the recall remedy up to this point and 0.011% of all vehicles that are subject to the recall.  *See* Case Decl., ¶ 14.

Based on the two declarations, Plaintiffs request the Court's authorization of a "**CORRECTIVE NOTICE**" that tells vehicle owners the Court has already "**determined**" FCA US's most recent owner notification letter "**was misleading**

---

[2]The ODI "conducts investigations to implement the provisions of the Act concerning the identification and correction of safety-related defects in motor vehicles and motor vehicle equipment.  It elicits from every available source and *evaluates on a continuing basis any information suggesting the existence of a safety-related defect*."  *See* 49 C.F.R § 554.5 (emphasis added).

[3]*See also* NHTSA Action No. RQ24001 "Open Investigation" Summary and ODI Opening Resume at https://www.nhtsa.gov/vehicle/2018/CHRYSLER/PACIFICA%252520PHEV/VAN/FWD#investigations (emphasis added).

**and omitted important information**." *See* Pl. Mtn. at Ex. 3, pp. 1-2 (PageID.4023-4024) (emphasis in original).  Plaintiffs also ask the Court to declare that "**the recall repair does not address the root cause of the vehicle fires**." *Id.* at p. 2 (PageID.4024) (emphasis in original).

Then, rather than direct vehicle owners to the NHTSA, or FCA US, or anyone else for additional information, Plaintiffs' counsel wants this Court to invite vehicle owners to contact *them* instead:

### <u>FURTHER INFORMATION</u>

The Court has appointed interim co-lead counsel to prosecute this putative class action on behalf of consumers.  They are willing to speak with you and answer any questions you may have about this Corrective Notice.  Please feel free to contact:

The Miller Law Firm, P.C.
950 W. University Dr., Suite 300
Rochester, MI 48307
Phone:  248-841-2200
Email:  dal@millerlawpc.com

Hagens Berman Sobol Shapiro
1301 Second Avenue, Suite 2000
Seattle, WA 98040
Phone:  206-623-7292
Email:  Pacifica@HBSSLAW.COM

**You should not contact the court with questions.  This Corrective Notice and its content have been authorized by the United States District Court for the Eastern District of Michigan, the Honorable David M. Lawson, United States District Judge.**

*Id.* (emphasis in original).

- 8 -

### III.  ARGUMENT

**A.     Rule 23(d) Does Not Authorize Plaintiffs' Blatant Solicitation Effort.**

Rule 23(d) plainly does not apply here.  The Rule authorizes orders generally directed at the unique ***procedural*** or ***administrative*** circumstances of a class action.  *See* Fed. R. Civ. P. 23(d).  And, even when a given circumstance implicates a procedural or administrative concern, any corresponding order that addresses it should still "***be restricted to the minimum necessary to correct the effects of improper conduct under Rule 23***."  *Fox*, 2022 WL 597244 at *2 (emphasis added).

Plaintiffs ask that this Court authorize a "corrective" notice under Rule 23(d), but they identify no procedural or administrative problem and no "improper conduct" that requires Rule 23(d)'s correction.  Nor do they identify any case where any court has issued a "corrective" notice in an analogous context.  Instead, Plaintiffs rely solely on the purportedly "***broad***" nature of a court's "prophylactic power … under Rule 23(d)."  *See* Pl. Mtn., p. 5 (PageID.3997) (emphasis added).

Nevertheless, as even the authority Plaintiffs rely on confirms, a district court's discretion to act under Rule 23(d) "***is not unlimited***, and indeed is ***bounded by the relevant provisions of the Federal Rules***."  *James v. Detroit Prop. Exch.*, 2019 WL 9098024, *10 (E.D.Mich. 2019).  And Rule 23(d) identifies its own boundaries:

(d)  CONDUCTING THE ACTION

(1)  *In General.*  In conducting an action under this rule, the court may issue orders that:

(A)  determine the ***course of proceedings*** or prescribe measures to prevent undue repetition or complication in ***presenting evidence or argument***;

(B)  require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of:

(i) any ***step in the action***;

(ii) the ***proposed extent of the judgment***; or

(iii) the members' opportunity to signify ***whether they consider the representation fair and adequate***, to ***intervene and present claims or defenses***, or to otherwise ***come into the action***;

(C)  ***impose conditions on the representative parties*** or on intervenors;

(D)  require that the pleadings be amended to ***eliminate allegations*** about representation of absent persons and that the action proceed accordingly; or

(E)  ***deal with similar procedural matters***.

*See* Fed. R. Civ. P. 23(d) (emphasis added).

In short, Rule 23 essentially provides for procedural or administrative "clean-up," ***not*** for substantive determinations of ***fact*** or ***law***.  And Plaintiffs' cited authority says nothing different.  For instance, in *Fox v. Saginaw Cty., Mich.* the Sixth Circuit affirmed a district court's injunction barring a ***non-party's*** communications with class members and the court's issuance of a curative notice when that non-party

- 10 -

engaged class members for the purpose of pursuing individualized claims, and then **opted them out of a certified class without telling them about it**. 35 F.4th 1042, 1045-46, 1048-50 (6th Cir. 2022).

And, in *In re Payment Card Interchange*, a third-party claims filer sent solicitations "falsely representing to class members that signing up with [the third-party] was a prerequisite to recovery and that class members must sign up with [it] right away to receive their refund." 2014 WL 4966072, *1, 9-12 (E.D.N.Y. 2014). The court thus ordered that any communication by a claims filing company in the litigation be accompanied by a notice "***making clear that class members need not sign up for a third-party service*** in order to participate in any monetary relief and explaining that no-cost assistance will be available." *Id.* at *19 (emphasis added).

Other of Plaintiffs' authorities further illustrate just how ill-fitting the relief Plaintiffs request under Rule 23(d) is to the present circumstances. Again, just by way of example, in *James v. Detroit Prop. Exch.*, the defendant promised putative class members a monetary "gift" without telling them they would receive it only if they signed "a broad release of claims and related documents." 2019 WL 9098024 at *4, 9-11. Because of the "potential interference with the ***rights of the parties***," the court authorized a notice to be sent to putative class members allowing them thirty days to repudiate, if they wanted to, the release they may have signed. *Id.* at *1, 11 (emphasis added).

- 11 -

Similarly, in *O'Connor v. Uber Tech., Inc.*, the court authorized a notice when the defendant, upon being sued, sent an updated licensing agreement to its software users that contained a newly-added provision binding users to arbitration and precluding any litigation, including the pending class action. 2014 WL 1760314, *1-2 (N.D.Cal. 2014). There, the court determined a corrective notice should be sent "to safeguard generally the administering of justice and the integrity of the class certification process" by giving users "clear notice" of the new arbitration provision. *Id.* at *3, 7.

Ironically—because Plaintiffs' proposed "corrective" notice does the same thing[4]—the *O'Connor* court found the plaintiffs' proposed notice "problematic" because of its "partial tone," which "tend[ed] more to urge participation [in the litigation] rather than provide impartial information." *Id.* at *8-9. The *O'Connor* court explained that "[t]he Supreme Court has specifically noted that *communications that 'drum up' participation in the proceeding are among the potential abuses associated with communications to class members*." *Id.* at *8 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 n.12 (1981)) (internal marks omitted, emphasis added). Put another way, ***Plaintiffs ask for a Rule 23(d) order***

---

[4]*See*, *e.g.*, Pl. Mtn. at Ex. 3, p. 2 (PageID.4024) ("feel free to contact" the Court's "appointed interim co-lead counsel [for] prosecut[ing] this putative class action on behalf of consumers").

*that would include the exact type of messaging that Rule 23(d) is supposed to preclude*.

The Advisory Committee notes to Rule 23 say the same thing too, specifically warning against using subsection (d) for the "***undesirable solicitation of claims***," which, again, is precisely what Plaintiffs here seek to do.  The Committee's reliance on *Cherner v Transitron Electronic Corp.*, 201 F.Supp. 934 (D.Mass. 1962) is particularly instructive.  In *Cherner*, the court denied a plaintiff's request to issue notice similar to that sought there, counseling that:

> No precedent supports the suggestion that the plaintiffs or their counsel have a moral duty to act as unsolicited champions of others …. [T]his Court concludes that at the present stage of the controversy (when there is no more reason to accept as true plaintiffs' declaration than defendants' answers), **Rule 23 should not be used "as a device to enable client solicitation**."  If this Court were to grant plaintiffs' motion, the normal consequence would be that many persons would incorrectly infer that this Court regarded the plaintiffs' complaint as prima facie well-founded and had required a prompt notice to all who had been victimized so that they might not by delay or inaction lose valuable rights.

*Id.* at 936 (emphasis added).

As it relates to FCA US, however, Plaintiffs do not argue it has "interfer[ed]" with any putative class members' rights to participate in this litigation or threatened "the integrity of the class certification process."  Rather, Plaintiffs simply assert that the NHTSA-approved recall notice is ***wrong*** and that ***this Court*** should unilaterally say the notice is "misleading and omitted important information" because two fires

occurred in vehicles that received the recall remedy—all while having the Court

funnel vehicle owners to contact Plaintiffs' counsel.  *See* § II.B, *supra*; *see also*

Pl. Mtn. at Ex. 3, p. 2 (PageID.4024).  Thus, even going by the authority Plaintiffs

rely on, the present factual circumstances fall well outside of Rule 23(d)'s express

considerations.

     And, in any event, the appropriate mechanism for raising any recall-related

issue is to report it directly to the NHTSA:

> ***Any interested person may make written and oral presentations of information, views, and arguments*** on whether the manufacturer has reasonably met the notification requirements.  If the Secretary decides that the manufacturer has not reasonably met the notification requirements, ***the Secretary shall order the manufacturer to take specified action to meet those requirements and may take any other action authorized under this chapter***.

*See* 49 U.S.C. § 300118(e) (emphasis added).

     Rule 23(d) does ***not*** empower courts to make substantive determinations of

fact or law, or conclusions about a NHTSA recall campaign's efficacy.  Nothing

about Rule 23(d) provides for a "corrective" notice, sent at Plaintiff's behest, to tell

putative class members that the Court has unilaterally determined as a matter of fact

that a recall remedy fails.

## B.   Plaintiffs' "Corrective Notice" Is Preempted.

     Relief that a plaintiff requests under a state law cause of action "can be

preempted expressly in a federal statute or regulation, or impliedly, where

- 14 -

congressional intent to preempt state law is inferred." *McDaniel v. Upsher-Smith Labs.*, 893 F.3d 941, 944 (6th Cir. 2018) (internal marks omitted).   Implied preemption occurs when either (i) "the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it;" or (ii) "it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 860 (6th Cir.) (internal marks omitted), *cert. denied sub nom. Lloyd v. Ford Motor Co.*, 144 S. Ct. 332 (2023).

Preemption applies here because a court-ordered notice about a supposed "misleading" statement in a vehicle recall notice would directly conflict with NHTSA's decision to approve that notice while improperly intruding into the comprehensive field of federal regulation Congress created in the Motor Vehicle Safety Act (*see* 49 U.S.C. § 301, *et seq.*) ("MVSA").  In the MVSA, Congress made clear its intent that recalls of motor vehicles should be pursued exclusively by the Secretary of Transportation under statutorily-created, and very detailed procedures, including:  how to make a final determination of whether a defect exists (49 U.S.C. § 30118); how to provide notification of a recall (*id.* at § 30119); and what remedies must be made available and how the costs should be paid/reimbursed (*id.* at § 30120).

By delegation (*see* 49 C.F.R. § 1.95), the Secretary of Transportation charged the NHTSA with "enforcing Federal motor vehicle safety standards and associated regulations, investigating possible safety-related defects, and making non-compliance and defect determinations" (*id.* at § 554.1, *et seq.*) as well as carrying out the specific provisions of the MVSA (*id.* at §§ 501.1, 501.2).

In addition to setting forth the procedure for conducting a recall, the MVSA also outlines the specific guidelines car manufacturers are to follow in informing affected motorists and dealers of a safety defect. See 49 U.S.C. §§ 30118-30119. Among other things, these provisions lay out explicit rules concerning the contents of the notification, including a description of the defect, an evaluation of its risks, the measures drivers should take to obtain a remedy, the earliest date on which the defect will be remedied without charge, and the procedures the recipient can take to inform the NHTSA of a manufacturer's noncompliance. *Id*. The statutes also outline the timing of notification, the persons who must receive notice, and the manner in which they shall receive it. *Id.*

FCA US must obtain the NHTSA's approval of the content, timing, and means of communicating with vehicle owners about a recall. *Id.*; *see also* Case Decl., ¶¶ 8-9. In addition, the MVSA authorizes the Secretary of Transportation to conduct a hearing where "[a]ny interested person may make written and oral presentations of information, views, and arguments on whether the manufacturer has

reasonably met the notification requirements." 49 U.S.C. § 30118(e). Upon a finding of noncompliance, "the Secretary shall order the manufacturer to take specified action to meet those requirements and may take any other [authorized] action." *Id.* Nothing in this comprehensive set of regulations permits Plaintiffs to initiate, coordinate, oversee, or consult on the notice that the NHTSA approves for FCA US to send out.

The NHTSA is the only entity with authority to supervise and facilitate notification to vehicle owners and dealers of an alleged vehicle safety defect—its authority is derived from express delegation by the Secretary of Transportation. See 49 C.F.R. § 1.95. Investigating and, when necessary, ordering and supervising the notification procedures for a defect, as well as the subsequent remedy, is one of the principal reasons Congress created the NHTSA. See 49 U.S.C. §§ 30101, 30119.

Setting aside the blatant solicitation of new clients in their proposed notice—which, if approved, would be inappropriately Court-sponsored and presumably FCA US-funded—Plaintiffs' request subverts what the NHTSA is already handling and directly conflicts with the NHTSA's delegated authority to approve the contents, timing, and means of recall-related notices. It also invites an improper trespass into a field that Congress and NHTSA have completely and actively occupied. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 871 (2000) (holding that a plaintiff's "no airbag" tort suit was preempted by the MVSA, noting that the plaintiffs' proposed

- 17 -

notice of defect would frustrate Congress's intent to set uniform federal safety standards by "avoid[ing] the conflict, uncertainty, cost, and occasional risk to safety itself that too many different safety-standard cooks might otherwise create").

As such, Plaintiffs' request to mandate their own "corrective notice," which would conflict with the ongoing recall and investigation, is preempted by the NHTSA's statutory authority and the established regulatory schemes that apply in these circumstances.  *See*, *e.g.*, *Diaz v. Ford Motor Co.*, 2023 WL 6164455, *4 (E.D.Mich. 2023) (declining request for "curative notice regarding the existence and cause of the Bushing Defect" because "[by] virtue of [the NHTSA recall process] … [the manufacturer] has subjected itself to the continuing oversight of (and potential penalties imposed by) NHTSA").

Plaintiffs argue this Court has rejected the notion that the NHTSA has exclusive authority "to order and supervise motor vehicle recalls" in *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297 (E.D.Mich. 2017). *See* Pl. Mtn., p. 7 (PageID.3999).  But the issues here and in *Monostable* are entirely different.  Here, the question is whether Plaintiffs may receive from this Court authorization to issue a notice that ***directly contradicts*** the NHTSA's reviewed and approved recall-related communications and procedures, and to issue the notice ***without*** the agency's involvement (to say nothing of the lack of any factual substantiation for the implicit claims of fault and liability in the notice).  *See*, *e.g.*,

Pl. Mtn. at Ex. 3 (PageID.4023-4024).  But, in *Monostable*, the question was whether this Court had subject matter jurisdiction to hear the plaintiffs' claims and potentially order relief.  *See* 2017 WL 1382297 at *6-7.

There, this Court determined the NHTSA's authority did not "exclude or override other remedies" that consumers could seek in court and thus declined to grant FCA US's Rule 12(b)(1) motion to dismiss.  *Id.* at *7-8.  Here, Plaintiffs are not defending against a jurisdictional challenge, but seeking to displace NHTSA's congressionally delegated authority in reaching recall-determinative conclusions and making recall-related communications.  *See*, *e.g.*, Pl. Mtn. at Ex. 3 (PageID.4023-4024).  But, nothing in the comprehensive set of regulations within the MVSA permits Plaintiffs, their counsel, or this Court to initiate, coordinate, oversee, or supervise a NHTSA recall campaign.  *See, e.g.*, 49 U.S.C. §§ 30118-20; 49 C.F.R. § 554.5 (outlining defect investigation and recall procedures).

FCA US is required to report to the NHTSA about ongoing recall events (*see, e.g.*, 49 C.F.R. § 573.7), and the NHTSA is required to monitor the progress of all recalls to ensure full compliance with federal law (*see, e.g.*, 49 U.S.C. § 30120(c), (d)).  As set forth above, ***the NHTSA is doing exactly that***, ***right now***.  *See* § II.A, *supra* (noting the NHTSA's open investigation into post-recall thermal events).

Furthermore, an order here for a notice invalidating an already-approved and sent NHTSA-mandated communication amounts to an order requiring NHTSA to

change its current course and/or take certain actions.  So, preemption applies for the additional reason that a court cannot direct a federal agency on how to use its resources.  *See Center for Auto Safety v. Dole*, 846 F.2d 1532, 1535 (D.C. Cir. 1988) (rejecting attempt to invalidate NHTSA's conclusions and force a recall based on finding that decision to close agency investigation was not reviewable); *see also Massachusetts v. E.P.A.*, 549 U.S. 497, 527 (2007) ("an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities"); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (evaluating challenge to agency action under APA, court noted that the Act does not give courts "license to 'compel agency action' whenever the agency is withholding or delaying an action [courts] think it should take").

Here, Plaintiffs attempt to usurp the NHTSA's exclusive authority in this area, and they are trying to do it ***without authority*** and ***without the NHTSA's experience and expertise***.  As such, Plaintiffs' request to mandate their own "corrective notice" that undermines a NHTSA approved-remedy—without any supporting investigation or determination by the NHTSA—is preempted by the NHTSA's statutory authority and the comprehensive regulatory schemes that occupy this field.  Any action by this Court changing or affecting the approved recall remedy would amount to a state

prescribing standards that are not identical to those prescribed by the NHTSA, which is prohibited. *See* 49 U.S.C. § 30103(b)(1).

## C.     Other Reasons To Deny Plaintiffs' Motion.

Plaintiffs' Motion should be denied for three additional reasons.

*First,* granting Plaintiffs' motion and authorizing their proposed "corrective" notice essentially equates to a factual finding by this Court that the merits claims they make therein are accurate—*i.e.*, that the NHTSA Recall No. 22V-077 campaign is "misleading" and "omit[s] important information," and that the recall remedy does not work. The Court would make such a finding based only on conclusory declarations of two un-deposed plaintiffs whose experiences account for just 0.015% of vehicles that have received the recall remedy and 0.011% of all recalled vehicles. Such a finding would short-change the discovery process, as FCA US has not had the ability to conduct discovery to determine such things as whether the recall was performed correctly by the dealerships involved, whether the individuals ignored warnings, or even whether the fires had contributing causes outside of the recall. *See* Case Decl., ¶ 14; *see also* Pl. Mtn. at Exs. 1, 2 (PageID.4010-4021).

Plaintiffs ask the Court to make these merits determinations, akin to a summary judgment finding or for injunctive relief, without the accompanying and necessary motions, proof, or due process protections that such findings require. *See*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("inquiry involved

in a ruling on a motion for summary judgment … necessarily implicates the ***substantive evidentiary standard of proof that would apply at the trial on the merits***") (emphasis added); *Maximus, Inc. v. Apryl Tyler*, 2024 WL 340811, *3 (E.D.Mich. 2024) (articulating "***actual success*** on the merits" and "***strong likelihood*** of success" standards for injunctive relief) (emphasis in original).

*Second*, granting the relief Plaintiffs request, and sending a notice effectively declaring that FCA US's recall remedy does not work, would violate the "one-way intervention" rule. Courts caution against issuing pre-certification orders that "incentivize" putative class members to either remain in a lawsuit to take advantage of a favorable ruling, or, as logically follows, where they are encouraged to opt-out to avoid a negative one. *See*, *e.g.*, *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016); *see also Sprint Corp.*, 261 F.3d 679, 681-82 (7th Cir. 2001) (finding order entered after class was certified, but before notice was sent, that allowed for evaluation of certain merits issues created an improper one-way intervention scenario because if certain issues were decided in favor of the defendant every class member would opt out, and the effect of a contrary ruling would be to "encourag[e] members of the class not to opt out of the suit"); *McKenzie v. Federal Exp. Corp.*, 765 F.Supp.2d 1222, 1236 (C.D.Cal. 2011) (one-way intervention rule erected as barrier against "not-yet bound absent plaintiffs [who] may elect to stay in a class after favorable merits rulings but opt out after unfavorable ones"); *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374,

378 (S.D.Ill. 2008) ("purpose of the doctrine is to avoid the inequities to defendants that would arise if class members could make decisions about whether or not to opt-out of a class on the basis of pre-certification rulings on the merits").

This Court should decline Plaintiffs' invitation to weigh in on the merits issues at this stage of the litigation. Doing so will almost certainly signal to absent putative class members the Court's view on the merits of the case, which will have the effect of either incentivizing them to remain in the case, or to opt-out in the future if a class is certified and they are presented with the choice to do so.

*Third*, to the extent Plaintiffs take a position that FCA US should pay to send their proposed notice to putative class members (it is unclear), their request violates the rule that Plaintiffs must ordinarily bear the cost of providing notice to putative class members. *See, e.g., Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178-79 (1974) ("[w]here, as here, the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice [to class members] as part of the ordinary burden of financing his own suit").

## IV. CONCLUSION

For the foregoing reasons, Defendant FCA US LLC respectfully requests that this Court deny Plaintiffs' Motion.

Respectfully submitted,

**THOMPSON COBURN LLP**

 */s/  Stephen A. D'Aunoy*
Stephen A. D'Aunoy (MO/54961)
Thomas L. Azar, Jr. (MO/56634)
Scott H. Morgan (MO/61853)
One US Bank Plaza
St. Louis, Missouri 63101
T:  (314) 552-6000
sdaunoy@thompsoncoburn.com
tazar@thompsoncoburn.com
smorgan@thompsoncoburn.com

*-and-*

**KLEIN THOMAS LEE & FRESARD**

Fred J. Fresard (P43694)
Ian K. Edwards (P82021)
101 W. Big Beaver Rd., Ste 1400
Troy, Michigan 48084
T:  (602) 935-8300
fred.fresard@kleinthomaslaw.com
ian.edwards@kleinthomaslaw.com

*Attorneys for FCA US LLC*

- 24 -

## <u>CERTIFICATE OF SERVICE</u>

  The undersigned hereby certifies that on February 9, 2024, the foregoing was electronically filed using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

        */s/ Stephen A. D'Aunoy*

- 25 -