# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION<br><br>MDL No. 3040 | Case No. 2:22-cv-03040-DML-EAS<br><br>Hon. David M. Lawson<br>Magistrate Judge Elizabeth A. Stafford |

**PLAINTIFFS' REPLY TO THEIR
MOTION FOR CURATIVE NOTICE PURSUANT TO RULE 23(D)**

In opposition to Plaintiff's Motion, FCA *does not* argue that the proposed corrective notice is unnecessary because the recall remedy is preventing vehicle fires. Instead, FCA contends that: (1) the Court lacks authority to issue a notice, (2) the notice would be an improper solicitation of putative class members, and (3) the notice is preempted by the Motor Vehicle Safety Act ("MVSA"). All three arguments are unpersuasive and should be rejected for the reasons set forth below. FCA ignores that it is telling Pacifica owners their cars are safe if the recall repair is completed, but at least two post-recall fires prove that this is a false assurance.

*First*, the Court has the power to issue a corrective notice. *O'Connor v. Uber Technologies, Inc.*, 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (holding the court has the power to control communications with potential class members due to the "obvious potential for confusion" and adverse effect on the "administration of justice" that misleading communications may cause)).

The misleading communication at issue—FCA's October 2022 recall notice—was issued *after the commencement of this litigation*. Putative class members such as the Bernardoni/Navab and Binder families have relied on FCA's misleading statements and resumed charging the vehicles and parking them in or near structures. For these two families, doing so resulted in vehicle fires, property damage, and physical and emotional harm. *See* ECF Nos. 77-2 & 77-3. The proposed

1

corrective notice clarifies that the recall does not "prevent vehicle fires, but only serves as a monitoring system to potentially warn consumers before a vehicle fire occurs." *See* ECF No. 77-4, PageID.4024. The proposed notice advises consumers to "continue to refrain from recharging the high voltage battery and to continue to park the vehicles away from structures and other vehicles." *Id.* That the recall remedy is a monitoring system and does not address the root cause of the defect was admitted by FCA during the September 27, 2023 motion to dismiss hearing:

> THE COURT: But what's the fix?
> MR. FRESARD: The fix is a software upgrade that monitors various conditions in the battery, how the different cells are speaking with each other or the currents between different cells and has a heightened level of sensitivity to any differences in those currents and will then put a light on, put the vehicle in limp mode, I believe, and then --
> THE COURT: In what mode?
> MR. FRESARD: Limp, where you can only go very slow and say, get the vehicle to a dealer.
> THE COURT: Okay. My recollection is that the recall warnings that went out indicate that the vehicle should not be parked in an enclosed space or near other vehicles, and the fix was to provide a warning to the operator who would be in the vehicle at the time the vehicle was underway. There seems to be a pretty substantial disconnect there.
> MR. FRESARD: Well, under the software upgrade, your Honor, the --
> THE COURT: I mean, if you can't park your car in your garage, the fix is, there's a warning when you're driving that there is a problem?
> MR. FRESARD: No. I think once you have had the upgrade done, and Mr. D'Aunoy can correct me if I'm wrong, once the update has been done you can park it in your garage.  You can park it wherever. The software will give you a far-in-advance warning of an issue with the battery before you would have an issue when you park it.
> THE COURT: How does it tell you?
> MR. FRESARD: How does the software tell you?
> THE COURT: How does it -- yeah. How does the software -- how does the vehicle -- how is the owner of the vehicle who is not operating it

2

> and has parked it in his or her garage for a day or two or three made aware of the fact that there is a problem in a potential thermal runaway? MR. FRESARD: That operator would have been told before they put the car in park. When the car is running, the computer is constantly checking the battery. So it's not an issue that would be hidden and then starts to develop after the car is parked. While the car is running, the computer system would see the issues with the battery and say, take this to a dealer.

ECF No. 62, PageID.1922-23. But contrary to FCA's counsel's statements, neither Bernardoni/Navab nor the Binders received a notification prior to their vehicle fires.

Correcting FCA's statements and protecting consumers are within this Court's power. "The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class." *In re Payment Card Interchange Fee and Merch. Discount Antitrust Litig.*, 2014 WL 4966072, at *31 (E.D. N.Y. Oct. 3, 2014 (citing Manual for Complex Litigation (Fourth) § 21.33 (2004)). Therefore, "the court may take curative action—such as requiring the distribution of corrective notices or entering injunctive relief—where misleading or false statements are made to class members." *Id.*; *see also* Manual for Complex Litigation (Fourth) § 21.12 ("Misrepresentations or other misconduct in communicating with the class…may be prohibited and penalized under the court's Rule 23(d)(2) plenary protective authority.").

***Second***, FCA's argument that the proposed notice is a solicitation effort is baseless, especially because there are already more than sixty named plaintiffs. The

3

inclusion of counsel's contact information on the proposed notice is simply to ensure that the more than 16,000 putative class members who receive the notice would have a resource to answer questions. The notice does not encourage them to contact counsel or otherwise participate in the litigation in any way.

FCA's cite to *O'Connor* is inapposite as the language in that proposed corrective notice did not just list contact information of counsel, it included "you should have been paid tips and reimbursement" and had an arbitration opt-out option. *O'Connor*, 2014 WL 1760314, at *9. FCA's other case on this point is *Cherner v. Transitron Electronic Corp.*, 201 F. Supp. 934 (D. Mass. 1962), a sixty-year-old case where plaintiffs sought to notify all potential class members of the filing of the lawsuit. That case is not, as FCA suggests, "particularly instructive."

Plaintiffs anticipate collaboration with FCA and the Court as to the contents of the notice, with one aim in mind—notifying putative class members that their vehicles are still at risk of spontaneous combustion in their garages or driveways, as happened to the Bernardoni/Navab and Binder families. If the Court finds the inclusion of contact information inappropriate, Plaintiffs do not object to its removal.

***Third***, the proposed corrective notice is not preempted by the MVSA. FCA fails to explain how the issuance of a corrective notice to address a misleading recall notice is any different than a Court ordering an automotive manufacturer to address an ineffective recall remedy—a form of relief that this Court has already held is

4

within its discretion. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297, at *6 (E.D. Mich. Apr. 18, 2017) ("Ordering the defendant properly and fully to repair or replace defective units would not lead to an irreconcilable conflict between the direction of the Court ordering relief on one or more of the plaintiffs' state law claims, and any extant motor vehicle safety standard promulgated by the NHTSA."). The Court explained that the MVSA's saving clause provides that '[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law.'" *Id.*; *see also id.* at *7 ("[T]he Act itself provides that the 'recall' process does not exclude or override other remedies that may be available to consumers seeking to have vehicle defects effectively remediated.").

Numerous other courts have held that the MVSA does not preempt a court's authority to issue orders related to recall-related remedies. *See, e.g.*, *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 960 (N.D. Cal. 2004) (because the MVSA savings clause "also makes particular reference to notification and recall provisions as non-exclusive remedies, Defendant's argument that State law in this area is field-preempted runs contrary to the plain language of the statute"); *id.* ("Legislative history also demonstrates that Congress did not intend to supplant all other law in the motor vehicle safety field: '[W]e have preserved every single common law remedy that exists against a manufacturer for the benefit of a motor vehicle

5

purchaser.' 112 Cong. Rec. 19,663 (1966)"); *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 2007 WL 2421480, at *5 (E.D. Mich. Aug. 24, 2007) ("Congress made clear that the MVSA remedies provisions were not exclusive, but rather that they were 'in addition to other rights and remedies under other laws of the United States or a State.' 49 U.S.C. § 30103(d)."); *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1276-78 (C.D. Cal. 2016) (rejecting argument that a court-ordered recall is preempted).

The cases FCA relies on are distinguishable. In *Geier v. Am. Honda Motor. Co.*, 529 U.S. 861 (2000), plaintiffs asked the court to create a duty for defendant-manufacturers to install airbags (as opposed to other restraint systems). *See Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 283 (6th Cir. 2010). The *Geier* Court found this claim to be preempted because the MVSA "gave car manufacturers a choice as to whether or not such airbags were included." *In re Gen. Motors LLC Ignition Switch Litig.*, 154 F. Supp. 3d 30, 45 (S.D.N.Y. 2015). By contrast, whether a recall was conducted negligently does not conflict with the federal requirements under the Act. *Id.* Further, the court in *Diaz v. Ford Motor Co.*, 2023 WL 6164455, at *4 (E.D. Mich. Sept. 21, 2023), found plaintiffs' ineffective recall allegations to be insufficient at the pleading stage, which this Court has not done. And, contrary to FCA's arguments (ECF No. 86, PageID.4365), Plaintiffs are asking the Court to order FCA, not NHTSA, to issue this notice.

6

FCA also argues that it "has not had the ability to conduct discovery to determine such things as whether the recall was performed directly by the dealerships involved, whether the individuals ignored warnings, or even whether the fires had contributing causes outside of the recall." ECF No. 86, PageID.4366. But the reality is that FCA has had ample time to inspect the post-recall fire vehicles. *See* Exhibit 1, November 29, 2023 email from T. Loeser (offering to present the vehicles for inspection, even though the Bernardoni/Navab vehicle has already been inspected by FCA and LGES many months ago).

To conclude, the proposed notice is not a finding on the merits of the case nor would it invoke the one-way intervention rule. As explained above, FCA's counsel has already admitted that the recall remedy is nothing more than a warning system that does not address the root cause of the fires. Informing putative class members of this fact and instructing them to continue to take precautions when parking and charging their vehicle does not encourage them to either remain in the case or to opt out of it.

| | |
|---|---|
| Dated: February 16, 2024 | Respectfully submitted, |
| | **THE MILLER LAW FIRM, P.C.** |
| | /s/ *E. Powell Miller*_____<br>E. Powell Miller (P39487)<br>Dennis A. Lienhardt (P81118)<br>Dana E. Fraser (P82873)<br>950 West University Drive, Suite 300<br>Rochester, MI 48307 |

7

Telephone: (248) 841-2200
epm@millerlawpc.com
dal@millerlawpc.com
def@millerlawpc.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
Thomas E. Loeser
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
toml@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

**BARRACK RODOS & BACINE**
Stephen R. Basser
Samuel M. Ward
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
sbasser@barrack.com

**COTCHETT, PITRE & McCARTHY**
Niall McCarthy
Karin Swope
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
NMcCarthy@cpmlegal.com
Kswope@cpmlegal.com

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
Gayle Blatt

8

Camille Guerra
110 Laurel Street
San Diego, CA 92101-1486
Telephone: (619) 238-1811
gmb@cglaw.com

*Interim Plaintiffs' Steering Committee for Plaintiffs and the Proposed Class*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2024, I electronically filed the foregoing document(s) using the electronic filing system which will send electronic notices of same to all counsel of record.

Respectfully submitted,

By: /s/ *E. Powell Miller*_____
     E Powell Miller