# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION<br><br>MDL No. 3040 | Case No. 2:22-cv-03040-DML<br><br>Hon. David M. Lawson |

# PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER FROM REQUIRING PLAINTIFFS TO TRAVEL TO THE EASTERN DISTRICT OF MICHIGAN FOR <u>IN-PERSON DEPOSITIONS</u>

In another attempt to unnecessarily delay this case (*see* ECF No. 89, FCA's Motion to Stay Proceedings), FCA asks that nearly 50 Plaintiffs take time off work (whether paid or unpaid), leave their family responsibilities behind, increase their risks of contracting a dangerous virus, and make a three-day trip to Detroit for a deposition that could be completed in seven hours or less if done remotely. As exemplified in *In re FCA US LLC Monostable Elec. Gearshift Litig.*, where it took nearly 8 months to schedule and conduct in-person depositions of nearly 40 plaintiffs, scheduling these depositions while considering the availability of Plaintiffs and counsel for both parties will ensure undue delay.

Plaintiffs' Motion provides good cause for the issuance of a protective order. The health risks of COVID-19, the flu, and RSV are alone sufficient to show such good cause (*Reynolds v. FCA US, LLC*, 2022 WL 21842693, *1 (E.D. Mich. May 26, 2022); *Kamradt v. Esurance Ins. Co.*, 2023 WL 8355892, at *3 (W.D. Wash. Dec. 1, 2023)) and 44 of the Plaintiffs have provided specific, detailed reasons as to why in-person depositions would be unduly burdensome. *PC-41 DOE v. Poly Prep Country Day School*, 2022 WL 420619 (E.D.N.Y. Jan. 20, 2022).

FCA feigns cooperation on remote deposition discussions but have conditioned any agreement on a remote deposition on Plaintiffs attesting that "they have not traveled, are not traveling, and do not plan to travel (including to attend any trial in this matter) because of their concerns about COVID, the flu, RSV, or 'other

1

viruses,' or because of a specific hardship." ECF No. 95, PageID.4482. In other words, FCA will only agree to take a remote deposition if the Plaintiff has not traveled (presumably within the past 4 years but FCA does not specify) and does not plan to travel at any point in the future, including for a trial that is not yet scheduled. FCA's goal is clear, to force Plaintiffs to either: (1) sign away their right to present their claims to a jury, (2) risk the health of themselves and their families or their employment to travel to Detroit, or (3) drop out of the case. FCA's blatant and self-serving litigation tactics should be prohibited.

## I.  **FACTS**

FCA clarifies in its opposition that it does not wish, at this time, to depose the 17 Plaintiffs whose claims FCA contends are subject to arbitration, ECF No. 95, PageID.4481 n.2, and that the Parties have agreed to in-person depositions for 7 Plaintiffs who originally filed suit near their residence. *Id.* at PageID.4490 n.12. That leaves 44 Plaintiffs from the CMC and 4 Plaintiffs from the *Bernardoni v. FCA* (No. 23-12881) (*see* ECF No. 66) action. (Plaintiff Rodriguez's claims were dismissed in their entirety (ECF No. 67) and leave to amend has not yet been granted).

In Plaintiffs' January 16, 2024 letter to FCA (ECF No. 83-2), all 48 Plaintiffs provide good cause for remote depositions due to the health risks posed by the prevalent viruses. Additionally, 26 of the Plaintiffs have provided specific reasons why an in-person deposition would be unduly burdensome. Plaintiff Kitzman, a

2

Michigan resident, is not included as he resides in Southeast Michigan. The specific hardships provided by the 26 Plaintiffs speak for themselves and range from caring for small children or elderly relatives to risking their employment. As explained in Plaintiffs' Motion and again in this Reply, courts have regularly allowed for remote depositions in similar circumstances.

## II. ARGUMENT

### A. Plaintiffs Have Shown Good Cause for a Protective Order

#### 1. *Traveling for In-Person Depositions Poses Significant Health Risks*

Contrary to FCA's argument, many of the cases Plaintiffs rely on, and which found that COVID-19 health concerns constituted good cause, are from 2022 and later. *See, e.g.*, *Reynolds*, 2022 WL 21842693; *Grundy v. FCA US LLC*, 2022 WL 909351 (E.D. Mich. Mar. 28, 2022); *Vargas v. Evergreen Prof. Recoveries, Inc.*, 2022 WL 856991 (W.D. Wash. Mar. 23, 2022); *Sherrod, Teed, Vanderhagen and Ware v. VNA*, 2022 WL 965025 (E.D. Mich. Mar. 30, 2022); *Kamradt v. Esurance Ins. Co.*, 2023 WL 8355892 (W.D. Wash. Dec. 1, 2023); *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 2023 WL 1469030 (S.D.N.Y. Feb. 2, 2023); *Arellano v. Calderon*, 2023 WL 2646435 (S.D. Cal. Mar. 27, 2023).

Similarly, Plaintiffs' cited articles from December 2023 are consistent with even more recent articles that conclude that COVID-19 and other viruses continue to pose significant health concerns. *See* Ex. 1, *In the thick of it: flu, COVID-19, RSV*

3

*spread misery across Michigan yet again*, DETROIT FREE PRESS, Jan. 9, 2024 (explaining that the 1,200 COVID-19 hospitalizations were a 35.7% increase from a month earlier and higher than last year's winter); Ex. 2, *25 states see 'high,' or 'very high' level of respiratory illness activity: CDC*, ABC NEWS, Feb. 16, 2024.

Multiple Plaintiffs (Natale, Bergantino, Fong, Christie, and Benzur) raise specific health-related concerns while others (Messeguer, Quattropani, Niemioja, the Costas, and Benzur) state how they care for elderly relatives who fall within the CDC's higher risk populations. *See* ECF No. 83-2; Ex. 3, *People with Certain Medical Conditions*, CDC, May 11, 2023; *Reynard v. Washburn Univ. of Topeka*, 2020 WL 3791876, at *5 (D. Kan. July 7, 2020) (finding good cause for deposition to be taken remotely where the "[p]laintiff . . . outlined multiple specific health concerns for herself and her husband, for whom she is the primary caregiver, regarding COVID-19."). Plaintiffs' health concerns should not be brushed aside, and Plaintiffs should have the right to litigate their claims for a dangerous vehicle without choosing between personal health and holding FCA accountable.

### 2. *Plaintiffs' Additional Hardships are Good Cause for a Protective Order*

First, any suggestion by FCA that a signed declaration is necessary to obtain a protective order is incorrect. FCA's own cited case (*Hui Wang v. Omni Hotels Mgmt. Corp.*, 2019 WL 2083296 (D. Conn. 2019)) denied the request because the plaintiffs "filed no…supporting documents." *Id.* at *8. Plaintiffs have provided, to

4

both FCA and the Court, detailed facts of the hardships faced by Plaintiffs. FCA fails to explain how these same facts in a signed declaration would change the analysis.

*Travel:* FCA claims that it is "difficult to conceive how depositions in Detroit could require three days of travel." ECF No. 95, PageID.4492. This is simple: FCA will have up to 7 hours on the record to depose a Plaintiff (and FCA and its counsel have regularly used the entire time allotment in other cases). With breaks throughout the day, a deposition could last until 5 p.m. or later. With additional commute time to the airport and limited evening flight options, it is reasonable to assume a Plaintiff will have to fly home the following morning. However, if FCA is willing to agree to a shorter time limit (such as 4 hours per Plaintiff), which it has not done, then FCA may be correct that only one night away from home will be necessary.

*Childcare:* None of the cases cited by FCA create a bright-line rule that childcare concerns cannot constitute good cause for a remote deposition. Instead, the cases cited by FCA all simply determine that in those individual circumstances, a remote deposition was not warranted. But other courts have recognized that childcare issues should be considered. *See, e.g.*, *Stammler v. JetBlue Airways Corp.*, 2017 WL 3131985, at *1 (D. Mass. Apr. 21, 2017) (noting that JetBlue's counsel "did not seriously consider [the plaintiff]'s lack of overnight childcare an 'unreasonable hardship,'" ordering counsel to "confer again to seek to resolve th[e] issue," and suggesting that the plaintiff's deposition be "taken by remote means").

5

*Elder Care:* Again, FCA's cases are cherry-picked and based on the circumstances of each case. For example, in *Pruco Life Ins. Co. v. California Energy Dev. Inc.*, 2021 WL 5043289, at *4 (S.D. Cal. Oct. 29, 2021), the court denied the motion because the deponent had recently appeared in person at multiple hearings. *Id.* at 4. A deponent's inability to attend a deposition in person due to responsibilities associated with caring for another person can constitute good cause. *See, e.g.*, *Rogovin v. Rogovin*, 2004 WL 51950 (N.Y. A.D. 1 Dept., Jan. 13, 2004); *Brooks v. Brooks Consultants, Inc.*, 2023 WL 3751505, at *1 (M.D. Fla. May 2, 2023).

*Missed Work:* Courts have also considered the burden imposed by missing work when ruling on this issue. *See, e.g.*, *Buie v. Charter Commc'ns*, 2018 WL 11357534, at *2 (D. S.C. Nov. 9, 2018) (ordering deposition to take place in Missouri where the deponent resides and works since travelling would cause "significant disruption of her personal and business affairs, particularly where . . . [she] is currently juggling an increased work load...").

## B. FCA's Claims of Prejudice are Speculative and Unconvincing

FCA argues that Plaintiffs' cases are "inapposite" (ECF No. 95, PageID.4499 n.28) because the "prejudice arguments [were] conclusory" or because the Court used "flawed reasoning." *Id.* But FCA's disagreement with those rulings does not make them inapposite. They are well-reasoned opinions that determined remote depositions are adequate. This is logical since courts across the country were limited

to remote-only proceedings (including trials) for many years. *Reynolds*, 2022 WL 21842693, at *3 (detailing how the court has conducted multiple trials with minimal technological difficulties).

Certainly, there is a split of authority on whether a party needs to conduct a deposition in-person to sufficiently assess a witness' demeanor and credibility. *Id.* at *3 (citing cases and holding that video depositions "may 'actually provide a better opportunity for counsel to observe the demeanor of the witness'"). What is uncontested, however, is that despite recently conducting depositions of dozens of plaintiffs in automotive defect class actions in this District (*see* ECF No. 83, PageID.4275), FCA and its counsel have not once argued that a second, in-person deposition was necessary due to an inability to assess credibility or the fact that coaching, non-verbal cues, or review of other materials took place during the deposition. *Id.*; *see also Poly Prep*, 2022 WL 420619, at *2. FCA's "concerns" are purely speculative and cannot serve as a basis to show prejudice.

Dated: February 27, 2024

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

/s/ *E. Powell Miller*_____
E. Powell Miller (P39487)
Dennis A. Lienhardt (P81118)
Dana E. Fraser (P82873)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com

7

dal@millerlawpc.com
def@millerlawpc.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
Thomas E. Loeser
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
toml@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

**BARRACK RODOS & BACINE**
Stephen R. Basser
Samuel M. Ward
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
sbasser@barrack.com

**COTCHETT, PITRE & McCARTHY**
Niall McCarthy
Karin Swope
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
NMcCarthy@cpmlegal.com
Kswope@cpmlegal.com

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
Gayle Blatt
Camille Guerra
110 Laurel Street

8

San Diego, CA 92101-1486
Telephone: (619) 238-1811
gmb@cglaw.com

*Interim Plaintiffs' Steering Committee
for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I, E. Powell Miller, certify that on February 27, 2024, the foregoing was electronically filed using the CM/ECF system which will send notification of such filing to the e-amil address registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ E. Powell Miller*
E. Powell Miller