UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: CHRYSLER PACIFICA FIRE RECALL
PRODUCTS LIABILITY LITIGATION

MDL No. 3040

Case Number 22-3040
Honorable David M. Lawson
Magistrate Judge Elizabeth S. Stafford

_____/

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR A CURATIVE CLASS NOTICE

The plaintiffs in this multidistrict litigation allege that defendant FCA US LLC manufactured and sold them Chrysler Pacifica Plug-in Hybrid minivans that are defective because they have been known to combust spontaneously. They filed a voluminous consolidated master complaint (CMC), which pleaded 81 causes of action sounding in breaches of express and implied warranties and violations of various state laws governing consumer sales, deceptive marketing, and unfair trade practices. The plaintiffs acknowledge that FCA conducted a voluntary recall of the class vehicles based on the fire risk, but they allege that the measures implemented by the recall are insufficient to cure the problem, because the recall remedy consists merely of a software patch intended to "monitor" the battery system for conditions that may lead to thermal runaway, and no repair or replacement of the battery pack is offered unless Chrysler deems it "necessary" after an inspection. And they have submitted affidavits from two vehicle purchasers whose vehicles have caught fire even after their dealerships installed the remedial patch. The plaintiffs ask the Court to order defendant FCA to send a "curative notice" to the proposed (as yet uncertified) class of vehicle owners to counter allegedly misleading communications by the defendant which plaintiffs say downplay the safety hazard that the vehicles present. The Court heard oral arguments on the motion in open court on June 12, 2024. Because the plaintiffs have not shown that any of their

cited authority permits the Court to issue such notices at this stage of the litigation, the motion will be denied.

## I.

The factual background of the case is discussed extensively in the Court's opinion granting in part and denying in part the defendant's motion to dismiss, ECF No. 67.  The plaintiffs allege that, either due to defects in their design or problems during the manufacturing process of the Chrysler Pacifica Plug-in Hybrid minivan that the defendant manufactured and sold, the large battery plant incorporated into the powertrain of the vehicles has a tendency spontaneously to enter a "thermal runaway" state, resulting in combustion or explosion of the vehicle.  The spontaneous ignition of the batteries, the plaintiffs say, may occur unpredictably at any time, even when the vehicles are parked and the ignition is off.

Due to the risk of spontaneous fires, the plaintiffs say that they are unable to drive or leave the vehicles unattended with peace of mind, and they are forced to seek parking locations far removed from structures or other vehicles due to the risk of damage to any nearby property if the vehicles suddenly burst into flames.  The plaintiffs acknowledge that FCA conducted a voluntary recall of the class vehicles based on the fire risk, but they allege that the measures implemented by the recall are insufficient to cure the problem, because the recall remedy consists merely of a software patch intended to "monitor" the battery system for conditions that may lead to thermal runaway, and no repair or replacement of the battery pack is offered unless Chrysler deems it "necessary" after an inspection.  It appears that the defendant did not determine that replacement was a necessary measure for any of the plaintiffs' vehicles (or, apparently, for almost all of the other thousands of class vehicles currently in service).

The severity of the problem was brought home by the affidavits of Jevechius Bernardoni and Justin Binder.  They tell their harrowing stories of parking their Pacifica hybrids at home, plugging them in to charge, and experiencing the spontaneous combustion of the vehicles. Bernardoni had parked his car in his garage at night and was able to get his family out of the house without personal injury, although the house was damaged by smoke and fire.  Binder had parked his car at the end of his driveway.  When the fire erupted, the vehicle burned throughout the evening and into the next morning, despite intervention by local firefighters.  His house did not burn, but it suffered smoke damage.  Both owners had received the defendant's recall notice, and both had taken their vehicles to their dealers for the remedial patch.

The plaintiffs argue that these two incidents illustrate the ineffectiveness of the defendant's recall notice and their proposed fix.  They believe that the public deserves to know about the danger posed by these vehicles, and they argue that the Court has ongoing authority under Federal Rule of Civil Procedure 23(d) to send a "curative notice" to class members to counter any "improper conduct" by the parties, which might endanger class members or interfere with their rights.  They justify their request with the contention that the defendant has engaged in improper conduct by sending a recall notice that implies that class vehicles are safe in normal operation after the recall remedy has been installed, and they insist that a "curative notice" is necessary to ensure that class members are not placed further in danger while the litigation proceeds, by reliance on the defendant's "deceptive" recall notice.

The defendant counters that Rule 23(d) is not meant to authorize the relief that the plaintiffs seek.  FCA contends that the "curative notice" in this case essentially amounts to a merits determination based on an undeveloped record, at a stage before class certification has even occurred, and without the benefit of evidence that will be developed and presented through the

- 3 -

course of discovery and motion practice. The defendant also argues that the proposed notice would invade the administrative authority of the National Highway Transportation and Safety Administration (NHTSA) to initiate and supervise auto safety recalls, and it points out that NHTSA in fact already has opened an investigation of the post-recall fires, which is ongoing, and the agency has statutory authority to take appropriate action if the recall action is found to be insufficient to address the risks posed by the subject vehicles remaining on the road. The defendant adds that the plaintiff's proposed notice, the text of which is included as an exhibit to their motion, incorporates a solicitation for class members to make contact with the plaintiffs' firm, which constitutes just the sort of improper communication that Rule 23(d) aims to prohibit.

## II.

The plaintiffs rely exclusively on Federal Rule of Civil Procedure 23(d) as the authority for the curative notice they seek. Let's examine the text of the rule.

In conducting an action under this rule, the court may issue orders that:

(A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

(B) require — to protect class members and fairly conduct the action — giving appropriate notice to some or all class members of:

(i) any step in the action;

(ii) the proposed extent of the judgment; or

(iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;

(C) impose conditions on the representative parties or on intervenors;

(D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

(E) deal with similar procedural matters.

Fed. R. Civ. P. 23(d).

The case law on application of the rule is not very expansive.  The leading case is *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).  As the *Gulf Oil* Court explained: "Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases."  452 U.S. at 99-100. "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  *Id.* at 100.  "But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules."  *Ibid.* (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)).

The *Gulf Oil* Court's focus was not so much on compelled communication, as the plaintiffs seek here, but on the limitations imposed on parties within the class proceeding.  "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  *Id.* at 101.  "Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23."  *Id.* at 101-02.  "In addition, such a weighing — identifying the potential abuses being addressed — should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances."  *Id.* at 102.

The plaintiffs' request is somewhat unusual in the context of Rule 23 in that they ask the Court to send out a "curative notice" to prospective members of a class (or classes) that do not yet exist, based on their contention — hotly disputed by the defendant and touching on liability questions at the heart of this litigation — that the defendant's NHTSA-approved recall notice "implying" that the class vehicles are safe to operate normally after application of the recall

software patch exposes vehicle owners to an ongoing risk of catastrophic fires with the potential to harm persons or property.  They base their demand on the anecdotal accounts from two vehicle owners who experienced fires after the recall remedy was applied.  But they have not cited any legal authority for the remarkable proposition that the Court has authority under Rule 23(d) to send a "curative notice" to potential class members, before the requirements for class certification have been established (or even considered by the Court), which essentially endorses the plaintiffs' position on disputed issues of fact at the heart of the litigation.

As mentioned above, the case law on point is thin with little treatment in appellate rulings or from the Supreme Court, save for the *Gulf Oil* decision.  However, other federal courts confronted with similar requests to authorize pre-certification "curative notices" emphatically have rejected such requests as far exceeding the Court's limited authority under Rule 23(d).

"Consistent with courts' skepticism concerning the propriety of issuing notices to putative class members under Rule 23(d), such notices have typically, and rarely, been employed only as a curative measure restricting or modifying the manner in which communications are conducted between one or more of the litigants already before the court and the 'potential' class members." *DW Volbleu, LLC v. Honda Aircraft Co., Inc.*, No. 21-637, 2021 WL 5826536, at *2 (E.D. Tex. Dec. 8, 2021) (citing *Gulf Oil*, 452 U.S. at 101-02).  "However, the issuance of a pre-certification notice to potential class members has rarely been authorized outside the context of such curative notices restricting communications between parties and potential class members, and courts have been particularly careful to avoid issuing any pre-certification notice that appears to solicit participation in the litigation."  *Ibid.* (citing *Farmers Co-op. Co. v. United States*, 90 Fed. Cl. 72, 73-74 (2009) ("Plaintiff does not cite, and this court is not aware of, a single case wherein a federal court permissibly notified potential plaintiffs of an on-going case before class certification.

Indeed, when confronted with this question, the Ninth Circuit categorically denounced the issuance of such pre-certification notice.") (citing *Pan American World Airways, Inc. v. United States Dist. Court for the Cent. Dist. of Cal.*, 523 F.2d 1073, 1079 (9th Cir. 1975)); 7A Wright & Miller, Federal Prac. & Proc. § 1788 Notice in Class Actions (3d ed.) ("[Notice should not be sent out prior to class certification since, as noted by one court, '(o)therwise, by notice and joinder of unnamed members of a possible plaintiff class, a district court could circumvent Rule 23 by creating a mass of joined claims that resembles a class action but fails to satisfy the requirements of the rule.'" (quoting *Pan Am.*))).

The district court in the case of *DW Volbleu, LLC v. Honda Aircraft Co., Inc.*, confronted the same sort of proposed notice contemplated by plaintiffs here.  In that case, the plaintiffs sought to certify a class of owners of HondaJet aircraft, alleging that the defendant failed to notify owners of certain maintenance procedures that must be performed to avoid expensive repairs, and that the failure to perform them could render the aircraft unsafe.  Citing Rule 23(d)(1)(B), the plaintiffs sought to compel the delivery of that notice, even before a class was certified.  2021 WL 5826536, at *3.  Declining to authorize the notice, the court observed that "[t]he notification issue is the crux of the dispute between the parties in this lawsuit," and that the defendant disputed that the notice was necessary.  *Ibid.*  The court held that the "proposed Rule 23(d)(1)(B) notice does not comport with any of the limited purposes for class-member notifications articulated and authorized in the rule.  The proposed notice does not concern a 'step in the [class] action,' nor does it address 'the proposed extent of [a] judgment' or the potential class members' 'opportunity to signify whether they consider the representation [of the class] fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.'"  *Id.* at *4.  Finally, the court declared that "[n]othing in Rule 23(d) authorizes such a pre-certification notice addressing issues to be decided

on the merits, much less a notice that overtly endorses the litigation position of one of the parties before any class has been certified." *Ibid.*  Other courts have reached the same conclusion.  *See Pan Am.*, 523 F.2d at 1079; *Adkins v. Apple Inc.*, No. 14-01619, 2014 WL 4618411, at *3 (N.D. Cal. Sept. 15, 2014) (rejecting request to issue Rule 23(d) notice because "no class has been certified here"); *Clark v. Hyatt Hotels Corp.*, No. 20-01236, 2020 WL 6870599, at *2 (D. Colo. Oct. 30, 2020) ("Here, no class has been certified, and the Court has not determined that the requirements for class-action treatment have been met.  Accordingly, the Court finds that Plaintiffs' reliance on cases involving post-certification notice is misplaced.").

Here, as in *Volbleu*, the plaintiffs have not demonstrated that the proposed notice is appropriate to address any of the typically "procedural" complications that Rule 23(d) contemplates.  The same reasoning applies with equal force here, and the plaintiffs have cited no legal authority holding to the contrary or endorsing the extraordinary form of notice that they propose.

Certainly, the concerns advanced by the plaintiffs are serious and worthy of attention from the appropriate authorities.  However, as the defendant points out, NHTSA already has opened a "Recall Query" concerning the effectiveness of the recall remedy and the extent of the ongoing battery fire risk posed by the defendant's vehicles, which was prompted by the reports of post-recall fires.  NHTSA's public notice of the new investigation states as follows:

> From December 2022 through December 2023, NHTSA has received four consumer complaints (VOQs) alleging vehicle thermal events involving recalled 2017 and 2018 Chrysler Pacifica PHEVs.  Additional information collected from complainants confirmed a thermal event originating near or at the HV battery pack after the Recall 22V077 remedy had been applied to the vehicle.  Follow-up meetings with FCA and suppliers in November and December 2023 to discuss the ongoing root cause investigation and post-recall remedy incidents indicated a recent increase in HV battery thermal events.  Furthermore, a review of NHTSA complaint data indicated the post-recall HV battery thermal event complaint rate now exceeds pre-recall levels.

> The Office of Defects Investigation (ODI) is opening this Recall Query (RQ) to review the effectiveness of the original recall remedy, understand the root cause of the battery fires, investigate additional reports of Pacifica PHEV HV battery fires, and to increase monitoring of the manufacturer root cause investigation.

NHTSA, Recall Query RQ24001 (Jan. 16, 2024), https://static.nhtsa.gov/odi/inv/2024/INOA-RQ24001-10139.pdf.

Any automaker initiating a recall is subjected to ongoing oversight by NHTSA to ensure the effectiveness of the recall, with potential sanctions from the agency if its efforts to ensure vehicle safety are found wanting. *Letson v. Ford Motor Co.*, No. 23-10420, 2024 WL 845844, at *3 (E.D. Mich. Feb. 28, 2024) ("[W]hen Ford issued its recall, it subjected itself to NHTSA's continuing oversight and authority to impose stiff fines if Ford fails to carry out the recall effectively."); *Diaz v. Ford Motor Co.*, No. 23-10029, 2023 WL 6164455, at *5 (E.D. Mich. Sept. 21, 2023) ("NHTSA [] monitors 'each safety recall to make sure owners receive safe, free, and effective remedies from manufacturers according to the Safety Act and Federal regulations.'") (quoting NHTSA, Recall Information, https://www.nhtsa.gov/recalls; citing 49 U.S.C. § 30120(e) ("If the Secretary decides a manufacturer has not reasonably met the remedy requirements, the Secretary shall order the manufacturer to take specified action to meet those requirements and may take any other action authorized under this chapter.")). The plaintiffs have offered no information suggesting that NHTSA has shirked its duty to monitor the effectiveness of the recall and to take appropriate follow up action should the notice and corrective actions previously initiated be found insufficient to address the public safety risk posed by the subject vehicles.

## III.

The plaintiffs have not established that their proposed notice would serve any of the purposes for a permissible "curative notice" under Rule 23(d), and federal courts routinely have

rejected similar proposed notices that effectively endorse a party's litigating position on disputed

issues, especially prior to formal class certification.

Accordingly, it is **ORDERED** that the plaintiffs' motion for a curative class notice (ECF

No. 77) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  June 20, 2024