# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION, <br><br> MDL No. 3040 | Case No.: 22-cv-03040 <br><br> Hon. David M. Lawson <br><br> Magistrate Judge Elizabeth A. Stafford |

### DEFENDANT FCA US LLC'S SUPPLEMENTAL MOTION TO EXCLUDE PLAINTIFFS' EXPERT EDWARD STOCKTON'S SUPPLEMENTAL DECLARATION

Defendant FCA US LLC respectfully moves the Court for an order excluding the supplemental declaration of Plaintiffs' expert Edward Stockton. In support of this motion, FCA US relies on the attached brief and accompanying exhibit, as well as its earlier briefing and exhibits submitted in support of its Motion to Exclude Plaintiffs' Expert Edward Stockton's Declaration and Testimony. *See* ECF #132.

Pursuant to E.D. Mich. LR 7.1(a), counsel for FCA US has conferred with Plaintiffs' counsel, explained the nature and legal bases of its motions to exclude Stockton's declarations and testimony generally, and requested but did not obtain Plaintiffs' concurrence in the relief sought.

**KLEIN THOMAS LEE & FRESARD**

By: *s/ Stephen A. D'Aunoy*
Stephen A. D'Aunoy
Thomas L. Azar, Jr.
Scott H. Morgan
100 N. Broadway, Ste. 1600
St. Louis, Missouri 63102
T: (314) 888-2970
steve.daunoy@kleinthomaslaw.com
tom.azar@kleinthomaslaw.com
scott.morgan@kleinthomaslaw.com

Fred J. Fresard (P43694)
Ian K. Edwards (P82021)
101 W. Big Beaver Rd., Ste. 1400
Troy, Michigan 48084
T: (602) 935-8300
fred.fresard@kleinthomaslaw.com
ian.edwards@kleinthomaslaw.com

Brandon L. Boxler
919 E. Main St., Ste. 1000
Richmond, Virginia 23219
T: (703) 621-2109
brandon.boxler@kleinthomaslaw.com

*Attorneys for Defendant FCA US LLC*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF ISSUES ................................................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iv

INDEX OF EXHIBITS ............................................................................................v

I.  INTRODUCTION ..........................................................................................1

II. RELEVANT FACTS ......................................................................................2

      B.  Stockton's "Repair Cost" Model. .............................................................3

      C.  Stockton's "Idled Asset Period" Model. ..................................................4

III. ARGUMENT ..................................................................................................5

      A.  Governing Legal Standard. .....................................................................5

      B.  The Lack of Relevance and Reliability For The "Repair Cost" Model....6

           1.  *Lack of Relevance/Fit.* ....................................................................6

           2.  *Lack of Reliability.* .........................................................................8

      C.  The Lack of Relevance and Reliability For The "Idled Asset" Model.....9

IV. CONCLUSION ...............................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ................................................................................... 5, 6

*DSU Med. Corp. v. JMS Co., Ltd.*,
   296 F.Supp.2d 1140 (N.D.Cal. 2003) ............................................................ 8

*Herron v. J E Phillips & Sons, Inc.*,
   2019 WL 2897539 (E.D.Ark. 2019) .............................................................. 8

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   2022 WL 944285 (E.D.Mich. 2022) .............................................................. 6

*In re Onglyza (Saxagliptin) and Kombiglyze (Saxagliptin and Metformin)
   Prods. Liab. Litig.*, 93 F.4th 339 (6th Cir. 2024) ........................................... 6

*JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*,
   1998 WL 175888 (E.D.Pa. 1998) .................................................................. 8

*Lee v. Smith & Wesson Corp.*,
   760 F.3d 523 (6th Cir. 2014) ......................................................................... 6

*Neri v. Nissan N. Am., Inc. (In re Nissan N. Am., Inc.)*,
   __ F. 4th __, 2024 WL 4864339 (6th Cir. 2024) ........................................... 6

*Sloan v. Gen. Motors LLC*,
   2020 WL 1955643 (N.D.Cal. 2020) .............................................................. 7

## **STATEMENT OF ISSUES**

1.  Should the Court exclude the supplemental declaration of Plaintiffs' expert Edward Stockton regarding his "repair cost" model of overpayment damages under Federal Rule of Evidence 702 when that model is irrelevant and unreliable because it calculates damages in a manner contrary to the law in the states at issue, and Plaintiffs cannot meet their burden to establish the reliability of Stockton's model, opinions, and methodology?

    The Court should answer "yes."

2.  Should the Court exclude the supplemental declaration of Plaintiffs' expert Edward Stockton regarding his "idled asset period" model of loss use damages under Federal Rule of Evidence 702 when that model is incomplete, its application would result in legally impermissible duplicative damages, and Plaintiffs cannot meet their burden to establish the reliability of Stockton's model, opinions, and methodology?

    The Court should answer "yes."

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Fed. R. Evid. 702 (2023)

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)

*Neri v. Nissan N. Am., Inc.*, -- F. 4th --, 2024 WL 4864339 (6th Cir. 2024)

## INDEX OF EXHIBITS

| Exhibit | Description |
|:---:|:---|
| A | Supplemental Declaration of Edward M. Stockton, November 12, 2024 |

## I. **INTRODUCTION**

After the parties completed their respective briefing on Defendant FCA US LLC's motion to exclude Plaintiffs' expert Edward Stockton's declaration and testimony,[1] FCA US announced a second voluntary recall relating to the high-voltage batteries in the subject model-year 2017-2018 Chrysler Pacifica Hybrid vehicles, *i.e.*, NHTSA Recall No. 24V-536.[2]

The Court allowed Stockton to submit a supplemental declaration to take the second recall into account and opine on the impact, if any, that the second recall had on his original opinions regarding the capacity to calculate and implement class-wide "overpayment" and "loss of use" damages.[3] The Court also provided FCA US the opportunity to file a supplemental motion to exclude that declaration if warranted.[4]

Because Stockton's supplemental declaration carries the same deficiencies as his original (and he concedes as much, noting the second recall "merely introduces new factual inputs into existing models"),[5] the Court should exclude it.

---

[1] *See, e.g.*, ECF #132.

[2] *See* Recall 24V-536 Part 573 Safety Recall Report, *available at* https://static.nhtsa.gov/odi/rcl/ 2024/RCLRPT-24V536-8355.PDF.

[3] *See, e.g.*, ECF #180.

[4] *Id.*

[5] *See* Supplemental Declaration of Edward M. Stockton, attached as Exhibit A, ¶ 5.

## II. RELEVANT FACTS

A. **The Recalls**.

FCA US's first voluntary recall addressed a potential for fire in the subject vehicles and advised vehicle owners to temporarily refrain from recharging their vehicles' high-voltage battery or parking near structures until the recall remedy had been performed.[6] After receiving reports of additional fires in vehicles that had the recall remedy performed, FCA US announced, in July 2024, a second voluntary recall, *i.e.*, NHTSA Recall No. 24V-536. There too, FCA US advised vehicle owners to temporarily refrain from recharging their vehicles' high-voltage battery and parking near structures until revised software for the high-voltage battery could be installed.[7]

---

[6]*See* Recall 22V-077 Part 573 Safety Recall Report, *available at* https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V077-3486.PDF; *see also* Owner Notification Letter, *available at* https://static.nhtsa.gov/odi/rcl/_2022/RCONL-22V077-4454.pdf.

[7]*Id.* The second recall also contains information learned since the time of the first. Where the original recall described the issue as "[a] vehicle may experience a fire, even with the ignition in the 'off' mode," *see* Recall 22V-077 Part 573 Safety Recall Report, pp. 1-3, the second recall confirms the issue is "[a] folded or torn anode tab may result in the generation of lithium by-product over time," which, "along with a second unidentified factor, may lead to an internal short within the pack and may result in a vehicle fire," *see* Recall 24V-536 Part 573 Recall Report, p. 1.

B. **<u>Stockton's "Repair Cost" Model.</u>**

Stockton's initial report first posits that "Plaintiffs overpaid for the Class Vehicles at the point of acquisition," and that this "overpayment amount … is estimable by determining the additional cost that would have been necessary to remedy the Defect fully at the time of original sale." *See* ECF #132-2, Stockton Decl., ¶¶ 15, 18, 43 (PageID.5246, 5255). In other words, Stockton opines Plaintiffs are entitled to the hypothetical cost of a repair of their vehicles, even though FCA US has already committed to repairing their vehicles in full, for free. *Id.*

Stockton's supplemental report leaves these opinions largely undisturbed. *See* Ex. A, ¶ 11 ("However, the concepts of the overpayment model remain the same."). He simply adds that "[t]he issuance of the Second Recall may introduce new factual inputs into my overpayment model, as different repairs could be necessary to remedy the Defect." *Id.* For instance, one such "factual input" is "the possibility that some portion of Class Vehicles may have a characteristic that introduces unacceptable fire or safety risk while others do not and that is not known, or feasibly knowable, which vehicles do or do not have that characteristic." *Id.* at ¶ 11. This would necessitate "inspecting[ing] all Class Vehicles for the existence of this condition." *Id.* It would also require averaging damages across class members:

> In the case above, the cost of repair on a Class-wide basis would include inspection of all vehicles with additional repairs applied to a portion of Class Vehicles. In a simple hypothetical example, if the cost of inspection were $200, and the cost of repairs in 10% of Class Vehicles

3

    were $5,000, then the Class-wide cost of repair would be $700 per vehicle [$200 * 100% + $5,000 * 10% = $700]. Distribution of any aggregate award would be manageable through allocation among Class Members.

*Id.* ¶ 12.

**C.    Stockton's "Idled Asset Period" Model.**

    Stockton's initial report offered three alternative methods (collectively herein, the "Idled Asset Period" model) purportedly measuring "the economic harm suffered by Class Members because of the loss of use of the hybrid feature" between February 2022 (when the recall notice was sent to owners) and "the delivery of a competent repair." *See* ECF #132-2, ¶ 63 (PageID.5262); *see also id.* at ¶¶ 21, 61-99 (PageID.5247, 5261-5275). Essentially, Stockton simply "propose[s] to develop conservative estimates" of class-wide damages at some point in the future either based on J.D. Power data (his "Direct Method"), reinterpreting that data in some vague ways "in the event that the contribution of the hybrid feature to market values is relatively less distinct" (his "Derived Method"), or creating "estimates" using "hedonic regression analysis" (his "Hedonic Method"). *Id.* at ¶¶ 65, 70-71, 83, 87 (PageID.5263-5265, 5270-5271); *see also*, *generally*, *id.* at ¶¶ 61-99 (PageID. 5261-5275).

    Stockton's supplemental report does not change, supplement, or modify these initial opinions: "the Second Recall is conceptually the same as the original Idled Asset Period." *See* Ex. A, ¶ 8.

4

## III. ARGUMENT

**A.     Governing Legal Standard.**

Federal Rule of Evidence 702 entrusts district courts with a "gatekeeping role" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). As amended in 2023, this Rule now provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*See* Fed. R. Evid. 702 (2023).

The recent amendments to the Rule were specifically adopted "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements," and in response to courts that have "failed to apply [the Rule] correctly." *Id.* at 2023 Advisory Committee Notes; *see also In re*

5

*Onglyza (Saxagliptin) and Kombiglyze (Saxagliptin and Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 345 n.4 (6th Cir. 2024).

Further, under *Neri v. Nissan N. Am., Inc.*, "the district court must demonstrate the expert's credibility under *Daubert*" at the class certification stage "[i]f the challenged expert testimony is material to a class certification motion." -- F. 4th --, 2024 WL 4864339, *9 (6th Cir. 2024). Therefore, the Court must conduct a full *Daubert* analysis at this time.

**B.     The Lack of Relevance and Reliability For The "Repair Cost" Model.**

**1.     *Lack of Relevance/Fit.***

At the most basic level, Stockton's supplemental "Repair Cost" model cannot be admitted because it fails the fundamental test of relevance. It is beyond clear that an expert's opinions must be relevant, and "fit" the issue to be resolved in the case. *See, e.g.*, *Daubert*, 509 U.S. at 591-93; *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2022 WL 944285, *2 (E.D.Mich. 2022) ("The 'relevancy' prong of Rule 702 requires that an expert's theory adequately 'fit' the facts of the case. Expert testimony that does not fit the facts does not relate to an issue in the case and, therefore, is not relevant" (quoting *Lee v. Smith & Wesson Corp.*, 760 F.3d 523, 529 (6th Cir. 2014) (Keith, J. dissenting)).

Stockton's initial "Repair Cost" model attempts to quantify the Plaintiffs' purported "overpayment" or "benefit of the bargain" injuries based on the cost of

6

repairing the alleged defect. *See* ECF #132-2, ¶¶ 29-61 (PageID.5249-5261). Under that model, he proposes calculating damages for vehicle owners who have received, or can receive, a free repair by ***also*** awarding them "overpayment"/"benefit of the bargain" (albeit reduced in part for the "credit" he proposes). *See id.* at ¶¶ 5, 23, 56, 61-62 & Appx. C (PageID.5240-5241, 5248, 5259, 5261, 5300-5303).

Stockton's supplemental report seeks to apply these concepts to the defect identified in the Second Recall, *i.e.*, a folded or torn anode tab. But, the identification of a specific manufacturing defect in the second recall renders Stockton's analysis nonsensical. Indeed, the cost of repair for any given customer will differ based on whether that customer's vehicle's high-voltage battery has a folded or torn anode tab. Stockton recognizes this and opines that repairs could be "applied to a portion of the Class Vehicles." *See* Ex. A, ¶ 12.

This approach, however, is fundamentally broken and therefore contrary to law. Aggregating damages across individuals whose vehicles require a battery repair to fix a folded or torn anode tab with individuals whose vehicles merely require an inspection necessarily overcompensates some putative class members while undercompensating others. *See e.g.*, *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *48 (N.D.Cal. 2020) (holding that "Plaintiffs' damages theory is inconsistent with Plaintiffs' overbroad assertion of the proposed class" because the damages theory apportioned the value of the cost of repair between two distinct groups of putative

7

class members). This is clear from Stockton's hypothetical, where he demonstrates that the class-wide damages will result in $700 per vehicle if each class vehicle undergoes a $200 inspection, and 10% of the vehicles receive a $5,000 repair after that inspection. *See* Ex. A, ¶ 12. This approach *over*compensates inspection-only class members by $500 and *under*compensates inspection-and-repair class members by $4,500. Therefore, it does not fit Plaintiffs' theory of liability and is inadmissible.

### 2. *Lack of Reliability.*

Since Stockton's supplemental "Repair Cost" model would award damages that are not permissible as a matter of law, his model and opinions could never be shown as reliable and should be excluded on this basis too. *See, e.g., Herron v. J E Phillips & Sons, Inc.*, 2019 WL 2897539, *1-2 (E.D.Ark. 2019) (excluding expert damages opinions as "methodologically flawed" because they included damages that were legally impermissible); *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F.Supp.2d 1140, 1148 (N.D.Cal. 2003) ("Reliable methodology requires that the legal grounds used by an expert to calculate damages be legally acceptable."); *JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, 1998 WL 175888, *9 (E.D.Pa. 1998), *aff'd*, 178 F.3d 1279 (3d Cir. 1999) (expert's methodology was "not reliable" where opinion aggregated two types of damages that were legally "alternative measures of damages").

Because Plaintiffs cannot carry their burden to show reliability, the Court should exclude Stockton's "Repair Cost" model and opinions.

8

**C.     The Lack of Relevance and Reliability For The "Idled Asset" Model.**

Stockton's does not alter the "Idled Asset Period" model and opinion from his initial declaration. *See*, *generally*, Ex. A. As such, this opinion should be excluded for the reasons identified in FCA US's motion to exclude Stockton's initial opinions and testimony. *See*, *e.g.*, ECF #132, pp. 3-5, 14-17 (PageID.5218-5220, 5229-5232).

## IV.  CONCLUSION

For the reasons set forth herein and its earlier briefing on these issues, the court should exclude both the original and supplemental declarations of Edward Stockton.

                                      **KLEIN THOMAS LEE & FRESARD**

By:  */s/ Stephen A. D'Aunoy*
      Stephen A. D'Aunoy
      Thomas L. Azar, Jr.
      Scott H. Morgan
      100 N. Broadway, Ste. 1600
      St. Louis, Missouri 63102
      T: (314) 888-2970
      steve.daunoy@kleinthomaslaw.com
      tom.azar@kleinthomaslaw.com
      scott.morgan@kleinthomaslaw.com

          Fred J. Fresard (P43694)
          Ian K. Edwards (P82021)
          101 W. Big Beaver Rd., Ste. 1400
          Troy, Michigan 48084
          T: (602) 935-8300
          fred.fresard@kleinthomaslaw.com
          ian.edwards@kleinthomaslaw.com

          Brandon L. Boxler
          919 E. Main St., Ste. 1000
          Richmond, Virginia 23219
          T: (703) 621-2109
          brandon.boxler@kleinthomaslaw.com

          *Attorneys for Defendant FCA US LLC*

## CERTIFICATE OF SERVICE

I certify that on December 13, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

/s/ Stephen A. D'Aunoy