# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION<br><br>MDL No. 3040 | Case No. 2:22-cv-03040-DML<br><br>Hon. David M. Lawson |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT FCA US LLC'S SUPPLEMENTAL MOTION TO EXCLUDE PLAINTIFFS' EXPERT EDWARD STOCKTON'S SUPPLEMENTAL DECLARATION

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i
TABLE OF AUTHORITIES ........................................................................................ ii
COUNTER-STATEMENT OF ISSUES PRESENTED ......................................... iv
MOST APPROPRIATE OR CONTROLLING AUTHORITIES ........................... v
I.  INTRODUCTION ................................................................................................. 1
II. FACTUAL BACKGROUND .............................................................................. 2
   A.  Mr. Stockton's Expert Declaration ................................................................ 2
   B.  Mr. Stockton's November 12, 2024 Supplemental Expert Declaration ...... 3
III. LEGAL STANDARD .......................................................................................... 5
IV. ARGUMENT ......................................................................................................... 7
   A.  Mr. Stockton Uses a Reliable Economic Methodology. ............................. 7
   B.  FCA's Criticism of Mr. Stockton's Repair Cost Model Lacks Merit. ......... 8
      1.  Mr. Stockton's model is relevant and fits Plaintiffs' theory. ..................... 8
      2.  Mr. Stockton's model is reliable. .............................................................. 10
   C.  Mr. Stockton's Idled Asset Period Methodology is Relevant and Reliable. ................................................................................................................. 11
V.  CONCLUSION ................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Cason-Merenda v. Detroit Med. Ctr.*,
   2013 WL 1721651 (E.D. Mich. Apr. 22, 2013) ...................................................... 5

*Dandong v. Pinnacle Performance Ltd.*,
   2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) ........................................................ 6

*DSU Med. Corp. v. JMS Co., Ltd.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) .............................................................. 10

*Falco v. Nissan N. Am. Inc.*,
   2016 WL 1327474 (C.D. Cal. April 5, 2016) ........................................................ 7

*Good v. BioLife Plasma Servs.*, L.P.,
   834 F. App'x 188 (6th Cir. 2020) ......................................................................... 5

*Hampton v. General Motors LLC*,
   2024 WL 718197 (E.D. Okla. Jan. 4, 2024) .......................................................... 7

*Hays v. Nissan North America, Inc.*,
   2019 WL 12054662 (W.D. Mo. Sept. 26, 2019) ................................................... 7

*Herron v. J E Phillips & Sons, Inc.*,
   2019 WL 2897539 (E.D. Ark. 2019) ................................................................... 10

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   382 F. Supp. 3d 687 (E.D. Mich. 2019) ................................................................ 5

*In re Flint Water Cases*,
   558 F. Supp. 3d 459 (E.D. Mich. 2021) ................................................................ 6

*In re Ford Motor Co.*,
   86 F.4th 723 (6th Cir. 2023) ................................................................................. 7

*In re GM OnStar Litig.*,
   2011 WL 679510 (E.D. Mich. Jan. 12, 2011) ....................................................... 6

*In re Nw. Airlines Corp. Antitrust Litig.*,
  197 F. Supp. 2d 908 (E.D. Mich. 2002) ................................................................5

*In re Pork Antitrust Litig.*,
  665 F. Supp. 3d 967 (D. Minn. 2023) ...................................................................6

*JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*,
  1998 WL 175888 (E.D. Pa. 1998), *aff'd*, 178 F.3d 1279 (3d Cir. 1999) .............10

*Nguyen v. Nissan N. Am., Inc.*,
  932 F.3d 811 (9th Cir. 2019) ................................................................................7

*Siqueiros v. General Motors LLC*,
  2022 WL 741182 (N.D. Cal. Jan. 7, 2022) ...........................................................7

*Sloan v. Gen. Motors LLC*,
  2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) ............................................ 7, 9, 10

*Weidman v. Ford Motor Co.*,
  2022 WL 1071289 (E.D. Mich. Apr. 8, 2022) ......................................................7

*Won v. General Motors, LLC*,
  2022 WL 3010886 (E.D. Mich. Jul. 28, 2022) ......................................................5

**Rules**

Fed. R. Civ. Pro. 702..................................................................................................5

iii

## COUNTER-STATEMENT OF ISSUES PRESENTED

1. Whether the Court should permit Edward Stockton's Supplemental Declaration regarding his Repair Cost model since Mr. Stockton's opinions are relevant, reliable, follow applicable law, and are widely utilized in automotive defect litigation?

    Plaintiffs answer: Yes

2. Whether the Court should permit Edward Stockton's Supplemental Declaration regarding his Idled Asset Period opinions since they are relevant, reliable, sufficient for class certification, and provide for independent damages incurred as a result of FCA's instructions to class members to cease the use of the hybrid function of the vehicles for which class members paid a premium?

    Plaintiffs answer: Yes

# **MOST APPROPRIATE OR CONTROLLING AUTHORITIES**

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    382 F. Supp. 3d 687 (E.D. Mich. 2019)

#### I.   INTRODUCTION

In July 2024, approximately eight years after the Class Vehicles were first sold and two years after FCA first recalled the Class Vehicles for their defective hybrid battery systems, FCA issued a second recall of the Class Vehicles and admitted that vehicles that had received the first recall "fix" still suffered vehicle fires. *See* ECF No. 185, PageID.8098; Exhibit 1, Recall 24V-536 ("73B") Part 573 Safety Recall Report. The Recall Report states that the discovery of post-recall vehicle fires "confirmed the Z11 remedy is not effective." *Id.* at 2. FCA, through a letter addressed to Class Vehicle owners, stated:

> Your vehicle may still be at risk of experiencing a fire originating from the high voltage (HV) battery even after having the remedy for FCA US Recall ID Z11 (NHTSA Recall ID 22V-077) (Z11) completed. A folded or torn anode tab may result in the generation of lithium by-product over time. This defect, along with a second unidentified factor, may lead to an internal short within the pack and may result in a vehicle fire. **A vehicle fire may increase the risk of injury to occupants and persons outside of the vehicle, as well as property damage.**
>
> **Until further notice, FCA is advising owners of these hybrid vehicles to refrain from recharging the high voltage battery, and to park them away from structures and other vehicles.**

Exhibit 2, Recall 73B Owner Notification Letter (emphasis in original).

FCA's 73B Recall comes two years after Plaintiffs first filed suit, alleging that the Z11 Recall did not adequately address the Spontaneous Fire Risk. ECF No. 138, ¶¶ 208-224.

After the announcement of the 73B Recall, the Court allowed supplemental

1

discovery to take place and for the Parties' experts to issue supplemental expert declarations to consider the new evidence of post-recall vehicle fires and the second recall. Mr. Stockton issued his Supplemental Declaration on November 12, 2024. ECF No. 185-1.

## II. FACTUAL BACKGROUND

### A. Mr. Stockton's Expert Declaration

On January 19, 2024, Mr. Stockton issued his "Declaration," which provides expert opinions on damage issues in support of Plaintiffs' forthcoming motion for class certification. *See* ECF No. 145-2. Mr. Stockton proposes two methods to calculate class wide damages: the Repair Cost method and the Idled Asset Period method. *Id.* at ¶¶ 4-6.

Under the Repair Cost model, Mr. Stockton "estimates overpayment harm under a benefit of the bargain model, which estimates the amount of overpayment based on what would have been the cost to remedy the Defect at the time of acquisition." *Id.* at ¶ 5. Within the Repair Cost model, Mr. Stockton provides a methodology for two possible scenarios. Under the *Recall Repair* scenario, Mr. Stockton assumes that the recall remedy previously provided by FCA is a competent repair and one which is available to all putative class members. *Id.* Under the *Proposed Repair* scenario, Mr. Stockton's assumption is that a competent repair has not been made available. *Id.*

The Idled Asset Period model sets out to "estimate economic harm from the idling of the hybrid feature" from February 2022 to October 2022. *Id.* at ¶ 6. Mr. Stockton identifies three methods he could utilize, based on which data is made available to him from FCA, to complete the Idled Asset Period calculation. Each of the three methods (Direct Method, Derived Method, and Hedonic Regression) are explained in detail in the report. *Id.* at ¶¶ 69-96.

**B.     Mr. Stockton's November 12, 2024 Supplemental Expert Declaration**

Mr. Stockton's Supplemental Declaration confirms that "the methods set forth in the Stockton Declaration are conceptually equipped to accommodate the new information." ECF No. 185-1, PageID.8111, ¶ 5. "The issuance of the Second Recall merely introduces new factual inputs into existing models." *Id.*

For the Idled Asset Period methodology, Mr. Stockton's Supplemental Declaration states that, "[t]he Second Recall is conceptually the same as the original Idled Asset Period." *Id.* at ¶ 8. "[T]he data points/inputs necessary to estimate potential additional economic harm are conceptually identical to those already described." *Id.*

As for the Overpayment methodology:

> The issuance of the Second Recall may introduce new factual inputs into my overpayment model, as different repairs could be necessary to remedy the Defect. However, the concepts of the overpayment model remain the same. That is, if the issuance of the Second Recall reveals that a different or additional repair would have been necessary at the time of acquisition to remedy the Defect, then the cost of the

3

>appropriate repair (or repairs) at the point of acquisition would represent the relevant overpayment increment.

*Id.* at ¶ 10.

Mr. Stockton also "consider[s] the possibility that some portion of Class Vehicles may have a characteristic that introduces unacceptable fire or safety risk while others do not and that it is not known, or feasibly knowable, which vehicles do or do not have that characteristic." *Id.* at ¶ 11. "In that case, a reasonable possibility is that it would be necessary to inspect all Class Vehicles for the existence of this condition, but that not all Class Vehicles would require the same repair subsequent to the inspection." *Id.* In such a scenario, "the cost of repair on a Class-wide basis would include inspection of all vehicles with additional repairs applied to a portion of Class Vehicles." *Id.* at ¶ 12. "Distribution of any aggregate award would be manageable through allocation among Class Members." *Id.*

Mr. Stockton "reiterate[s] that [he is] not attempting to introduce factual elements related to the nature or repair of the Defect. Rather, [he is] describing the model's capacity to accommodate factual inputs on a Class-wide basis." *Id.* at ¶ 13. In sum, "the Second Recall potentially introduces new factual inputs to [Stockton's models] but does so within the existing conceptual frameworks already described in the Stockton Declaration." *Id.* at ¶ 14.

4

### III.  LEGAL STANDARD

Rule 702 requires that "an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and that the expert appropriately 'fits' the facts of the case into the theories and methods he or she espouses." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687, 691 (E.D. Mich. 2019) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-93 (1993)). "It is well settled, and has been so for decades, that under the permissive framework established by *Daubert* and Rule 702, 'rejection of expert testimony is the exception, rather than the rule.'" *Won v. General Motors, LLC*, 2022 WL 3010886, at *11 (E.D. Mich. Jul. 28, 2022) (quoting *Good v. BioLife Plasma Servs., L.P.*, 834 F. App'x 188, 198 (6th Cir. 2020)); *Cason-Merenda v. Detroit Med. Ctr.*, 2013 WL 1721651, at *5 (E.D. Mich. Apr. 22, 2013) (quoting *In re Nw. Airlines Corp. Antitrust Litig.*, 197 F. Supp. 2d 908, 913 (E.D. Mich. 2002)); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008).

At the class certification stage, expert testimony "is not being offered to prove the merits of the plaintiffs' claims, but only to establish that the merits of those claims properly can be adjudicated by means of collective litigation." *In re FCA Monostable*, 382 F. Supp. 3d at 692. Thus, the inquiry at this stage is limited to whether the expert report is admissible to establish the requirements of Rule 23, not

whether a trial jury should consider the opinions. *Dandong v. Pinnacle Performance Ltd.*, 2013 WL 5658790, at *13–14 (S.D.N.Y. Oct. 17, 2013); *see also In re GM OnStar Litig.*, 2011 WL 679510, at *6 (E.D. Mich. Jan. 12, 2011) expert testimony judged on the basis of whether it supports class certification and not on whether it is admissible) (citing cases). "At this early stage of the proceedings, the Court is not performing its typical *Daubert* role of gatekeeping for a *jury* but is instead determining whether the proposed experts will assist the *Court* in making a pure determination of law." *In re Flint Water Cases*, 558 F. Supp. 3d 459, 523 (E.D. Mich. 2021) (noting that "the concerns animating traditional *Daubert* review—confusing the jury—do not exist when the Court is the sole trier of fact and law") (emphasis in original); *see also In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967, 986 (D. Minn. 2023) ("There is less need for the Court to protect only itself, so the Court may conduct a less stringent application of Rule 702 and *Daubert* at the class certification stage."). Moreover, expert testimony at class certification should not be evaluated "as a factual referendum on the merits of Class Plaintiffs' case, but instead through the limited lens of whether the testimony and reports can be relied upon to establish that Class Plaintiffs' claims are proper for class adjudication." *In re Flint Water Cases*, 558 F. Supp. 3d at 524.

## IV.   ARGUMENT

### A.   Mr. Stockton Uses a Reliable Economic Methodology.

As detailed in Plaintiffs' Opposition to FCA's original Motion to Exclude Stockton (ECF No. 145), the Repair Cost model employed by Mr. Stockton to measure benefit of the bargain damages is a reliable and common method for determining damages in automotive defect cases. *See, e.g.*, *Weidman v. Ford Motor Co.*, 2022 WL 1071289, at *4 (E.D. Mich. Apr. 8, 2022) *reversed on other grounds by In re Ford Motor Co.*, 86 F.4th 723 (6th Cir. 2023); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 816 (9th Cir. 2019); *Falco v. Nissan N. Am. Inc.*, 2016 WL 1327474, at *12 (C.D. Cal. April 5, 2016); *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *48 (N.D. Cal. Apr. 23, 2020); *Hays v. Nissan North America, Inc.*, 2019 WL 12054662, at *2-4 (W.D. Mo. Sept. 26, 2019); *Hampton v. General Motors LLC*, 2024 WL 718197, at *16 (E.D. Okla. Jan. 4, 2024); *Simmons v. Ford Motor Co.*, 576 F. Supp. 3d 1136 (S.D. Fla. 2021); *Siqueiros v. General Motors LLC*, 2022 WL 741182, at *11 (N.D. Cal. Jan. 7, 2022); *White v. General Motors LLC*, Case No. 21-cv-00410 (D. Colo. Feb. 29, 2024).

Here, Mr. Stockton utilizes the Repair Cost model to evaluate the overpayment by Plaintiffs and class members who received a Class Vehicle with the Defect at the time of purchase instead of the vehicles for which they bargained. Consumers did not get the benefit of their bargain because of the Defect, and the

Repair Cost Model estimates the amount of money necessary to return the vehicles to what consumers reasonably expected.

**B.     FCA's Criticism of Mr. Stockton's Repair Cost Model Lacks Merit.**

   **1.     Mr. Stockton's model is relevant and fits Plaintiffs' theory.**

FCA's attacks on Mr. Stockton's Supplemental Declaration suffer from numerous fatal flaws.

*First*, FCA suggests that vehicle owners "have received, or can receive, a free repair by ***also*** awarding them 'overpayment'/'benefit of the bargain'" damages. ECF No. 185, PageID.8103. While it is true that Mr. Stockton's Repair Cost Model considers the possibility that an adequate repair could be provided to remedy the Defect, which would affect the damage calculation, no such repair has been offered to Plaintiffs or Class Members. Plaintiffs' Complaint alleges that the Z11 Recall was ineffective and FCA has subsequently admitted that to be true. There is no evidence in the record that the 73B Recall has even been made available to Class Members, let alone that it is an adequate remedy. Any argument by FCA that the existence of a repair undercuts Mr. Stockton's opinions should be rejected.

*Second*, FCA argues that "the identification of a specific manufacturing defect in the second recall renders Stockton's analysis nonsensical." ECF No. 185, PageID.8104. But FCA fails to explain why that is the case and FCA's argument is belied by its own decision to recall *all* the Class Vehicles (again) and inform *all*

8

Class Vehicle owners that their vehicles are at risk of fire and to cease using their hybrid function. *See* Ex. 1. Additionally, FCA's argument conveniently omits the fact that FCA itself has determined that there are two aspects to the Defect: (1) a folded or torn anode tab may result in the generation of lithium by-product over time," and (2) "…a second unidentified factor." ECF No. 185, PageID.8098 n. 7. Thus, even if the folded or torn anode tabs were manufacturing defects (a fact that has not been established), FCA itself has not been able to determine whether the second aspect of the Defect is a manufacturing or design defect. In any event, exclusion of any of Mr. Stockton's opinions on this basis would certainly be premature.

*Third*, FCA fails to understand Mr. Stockton's hypothetical calculation. Mr. Stockton explains that if an adequate repair ends up being a classwide inspection of each Class Vehicle and a battery repair in 10% of those vehicles, then damages can be calculated by adding the cost of each inspection to the cost of the battery repairs necessary to be performed in those vehicles. This calculation, if performed under the facts of the case, could provide a classwide cost-of-repair average per vehicle. But "[d]istribution of any aggregate award would be manageable through allocation among Class Members." ECF No. 185-1, ¶ 12. Thus, contrary to FCA's assertion, this approach would not overcompensate or undercompensate Class Members as it specifically considers a manageable method for damage allocation. *Id.*

9

The single case FCA relies on, *Sloan v. Gen. Motors, LLC*, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020), discusses that court's concerns with the proposed class of former and current owners of the vehicle. *Id.* at *48. The court amended the class definition, but also explained that Mr. Stockton's cost-of-repair proposal was an adequate classwide damage methodology that has been accepted by the Ninth Circuit. *Id.* FCA here raises no argument about how Mr. Stockton's report fits with Plaintiffs' proposed classes, likely because Plaintiffs have not yet filed their motion for class certification. The *Sloan* case is irrelevant.

### 2. Mr. Stockton's model is reliable.

Despite arguing that Mr. Stockton's Repair Cost model "would award damages that are not permissible as a matter of law," FCA fails to cite to a single case to show that Mr. Stockton's damage methodologies are impermissible under state law, and tellingly, none of the cases FCA cites even speak to the Repair Cost methodology proposed by Mr. Stockton. *See, e.g.*, *Herron v. J E Phillips & Sons, Inc.*, 2019 WL 2897539, *1-2 (E.D. Ark. 2019) (excluding expert opinion on loss of paternal economic support for failing to account for after-tax contributions); *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003) (finding expert testimony inadmissible in patent infringement case because it relied on unacceptable theory that lost profits damages could be based on defendant's sales of acceptable noninfringing substitute product); *JMJ Enters., Inc. v. Via Veneto Italian*

10

*Ice, Inc.*, 1998 WL 175888, *9 (E.D. Pa. 1998), *aff'd*, 178 F.3d 1279 (3d Cir. 1999) (finding methodology not reliable since it was based on unrealistic sales projections and included a combination of unrecovered investment and lost profits).

To the contrary, Mr. Stockton's Repair Cost model has been upheld by numerous courts in similar automotive defect class actions. *See supra*, Section IV.A.

### C. Mr. Stockton's Idled Asset Period Methodology is Relevant and Reliable.

FCA raises no new arguments as to how Mr. Stockton's Idled Asset Period Model is irrelevant or unreliable. Thus, Plaintiffs rely on the argument in their original Opposition. *See* ECF No. 145, PageID.6832-38. Like the Z11 Recall, the 73B Recall also included instruction by FCA to Class Members to "refrain from recharging the high voltage battery, and to park [the vehicles] away from structures and other vehicles." Ex. 2. At the time Mr. Stockton issued his Supplemental Declaration, this instruction had been in place, in conjunction with the 73B Recall, for approximately four months. Mr. Stockton will take those new facts into account when he issues his merits opinions in March 2025.

### V. CONCLUSION

FCA has failed to show that Mr. Stockton's Supplemental Declaration should be excluded. Plaintiffs ask that the Court deny FCA's motion.

Dated: January 10, 2025                    Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

/s/ *Dennis A. Lienhardt*
E. Powell Miller (P39487)
Dennis A. Lienhardt (P81118)
Dana E. Fraser (P82873)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dal@millerlawpc.com
def@millerlawpc.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Rachel E. Fitzpatrick
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 224-2626
rachelf@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

**BARRACK RODOS & BACINE**
Stephen R. Basser
Samuel M. Ward
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
sbasser@barrack.com

**COTCHETT, PITRE & McCARTHY**
Niall McCarthy
Karin Swope
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
NMcCarthy@cpmlegal.com
Kswope@cpmlegal.com

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
Gayle Blatt
Camille Guerra
110 Laurel Street
San Diego, CA 92101-1486
Telephone: (619) 238-1811
gmb@cglaw.com

*Interim Plaintiffs' Steering Committee for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 10, 2025, I filed the foregoing document using the electronic filing system which will serve all parties of record.

By: /s/ *Dennis A. Lienhardt*
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM PC**
950 West University Drive,
Rochester, Michigan 48307
(248) 841-2200
dal@millerlawpc.com