## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION | Case No. 2:22-cv-03040-DML-EAS |
| | Hon. David M. Lawson |
| MDL No. 3040 | Magistrate Judge Elizabeth A. Stafford |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT FCA US LLC'S SUPPLEMENTAL MOTION TO EXCLUDE PLAINTIFFS' EXPERT BRADLEY ZIGLER'S SUPPLEMENTAL DECLARATION**

# TABLE OF CONTENTS

**Page**

COUNTER STATEMENT OF ISSUES PRESENTED...........................................iv

MOST APPROPRIATE OR CONTROLLING AUTHORITIES............................v

I.     INTRODUCTION ................................................................................1

II.    RELEVANT FACTUAL BACKGROUND ......................................1

     A.    FCA Recalls the Class Vehicles Twice in Two Years for the Same Fire Risk. ...............................................................1

     B.    Dr. Zigler's November 12, 2024 Supplemental Expert Declaration .............................................................................2

III.    LEGAL STANDARD .......................................................................4

IV.    ARGUMENT.....................................................................................5

     A.    Dr. Zigler is Qualified to Give His Supplemental Expert Opinions. ........................................................................5

     B.    Dr. Zigler's Supplemental Opinions Are Helpful to the Court.....................................................................................7

     C.    Dr. Zigler's Supplemental Opinions Rely on Sufficient Facts and Data. ...................................................................9

     D.    Dr. Zigler's Methodology for His Supplemental Opinions Is Appropriate.....................................................11

     E.    Dr. Zigler Reliably Applied Industry Principles to the Facts to Render His Supplemental Opinions. ....................13

V.    CONCLUSION................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cason-Merenda v. Detroit Med. Ctr.*,
2013 WL 1721651 (E.D. Mich. Apr. 22, 2013) ...................................4

*Chapman v. Gen. Motors LLC*,
2023 WL 2745161 (E.D. Mich. Mar. 31, 2023)...................................6

*Companhia Energetica Potiguar v. Caterpillar Inc.*,
2016 WL 7507848 (S.D. Fla. Aug. 1, 2016) .......................................9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)...................................................................4, 5

*Durmishi v. Nat'l Cas. Co.*,
720 F. Supp. 2d 862 (E.D. Mich. 2010) (Lawson, J.) .........................4

*In re Gen. Motors OnStar Litig.*,
2011 WL 679510 (E.D. Mich. Jan. 12, 2011) ....................................7

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)....................................................................11

*McLean v. 988011 Ontario, Ltd.*,
224 F.3d 797 (6th Cir. 2000) ..........................................................9

*In re Nissan N. Am., Inc. Litig.*,
122 F.4th 239 (6th Cir. 2024) .........................................................13

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ......................................................5, 10

*Weidman v. Ford Motor Co.*,
646 F. Supp. 3d 928 (E.D. Mich. 2022) ............................................8

*Won v. Gen. Motors, LLC*,
2022 WL 3010886 (E.D. Mich. Jul. 28, 2022) (Lawson, J.)................5

011086-11/2938433 V1

*In re Yasmin & YAZ (Drospirenone) Mktg., Sales Pracs. & Prods.*
   *Liab. Litig.*,
   2011 WL 6302287 (S.D. Ill. Dec. 16, 2011) .....................................................12

### OTHER AUTHORITIES

Fed. R. Evid. 702, advisory committee note to 2023 Amendment...........................9

011086-11/2938433 V1

## <u>COUNTER STATEMENT OF ISSUES PRESENTED</u>

1. Whether Plaintiffs' expert Dr. Bradley Zigler is qualified to offer his supplemental opinions and testimony regarding the existence of a common fire risk defect in the HV battery packs of the Class Vehicles that may be remedied by replacement with a later-manufactured HV battery pack when Dr. Zigler is a mechanical engineer with decades of experience in the automotive industry, including experience analyzing warranty claims and product defects?

   Plaintiffs' answer: Yes.

2. Whether the Court should permit Dr. Bradley Zigler's supplemental opinions and testimony regarding the existence of a common fire risk defect in the HV battery packs of the Class Vehicles that may be remedied by replacement with a later manufactured HV battery pack when such opinions and testimony are relevant, reliable, sufficient for class certification, and helpful to determining common questions regarding the fire risk defect and remedy for purposes of class certification?

   Plaintiffs' answer: Yes.

011086-11/2938433 V1

## <u>MOST APPROPRIATE OR CONTROLLING AUTHORITIES</u>

Fed. R. Evid. 702

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*Chapman v. Gen. Motors LLC*, 2023 WL 2745161 (E.D. Mich. Mar. 31, 2023)

*Won v. Gen. Motors, LLC*, 2022 WL 3010886 (E.D. Mich. Jul. 28, 2022)

*Weidman v. Ford Motor Co.*, 2022 WL 1071289 (E.D. Mich. Apr. 8, 2022)

*In re GM OnStar Litig.*, 2011 WL 679510 (E.D. Mich. Jan. 12, 2011)

011086-11/2938433 V1

# I.     INTRODUCTION

More than two years after FCA first recalled model year 2017 and 2018 Chrysler Pacifica PHEVs ("Class Vehicles") for a fire risk defect arising from their high voltage ("HV") batteries, FCA admitted its Z11 recall software upgrade fails to remedy the fire risk and re-recalled the Class Vehicles, directing owners—for the second time—to stop charging and using the vehicles' hybrid function and to park outside their garages and away from structures. Based on this development, the Court granted the parties leave to supplement their experts' class certification-related opinions and further brief their motions to exclude such opinions. *See* ECF No. 168. FCA now moves to exclude the supplemental expert opinions of Dr. Bradley Zigler on the same bases it previously moved as to his original opinions and without substantively addressing Dr. Zigler's supplemental opinions. *See* ECF Nos. 130 and 184. FCA's motion, like its first, should be denied.

# II.     RELEVANT FACTUAL BACKGROUND

## A.     FCA Recalls the Class Vehicles Twice in Two Years for the Same Fire Risk.

Model year 2017 and 2018 Chrysler Pacifica PHEVs ("Class Vehicles") were originally recalled in February 2022 (the "Z11 Recall") because "a defect within the HV battery [could] result in a fire." *See* ECF No. 130-2, PageID.4829. Putative Class members were directed to stop charging or using their vehicles' hybrid function and to park away from structures while FCA developed a software remedy. After roughly

eight months, FCA rolled out the Z11 software upgrade. But shortly thereafter, certain Class Vehicles that received this "fix" began to experience thermal runaway and fire. *See* ECF No. 184-2, PageID.8079–80. At least eight fires occurred in Class Vehicles despite obtaining this purported remedy. *See id.* at PageID.8079.

In response, on July 18, 2024, FCA recalled the Class Vehicles again, telling owners:

> Your vehicle may still be at risk of experiencing a fire originating from the high voltage (HV) battery even after having the remedy for FCA US Recall ID Z11 (NHTSA Recall ID 22V-077) completed. A folded or torn anode tab may result in the generation of lithium by-product over time. This defect, along with a second unidentified factor, may lead to an internal short within the pack and may result in a vehicle fire. **A vehicle fire may increase the risk of injury to occupants and persons outside of the vehicle, as well as property damage.**
>
> **<u>Until further notice, FCA is advising owners of these hybrid vehicles to refrain from recharging the high voltage battery, and to park them away from structures and other vehicles.</u>**

Exhibit 1, Recall 24V-536 Owner Notification Letter (emphasis in original).

## B. Dr. Zigler's November 12, 2024 Supplemental Expert Declaration

In Dr. Zigler's November 12, 2024 supplemental declaration ("Supplemental Declaration"), he opines that the Class Vehicles' HV batteries are materially the same in fit, form, and function (an engineering and manufacturing concept used in the automotive industry) despite design and manufacturing changes that resulted in

twenty-five versions of the HV battery used in the Class Vehicles. *See* ECF No. 184-2, PageID.8065–74. He was able to conclude this because—based on industry standards for engineering and service part control—he determined the battery versions were interchangeable and backward compatible with a single service part. *Id.* That service part contains the "newest" version of the HV battery and can be installed for use in any Pacifica PHEV model year 2017–2025. *Id.* at PageID.8070–73. Further, notwithstanding the running changes made to the HV battery versions used in the Class Vehicles, each battery version was twice recalled for the fire risk, indicating that any running changes did not differentiate a particular battery version in a manner that eliminated the fire risk. *Id.* at PageID.8066–67.

Dr. Zigler further opines that all Class Vehicles are subject to the fire risk based on his determination that the HV batteries are materially the same, but also based on certain of FCA's recently admitted and disclosed facts: that the HV battery is the definitive source of the fire risk; that the Z11 Recall software was ineffective at remedying the fire risk (despite a substantial number of HV batteries—more than four percent—necessitating replacement during the Z11 Recall procedure); that the complete root cause of the fire risk remains unknown and cannot be solely attributed to a manufacturing defect (e.g., damaged anode tabs); and that FCA has not (and cannot) affirmatively determine which Class Vehicle HV batteries present the

- 3 -

specific conditions that make them vulnerable to fire (e.g., torn or folded anode tab plus the other "unknown" but required factor). *Id.* at PageID.8074–84.

Dr. Zigler also opines that HV battery replacement remains an alternative remedy for the fire risk. *Id.* at PageID.8081. As described throughout his Supplemental Declaration, Dr. Zigler's opinions are supported by discovery documents, independent research, and his industry experience as a powertrain engineer with transmission and engine component and systems design and release responsibility at Ford Motor Company.

FCA moved to exclude Dr. Zigler's Supplemental Declaration, yet it raises no discernable new arguments not already briefed. Plaintiffs therefore rely on and incorporate by reference the arguments in their original Opposition. *See* ECF No. 148.

### III.   LEGAL STANDARD

Federal Rule of Evidence 702 and the *Daubert* standard require that expert testimony be relevant and reliable and the expert witness qualified to give it. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Durmishi v. Nat'l Cas. Co.*, 720 F. Supp. 2d 862, 879–80 (E.D. Mich. 2010) (Lawson, J.). The "rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Cason-Merenda v. Detroit Med. Ctr.*, 2013 WL 1721651, at *5 (E.D. Mich. Apr. 22,

2013) (quoting *In re Nw. Airlines Corp. Antitrust Litig.*, 197 F. Supp. 2d 908, 913

(E.D. Mich. 2002)); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir.

2008); *Won v. Gen. Motors, LLC*, 2022 WL 3010886, at *11 (E.D. Mich. Jul. 28,

2022) (Lawson, J.). An expert may be qualified by experience and "is permitted wide

latitude to offer opinions, including those that are not based on firsthand knowledge

or observation." *Daubert*, 509 U.S. at 592.

## IV.   ARGUMENT

### A.   Dr. Zigler is Qualified to Give His Supplemental Expert Opinions.

FCA simply repackages the same citations and points from its original brief,

without any new analysis, in arguing that Dr. Zigler is unqualified to testify to the

opinions in his Supplemental Declaration. *See* ECF No. 184, PageID.8051–53.

These arguments fail for the reasons outlined in Plaintiffs' original Opposition, *see*

ECF No. 148, PageID.7180–86, and when applied to Dr. Zigler's supplemental

opinions.

Dr. Zigler's central opinions—that the HV battery is materially the same

across all versions utilized in the Class Vehicles, that all versions are subject to the

fire risk, and that battery replacement is an available remedy for the fire risk—are

all founded in and based on his experience in automotive systems engineering,

product development, and monitoring warranty claims and product defects. He has

industry-specific knowledge and experience with the fit, form, and function

concept's application to a vehicle- or system-level component, and with how a manufacturer treats that component when it deviates (by necessity or choice) in fit, form, and function through assigned engineering part and service part numbers. The opinions he offers does not require HV battery-specific knowledge because his opinion here is not an analysis of the HV batteries' technical specifications. Rather, it is an analysis of FCA's treatment of the component and what that says about it: that despite design and manufacturing changes to the HV battery, it remained compatible (and its part numbering consistent with such indicia of compatibility) with all Class Vehicles; that despite such changes, FCA still recalled all HV battery versions twice for the same fire risk. It is precisely this experience that qualifies him to conduct this analysis and ultimately conclude the component is an interchangeable part and thus common to the Class Vehicles.

Dr. Zigler's testimony—founded on and limited to his automotive and systems engineering expertise—does not equate to an "extreme discrepanc[y] between [his] area of knowledge and the subject [he was] engaged to opine on." *See, e.g.*, *Chapman v. Gen. Motors LLC*, 2023 WL 2745161, at *4–5 (E.D. Mich. Mar. 31, 2023), *motion to certify appeal denied*, 2023 WL 3855830 (E.D. Mich. June 6, 2023) (denying GM's motion to exclude plaintiff's expert as unqualified based on familiarity with specialized issue based on prior employment and doctoral studies).

**B.      Dr. Zigler's Supplemental Opinions Are Helpful to the Court.**

Again, FCA reiterates the same arguments (and citations) already used to challenge the admissibility of Dr. Zigler's original declaration, merely claiming the Supplemental Declaration "adds nothing helpful" because "[m]ost of it is still premised on the unsupported notion of shared service numbers signifying a common defect [] when less than one percent of those batteries with those service numbers have exhibited the defect Zigler claims []." *See* ECF No. 184, PageID.8053.

First, FCA perpetually ignores that the defect Plaintiffs allege to cause classwide harm is not actual fire—but the ***risk*** of fire—arising from the HV batteries that FCA cannot isolate to specific vehicles or batteries within the Class Vehicle population, and this fire risk directly harmed owners classwide when FCA instructed them to stop charging and using their Class Vehicles in the ordinary and intended course only to ultimately issue the now admittedly inadequate Z11 software remedy. Nowhere in his original or Supplemental Declaration does Dr. Zigler opine that the Class Vehicles are commonly defective because their HV batteries will all succumb to thermal runaway.

Second, Dr. Zigler's analysis and testimony does "assist the trier of fact to understand the evidence or determine a fact at issue," specifically whether the Class Vehicles are equipped with materially similar HV batteries that pose a fire risk and whether battery replacement is an alternative remedy. *See In re Gen. Motors OnStar*

- 7 -

*Litig.*, 2011 WL 679510, at *8 (E.D. Mich. Jan. 12, 2011), *report and recommendation adopted sub nom. In re: OnStar Cont. Litig.*, 2011 WL 674727 (E.D. Mich. Feb. 16, 2011) (finding expert opinion helpful where it bears on whether class action treatment is appropriate). FCA asserts that Dr. Zigler's opinions derive from evidence that is common knowledge or obvious and thus unhelpful, *i.e.*, a shared service part number and the Z11 recall. But it's his analysis of this evidence that leads to his ultimate conclusions, not a simple recitation of those facts. *See, e.g.*, ECF No. 184-2, PageID.8065–74.

For example, in his Supplemental Declaration, Dr. Zigler concludes that the changes made to the Class Vehicles' HV batteries could not render them variant in fit, form, and function because FCA did not require a service part split (the industry norm), which is further affirmed by the fact that each battery version was recalled (twice) for the same fire risk despite their purported differences.[1] This insight would not be apparent to a layperson reviewing the recall notice. *See Weidman v. Ford Motor Co.*, 646 F. Supp. 3d 928, 933–34 (E.D. Mich. 2022) (admitting testimony from engineering expert despite defendant's claim that "the [trier of fact] is capable of reading [the automobile manufacturer's] documents" because the expert's

---

[1] Mr. Leaphart's opinions are no more "helpful" themselves, as he opines the running design and manufacturing changes mean the HV battery is not common yet admits he did not actually investigate or determine whether such changes had any bearing on or relevance to the fire risk. *See* ECF No. 133, PageID.5493–96.

experience "allow[ed] him to understand [the issues] and their impact in ways that the [trier of fact] may not appreciate, meaning his opinions would assist the trier of fact"); *see also Companhia Energetica Potiguar v. Caterpillar Inc.*, 2016 WL 7507848, at *16 (S.D. Fla. Aug. 1, 2016) (finding expert's opinions "helpful to the fact-finder because [they] can describe charts, checklists, and data in a meaningful way and provide context that is not apparent from the face of [the] documents").

## C.  Dr. Zigler's Supplemental Opinions Rely on Sufficient Facts and Data.

FCA, again, raises no new argument, law, or analysis specific to the Supplemental Declaration. It claims that Dr. Zigler ignores HV battery changes "he has no idea about," fails to account for the "manufacturing anomalies underlying the fires," and, essentially, neglects to identify the root cause of the fire risk defect (which FCA has yet to do so itself). *See* ECF No. 184, PageID.8054. These specific criticisms go to the weight of the evidence rather than its admissibility because Dr. Zigler's opinions are based on sufficient facts. *See* Fed. R. Evid. 702, advisory committee note to 2023 Amendment ("once the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence"); *see also*, *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("mere 'weaknesses in the factual basis of an expert witness' opinion ... bear on the weight of the evidence rather than on its

admissibility'" (citation omitted)); *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530–32.

Dr. Zigler does not ignore the running changes to the HV battery's design and manufacture. As discussed *infra*, his opinion that there is a common component posing a fire risk rests on the determination that these running changes could not have materially modified the HV battery design given FCA's handling of the engineering and service parts and re-recall of all battery versions. *See* ECF No. 184-2, PageID.8065–74. Meanwhile, despite claiming these running changes make a common defect impossible, FCA's expert Mr. Leaphart admits he has no idea whether such changes relate in any way to reducing or eliminating the fire risk while also acknowledging all Class Vehicles are subject to the fire risk. *See* ECF No. 133, PageID.5493–96, 5504.

More importantly, the evidence does not show the fire risk arises solely from a manufacturing defect, and Dr. Zigler's opinions consider that in concluding all Class Vehicles' HV batteries are vulnerable to fire risk. *See* ECF No. 184-2, PageID.8074–81. From the outset of this case in early 2022, FCA disclosed no known root cause of the fires other than to identify the HV battery as the involved component. As Dr. Zigler notes in his Supplemental Declaration, more than two years later and in conjunction with the 73B recall, FCA identified damaged anode tabs in the HV battery as ***one factor*** contributing to the fire risk but, critically,

admitted a **second still-unknown factor** was also at play. *See id.* at PageID.8078–

79, 8081. FCA also now explicitly admits the HV batteries are the source of the fire

risk, saying "there have been no manufacturing changes identified through the

lifetime of production of RU PHEV (external to the battery) which can be attributed

to the fires," and that the Z11 software update "is not robust enough to catch

abnormalities within the [HV battery] pack" that contribute to the fire risk. *See id.* at

PageID.8078–79, 8081. Given these recent factual developments, FCA cannot rely

on the self-serving and unproven assumption that the fire risk results from a

manufacturing defect alone to claim that Dr. Zigler's opinions are based on

insufficient data or that he must definitively identify the root cause of the fire risk—

beyond that it plainly arises from the HV battery—when FCA has yet to do so itself.

**D.     Dr. Zigler's Methodology for His Supplemental Opinions Is Appropriate.**

Repeating its original arguments once again, FCA claims Dr. Zigler's

opinions derive from no methodology at all and rely on limited information and

information he does not understand. *See* ECF No. 184, PageID.8055. But this

ignores that Dr. Zigler's applied principles in his supplemental opinions are largely

derived from (and limited to) his experience with transmission and engine

component and systems design and release responsibility at Ford. *See Kumho Tire

Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("Engineering testimony rests upon

scientific foundations, the reliability of which will be at issue in some cases. ... In

other cases, the relevant reliability concerns may focus upon personal knowledge or experience."); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2011 WL 6302287, at *8 (S.D. Ill. Dec. 16, 2011) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data; indeed, Rule 702 allows a witness to be 'qualified as an expert by knowledge, skill, experience, training, or education.'" (citation omitted)).

For example, FCA repeatedly refers to what it deems a low percentage of fires in the Class Vehicles to date,[2] and its expert Mr. Leaphart notes that only an estimated five percent of Class Vehicles are "suspected to have any potential for presenting a combination of 'a folded or torn anode tab' and some other factor that could lead to an internal short and potential fire." *See* ECF No. 184-3, PageID.8087. But this ignores that FCA presents **no evidence** of its ability to actually identify which of the tens of thousands of Class Vehicles do have this catastrophic combination. Further, FCA and Mr. Leaphart's conclusion that only five percent of Class Vehicles are estimated to be impacted is flawed and unreliable because FCA does not even know what "other factor" is involved and, regardless, the damage to the Class members is the same: they could not use the vehicles' hybrid function and

---

[2] Dr. Zigler also notes that more than four percent of the model year 2017–2018 Pacifica PHEV population had their batteries replaced under the Z11 Recall, which indicates FCA and Mr. Leaphart's one percent figure is unreliable as a marker for Class Vehicles truly vulnerable to the fire risk. *See* ECF No. 184-2, PageID.8083.

must park away from structures for significant periods of time. Dr. Zigler does not misunderstand the evidence he relies on; rather, FCA cannot escape the reality of that evidence.

**E.    Dr. Zigler Reliably Applied Industry Principles to the Facts to Render His Supplemental Opinions.**

Finally, FCA argues that Dr. Zigler's supplemental opinions are unreliable when applied "to the question of whether the defect Plaintiffs allege is 'common'" for the same set of reasons on which it previously attacked Dr. Zigler's original opinions. *See* ECF No. 184, PageID.8056. But this laundry list of criticisms is already dispensed of elsewhere. *See, e.g.*, section IV.A. (demonstrating Dr. Zigler is qualified to offer supplemental opinions); section IV.C. (no evidence of manufacturing defect alone as root cause of the fire risk and no one—including FCA—has identified full root cause although it undisputably arises from HV battery).

Finally, FCA relies on *In re Nissan North America, Inc. Litigation*, 122 F.4th 239, 244 (6th Cir. 2024), to argue that Dr. Zigler is not qualified and his opinions are not backed by evidence. *See* ECF No. 184, PageID.8057. That case is distinguishable. There, the plaintiff's expert opined that the class vehicles' braking systems suffered from a common deficiency and that the different software versions implemented to remedy the class vehicles' braking issues were substantially similar. *In re Nissan N. Am., Inc. Litig.*, 122 F.4th at 253. The appellate court took issue with

- 13 -

the former because the expert did not test or consider a subset of class vehicles with a different software update, and with the latter because it lacked "evidentiary support." *Id.* at 253. Here, Dr. Zigler did consider all HV battery versions implicated in the Z11 and 73B Recalls in applying industry component control processes and concluding they were interchangeable and thus materially the same in fit, form, and function. He thoroughly explained and cited to the documentary evidence, his independent research, and the industry experience he relied on to reach those commonality conclusions. *See* ECF No. 184-2, PageID.8065–74. And critically, while the braking issue did not occur for all drivers in *Nissan*, here, the fire risk manifested to damage Class Vehicle owners classwide. While not all Class Vehicles will experience thermal runaway and fire, all have suffered economic losses due to the fire risk.

## V.    CONCLUSION

Plaintiffs respectfully request the Court deny FCA's motion to exclude Dr. Zigler's supplemental opinions.

011086-11/2938433 V1

DATED: January 10, 2025          Respectfully submitted,

*/s/ Steve W. Berman*

Steve W. Berman
Shelby Smith
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
shelby@hbsslaw.com

Rachel E. Fitzpatrick
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 224-2626
rachelf@hbsslaw.com

E. Powell Miller (P39487)
Dennis A. Lienhardt (P81118)
Dana E. Fraser (P82873)
**THE MILLER LAW FIRM PC**
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dal@millerlawpc.com
def@millerlawpc.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

- 15 -

Stephen R. Basser
Samuel M. Ward
**BARRACK RODOS & BACINE**
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
sbasser@barrack.com

Niall McCarthy
Karin Swope
**COTCHETT, PITRE & MCCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
nmccarthy@cpmlegal.com
kswope@cpmlegal.com

Gayle Blatt
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
110 Laurel Street
San Diego, CA 92101-1486
Telephone: (619) 238-1811
gmb@cglaw.com

*Interim Plaintiffs' Steering Committee*
*for Plaintiffs and the Proposed Class*

011086-11/2938433 V1

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

DATED: January 10, 2025

*/s/ Steve W. Berman*
Steve W. Berman

- 17 -