UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: CHRYSLER PACIFICA FIRE RECALL
PRODUCTS LIABILITY LITIGATION

MDL No. 3040

Case Number 22-md-03040
Honorable David M. Lawson
Magistrate Judge Elizabeth S. Stafford

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS AMENDED CONSOLIDATED MASTER COMPLAINT**

The plaintiffs in this multidistrict litigation allege that defendant FCA US LLC (known also as Chrysler or Chrysler Corporation) manufactured and sold Chrysler Pacifica Plug-in Hybrid minivans that were defective because they had been known to spontaneously combust. In the last round of dispositive motions in this case, the Court dismissed three counts of the Consolidated Master Complaint, which purported to plead "common law" claims of "fraudulent concealment," "fraudulent omission," and "unjust enrichment" as "nationwide" claims, rejecting the plaintiffs' argument that such pleading in gross was proper because the common law elements of the causes are "virtually identical" among the many states. The plaintiffs were allowed to file an amended consolidated master complaint (amended CMC) in which they have repleaded those causes of action on a state-by-state basis (along with the other statutory claims, which are repeated). Defendant FCA has filed another motion to dismiss directed to the amended pleading under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court heard oral argument in open court on September 18, 2024. For the reasons discussed below, the motion will be granted in part and denied in part.

I. Facts and Proceedings

The factual background of the case is discussed extensively in the Court's opinion granting in part and denying in part the defendant's first motion to dismiss, *In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, 706 F. Supp. 3d 746 (E.D. Mich. 2023).

The plaintiffs, bringing claims of deceptive practices and warranty breaches against the defendant, say that, either due to defects in their design or problems during the manufacturing process, the large battery mechanism incorporated into the powertrain of the vehicles has a tendency spontaneously to enter a "thermal runaway" state resulting in combustion or explosion of the vehicle. The spontaneous ignition of the batteries, the plaintiffs say, may occur unpredictably at any time, even when the vehicles are parked and the ignition is off. Due to the risk of spontaneous fires, the plaintiffs allege, they are unable to drive or leave the vehicles unattended with peace of mind, and they are forced to seek parking locations far removed from structures or other vehicles due to the risk of damage to any nearby property if the vehicles suddenly burst into flames. The plaintiffs acknowledge that FCA has initiated two voluntary recalls of the class vehicles based on the fire risk, but they allege that the measures implemented by the recalls are insufficient to cure the problem, because the remedy consists merely of software patches meant to "monitor" the battery system for conditions that may lead to thermal runaway, and no repair or replacement of the battery pack is offered unless Chrysler deems it "necessary" after an inspection. It appears that the defendant did not determine that replacement was a necessary measure for any of the plaintiffs' vehicles (or, apparently, for most of the thousands of class vehicles currently in service).

After the case was commenced and following the Court's ruling on the defendant's initial pleading challenge, it came to light during an extensive period of discovery that the National

Highway Traffic Safety Administration (NHTSA) had opened a recall query to examine the efficacy of the original voluntary recall, based on reports of post-recall fires in class vehicles. NHTSA's public notice of the new investigation stated as follows:

> From December 2022 through December 2023, NHTSA has received four consumer complaints (VOQs) alleging vehicle thermal events involving recalled 2017 and 2018 Chrysler Pacifica PHEVs. Additional information collected from complainants confirmed a thermal event originating near or at the HV battery pack after the Recall 22V077 remedy had been applied to the vehicle. Follow-up meetings with FCA and suppliers in November and December 2023 to discuss the ongoing root cause investigation and post-recall remedy incidents indicated a recent increase in HV battery thermal events. Furthermore, a review of NHTSA complaint data indicated the post-recall HV battery thermal event complaint rate now exceeds pre-recall levels.
>
> The Office of Defects Investigation (ODI) is opening this Recall Query (RQ) to review the effectiveness of the original recall remedy, understand the root cause of the battery fires, investigate additional reports of Pacifica PHEV HV battery fires, and to increase monitoring of the manufacturer root cause investigation.

NHTSA, Recall Query RQ24001 (Jan. 16, 2024), https://static.nhtsa.gov/odi/inv/2024/INOA-RQ24001-10139.pdf. That recall inquiry eventually prompted a second voluntary recall, which was initiated by the defendant on July 18, 2024. NHTSA, Safety Recall Report (Jul. 18, 2024), https://static.nhtsa.gov/odi/rcl/2024/RCLRPT-24V536-8355.PDF. The description of the defect in the second recall notice reads: "A folded or torn anode tab may result in the generation of lithium by-product over time. This defect, along with a second unidentified factor, may lead to an internal short within the pack and may result in a vehicle fire." *Ibid.* The notice further states that the defendant will offer a second recall remedy described as follows:

> FCA US will conduct a voluntary safety recall on all affected vehicles to update the HV Battery Pack Control Module ("BPCM") with revised software to monitor battery pack assembly operational status for conditions that could lead to a fire in the battery pack assembly. FCA US will inspect and, if necessary, replace the battery pack assembly. Until the remedy is complete, FCA US is advising owners of these hybrid vehicles to refrain from recharging them, and to park them away from structures and other vehicles.

*Ibid.*

- 3 -

This multidistrict litigation was initiated on August 3, 2022 by an order of the Judicial Panel on Multidistrict Litigation (JPML) transferring to this Court for pretrial proceedings four civil actions pending in various districts for consolidation with three cases filed in this district. Subsequent orders by the JPML transferred more cases raising the same claims, which altogether comprise 11 putative class actions with 67 named plaintiffs who, in an amended CMC, have pleaded cumulatively more than 164 counts under the laws of 31 states. On October 17, 2022, the Court consolidated the related cases and established initial deadlines for filing and challenging consolidated pleadings. The plaintiffs' first CMC was filed on November 3, 2022. On December 19, 2022, the defendant filed a motion under Federal Rule of Civil Procedure 12(b)(6) challenging the viability of all of the claims pleaded in the CMC. The Court granted that motion in part on December 11, 2023, but the majority of the pleaded claims were allowed to proceed. However, the Court struck from the CMC several counts in which the plaintiffs had attempted to plead common law fraud and unjust enrichment causes of action on a "nationwide" basis. The defendant later filed a motion to compel arbitration, which was denied on February 5, 2024. The defendant's appeal of the arbitration ruling, which implicates the claims of 18 individual plaintiffs, remains pending. The plaintiffs filed a motion for leave to amend the CMC for the purpose of re-pleading their common law counts on a state-by-state basis. That motion was granted on June 14, 2024, and the amended CMC was filed on June 18, 2024. The defendant responded with the present second motion to dismiss challenging the re-pleaded common law claims on various grounds.

In the original CMC, consisting of 1,450 paragraphs spanning more than 430 pages, including attached exhibits, the plaintiffs pleaded 81 causes of action sounding in breaches of express and implied warranties and violations of various state laws governing consumer sales, deceptive marketing, and unfair trade practices. After the Court granted leave for the plaintiffs to

file an amended CMC, the initial master pleading was superseded by an expanded version which frames 164 counts occupying 626 pages. After the amended CMC was filed, the parties stipulated to the dismissal of claims brought by several of the individual plaintiffs. Those dismissals resulted in the elimination of claims by proposed Nevada and Tennessee sub-classes (previously represented respectively by dismissed plaintiffs Rickey Butler and Scott Lewandowski). As it presently stands, the amended CMC asserts causes of action under the laws of 29 states.

## II. Discussion

When evaluating a motion under Rule 12(b)(6), the Court is called upon to determine if the "complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). When reviewing the motion, the Court "must construe the complaint in the light most favorable to the plaintiff and accept all [factual] allegations as true." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th

Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, before a court considers documents "integral to the claims" and that are referenced in the complaint, "it must also be clear that there exists no material disputed issues of fact regarding the relevance of the documents." *Diei v. Boyd*, 116 F.4th 637, 644 (6th Cir. 2024) (*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012)). If those extra-complaint materials are to be considered, the Court must convert the motion to a motion for summary judgment under Rule 56 and allow all parties to present evidence, which usually means that an opportunity to conduct discovery should be given. *Id.* at 643 (citing Fed. R. Civ. P. 12(d)).

The defendant presents a number of arguments supporting the dismissal of the common-law claims, and it has renewed arguments presented and rejected in its earlier motion as to the statutory claims. They are discussed in turn below.

A. Fraudulent Concealment

1. Discovery Rule

The defendant argues that the fraudulent concealment claims under the common law of 15 states (Arizona, California, Colorado, Connecticut, Idaho, Kansas, Maryland, Massachusetts, New Hampshire, North Carolina, Oregon, Pennsylvania, South Carolina, Virginia, Washington) are time barred and cannot proceed because the plaintiffs failed to plead facts establishing when they "discovered" the injury alleged to have been caused by the defective battery pack. However, the Court previously considered and rejected the same argument when the defendant sought dismissal of the plaintiffs' statutory consumer fraud counts in nine jurisdictions on the basis of the supposed time bar. As the Court held then, and "as this Court previously has held, it is well settled that, the statute of limitations is an affirmative defense, and a plaintiff generally need not plead [around]

affirmative defenses to state a valid claim." *In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, 706 F. Supp. 3d 746, 773 (E.D. Mich. 2023) (quoting *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 691 (E.D. Mich. 2020); citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); Fed. R. Civ. P. 8(a), (c)) (cleaned up). "'Moreover, . . . adjudication of a limitations defense at the pleading stage is particularly inappropriate where, as here, factual issues relating to concealment of the defect by the defendant potentially could impact whether it is estopped from asserting the limitations defense, or whether other exceptions to the defense could apply.'" *Ibid.* (quoting *Francis*, *supra.*; *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-02744, 2018 WL 4352702, at *7 (E.D. Mich. Sept. 12, 2018)).

As the Court also previously held, the facts alleged in the amended CMC, replicating the narrative in the original pleading, are sufficient to suggest plausibly that the defendant had both "superior" and "exclusive" knowledge of the defect before it initiated the first safety recall in 2022, and those circumstances by corollary also sustain an inference that the plaintiffs could not reasonably have "discovered" the alleged defect independently before the recall notice was issued. *See In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, 706 F. Supp. 3d 746, 770-72 (E.D. Mich. 2023) ("The defendant concedes that under California, Idaho, Kentucky, Massachusetts, Minnesota, Missouri, North Carolina, Rhode Island, Virginia, and Washington law, a manufacturer has a duty to disclose the existence of a defect when it has superior and exclusive knowledge of the problem compared with buyers. The plaintiffs have cited authorities holding that the same rule of decision also applies in Florida, Georgia, Kansas, Nevada, Pennsylvania, South Carolina, and Tennessee. Under those alleged circumstances, and particularly where the alleged risk has serious implications for motor vehicle safety, a duty to disclose is recognized in the above jurisdictions,

- 7 -

and the facts pleaded in the CMC are sufficient to establish those circumstances."). The dismissal of the common law fraud claims as time barred is not appropriate at the early pleading stage.

## 2. Standalone Cause

The defendant argues that under the laws of 10 states (Connecticut, Florida, Indiana, Massachusetts, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, Texas) fraudulent concealment is not a standalone cause of action. The plaintiffs concede the dismissal of the common law fraud counts under Massachusetts and Texas law (Counts LXXIV, LXXV, CXLVIII, CXLIX). However, this and other federal courts have found that the common law in the remaining states recognizes causes of action sounding in fraudulent concealment, also denominated as fraud or deception by omission. **Missouri, Pennsylvania:** *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 994 (E.D. Mich. 2017) (citing *Finest Place, Inc. v. Skidmore*, 477 S.W.3d 745, 748 (Mo. App. 2016); *V-Tech Servs., Inc. v. St.*, 72 A.3d 270, 275-76 (Pa. Super. 2013)); **Michigan:** *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 681 (E.D. Mich. 2020) (citing *In re Korn*, 567 B.R. 280, 307 (Bankr. E.D. Mich. 2017); *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 555, 817 N.W.2d 562, 567-68 (2012); *Hord v. Envtl. Research Inst. of Michigan*, 463 Mich. 399, 412, 617 N.W.2d 543, 550 (2000)); **Connecticut, Florida:** *In re Nissan N. Am., Inc. Litig.*, No. 19-00843, 2023 WL 2749161, at *10 (M.D. Tenn. Mar. 31, 2023) (citing *McCullough v. World Wrestling Ent., Inc.*, 172 F. Supp. 3d 528, 563 (D. Conn. 2016); *Reville v. Reville*, 312 Conn. 428, 441, 93 A.3d 1076, 1087 (2014); *Vital Pharms., Inc. v. Balboa Cap. Corp.*, 14-62469, 2016 WL 4479370, at *7 (S.D. Fla. Aug. 25, 2016), *aff'd*, 806 F. App'x 884 (11th Cir. 2020)); **Indiana:** *Monarch Beverage Co. v. Tyfield Importers, Inc.*, 823 F.2d 1187, 1191 (7th Cir. 1987) (citing *First Nat. Bank of New Castle v. Acra*, 462 N.E.2d 1345, 1348 (Ind. Ct. App. 1984); *Vaughn v. Gen. Foods Corp.*, 797 F.2d 1403, 1410-11 (7th Cir. 1986) ("Both omissions and misrepresentations

are actionable under Indiana law.")); **Minnesota:** *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 529 (8th Cir. 1999) ("Under Minnesota law, fraud is properly pled if the complaint alleges the elements of intent, inducement, reliance, and damages. Fraud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.") (citing *M.H. v. Caritas Fam. Servs.*, 488 N.W.2d 282, 289 (Minn. 1992) ("A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading.")); **Ohio:** *Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 493 (6th Cir. 2019) ("'In Ohio, the elements of fraud are: (a) a representation, or, where there is a duty to disclose, a concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'" (quoting *Burr v. Bd. of Cnty. Comm'rs of Stark Cnty.*, 23 Ohio St. 3d 69, 73, 491 N.E.2d 1101, 1105 (1986)). Aside from the two jurisdictions where the plaintiffs concede their claims, the defendant has not shown that the fraud claims should be dismissed due to invocation of causes of action unacknowledged by the common law.

### 3. Economic Loss Rule

The defendant contends that the so-called doctrine of "economic loss" precludes claims of fraudulent concealment under the law of 17 states (California, Colorado, Florida, Georgia, Kentucky, Maryland, Michigan, Minnesota, Missouri, New Hampshire, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Virginia, Wisconsin). The Court considered and rejected the same argument in its prior ruling, where it held that the case law does not support the

defendant's expansionist construction of the doctrine as applying broadly to every cause of action sounding in tort. *In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, 706 F. Supp. 3d 746, 765-66 (E.D. Mich. 2023) ("The defendant argues that the consumer protection claims under the laws of California, Colorado, Florida, Georgia, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri, Pennsylvania, New Hampshire, North Carolina, South Carolina, Tennessee, Texas, Virginia, and Wisconsin all are barred by the so-called 'economic loss rule,' which in general serves to bar recovery in tort for transactional losses deemed purely contractual. The cases on point do not support the defendant's position, and the defendant has not cited any case law endorsing their invocation of the economic loss doctrine to bar consumer claims for statutory fair dealing violations and fraudulent inducement that are pleaded here.") (collecting cases); *see also id.* at 767 ("'Ohio's economic loss doctrine does not bar fraud claims by consumers who are not in contractual privity with the defendant.'") (quoting *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 92 UCC Rep. Serv. 2d 754, 2017 WL 1902160, at *17-18 )). The fraud claims are not barred by the economic loss rule.

### 4. Manifestation

The defendant contends that the common law fraud claims of plaintiffs from eight states (Georgia, Minnesota, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Wisconsin) are defective because those plaintiffs failed to plead facts demonstrating that the alleged defect "manifested" in their vehicles. The Court rejected that position when it held in its prior ruling that the original pleading plausibly alleged that the battery defect in fact has "manifested" in every class vehicle in service, due to the ongoing recall restrictions (recently explicitly renewed via a second recall notice) advising class vehicle owners not to charge their cars with the plug-in capability or park them anywhere near any structure or other vehicle. *In re Chrysler Pacifica Fire*

*Recall Prod. Liab. Litig.*, 706 F. Supp. 3d 746, 782 (E.D. Mich. 2023) ("[T]he plaintiffs uniformly allege that they feel constrained to adhere to the initial recall restrictions that prohibit the effective use of the plug-in hybrid charge feature of their vehicles. The allegedly indefinite and ongoing consignment to uselessness of such a primary operating capability, which was featured prominently in defendant's product literature as a major selling point of the cars, certainly constitutes 'manifestation' of a problem by any reasonable construction of that term. And that manifestation allegedly has occurred with all of the class vehicles at least within the extended powertrain warranty period."). The fraud claims are not subject to dismissal for want of a sufficient pleading of "manifestation."

### 5. Reliance

The defendant argues that the common law fraud claims must be dismissed across the board because the plaintiffs failed sufficiently to allege their "reliance" on particular representations by the defendant about the class vehicles, citing *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 987 (N.D. Cal. 2018) ("The problem for Plaintiffs is that they have failed to identify what advertising they saw that promised certain fuel economy or performance, a predicate to Plaintiffs' specific concealment theory in this case."). However, as the Court held in its prior ruling, the plaintiffs in this case uniformly have alleged that they "relied" on the defendant's representations about the superior fuel economy of the class vehicles based on their integration of the plug-in hybrid system, which is a feature that undisputedly commanded a substantial price premium over a conventional gas-only powertrain. *See In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, 706 F. Supp. 3d 746, 785 (E.D. Mich. 2023) ("The defendant argues that the limited vehicle warranty 'does not warrant a defect-free vehicle,' but instead merely 'promises repair of certain defects,' and none of the plaintiffs alleged

that their vehicles were presented for repair within the warranty period and found to be 'defective in material, workmanship, or factory preparation.' That position is belied by facts, discussed above, which plausibly suggest that a primary feature of the class vehicles' powertrain system, for which a substantial price premium was paid, is nearly or entirely useless in all of the class vehicles due to the serious fire hazard presented by its continued use. The complete failure of a primary vehicle system expressly touted and sold at a premium price, which renders the vehicle unsuitable even for the purpose of routine transportation, certainly renders the vehicles 'defective' by any sensible meaning of that term."). The plaintiffs explicitly alleged that they relied on the representation of superior performance based on a premium feature which has been rendered all but useless by the restrictions imposed via the first and second (presently ongoing) voluntary recalls. That is sufficient to sustain the element of "reliance" for the purposes of their fraud claims.

### B. Unjust Enrichment

#### 1. Discovery Rule

The defendant argues that the common law in nine states (Arizona, Colorado, Kansas, Maryland, Minnesota, North Carolina, Rhode Island, South Carolina, Washington) requires dismissal of the unjust enrichment claims because the plaintiffs failed sufficiently to allege when they "discovered" their injuries due to the alleged defect. This argument fails for the same reasons discussed above in the section addressing the discovery rule in the context of the fraudulent concealment claims.

#### 2. Standalone Cause of Action

The defendant argues that unjust enrichment is not a standalone cause of action under the common law of California, Illinois, Massachusetts, New Hampshire, New Jersey, and Texas. However, federal courts have found that each of those states recognizes unjust enrichment as a

viable common law cause of action. **California:** *Miller v. Nature's Path Foods, Inc.*, No. 23-05711, 2024 WL 4177940, at *8 (N.D. Cal. Sept. 11, 2024) ("While California case law on this issue could be clearer, the Ninth Circuit 'has construed the common law to allow an unjust enrichment cause of action through quasi-contract.'" (quoting *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)); **Illinois:** *Naranjo v. Belfor USA Group, Inc.*, No. 22-10924, 2023 WL 5762418, at *15 (E.D. Mich. Sept. 6, 2023) ("[U]nder Illinois law, the elements of unjust enrichment are: (1) the defendant unjustly retained a benefit to the plaintiff's detriment; and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.") (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989)); **Massachusetts:** *Jones v. Lubrizol Advanced Materials, Inc.*, 559 F. Supp. 3d 569, 640 (N.D. Ohio 2021) ("Under Massachusetts law, unjust enrichment requires the following elements: '(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by law.'" (quoting *Dialogo, LLC v. Bauza*, 456 F. Supp. 2d 219, 227 (D. Mass. 2006)); **New Hampshire:** *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 204 (D.N.H. 2021) ("A claim for unjust enrichment [under New Hampshire law] will lie [] in the alternative to a breach of contract and requires that the defendant receive a benefit from the plaintiff which, notwithstanding the absence of a contractual agreement between the parties, would be unconscionable for the defendant to retain.") (citing *Clapp v. Goffstown Sch. Dist.*, 159 N.H. 206, 210, 977 A.2d 1021, 1024-25 (2009)); **New Jersey:** *JJD Elec., LLC v. SunPower Corp., Sys.*, No. 22-1275, 2024 WL 3219294, at *10 (D.N.J. June 28, 2024) ("To state a claim for unjust enrichment, 'a plaintiff must show both that [the] defendant received a benefit and that retention of that benefit without payment would be unjust.'" (quoting *VRG Corp. v. GKN Realty Corp.*, 135

N.J. 539, 554, 641 A.2d 519, 526 (1994))); **Texas:** *Hays, v. Frost & Sullivan, Inc.*, No. 23-01490, 2024 WL 4052741, at *12 (W.D. Tex. Aug. 16, 2024), *R&R adopted*, 2024 WL 4047166 (W.D. Tex. Sept. 4, 2024) ("[A]lthough there is some confusion among the courts as to whether unjust enrichment is an independent cause of action or merely a quasi-contractual theory of recovery, the Texas Supreme Court has repeatedly recognized and affirmed claims of unjust enrichment.") (citing *Ye v. Zhang*, No. 18-4729, 2021 WL 5862093, at *2 (S.D. Tex. June 8, 2021); *Trial v. Dragon*, 593 S.W.3d 313, 323 n.6 (Tex. 2019); *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998)). The challenged unjust enrichment counts all are founded on recognized theories of law.

### C. Express Warranty / Legal Remedies / Direct Benefit

The defendant has argued that under the laws of every state (or nearly so), the plaintiffs cannot mount any viable unjust enrichment claims where (1) an express warranty allegedly covers the defect in question, (2) as a consequence, the plaintiffs cannot establish the absence of an adequate legal remedy, and (3) because the vehicles were bought from independent dealers, the plaintiffs cannot establish that they conferred any "direct benefit" on the defendant. The Court, consistently with the holdings of numerous other federal cases on point, previously has confronted and explicitly rejected the same blanket arguments directed against unjust enrichment claims brought in similar product defect suits:

> The parties do not identify any material distinctions in the rules of decision on this cause of action among the various states. The typical elements of a cause of action for unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted and retained the benefit; and (3) it would be unjust for the defendant not to pay the plaintiff the value of the benefit. GM argues that one element common to the claims in every jurisdiction is not adequately pleaded, namely, that the plaintiffs cannot show that they conferred any benefit on the defendant where all of them bought their cars from third-party dealers.
>
> In this case, as the Court has held in prior similar consumer auto defect suits, the plaintiffs adequately have pleaded that the defendant received a benefit (the inflated

> prices paid by them for their cars), that it knew it received it, and that it would be unfair for the defendant to retain it (because of its wrongful concealment of the defective transmission design, which all of the plaintiffs alleged would have led them to reconsider the purchase of their car, or to have paid less for it). That is all that they are required to allege in order to sustain a typical unjust enrichment claim at the pleading stage.
>
> GM also argues that all of the unjust enrichment claims must be dismissed because the plaintiffs cannot plausibly allege that any benefit was conferred on the defendant by their purchases of the vehicles where all of those purchases were from third-party dealers and not the defendant. But, as this Court noted when rejecting the same argument in the *Monostable Electronic Gearshift* litigation, the courts dismiss such claims only where the plaintiffs fail to allege facts showing that they have bestowed some sort of benefit upon the defendant that the defendant ought not keep in equity and good conscience.
>
> GM also argues that the plaintiffs cannot proceed on an unjust enrichment theory where they affirmatively plead the existence of an express contract (the limited warranty) governing the parties' relationships. But alternative pleading of contract and quasi-contract claims routinely is permitted, and particularly is appropriate, where the defendant explicitly disclaims the availability of a contractual remedy, as it has done here by vigorously asserting its warranty coverage defense.
>
> Finally, GM contends that the plaintiffs cannot proceed on an unjust enrichment theory where their consumer fraud and breach of warranty claims offer them an adequate remedy at law for any losses produced by the alleged defect. However, unjust enrichment claims routinely are allowed to proceed when pleaded in the alternative to other viable claims for relief.

*Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 693-94 (E.D. Mich. 2020) (cleaned up) (citing *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016) ("Rule 8(a)(3) permits pleadings in the alternative when, for instance, there is a dispute between the parties as to whether an express agreement exists."); *Johnston v. PhD Fitness, LLC*, 94 UCC Rep. Serv. 2d 1018, 2018 WL 646683, at *6 (E.D. Mich. Jan. 31, 2018); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1007-09 (E.D. Mich. 2017); *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 897 (E.D. Mich. 2014); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 665 (E.D. Mich. 2000)).

D. Economic Loss Rule

FCA argues that the economic loss doctrine precludes the claims of unjust enrichment under the laws of Missouri and Washington. However, the decisions on point do not support that position. The Seventh Circuit examined the law of Missouri in some depth and held that the doctrine in that state has been cabined narrowly to cases involving "commercial purchasers" asserting claims under the U.C.C. *Dunne v. Res. Converting, LLC*, 991 F.3d 931, 943 (8th Cir. 2021) (rejecting argument that the economic loss doctrine barred claims under unjust enrichment and other tort theories).

The sole Washington case cited by the defendant does not support its overly broad reading. First, the Washington court of appeals did not squarely confront the question whether the economic loss rule applies to claims for unjust enrichment. Instead, it held that no viable unjust enrichment claim was made out because the plaintiff had failed to show that the defendant had any duty to disclose information about purchased properties that improperly was withheld from him. *Austin v. Ettl*, 171 Wash. App. 82, 92, 286 P.3d 85, 91 (2012) ("Austin also argues that the trial court should not have dismissed his unjust enrichment claim. *Because the Ettls had no duty to disclose the potential costs of the not-yet-extant LIDs*, this argument fails as a matter of law.") (emphasis added). Second, the *Ettl* court recognized as a universal premise of unjust enrichment claims that such a cause of action "'is the method of recovery for the value of the benefit retained *absent any contractual relationship* because notions of fairness and justice require it.'" *Ibid.* (quoting *Young v. Young*, 164 Wash. 2d 477, 484, 191 P.3d 1258, 1262 (2008)). As discussed above, and widely recognized by the decisions on point, the purpose of this limiting doctrine is to confine claims for contractual damages to causes of action explicitly provided to compensate such commercial injuries, *in cases where a valid contract covering the subject matter is proven to exist*. But the

defendant here vigorously contends that its warranty *does not cover* the alleged defect. Such a limiting doctrine has no conceivable applicability to preclude a cause of action sounding in tort, which is universally recognized to secure liability *only in cases where no valid contract exists* on which a party could recover. The defendant has not cited any legal authority recognizing the applicability of this doctrine of commercial liability limitation to non-contractual tort claims in such a nonsensical fashion.

### E. Miscellaneous Grounds

In grounds 12 through 15 listed in the defendant's statement of questions presented, FCA attempts to resurrect challenges to the claims for express warranty and statutory consumer fraud claims in several jurisdictions, arguing that the Court erred in its prior ruling when it rejected the defendant's arguments that those previously pleaded counts were fatally defective. Notably, despite enumerating issues 13 through 15 of the questions presented, FCA did not offer any supporting argument for those grounds and did not even mention them in the motion brief. None of those arguments as framed in the present motion identify any material alteration of those counts in the amended CMC, and in substance the arguments merely seek tardy reconsideration of the Court's prior ruling granting in part and denying in part the motion to dismiss, which was issued more than seven months before the MTD challenging the reframed amended CMC was filed. *See* E.D. Mich. LR 7.1(h)(2) ("Motions for reconsideration of non-final orders are disfavored. They must be filed within 14 days after entry of the order."). The Court rejects the arguments in grounds 12 through 15.

### III. Conclusion

The plaintiffs acknowledge that there are no longer any live claims under Nevada or Tennessee law, since the only named plaintiffs from those states stipulated to dismiss their claims

after the amended CMC was filed. Plfs.' Resp., ECF No. 163, PageID.7571 n.5. Therefore, all of the counts under the laws of Nevada (Counts XCIV, XCV, XCVI, XCVII, XCVIII, XCIX) and Tennessee (Counts CXLI CXLII CXLIII CXLIV CXLV) will be dismissed. The plaintiffs also concede the dismissal of the common law fraud counts under Massachusetts and Texas law (Counts LXXIV, LXXV, CXLVIII, CXLIX). All of the defendant's other arguments for dismissal of the common law claims are without merit, and several previously were rejected by the Court.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss the amended consolidated master complaint (ECF No. 150) is **GRANTED IN PART**.

It is further **ORDERED** that Counts XCIV, XCV, XCVI, XCVII, XCVIII, XCIX, CXLI CXLII CXLIII CXLIV CXLV, LXXIV, LXXV, CXLVIII, and CXLIX of the amended CMC are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the defendant's motion is **DENIED** in all other respects.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   January 21, 2025