**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: July 10, 2025

Mr. Steve W. Berman
Hagens Berman Sobol Shapiro
1301 Second Avenue
Suite 2000
Seattle, WA 98101

Mr. Brandon L Boxler
Klein Thomas Lee & Fresard
1051 E. Cary Street
Suite 1430
Richmond, VA 23219

Mr. Stephen D'Aunoy
Klein Thomas Lee & Fresard
100 N. Broadway
Suite 1600
St. Louis, MO 63102

Ms. Rachel Elizabeth Fitzpatrick
Hagens Berman Sobol Shapiro
11 W. Jefferson Street
Suite 1000
Phoenix, AZ 85003

Mr. Dennis A. Lienhardt Jr.
Miller Law Firm
950 W. University Drive
Suite 300
Rochester, MI 48307

Mr. E. Powell Miller
Miller Law Firm
950 W. University Drive
Suite 300
Rochester, MI 48307

Re: Case No. 24-1137, *Andrew Berzanskis, et al v. FCA US, LLC*
Originating Case No. : 2:22-cv-03040

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

    Sincerely yours,

    s/Cathryn Lovely
    Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0183p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION.

_____

ANDREW BERZANSKIS; MARGARET WILENSKY; VERONICA BRYAN; MICHAEL ALEXANDER CHRISTIE; CHRISTOPHER DORN; MEAGAN POOLE FINDEISS; JAMES CALLAN FINDEISS; CHAD REI MING FONG; RUTH ISABELLA HOFFMAN; JAMES H. KAPPES; ALICIA L. KAPPES; MICHAEL PATRICK KEETH; DIAHANN H. MESSEGUER; SCOTT ALFRED OLSEN; ALEXANDER SHUSTA; JOHN C. SPRUANCE; ANDREW JOSEPH VENTURA; SPENCE S. VOSS,

    *Plaintiffs-Appellees*,

  *v.*

FCA US, LLC,

    *Defendant-Appellant.*

No. 24-1137

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-03040—David M. Lawson, District Judge.

Argued: December 10, 2024

Decided and Filed: July 10, 2025

Before: BATCHELDER, GRIFFIN, and WHITE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Brandon L. Boxler, KLEIN THOMAS LEE & FRESARD, Richmond, Virginia, for Appellant. Dennis A. Lienhardt, THE MILLER LAW FIRM PC, Rochester, Michigan, for Appellees. **ON BRIEF:** Brandon L. Boxler, KLEIN THOMAS LEE & FRESARD, Richmond, Virginia, Stephen A. D'Aunoy, KLEIN THOMAS LEE & FRESARD, St. Louis, Missouri, for

No. 24-1137   *Berzanskis, et al. v. FCA US, LLC*   Page 2

Appellant.  Dennis A. Lienhardt, E. Powell Miller, THE MILLER LAW FIRM PC, Rochester, Michigan, Steve W. Berman, Rachel E. Fitzpatrick, HAGENS BERMAN SOBOL SHAPIRO LLP, Seattle, Washington, for Appellees.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.  In this multi-district products liability suit, Plaintiffs allege that they purchased defective Chrysler Pacifica minivans from FCA.  Several months after the case progressed into discovery, FCA learned that some plaintiffs had agreed to arbitration clauses when they purchased their minivans and moved to compel those plaintiffs to arbitration.  The district court denied FCA's motion to compel, however, after it found sua sponte that FCA had waived its right to arbitrate.  FCA now challenges that decision in this interlocutory appeal, and, for the reasons below, we reverse.

**I.**

The facts here are simple.  In early 2022, FCA recalled certain Chrysler Pacifica minivans after it discovered that the batteries in these minivans could spontaneously explode.  Soon after the recall, Plaintiffs—who own these minivans—filed seven putative class action suits across the county.  Because these suits all related to the same alleged defect, the Judicial Panel on Multidistrict Litigation consolidated them in the Eastern District of Michigan in August 2022.  Then, a few months later in November, Plaintiffs filed their Consolidated Master Complaint.

With the cases now consolidated, FCA spent the next several weeks participating in preliminary case proceedings.  Then, in December, it moved to dismiss Plaintiffs' entire complaint for failure to state a claim.  While that motion was pending, the parties began to conduct discovery, at which point FCA subpoenaed the third-party dealerships that had sold the minivans to Plaintiffs.  In doing so, FCA obtained the relevant purchase agreements and learned that 18 of those 69 agreements contained arbitration clauses that may apply here.  FCA therefore moved to compel those 18 plaintiffs to arbitration on May 1, 2023—less than five months after discovery began and seven months before the district court ruled on FCA's motion to dismiss.

After a hearing in January 2024, the district court denied FCA's motion to compel arbitration. In its view, FCA waived its right to arbitrate—even though Plaintiffs never argued waiver—because FCA had acted "entirely inconsistent[ly]" with its arbitration rights by moving to dismiss all 69 plaintiffs' claims.[1] At the hearing, the district court never warned FCA about a potential waiver problem, and it asked only one obscure question about the timing of FCA's motion to compel arbitration. FCA now challenges the district court's decision in this interlocutory appeal.

## II.

When a district court denies a motion to compel arbitration based on waiver, we first review its factual findings for clear error and then decide de novo whether those facts establish waiver. *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 973-74 (6th Cir. 2024). A district court's factual findings are clearly erroneous if we have a "definite and firm conviction" that they were wrong. *S.C. v. Metro. Gov't of Nashville*, 86 F.4th 707, 714 (6th Cir. 2023).

## III.

FCA raises three main arguments on appeal: (1) that an arbitrator—and not the district court—should have decided whether FCA had waived its right to arbitrate; (2) that FCA could not have waived its arbitration rights when it moved to dismiss Plaintiffs' complaint because it did not know those rights existed at the time; and (3) that in any event, the district court could not sua sponte raise and find waiver.

### A.

As a threshold matter, we presume that courts—and not arbitrators—decide whether a party has waived its right to compel arbitration through litigation conduct inconsistent with that right. *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008). And that

---

[1]Implicit waiver through inconsistent litigation conduct is technically "forfeiture" of an arbitration right. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 443 (6th Cir. 2021) (distinguishing between waiver as "the intentional relinquishment or abandonment of a known right" and forfeiture as a party's "failure to make a timely assertion of a right"). But courts and litigants generally use the term "waiver" of arbitration. *See, e.g.*, *Schwebke v. United Wholesale Mortg., LLC*, 96 F.4th 971, 974 n.1 (6th Cir. 2024). In the interest of uniformity, and because this distinction is not material to our decision here, we follow suit.

presumption applies with equal force even when the parties have agreed to a broad arbitration clause. *See id.* at 394 (explaining that "courts have long decided whether conduct inconsistent with reliance on an arbitration agreement waives a defendant's ability to seek an arbitration referral"). We presume that courts must decide these issues for two main reasons. First, waiver-through-inconsistent-conduct issues "ordinarily turn on whether a plaintiff abused the litigation or pre-litigation process, and a court is most adept at policing procedure-abusing conduct." *Id.* Contracting parties, therefore, "likely would not expect arbitrators to resolve these issues because [such issues] rarely touch on a dispute's merits." *Id.* Second, "referring waiver-through-inconsistent-conduct claims to an arbitrator would often prove exceptionally inefficient because just deciding that a party waived arbitration fails to advance the substance of the case—it just gets referred back to the court." *Id.* For that reason, judicial resolution of these claims "will help better to secure a fair and expeditious resolution of the underlying controversy." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002).

Of course, as with all presumptions, the parties can overcome the presumption of judicial resolution if they can show that they "clearly and unmistakably," *id.* at 83, agreed to arbitrate "gateway questions of arbitrability" such as waiver through inconsistent litigation conduct, *see Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Normally, a gateway question of arbitrability has a "limited scope," "applicable in the kind of narrow circumstance where contracting parties would likely . . . expect[] a court to . . . decide[] the gateway matter." *Howsam*, 537 U.S. at 83.

Here, although the clauses at issue broadly delegate to arbitration all disputes over the sales contracts' "validity," "enforceability," "scope," and "arbitrability," they do not cover gateway questions such as waiver through inconsistent litigation conduct. That is because validity and enforceability address contract-formation disputes, such as whether an agreement was fraudulently induced or is unconscionable, *see Rent-A-Center*, 561 U.S. at 70, 73-75, and scope refers to which claims the arbitration agreement covers, *see Fazio v. Lehman Bros, Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). And although the clauses do mention questions of "arbitrability," we believe that this lone reference falls well short of the clear and unmistakable language needed for FCA to overcome the presumption of judicial resolution. *See Rent-A-*

*Center*, 561 U.S. at 65 (requiring parties to "explicitly assign[]" an issue to an arbitrator). We therefore conclude that the waiver-through-inconsistent-litigation issue is properly resolved by the court, not by an arbitrator.

**B.**

As with any other contractual right, a party can waive its right to arbitration. *Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 357 (6th Cir. 2022). In determining whether a party has waived its right to arbitrate, we apply "ordinary waiver rules" and look for an "intentional relinquishment or abandonment of a known right." *Schwebke*, 96 F.4th at 974; *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 417-18 (2022) (explaining that courts cannot create "a bespoke rule of waiver for arbitration"). Because a party does not often express its intent to waive a right, however, we infer that intent when a party "takes actions that are completely inconsistent with any reliance on [its] arbitration agreement." *Solo v. UPS Co.*, 947 F.3d 968, 975 (6th Cir. 2020) (cleaned up).

Under ordinary waiver rules, a party cannot waive a right unless he first knows that right exists. *Schwebke*, 96 F.4th at 974. Indeed, we explained long ago that a party cannot waive its right to arbitration without "knowledge of [the right's] existence," *Am. Locomotive Co. v. Chem. Rsch. Corp.*, 171 F.2d 115, 121 (6th Cir. 1948), and other circuits have also since agreed, *see, e.g.*, *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023) (explaining that waiver requires "knowledge of an existing right to compel arbitration" *and* "acts inconsistent with that existing right"); *In re Pawn Am. Consumer Data Breach Litig.*, 108 F.4th 610, 614 (8th Cir. 2024) (same). While our court has not often discussed the knowledge component since *American Locomotive*, that is because the required knowledge usually exists in these arbitration cases. *See, e.g.*, *Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 265 (6th Cir. 2015) (finding that the defendant's "course of conduct was deliberately chosen to reap some tactical advantage at odds with reliance on the arbitration clause"); *Dorsa*, 33 F.4th at 357 (defendant had knowledge of arbitration rights); *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718-19 (6th Cir. 2012) (same).

Even in the absence of actual knowledge, we have found waiver, but only because the party had all the information that it needed to determine its arbitration rights but negligently failed to do so. *See Solo*, 947 F.3d at 976 ("UPS knew or should have known all the information necessary to advance these arguments" "from the moment the complaint was filed."); *Schwebke*, 96 F.4th at 976-77 ("UWM concedes that it had imputed knowledge of the employment agreement" because it possessed the relevant documents.). And even when we found waiver in these cases, we acknowledged that it "might be inappropriate" in a different case "if the party belatedly seeking arbitration was unaware of information rendering a claim arbitrable." *Solo*, 947 F.3d at 976; *cf. Burton v. Ghosh*, 961 F.3d 960, 965 (6th Cir. 2020) (explaining that a party cannot waive a defense of which it "could not have reasonably known"). In sum, then, we have never held that a party can waive its arbitration rights without first knowing those rights exist.

To argue otherwise, Plaintiffs rely on two out-of-circuit cases, but neither case supports their position. In each case, the court found waiver after it concluded that the party could have discovered its arbitration rights sooner but—for one reason or another—did not do so. *See White v. Samsung Elecs. Am.*, 61 F.4th 334, 341 (3d Cir. 2023) (finding waiver because Samsung had enough information to learn about its arbitration rights but still "continued to pursue dismissal on the merits through litigation"); *Smith v. GC Servs.*, 907 F.3d 495, 500 (7th Cir. 2018) (finding waiver because the collection agency "could have found the [relevant credit card] agreement through a routine internet search"). These cases therefore align with our own precedent and do not hold that a party can waive a right without knowledge.

In light of these principles, the district court could not have found that FCA waived its arbitration rights. To find waiver, the district court first needed to determine that FCA knew or should have known that its arbitration rights existed when it moved to dismiss, but the district court believed that such knowledge was irrelevant. Indeed, the district court admitted as much when it concluded that FCA's knowledge would not "change the reality that FCA sought an immediate and total victory" on the merits by moving to dismiss. But FCA could not have intentionally relinquished its arbitration rights by taking actions inconsistent with those rights if it never knew that they existed. *See Solo*, 947 F.3d at 976. And had FCA been forced to move to compel arbitration before it received the relevant sales agreements through discovery, it would

not have known which plaintiffs it could compel to arbitration and therefore would not have been able to "carry its burden to produce evidence that would allow a reasonable jury to find that [an arbitration agreement] exists." *In re StockX Consumer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021); *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005) (explaining that before a federal court can send a case to arbitration, it "must first determine whether a valid agreement to arbitrate exists"). Such an approach would only produce wasteful placeholder motions that do not advance the litigation in any meaningful way.

True, the district court did suggest that even if FCA's knowledge was relevant, it still "taxe[d] credulity to posit that FCA was not aware of the standard sales documents its dealers were using." But the district court had no evidence that allowed it to make that purported factual finding. Instead, when FCA argued that it did not have access to the relevant purchase agreements before engaging in discovery and that it could not have compelled its dealers to provide those agreements without using formal discovery, the district court simply responded, "Well, maybe you do [have that control over your dealers], maybe you don't. My experience with dealerships is that you have exactly that control over them." But neither the district court's anecdotal experience with car dealerships nor its belief that arbitration agreements are ubiquitous throughout the industry is sufficient evidence to support a factual finding about FCA's knowledge, and that makes the district court's decision clearly erroneous. *Grosse Ile Bridge Co. v. Am. Steamship Co.*, 302 F.3d 616, 621 (6th Cir. 2002) (explaining that factual findings are clearly erroneous when they have no support in the record). Besides, if anything, the record here contradicts the district court's subjective understanding of the auto industry given that only 18 of the 69 original plaintiffs (26%) had signed sales agreements that included arbitration clauses that might apply here.

C.

Normally, in a situation like this, where the district court did not make legitimate factual findings to support its legal conclusion, we would remand the case for further fact finding. *See, e.g., Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 898 (6th Cir. 2020). But we decline to do so here because there exists another and even more fundamental problem with the district court's decision, which is that the district court—not the plaintiffs—raised waiver as a defense to

FCA's motion to compel arbitration. And so, because the district court violated the principle of party presentation by raising the waiver issue on its own, we decline to give the district court another opportunity to decide the issue.

In our adversarial system, we follow the principle of party presentation, which means that we "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). A court transcends its limited role as neutral arbiter in this system if it proceeds to act as a "self-directed board[] of legal inquiry" and decide issues that the parties never presented. *NASA v. Nelson*, 562 U.S. 134, 147 n.10 (2011) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.)). Indeed, our adversarial system "is designed around the premise that the parties know what is best for them[] and are responsible for advancing the facts and arguments entitling them to relief." *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment)). That is why courts in our system may not "sally forth each day looking for wrongs to right" but must instead exist as "passive instruments of government." *Id.* at 376.

To be sure, the principle of party presentation is, like many legal rules, not "ironclad." *Sineneng-Smith*, 590 U.S. at 376. But that does not mean that district courts can disregard this principle whenever it would be convenient to do so. *Wood v. Milyard*, 566 U.S. 463, 472 (2012) ("[A] federal court does not have *carte blanche* to depart from the principle of party presentation basic to our adversary system."). Rather, the principle of party presentation sets a "very high bar" for addressing an issue that neither party raised, *Dorris v. Absher*, 179 F.3d 420, 426 (6th Cir. 1999), and that bar is cleared only "in exceptional cases or particular circumstances" or when "the rule would produce a plain miscarriage of justice," *Koprowski v. Baker*, 822 F.3d 248, 259 (6th Cir. 2016) (quoting *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009)).

This is no exceptional case, however, that forced the district court to choose between respecting a core principle of our adversarial system and preventing some miscarriage of justice. Indeed, the 18 plaintiffs potentially subject to arbitration had every incentive and opportunity to raise waiver as a defense to the motion to compel arbitration but chose not to do so, and holding

them to that strategic choice here will not result in a miscarriage of justice. At worst, these plaintiffs will merely be required to abide by the terms of the contracts that they voluntarily signed and agreed to and to pursue their claims before an arbitrator. But that unremarkable outcome does not clear the high bar required for the district court to disregard the party-presentation principle and sua sponte resurrect an affirmative defense that—for better or for worse—these 18 plaintiffs chose not to assert. *See Hartmann v. Prudential Ins. Co.*, 9 F.3d 1207, 1214 (7th Cir. 1993) ("Our system . . . is not geared to having judges take over the function of lawyers, even when the result would be to rescue clients from their lawyers' mistakes.").

Nor do the plaintiffs even explain how they faced any prospect of injustice here without the district court's help. While some could argue that we can overlook the district court's error by pointing to concerns about judicial economy or a de novo standard of review, neither reason requires us to bless the district court's flawed approach here.

First, district courts cannot raise defenses such as waiver sua sponte in the arbitration context simply because the delayed assertion of arbitration rights may threaten judicial economy and orderly administration of justice. Rather, concerns about judicial economy cut the other way because the Federal Arbitration Act's (FAA) goal of promoting efficient dispute resolution is furthered only when motions to compel arbitration are decided quickly *and* correctly. *See Solo*, 947 F.3d at 972 (6th Cir. 2020) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). And as this case proves, a district court cannot decide a motion to compel arbitration correctly when the parties are not given a chance to present the court with all the relevant evidence. *See supra* Section III.B. That means that cases like these must then be returned to the district court for another try, after which another interlocutory appeal may follow. Because that piecemeal approach frustrates the FAA's purpose and equally threatens judicial economy, we cannot allow district courts to raise affirmative defenses sua sponte when deciding an arbitration motion unless their not doing so "would produce a plain miscarriage of justice." *Koprowski*, 822 F.3d at 259.

Second, these concerns cannot be brushed aside simply by retreating to the standard of review because waiver does not present a purely legal question that we review de novo. Rather, it presents a mixed question of law and fact, and mixed questions such as these require us first to

review the district court's factual findings for clear error before we can decide de novo whether those facts establish waiver. *Schwebke*, 96 F.4th at 973-74. And a highly deferential standard of review like the clear-error standard does not mitigate, much less eliminate, legitimate concerns about district courts' deciding critical motions on grounds neither presented nor addressed by the parties—it only amplifies them. *Cf. Elonis v. United States*, 575 U.S. 723, 742 (2015) (highlighting the increased chance for error when a court decides an issue without input from the parties).

In fact, Plaintiffs' position only proves the problem when they ask us to reject one of FCA's main arguments on appeal: that FCA could not have waived its arbitration rights when it did not know those rights existed. In Plaintiffs' view, FCA's argument should fail because the district court did not clearly err when it found that FCA should have known about its arbitration rights when it moved to dismiss. But, of course, because the district court raised this issue completely on its own and without any notice to the parties, FCA never had a chance to offer any evidence to the contrary. So if we would have to defer to factual findings made without any evidence or argument from the parties—as Plaintiffs suggest—then it is impossible to see how procedures like these do not prejudice FCA.

## IV.

Because the district court's decision not only violates the principle of party presentation basic to our adversarial system but also contravenes this Court's well-established waiver rules, we **REVERSE** the decision of the district court and remand for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-1137

In re: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION.
_____

ANDREW BERZANSKIS; MARGARET WILENSKY; VERONICA BRYAN; MICHAEL ALEXANDER CHRISTIE; CHRISTOPHER DORN; MEAGAN POOLE FINDEISS; JAMES CALLAN FINDEISS; CHAD REI MING FONG; RUTH ISABELLA HOFFMAN; JAMES H. KAPPES; ALICIA L. KAPPES; MICHAEL PATRICK KEETH; DIAHANN H. MESSEGUER; SCOTT ALFRED OLSEN; ALEXANDER SHUSTA; JOHN C. SPRUANCE; ANDREW JOSEPH VENTURA; SPENCE S. VOSS,

    Plaintiffs - Appellees,

  v.

FCA US, LLC,

    Defendant - Appellant.

**FILED**
Jul 10, 2025
KELLY L. STEPHENS, Clerk

Before: BATCHELDER, GRIFFIN, and WHITE, Circuit Judges.

## JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk