## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE: CHRYSLER PACIFICA FIRE
RECALL PRODUCTS LIABILITY
LITIGATION,

     MDL No. 3040

-----------------------------------------------

JEVECHIUS BERNARDONI et al.,

     *Plaintiffs*,

v.

FCA US LLC, a Delaware Limited
Liability Company,

     *Defendant*.

Case No.: 22-cv-03040

Hon. David M. Lawson

Magistrate Judge Elizabeth A. Stafford

Case No. 23-cv-12881

Hon. David M. Lawson

## DEFENDANT FCA US LLC'S OPPOSITION TO PLAINTIFFS JUSTIN AND KATHERINE BINDER'S MOTION TO LIFT THE STAY OF THEIR CLAIMS

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES...................................................................... ii

ISSUE PRESENTED ............................................................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................................v

INDEX OF EXHIBITS ........................................................................... vi

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

DISCUSSION .......................................................................................5

I.  FCA Did Not Waive Its Arbitration Rights Under California Code Of Civil
    Procedure § 1281.97. ......................................................................6

    A.  The Inadvertent Nonpayment Was Not Willful, Grossly Negligent, Or
    Fraudulent. ...............................................................................6

    B.  The Pre-*Hohenshelt* Cases Plaintiffs Cite Are Inapplicable. ................10

II. FCA Did Not Intentionally Relinquish Its Arbitration Rights............................11

CONCLUSION .....................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                          **Page(s)**

*Anoke v. Twitter, Inc.,*
　105 Cal. App. 5th 153 (2024) ..........................................................................10, 11

*Berzanskis v. FCA US, LLC,*
　143 F.4th 718 (6th Cir. 2025) ..................................................................................11

*Brown v. Dillard's, Inc.,*
　430 F.3d 1004 (9th Cir. 2005) ..................................................................................13

*De Leon v. Juanita's Foods,*
　85 Cal. App. 5th 740 (2022) ....................................................................................11

*Espinoza v. Superior Court,*
　83 Cal. App. 5th 761 (2022) ....................................................................................11

*Freeman v. SmartPay Leasing, LLC,*
　771 F. App'x 926 (11th Cir. 2019)...........................................................................13

*Hohenshelt v. Superior Court,*
　18 Cal. 5th 310 (2025)...................................................................................... *passim*

*Jaramillo v. TXU Energy,*
　2021 WL 1177888 (W.D. Tex. Mar. 29, 2021)........................................................9

*Kaplan v. Alfred Dunhill of London, Inc.,*
　1996 WL 640901 (S.D.N.Y. Nov. 4, 1996) .............................................................9

*O'Dell v. Aya Healthcare, Inc.,*
　753 F. Supp. 3d 1155 (S.D. Cal. 2024)...................................................................10

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship,*
　507 U.S. 380 (1993) ..................................................................................................8

*Rafique v. Premier Fin. All., Inc.,*
　2024 WL 5318837 (N.D. Cal. Dec. 27, 2024) ................................................. 12, 13

*Ron Kingston Contracting Inc. v. Cahaba Disaster Recovery LLC.,*
　2015 WL 1345281 (E.D. Ark. Mar. 23, 2015) .......................................................12

*Simone v. Citizens Bank, N.A.*,
    2024 WL 3237081 (D.R.I. June 17, 2024) ............................................................12

*Sink v. Aden Enters., Inc.*,
    352 F.3d 1197 (9th Cir. 2003).................................................................................13

*State Farm Fire & Cas. Co. v. No. 9 Software, Inc.*,
    2011 WL 4072667 (E.D. Va. July 27, 2011) ...........................................................8

*Williams v. W. Coast Hosps., Inc.*,
    86 Cal. App. 5th 1054 (2022)..................................................................................11

## Rules

American Arbitration Association, Commercial Arbitration Rules................. 1, 5, 9

## Statutes

Cal. Civ. Proc. Codes § 1281.97 ...................................................... *passim*

Cal. Civ. Proc. Codes § 1281.98 ...............................................................6

## <u>ISSUE PRESENTED</u>

1.    Did FCA intentionally relinquish its arbitration rights as to Justin and Katherine Binder when it inadvertently failed to pay an arbitration invoice that its counsel in the arbitration never received?

The Court should respond:  "No."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Hohenshelt v. Superior Court*, 18 Cal. 5th 310 (2025)

AAA Commercial Rule 4(a)(iv)

## <u>INDEX OF EXHIBITS</u>

| Exhibit | Description |
|:---:|:---|
| A | Emails between counsel |
| B | Emails with AAA |

# INTRODUCTION

Plaintiffs' counsel know who represents FCA in this matter. Yet when they initiated arbitration with the AAA, they did not copy FCA's counsel on the filing. Nor did they tell the AAA who represents FCA. That violated the AAA's rules, which require claimants to "include[ ] with *any* arbitration filing" the "name, address, telephone number, and email address of *any known representative for each party*." AAA Commercial Rule 4(a)(iv) (emphasis added).

That rule is designed to prevent the situation that occurred here: an arbitration moving forward unbeknownst to a party's counsel. The AAA emailed an invoice requesting payment from FCA and, eventually, sent another email administratively closing the arbitration proceedings when FCA did not pay the invoice within 30 days. *FCA's counsel was not copied on any of those emails from the AAA*. And although Plaintiffs' counsel were copied on *all* the emails and knew that FCA's counsel were not copied, Plaintiffs' counsel never forwarded the emails to FCA's counsel, never told FCA's counsel that the AAA was seeking payment, and never told the AAA that FCA's counsel was not copied on the emails.

Only after the AAA administratively closed its file due to FCA's nonpayment did Plaintiffs' counsel tell FCA's counsel what had happened. And just four hours after informing FCA's counsel, Plaintiffs' counsel filed the motion to lift the stay and

attached the AAA emails.  Reviewing those attachments on the docket was the first time FCA's counsel had seen any of the communications from the AAA.

The Court should not reward Plaintiffs' gamesmanship.  FCA has spent years and substantial resources fighting to protect its arbitration rights in this proceeding. The suggestion that FCA had a sudden change-of-heart and "willfully" waived those rights by intentionally failing to pay a $600 invoice is absurd.  Mot. 4.  If Plaintiffs' counsel had simply played by the AAA rules, FCA's counsel would have received the invoice and paid it timely.  The Court should deny the motion to lift the stay.

## **BACKGROUND**

Plaintiffs Justin and Katherine Binder filed this lawsuit in November 2023 asserting claims against FCA for an alleged defect in their Pacifica Hybrid plug-in electric vehicle.  *See* Binders Dkt. 1, PageID.1.[1]  In February 2024, FCA subpoenaed records from the dealership that sold the Binders their vehicle.  *See* Binders Dkt. 16-2, PageID.658.  In response, FCA obtained a copy of the Binders' sales contract. *See* Binders Dkt. 16-3, PageID.661.  The contract includes an arbitration agreement with a delegation clause.  *See id.* at PageID.666.

---

[1] "Binders Dkt." refers to Case No. 23-12881, which is the docket of the tag-along case that contains the briefing, transcript, and order related to FCA's motion to compel the Binders to arbitration.  "MDL Dkt." refers to Case No. 22-03040, which is the MDL docket on which the Binders filed their motion to lift the stay.

FCA moved to compel the Binders to arbitration in February 2024. *See* Binders Dkt. 16, PageID.625. Plaintiffs opposed the motion. *See* Binders Dkt. 20, PageID.674. They argued, among other things, that FCA had waived its arbitration rights and that the delegation clause does not apply to their claims. *See id.*, PageID.684-697.

The Court rejected Plaintiffs' arguments, compelled arbitration, and stayed their court case pending the arbitration. *See* Binders Dkt. 29.

More than a year later, on August 19, 2025, Plaintiffs' counsel emailed FCA's counsel a copy of a "Statement of Claim." MDL Dkt. 216-3, PageID.8609. According to Plaintiffs' counsel, the document had been "filed . . . with AAA" under Case No. 01-25-0003-9635. *Id.* Plaintiffs' counsel did not copy FCA's counsel on their filing with the AAA. Nor did Plaintiffs' counsel include with their AAA filing the names and contact information of FCA's counsel.

FCA's counsel heard nothing further from Plaintiffs' counsel until October 22, 2025. On a telephone call that day, Plaintiffs' counsel revealed that they planned to move to lift the stay of these court proceedings. *See* Ex. A (emails between counsel). Plaintiffs' counsel also revealed that the AAA had administratively closed the arbitration because FCA did not pay an invoice. *See id.*

FCA's counsel immediately emailed the AAA and copied Plaintiffs' counsel. *See* Ex. B (emails with AAA). FCA's counsel explained that they had never received

3

any communications from the AAA about the arbitration.  *Id.*  FCA's counsel asked the AAA to re-open the arbitration proceeding, include FCA's counsel on all future communications, and send whatever invoice was not paid—"FCA will promptly pay it." *Id.*

About an hour after FCA sent that email, Plaintiffs filed their motion to lift the stay.  *See* MDL Dkt. 216, PageID.8578.  Plaintiffs attached to their motion communications the AAA had sent about FCA needing to pay a $600 invoice. Reviewing those attachments on the docket was the first time FCA's counsel had seen the invoice and the other communications from the AAA.  After seeing the invoice, FCA promptly mailed a $600 check to the AAA.  The check was delivered last week.  *See* USPS Tracking No. EJ384251953US.

It is unclear to FCA what happened with the AAA.  Because Plaintiffs' counsel never told the AAA that FCA is represented by counsel, FCA's counsel did not receive access to the AAA's docket and could not (and still cannot) review the AAA's docket for the arbitration.[2]  From what FCA's counsel has been able to piece together, it appears that the AAA copied on its emails an FCA in-house lawyer named James Sheridan, who is on some type of registry in the AAA system.  *See* Ex. B. Mr. Sheridan, however, is not involved with this matter.  And according to Plaintiffs'

---

[2] Plaintiffs attached to their motion some communications from the AAA, but it is possible the AAA has sent other communications too.  FCA does not know because its counsel cannot access the AAA's docket for the arbitration.

counsel, they "did not provide the name of Mr. Sheridan" to the AAA, Ex. B, and they are "not sure why AAA chose to email" him, Ex. A.

Based on the documents Plaintiffs attached to their motion, the AAA emailed a $600 invoice to Mr. Sheridan on September 5, 2025, copying four Plaintiffs' counsel. *See* MDL Dkt. 216-6, PageID.8616. On October 14, 2025, the AAA again emailed Mr. Sheridan, copying the same four Plaintiffs' counsel. *See* MDL Dkt. 216-7, PageID.8618. That email attached a letter stating that because FCA had failed to pay the invoice, the AAA had "administratively closed [its] file." ECF No. 216-8, PageID.8620. FCA's counsel in this matter were not copied on any of those emails, and Plaintiffs' counsel never forwarded any of the emails to FCA's counsel.

## DISCUSSION

This situation could have been avoided if Plaintiffs' counsel had simply obeyed the rules and told the AAA that FCA was represented by counsel. *See* AAA Commercial Rule 4(a)(iv). Or one of the four Plaintiffs' counsel that were copied on the AAA emails could have forwarded them to FCA's counsel so FCA's counsel could be in the loop. Instead, Plaintiffs' counsel watched as the AAA emailed an in-house lawyer with no connection to this case, knew the law firm representing FCA was not copied on the emails, and sat silently as FCA's payment deadline came and went. Then Plaintiffs' counsel rushed to move to lift the stay before FCA's counsel had seen the AAA emails and could figure out what had happened.

5

Those facts do not show FCA intentionally relinquishing its arbitration rights; they show Plaintiffs' counsel breaking the rules, manipulating the AAA intake process, and concocting yet another meritless waiver argument.

## I.      FCA Did Not Waive Its Arbitration Rights Under California Code Of Civil Procedure § 1281.97.

### A.      The Inadvertent Nonpayment Was Not Willful, Grossly Negligent, Or Fraudulent.

Plaintiffs cite California Code of Civil Procedure § 1281.97 as support for their argument that FCA waived its arbitration rights when it did not pay the invoice within 30 days.  Under that statute, if arbitration fees "are not paid within 30 days after the due date, the . . . party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration."  Cal. Civ. Proc. Code § 1281.97(a)(1).

But as the California Supreme Court explained in one of the cases Plaintiffs cite, the statute does *not* create an "inflexible," "rigid," or "harsh" rule, and construing it to void arbitration rights on a hair-trigger technicality would run head-first into preemption problems under the Federal Arbitration Act.  *Hohenshelt v. Superior Court*, 18 Cal. 5th 310, 323 (2025).[3]  Rather, the statute applies "*only* when

---

[3] Section 1281.97 governs payments required to initiate arbitration, whereas *Hohenshelt* construed § 1281.98, which governs payments required "to continue the arbitration" once initiated.  That difference does not matter here, as the relevant language in the two statutory provisions is identical.

nonperformance is willful, grossly negligent, or fraudulent." *Id.* (emphasis added). The California legislature passed the statute because it "was concerned about cases [of] *willful* nonpayment of fees by a defendant." *Id.* at 337 (emphasis in original). The legislature intended to curtail "cases of manipulative or intentional delay," *id.*, and to stop companies from "willfully withhold[ing] fees necessary to move arbitration forward," *id.* at 344.

FCA was not "willful, grossly negligent, or fraudulent" in missing the deadline to pay an arbitration-related invoice that was never sent to FCA's counsel handling the arbitration. As FCA's counsel told the AAA after learning about the payment issue, "FCA will promptly pay" the invoice if the AAA would simply send it to FCA's counsel. Ex. B. The AAA *still* has never done so. FCA's counsel did not see the invoice until Plaintiffs filed it on the docket—and after that happened, FCA promptly sent a check to the AAA.

The facts show that FCA did not willfully or intentionally withhold payment to obtain some "strategic" benefit to stop the arbitration. *Hohenshelt*, 18 Cal. 5th at 323. To the contrary, the inadvertent nonpayment has threatened to *undermine* the arbitration rights that FCA has fought hard to protect. If anything, *Plaintiffs* have manipulated the AAA payment processes for a strategic benefit, causing an intentional delay in an attempt to create a waiver issue and stop arbitration from proceeding.

Section 1281.97 is not "intended to strip companies . . . of their contractual right to arbitration where nonpayment of fees results from a good faith mistake, inadvertence, or other excusable neglect." *Hohenshelt*, 18 Cal. 5th at 323. At most, that is all that happened here. *See, e.g.*, *State Farm Fire & Cas. Co. v. No. 9 Software, Inc.*, 2011 WL 4072667, at *2 (E.D. Va. July 27, 2011) (finding excusable negligence when in-house counsel failed to notify outside counsel of a deadline, and "there is nothing to suggest . . . bad faith").

Equity considerations also factor into the analysis. *See Hohenshelt*, 18 Cal. 5th at 332. Those considerations include whether a party has "acted in good faith" and has a "reasonable excuse for delay," and whether the delay harmed the other party. *Id.* at 332-33; *see also Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (explaining that determining whether neglect was "excusable" is "at bottom an equitable one, taking account of all relevant circumstances," including "prejudice," "the reason for the delay," and whether the breaching party "acted in good faith").

There is no evidence of bad faith here. FCA's counsel in this matter were simply not included on any communications to or from the AAA. And as soon as counsel discovered that the AAA had been sending communications about invoices, counsel immediately reached out to the AAA (copying Plaintiffs' counsel) and explained that FCA would promptly pay whatever fees are due. *See* Ex. B; *cf.*

8

*Kaplan v. Alfred Dunhill of London, Inc.*, 1996 WL 640901, at *7 (S.D.N.Y. Nov. 4, 1996) (vacating an arbitral award as fundamentally unfair because the defendant "did not receive notice of the hearing and . . . immediately took steps to rectify the situation once it learned a hearing had been held in its absence").

Plus, any mistake, inadvertence, or excusable neglect was caused at least in part by Plaintiffs' counsel.  Although they know which firm represents FCA in this matter, they did not include that firm on any filing with the AAA or identify the firm as a "known representative" of FCA, as the AAA rules require.  AAA Commercial Rule 4(a)(iv).  It would defy the purpose of § 1281.97 to hold that a company waived its arbitration rights when the consumers created a trap for nonpayment by violating the rules and causing the circumstances that led to the inadvertent nonpayment.

Nor can Plaintiffs show prejudice.  The inadvertent nonpayment might have delayed arbitration by a few days, but that pales in comparison to the year+ Plaintiffs waited to initiate arbitration after the Court compelled them to do so.  And "other courts have found prejudice [only] when the defendant's 'default' resulted in at least an eight-month delay."  *Jaramillo v. TXU Energy*, 2021 WL 1177888, at *3 (W.D. Tex. Mar. 29, 2021) (holding that defendant did not waive arbitration rights when it inadvertently failed to pay arbitration fees).  Indeed, the arbitration would be moving forward *right now* if Plaintiffs had simply followed the AAA's rules.  Any prejudice to Plaintiffs is self-inflicted.

9

### B.   The Pre-*Hohenshelt* Cases Plaintiffs Cite Are Inapplicable.

Plaintiffs cite two cases they say involve the "same circumstances" as here. Mot. 5.  Neither case is analogous, and both predate the California Supreme Court's *Hohenshelt* decision, which confirmed that § 1281.97 applies "only when nonperformance is willful, grossly negligent, or fraudulent."  18 Cal. 5th at 323.

First, Plaintiffs cite *O'Dell v. Aya Healthcare, Inc*., 753 F. Supp. 3d 1155 (S.D. Cal. 2024), which lifted a stay of court proceedings after the defendant failed to pay certain AAA fees.  All parties in that case clearly had notice of what was happening in the AAA proceeding, as the parties submitted briefs to the arbitrator, and there was a full arbitration with a final decision.  *See id.* at 1158.  The defendant simply refused to pay the arbitrator's fees for rendering that decision, thus waiving its right to continue in arbitration.  *See id.* at 1159-60.  The case did not involve a claimant who failed to tell the AAA that the respondent was represented by counsel.  Nor did it involve a company whose counsel in the arbitration were omitted from all communications to and from the AAA.

Second, Plaintiffs cite an intermediate California appellate court decision, *Anoke v. Twitter, Inc*., 105 Cal. App. 5th 153 (2024), for the rule that "if the fees are not paid—regardless of how or why—the drafting party bears the consequences." *Id.* at 160; *see also id.* at 160 ("[T]he reasons for the late payment are irrelevant."). But that rule is no longer good law after *Hohenshelt*, which held that, to avoid federal

preemption problems, the "how and why" *do* matter under § 1281.97.  *See* 18 Cal. 5th at 340.

As *Hohenshelt* explained, there is "no indication that the Legislature, in enacting [the statute], intended that *any* instance of nonpayment by the drafting party, regardless of the circumstances, would result in loss of its right to arbitration." 18 Cal. 5th at 340 (emphasis in original).  Indeed, *Hohenshelt* "disapprove[d]" of the cases *Anoke* relied on, *id.* at 349, including *Espinoza v. Superior Court*, 83 Cal. App. 5th 761 (2022); *De Leon v. Juanita's Foods*, 85 Cal. App. 5th 740 (2022); and *Williams v. W. Coast Hosps., Inc*., 86 Cal. App. 5th 1054 (2022).

## II.   <u>FCA Did Not Intentionally Relinquish Its Arbitration Rights.</u>

Plaintiffs next claim FCA intentionally relinquished its right to arbitration by acting "inconsistently with that right."  Mot. 6.  But again, FCA did not *intentionally* fail to pay the arbitration fees.  To the contrary, after learning that the fees were due, FCA immediately emailed the AAA, asked for a copy of the invoice, and said it would "promptly pay" whatever fees were owed.  *See* Ex. B.  And when FCA's counsel finally saw the invoice when Plaintiffs filed it on the docket, FCA sent a check to the AAA.  Those facts show FCA trying to protect its arbitration rights—as it always has—not intentionally relinquishing them.  *See Berzanskis v. FCA US, LLC*, 143 F.4th 718, 723 (6th Cir. 2025) (explaining that waiver is the "intentional relinquishment or abandonment of a known right" (quotation marks omitted)); *see*

*also Ron Kingston Contracting Inc. v. Cahaba Disaster Recovery LLC.*, 2015 WL 1345281, at *1 (E.D. Ark. Mar. 23, 2015) (denying motion to re-open case when "there is no evidence" that the defendant "intentionally failed to participate in the arbitration procedure"); *Simone v. Citizens Bank, N.A.*, 2024 WL 3237081, at *6 (D.R.I. June 17, 2024) (finding defendant did not waive its arbitration rights when it "immediately contacted the AAA" and tried "to make a timely payment" after learning about a missed payment deadline).

The waiver cases Plaintiffs cite involve far different facts. In *Rafique v. Premier Fin. All., Inc.*, 2024 WL 5318837 (N.D. Cal. Dec. 27, 2024), the AAA sent an email about fees to "a paralegal at Plaintiffs' counsel's law firm; two attorneys at that firm; and five people at Defendants' counsel's firm." *Id.* at *1. The AAA also sent a letter to counsel for all parties explaining the fees and attaching an invoice, and it later sent "a reminder letter" to the same counsel. *Id.* at *2. Plus, counsel for the plaintiffs emailed defense counsel inquiring about the payment. *See id.* The defendants' counsel "received three notices from the AAA, as well as an email from Plaintiffs' counsel's firm inquiring about payment," yet the defendants "failed to respond to any of these communications." *Id.* at *4.

Here, by contrast, it is undisputed that FCA's counsel in the arbitration was not included on *any* communications to or from the AAA, and Plaintiffs' counsel said *nothing* to FCA's counsel about the payment until after the AAA had

administratively closed the arbitration proceeding.  Defense counsel in *Rafique* were clearly in the loop about the fees; defense counsel here were clearly not.

The other cases Plaintiffs cite are similarly irrelevant because they involved defendants that *intentionally* refused to pay arbitration fees.  In *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005), the defendant admitted that it knowingly "refused to arbitrate" because it believed the claims were not arbitrable, and the court was concerned about the company using a "tactic" to disrupt arbitration.  *Id.* at 1010-12.  In *Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003), the defendant chose not to pay the arbitration fees and then "filed no opposition to the motion[ ] to lift the stay," and the court was concerned the nonpayment was an effort to "indefinitely postpone" resolution of the claims.  *Id.* at 1199-201.  And in *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926 (11th Cir. 2019), the defendant refused to pay fees because it disagreed with how much JAMS was charging.  *See id*. at 928-29.  FCA here wants to be in arbitration and has done everything it can to get the arbitration back on track after learning about the nonpayment issue.

## CONCLUSION

After waiting more than a year to initiate arbitration, Plaintiffs filed their arbitration demand without copying FCA's counsel or telling the AAA that FCA was represented by counsel—in violation of the AAA rules.  Plaintiffs then sat quietly as the AAA sent an invoice and requested payment, knowing that FCA's counsel were

not included on any of those communications.  And when the payment deadline passed, Plaintiffs rushed to file this motion before FCA had a chance to figure out what had happened.  Immediately upon learning of the issue, FCA's counsel took steps to alert the AAA of the situation and pay the invoice.  FCA's nonpayment was not "willful, grossly negligent, or fraudulent."  *Hohenshelt*, 18 Cal. 5th at 323.  It was the result of Plaintiffs' gamesmanship.  The Court should deny the motion.

Respectfully submitted,

**KLEIN THOMAS LEE & FRESARD**

By: */s/ Brandon L. Boxler*
Fred J. Fresard (P43694)
Ian K. Edwards (P82021)
Ellisse S. Thompson (P78054)
89 Kercheval Ave.
Grosse Pointe Farms, Michigan 48236
T: (248) 764-5275
fred.fresard@kleinthomaslaw.com
ian.edwards@kleinthomaslaw.com
ellisse.thompson@kleinthomaslaw.com

Stephen A. D'Aunoy (MO/54961)
Thomas L. Azar, Jr. (MO/56634)
Scott H. Morgan (MO/61853)
100 N. Broadway, Ste. 1600
St. Louis, Missouri 63102
T: (314) 888-2970
stephen.daunoy@kleinthomaslaw.com
tom.azar@kleinthomaslaw.com
scott.morgan@kleinthomaslaw.com

Brandon L. Boxler (VA/81884)
1051 E. Cary St., Ste. 1430
Richmond, Virginia 23219
T: (703) 621-2109
brandon.boxler@kleinthomaslaw.com

*Attorneys for Defendant FCA US LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 5, 2025, I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Brandon L. Boxler*