# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION | Case No. 2:22-cv-03040-DML |
| | Hon. David M. Lawson |
| MDL No. 3040 | |

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT FCA US LLC'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT EDWARD STOCKTON'S OPINIONS

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND .................................................................................................1

   A.  Plaintiffs' Allegations ......................................................................................2

   B.  Mr. Stockton's Opinions ...................................................................................3

      1.  Overpayment .............................................................................................4

      2.  Idled Asset Periods ....................................................................................5

III.  LEGAL STANDARD .........................................................................................6

IV.  ARGUMENT .......................................................................................................7

   A.  Mr. Stockton's Overpayment Opinions are Reliable and Relevant. ...............7

      1.  Mr. Stockton's opinions are "complete" and "accurate." ............................8

      2.  Mr. Stockton assumes reliable facts and data. ...........................................11

      3. Mr. Stockton's overpayment opinions are the product of reliable principles and methods applied reliably to the facts. .....................................................12

         a.  Mr. Stockton's opinions are legally permissible. ...................................12

         b.  FCA's argument regarding market effects fails. ....................................13

         c.  FCA's warranty argument is meritless. .................................................15

   B.  Mr. Stockton's Idled Asset Period Opinions are Reliable and Relevant. .....16

      1.  Mr. Stockton's opinions are complete and helpful to the trier of fact. ......17

      2.  Mr. Stockton reliably assumes relevant facts and data. .............................19

      3.  Mr. Stockton's opinions are reliable and fit the facts of this case. ............21

V.  CONCLUSION ..................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bertroche v. Mercy Physician Assocs., Inc.*,
  2019 WL 7761809 (N.D. Iowa Oct. 28, 2019)....................................................19

*Bledsoe v. FCA US LLC*,
  2022 WL 4596156 (E.D. Mich. Sept. 30, 2022) ................................................18

*Cason-Merenda v. Detroit Med. Ctr.*,
  2013 WL 1721651 (E.D. Mich. Apr. 22, 2013) .....................................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ...............................................................................................7

*Davidson v. Apple, Inc.*,
  2019 WL 2548460 (N.D. Cal. 2019)....................................................................16

*DSU Med. Corp. v. JMS Co., Ltd.*,
  296 F. Supp. 2d 1140 (N.D. Cal. 2003)................................................................13

*Good v. BioLife Plasma Servs., L.P.*,
  834 F. App'x 188 (6th Cir. 2020)...........................................................................7

*Hampton v. General Motors LLC*,
  2024 WL 718197 (E.D. Okla. 2024) ....................................................................16

*Herron v. J E Phillips & Sons, Inc.*,
  2019 WL 2897539 (E.D. Ark. May 1, 2019) ........................................................12

*Hopson v. DaimlerChyrsler Corp.*,
  157 Fed. Appx. 813 (6th Cir. 2005) .....................................................................19

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 297 (E.D. Mich. 2001)........................................................................15

*In re Nw. Airlines Corp. Antitrust Litig.*,
  197 F. Supp. 2d 908 (E.D. Mich. 2002) .................................................................7

*In re Onglyza and Kombiglyze Prods. Liab. Litig.*,
  93 F.4th 339 (6th Cir. 2024)................................................................................19

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) .................................................................................7

*JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*,
  1998 WL 175888 (E.D. Pa. 1998)........................................................................13

*Neuser v. Carrier Corp.*,
  2007 WL 484779 (W.D. Wis. Feb. 9, 2007) ........................................................16

*Quitno v. General Motors, LLC*,
  2020 WL 777273 (N.D. Ill. Feb. 18, 2020)..........................................................16

*Simmons v. Ford Motor Co.*,
  576 F. Supp. 3d 1136 (S.D. Fla. 2021).................................................................15

*Siqueiros v. General Motors LLC*,
   2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ..............................................................16
*Teenier v. Charter Comm., LLC*,
   2017 WL 3141051 (E.D. Mich. July 25, 2017)..................................................19
*United States v. Gissantaner*,
   990 F.3d 457 (6th Cir. 2021)..............................................................................18
*Won v. General Motors, LLC*,
   2022 WL 3010886 (E.D. Mich. Jul. 28, 2022)............................................. 7, 15

## Rules

Fed. R. Civ. P. 30(b)(6).........................................................................................10
Fed. R. Evid. 702 ........................................................................................... 4, 6, 7

## <u>COUNTER-STATEMENT OF ISSUES PRESENTED</u>

1.  Whether the Court should permit Mr. Stockton's overpayment damages opinions since they are legally and factually supported and utilize a reliable methodology?

    Plaintiffs answer: Yes

2.  Whether the Court should permit Mr. Stockton's Idled Asset Period opinions since they are relevant and reliable?

    Plaintiffs answer: Yes

## <u>MOST APPROPRIATE OR CONTROLLING AUTHORITIES</u>

ECF No. 205

*Bledsoe v. FCA US LLC*, 2022 WL 4596156 (E.D. Mich. Sept. 30, 2022)

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)

*Hampton v. General Motors LLC*, 2024 WL 718197 (E.D. Okla. 2024)

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001)

*In re Scrap Metal Antitrust Litig.¸* 527 F.3d 517 (6th Cir. 2008)

*Simmons v. Ford Motor Co.*, 576 F. Supp. 3d 1136 (S.D. Fla. 2021)

*Siqueiros v. General Motors LLC*, 2022 WL 74182 (N.D. Cal. Jan. 7, 2022)

*United States v. Gissantaner*, 990 F.3d 457 (6th Cir. 2021)

*Won v. General Motors, LLC*, 2022 WL 3010886 (E.D. Mich. Jul. 28, 2022)

# I.   INTRODUCTION

Plaintiffs' expert, Edward Stockton, is one of the most well-qualified and preeminent damage experts in the field of automotive litigation. In this case, he has relied on those qualifications and economically sound and tested methodologies to opine that two methods can be utilized to estimate the economic harm suffered by Plaintiffs and putative Class Members. The Repair Cost model can reliably determine overpayment damages, and the Idled Asset Period model can reliably determine the economic harm suffered by Plaintiffs and Class Members who were unable to safely use the hybrid feature of their vehicles. This occurred over two different periods of time when FCA instructed consumers not to charge their vehicles while FCA investigated and tried to remedy the Spontaneous Fire Risk Defect. ECF No. 218-2, Mr. Stockton's May 15, 2025, Report ("Stockton Merits Report").

On February 18, 2025, after full briefing by the Parties, this Court denied FCA's motion to exclude the opinions of Mr. Stockton. ECF No. 205, PageID.8508-16. As detailed herein, FCA's present motion raises largely the same arguments, which should again be rejected.

# II.   BACKGROUND

The Court is familiar with the factual and procedural background of this case (*see* ECF No. 205, PageID.8496-99), but for ease of reference, Plaintiffs include some of the relevant background below.

### A.      Plaintiffs' Allegations

Plaintiffs allege that FCA manufactured and sold 2017-2018 Chrysler Pacifica Hybrid plug-in electric minivans that are dangerous and prone to catching fire and exploding. *See* ECF No. 138, Amended Consolidated Master Complaint ("ACMC"), ¶ 2. The "Spontaneous Fire Risk" "exposes putative class members to an unreasonable risk of accident, injury, death, or property damage if their vehicle catches fire while in operation or, perhaps more commonly, spontaneously ignites while the vehicle is parked at the class member's home, on a public street, or in a public parking lot." *Id.* at ¶ 4.

In February 2022, FCA issued its first recall notification ("Recall Z11") in which FCA "advis[ed] owners of these hybrid vehicles to refrain from charging them, and to park them away from structures and other vehicles." *Id.* at ¶ 10. Plaintiffs allege that this harmed them as they paid a premium for the hybrid propulsion system. *Id.*

In mid-October 2022, FCA announced a software remedy for the Spontaneous Fire Risk, but Plaintiffs alleged that the Z11 remedy was ineffective as it "does not actually address the faulty nature of the battery packs that could result in a spontaneous fire." *Id.* Instead, the recall simply provided a software update to monitor the battery pack for conditions that could lead to a fire. Recall Z11 did not prevent a fire from occurring and, as later learned, seven Class Vehicles suffered

vehicle fires after receiving the Z11 remedy. *See* ECF No. 218, PageID.8784; *see also* ACMC at ¶¶ 208-24.

In July 2024, nearly eight years after the first Class Vehicles were sold, FCA informed Plaintiffs and Class Members that Recall Z11 was ineffective, their Class Vehicles remained defective, and that FCA was developing another remedy ("Recall 73B"). Ex. 1. FCA again instructed owners of Class Vehicles not to use the hybrid feature of the Class Vehicles until a remedy was available. *Id.*

In December 2024, FCA informed Plaintiffs and Class Members that a new software update was available and to contact their dealerships for an appointment to have it performed. Ex. 2. Like the Z11 update, the 73B update simply monitors the Class Vehicle batteries for anomalies – it does not address the underlying root causes of the Spontaneous Fire Risk Defect. *See* Section V.A.1, *infra*.

According to the Recall Quarterly Reports filed with NHTSA, less than 10% of the Class Vehicles had received the 73B software update by the end of January 2025, and nearly a third of Class Vehicles still have not received the 73B software update as of October 24, 2025. Ex. 3.

## B.    Mr. Stockton's Opinions

On January 19, 2024, Mr. Stockton proffered his class certification opinions (ECF No. 132-2, "Stockton Certification Report"), which provided two methods to calculate class wide damages—the Repair Cost method and the Idled Asset Period

3

method. FCA moved to exclude Mr. Stockton's class certification opinions on June 10, 2024. ECF No. 131.

The Court denied FCA's motion in its entirety and ruled that "Stockton has presented opinions on sufficient factual substance and proposing reliable and widely recognized methods for estimating losses in a consumer product defect case. The Plaintiffs have shown by a preponderance of evidence that Stockton's opinions satisfy the requisites of Evidence Rule 702." ECF No. 205, PageID.8516.

Mr. Stockton then issued his merits opinions on May 15, 2025. In the Stockton Merits Report, he "execute[s] the models described in the [Stockton Certification Report] and appl[ies] those models on a Class-wide basis, based on the potential class definition currently proposed by Plaintiffs." ECF No. 218-2, Stockton Merits Report ¶ 5. Mr. Stockton's findings can be conformed to the parameters of a future class certification order. *Id.*

### 1. Overpayment

Mr. Stockton estimates overpayment "at the time of acquisition based on the cost of a competent repair that would have remedied the Defect." *Id.* ¶ 13. This is calculated through the product of three primary inputs: the "cost of required parts, the established labor rate, and the amount of time allotted for the competent repair." *Id.* ¶ 14. These inputs were provided by FCA during discovery. *Id.* ¶¶ 14-16. The result of these inputs allows Mr. Stockton to estimate total overpayment damages

per Class Vehicle ($7,070.67 in 2024 dollars) and for classes of purchasers per state. *Id.* ¶ Tab 6.

Mr. Stockton also credits FCA with the delivery of battery pack replacements. *Id.* ¶ 31. As Mr. Stockton opines, "[w]hile it is possible to estimate economic harm for consumers who initially overpaid for Class Vehicles but eventually received competent repairs," Plaintiffs are not seeking overpayment recovery for Class Members who received the competent repair—a battery replacement. *Id.*

## 2. Idled Asset Periods

"The Idled Asset Periods are the periods of time during which FCA instructed Class Members to cease charging their Class Vehicles, advising that safe use of the hybrid features was not available." *Id.* ¶ 18. Mr. Stockton estimates this economic harm by utilizing the direct method detailed in his Certification Report. *See* ECF No. 132-2, ¶¶ 69-82. The purpose of this method is "to isolate the value of the idled hybrid feature and to study the amount by which that value declined over the period when Class Members were advised to refrain from employing said feature." ECF No. 218-2, Stockton Merits Report ¶ 33. This isolation is obtained "through comparing average trade-in values at the start and end of the two idled asset periods for both the hybrid vehicle and its nonhybrid counterpart." *Id.*

The necessary inputs to the Idled Asset Period include the starting points and ending points of the Idled Asset Periods. *Id.* ¶ 21. The starting points are the dates

of the recall notices. The ending point utilized by Mr. Stockton is the "time at which the repairs were functionally available to the Class;" Mr. Stockton calculates this at when approximately half of the estimated recall population had received the remedy. *Id.* ¶¶ 21-22. The end point for the second Idled Asset Period is inherently conservative as, at the time Mr. Stockton issued his Report, the 73B software update had not yet been provided to half the recall population.

This method allowed Mr. Stockton to estimate damages per Class Vehicle for each of the two Idled Asset Periods as well as calculate total Idled Asset Damages for each state class of purchasers. *Id.*, Tabs 9-10.

Mr. Stockton makes clear that "[w]hile a consumer's personal use and valuation of the hybrid feature may vary, this does not imply that the impact of the idling of the hybrid feature is not common across the Class." *Id.* ¶ 25. "The relevant measure is the value the resale market has established for the hybrid feature of the Class Vehicles, which JD Power provides." *Id.*

### III.   LEGAL STANDARD

"Evidence Rule 702 requires trial judges to determine admissibility, and that task calls for finding whether the proponent of the expert's opinion has satisfied the qualification, reliability, and relevancy components of that opinion by a preponderance of the evidence." ECF No. 205, PageID.8500 (citing Fed. R. Evid. 702). "'The task for the district court in deciding whether an expert's opinion is

reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation.'" *Id.* (quoting *In re Scrap Metal Antitrust Litig.*¸527 F.3d 517, 529-30 (6th Cir. 2008)). In other words, in the assessment of expert testimony admissibility, courts focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993).

"It is well settled, and has been so for decades, that under the permissive framework established by *Daubert* and Rule 702, 'rejection of expert testimony is the exception, rather than the rule.'" *Won v. General Motors, LLC*, 2022 WL 3010886, at *11 (E.D. Mich. Jul. 28, 2022) (quoting *Good v. BioLife Plasma Servs., L.P.*, 834 F. App'x 188, 198 (6th Cir. 2020); *Cason-Merenda v. Detroit Med. Ctr.*, 2013 WL 1721651, at *5 (E.D. Mich. Apr. 22, 2013) (quoting *In re Nw. Airlines Corp. Antitrust Litig.*, 197 F. Supp. 2d 908, 913 (E.D. Mich. 2002); *In re Scrap Metal*, 527 F.3d at 530.

## IV.    ARGUMENT

### A. Mr. Stockton's Overpayment Opinions are Reliable and Relevant.

Before addressing FCA's specific arguments, it is important to identify FCA's arguments for what they are: improper attacks on Plaintiffs' defect theory, the prevalence of the Defect across Class Vehicles, and the evidence supporting Plaintiffs' claims. They are not arguments as to the qualifications of Mr. Stockton or

the reliability or relevance of his opinions. These questions are for a jury or this Court at summary judgment to decide.

### 1. Mr. Stockton's opinions are "complete" and "accurate."

FCA's first argument to exclude Mr. Stockton's overpayment opinions is that "[w]here, as here, an owner has a *free* repair available (under a recall like 73B or otherwise)" the owner has not suffered damages. But FCA raised this same argument, and cited the same case law, when it first moved to exclude Mr. Stockton's class certification opinions. *See* ECF No. 132, PageID.5221-25. The Court rejected FCA's argument. ECF No. 205, PageID.8511-13.

The Court explained that "an expert's method is not invalidated by reliance on assumed facts." *Id.* (collecting cases). Mr. Stockton, in opining on damages, has assumed that "the competent repair" is "replacement of the hybrid battery in each Class Vehicle." ECF No. 132-2, Stockton Certification Report ¶ 4. Mr. Stockton also "understand[s] that Plaintiffs intend to prove that replacing the hybrid battery pack with those parts produced after 2018 constitutes a competent repair of the Defect." ECF No. 218-2, Stockton Merits Report ¶ 13.

The Court then explained that FCA's argument "overlooks the hotly disputed central issue in this litigation, which is whether the first *or second* recall remedy were in fact effective to cure the defect." ECF No. 205, PageID.8512 (emphasis added). "[D]efendant's insistence on this point is impertinent because it assumes the

8

premise (as yet unproven and hotly in dispute) that its recall remedy has in fact been effective at curing the alleged defect." *Id.*, PageID.8513.

FCA tries to avoid this Court's prior opinion by arguing, in a single sentence, that "to date, there have been no [fire] reports for vehicles that have undergone the Recall 73B procedure." ECF No. 218, PageID.8789.  But this self-serving statement does not eviscerate Plaintiffs' allegations or Plaintiffs' liability expert's opinions that the Class Vehicles remain defective, especially since FCA itself has acknowledged that it has not yet determined the "second unidentified factor" that causes the vehicle fires:

**Q. And below here, it has a description of the defect. It states a folded or torn anode tab may result in the generation of lithium byproduct over time. This defect along with the second unidentified factor may lead to an internal short within the pack and may result in a vehicle fire. Did I read that correctly?**
Yes, you did.
**Q. So as of July -- July 18, 2024, there was still this second unidentified factor, correct?**

A. That's correct.
**Q. Sitting here today in November of 2025, has FCA determined what that second unidentified factor is?**
A. No, we have not. We continue to work with LG. We meet weekly and sometimes multiple times weekly with them analyzing the batteries to determine the second factor, and LG has not yet identified the second factor.
**Q. So there's no -- no determination as to whether that factor is a manufacturing issue or a**

**design issue?**

…

THE WITNESS: Yeah. At this -- at this
time, the second identified factor is unknown.
BY MR. LIENHARDT
**Q. And has there been any determination as to**
**whether this second unidentified factor is**
**present in all of the vehicles, or just a**
**percentage of the vehicles?**

…

THE WITNESS: Yeah. The secondary factor,
is unidentified at this time.

Ex. 4, Nov. 6, 2025, Rule 30(b)(6) Dep. Tr. at 15:16-16:23 (objections omitted).

FCA's corporate designee also testified that the 73B software update does not

actually address the FCA-determined root cause of the Defect, it simply provides a

monitoring system (like Recall Z11) to supposedly warn a consumer if there is an

anomaly in their vehicle battery. The ultimate remedy, which Plaintiffs, FCA, and

Mr. Stockton all recognize, is the replacement of the battery itself with a non-

defective battery. *Id.* at 49:17-50:6. This is consistent with Plaintiffs' allegations

since the inception of the case. *See* ECF No. 67, PageID.204, Opinion and Order

Granting in Part and Denying in Part Motion to Dismiss Consolidated Master

Complaint ("Plaintiffs…allege that the measures implemented by the recall are

insufficient to cure the problem, because the recall remedy consists merely of a

software patch intended to 'monitor' the battery system for conditions that may lead

to thermal runaway, and no repair or replacement of the battery pack is offered unless

Chrysler deems it 'necessary' after an inspection.").

10

The question of whether FCA has adequately remedied the Defect is a question for the jury, not a basis to exclude Mr. Stockton's opinions.

### 2. Mr. Stockton assumes reliable facts and data.

FCA's second argument fails for similar reasons as its first. FCA argues that "Stockton points to no facts or data suggesting that *every* subject vehicle's battery pack assembly has, or could develop, the necessary conditions to give rise to a fire-related loss." ECF No. 218, PageID.8790.

But Mr. Stockton does not attempt to opine on the nature of the Defect or its prevalence across the Class Vehicles. As stated above, Mr. Stockton assumes in making his overpayment opinions that the Court or jury will determine that the Class Vehicles are defective and that Plaintiffs will prove that the battery replacement constitutes a competent repair of the Defect. ECF No. 218-2 ¶ 13. Further, Mr. Stockton can "conform [his] findings" to the "parameters of a class certification order" *id.* ¶ 5, and Mr. Stockton's overpayment opinions specifically exclude individuals who have already received a battery replacement. *Id.* ¶ 31.

Further, Plaintiffs' liability expert has opined that the Class Vehicles are defective on a classwide basis and FCA itself has testified that there is no way to visually identify which vehicles have the folded or torn anode tabs mentioned in the recall documentation, which is why all Class Vehicles were recalled and received the Z11 and 73B software remedies. *See* Ex. 4, at 12:15-14:23.

11

### 3. Mr. Stockton's overpayment opinions are the product of reliable principles and methods applied reliably to the facts.

FCA also raises a collection of unsupported and unpersuasive attacks, all of which were previously argued by FCA at the class certification stage.

#### a. *Mr. Stockton's opinions are legally permissible.*

FCA argues that Mr. Stockton's overpayment opinions are "legally and factually unwarranted." ECF No. 218, PageID.8791; *see also* ECF No. 132, PageID.5225-26 (raising same argument). However, this Court previously excluded FCA's damage expert's opinion that "class members who have not experienced a thermal runaway fire incident are 'undamaged' and should receive no compensation, because they received 'full value' and had 'full use' of their vehicles since purchase." ECF No. 205, PageID.8517. The Court explained that it has "previously…confronted and rejected the same specious argument that consumers who have not suffered any direct injury as a result of a defect have suffered 'no loss' and are entitled to no recovery." *Id.*, PageID.8517-18 (collecting cases). At the same time, the Court recognized that estimating overpayment damages by using a cost of repair methodology "has been accepted by numerous other federal district courts in consumer product defect suits." *Id.*, PageID.8511 (collecting cases).

There is no support to the assertion that Mr. Stockton's opinions are legally impermissible as none of the cases cited by FCA are relevant here. *See Herron v. J E Phillips & Sons, Inc.*, 2019 WL 2897539 (E.D. Ark. May 1, 2019) (excluding

expert opinions because expert "did not calculate after-tax contributions" required by Arkansas law); *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003) (excluding expert opinion and holding that the sales of acceptable noninfringing substitute products "cannot be the basis of legally compensable patent damages"); *JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, 1998 WL 175888 (E.D. Pa. 1998), *aff'd*, 178 F.3d 1279 (3d Cir. 1999) (finding that "unrecovered investment" and "lost profits" are alternative measures of damages and cannot both be awarded to a party).

### b. FCA's argument regarding market effects fails.

FCA next argues that Mr. Stockton's overpayment opinions "fail[] to consider the actual *market effect* that bears on the claim." ECF No. 218, PageID.8792. This is a repackaging of FCA's earlier argument that Mr. Stockton "never considers the terms of an actual bargain…" ECF No. 132, PageID.5226-27.

Setting aside the fact that the cost of repair methodology has been widely accepted in similar cases and that FCA fails to cite a single case, here or in its prior motion, to support the proposition that market effects must be considered when utilizing this model, FCA is simply wrong when it argues that Mr. Stockton failed to consider these factors. As explained in Plaintiffs' prior response (ECF No. 145, PageID.6828-30), Mr. Stockton did consider the fact that Plaintiffs and Class Members bargained for a vehicle that is "safe, reasonably reliable, free of material

13

defects, and equipped with remedies in the event that the vehicles as delivered do not conform to that standard," ECF No. 132-2, Stockton Certification Report ¶¶ 42-43, which they did not receive at the time of purchase. Under Mr. Stockton's model, the repair cost gives Plaintiffs and Class Members the benefit of the bargain by placing them in the same position they would have been in had they received a vehicle without the Defect. Mr. Stockton's model concludes, based on accepted economic principles, that if a dealership disclosed a material defect in the vehicle, the reasonable consumer would either demand a repair or not purchase the vehicle. By estimating damages based on the amount of money that would be necessary to return the vehicles to their reasonably expected state, the benchmark of Mr. Stockton's model incorporates the risk tolerance, negotiation strategies, prices, etc. that are inherent in the counterfactual bargain.

This same argument was rejected by another court considering Mr. Stockton's model:

> The contention that Stockton "never considered the terms of any actual bargain[,]" is a similarly flawed challenge to his reliability as an expert. Stockton was retained to assist Plaintiffs in developing a method for quantifying and allocating damages. *Id.* at 19. In doing so, he utilized his knowledge and experience to determine that repair cost used as a proxy for benefit of the bargain damages would allow the class members to receive the "benefit of their bargain because they would be put in the same position they would have been had the car not been sold with the [defect] – [the repair] is the cost necessary to make the vehicles conform to the value Plaintiffs thought they were getting in the price tendered."

14

*Simmons v. Ford Motor Co.*, 576 F. Supp. 3d 1136, 1148 (S.D. Fla. 2021).

Rather than cite any authority, FCA just cites its own expert's report. But a difference in opinion between experts is a question of weight for the jury to consider, not a basis for exclusion. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 325 (E.D. Mich. 2001) ("The fact that Defendants' expert disagrees with Plaintiffs' expert as to the proper measure of damages is neither surprising nor relevant. Such merit-based arguments are inappropriate at the class certification stage of the litigation."); *Won*, 2022 WL 3010886 ("The mere fact that two experts disagree is not grounds for excluding one's testimony.").

### c. *FCA's warranty argument is meritless.*

Like the two arguments above, FCA raises the same warranty argument and irrelevant case law that it did previously at the class certification stage. *Compare* ECF No. 218, PageID.8792-93 *with* ECF No. 132, PageID.5227-28. The argument fails for the same reasons.

Mr. Stockton proposes crediting FCA for delivery of a competent repair, i.e. the battery replacement, if one is found to have occurred. But Plaintiffs allege that Plaintiffs and Class Members who have not received a battery replacement still possess defective vehicles that FCA has refused to repair pursuant to its warranty. Mr. Stockton's opinions award Plaintiffs and Class Members the cost of that repair to place them in the same position they would have been in had they received a

vehicle without the Defect. *See Hampton v. General Motors LLC*, 2024 WL 718197, at *16 (E.D. Okla. 2024) (rejecting defendant's arguments that Mr. Stockton's repair cost model was unreliable because it failed to consider "whether and to what extent any needed repairs may be covered by warranty"); *Siqueiros v. General Motors LLC*, 2022 WL 74182, at *11 (N.D. Cal. Jan. 7, 2022) (same).

The *Davidson v. Apple, Inc.*, 2019 WL 2548460, at *14 (N.D. Cal. 2019) case FCA relies on is distinguishable because, in that case, plaintiffs offered a conjoint expert, but the expert failed to inform survey respondents of a warranty when performing the survey. *Id.* ("The second survey was supposed to inform respondents that a purchaser could replace her iPhone for free if the defect touchscreen defect manifested within the warranty period," but the "survey omitted that material information about the free warranty replacement[.]"). The *Neuser v. Carrier Corp.*, 2007 WL 484779 (W.D. Wis. Feb. 9, 2007) and *Quitno v. General Motors, LLC*, 2020 WL 777273 (N.D. Ill. Feb. 18, 2020) cases FCA cite do not concern challenges to expert testimony at all; they are rulings on motions to dismiss.

**B. Mr. Stockton's Idled Asset Period Opinions are Reliable and Relevant.**

FCA's challenges to Mr. Stockton's Idled Asset Period Opinions fare no better than its overpayment arguments. Rather than providing a legal basis as to why Mr. Stockton's opinions are not reliable or relevant, FCA simply parrots its own expert's opinions as to how Mr. Stockton's opinions are supposedly deficient. In

short, FCA's arguments are nothing more than critiques of Mr. Stockton's opinions and underlying assumptions. But this is not a basis for exclusion, rather it is a question of weight for the jury to decide.

    **1. Mr. Stockton's opinions are complete and helpful to the trier of fact.**

FCA's arguments to exclude Mr. Stockton's Idled Asset Opinions are meritless.

*First*, Mr. Stockton's opinions are based on the economic principle that consumers choose to buy a good because they perceive the value of owning that good is greater than the cost of owning it. In this case, Plaintiffs and Class Members lost the use of the hybrid feature of their Class Vehicles but all the costs of owning those Vehicles continued. This is not what Dr. Martin purports to analyze. She states that Mr. Stockton "attempts to measure this lost value by estimating the *physical* depreciation in the hybrid battery, a durable asset, over the Idled Asset Periods." ECF No. 218-3, PageID.8885 (emphasis added). Dr. Martin repeats this many times throughout her report and deploys this inaccuracy to create critiques that FCA points to in its motion. However, Mr. Stockton *does not* measure these damages through only physical depreciation and nowhere in his report does he discuss "physical depreciation."

*Second*, the argument that Mr. Stockton did not include enough months in his Idled Asset Period calculations is a straw man. Mr. Stockton's responsibility in this

case is to quantify the depreciation during the Idled Asset Periods. He did this by considering the months from the beginning to the end of these periods. ECF No. 218-2 ¶ 33. FCA fails to explain why the inclusion of more months is necessary.

*Third*, FCA and Dr. Martin critique Mr. Stockton's use of trade-in values over list prices. But, again, FCA and Dr. Martin fail to explain why list prices (which may have been later negotiated down by the transacting parties) should be used instead of trade-in values (which consists of post-transaction data) or why the use of trade-in values is not economically sound or reliable. List prices are much less relevant to consumers as consumers do not participate in the dealer market for selling cars, i.e., consumers do not sell their vehicles for the same prices that dealers sell vehicles.

FCA's critiques, such as not using enough months or using trade-in values over list prices, are arguments as to the variables Mr. Stockton used for his model, not arguments against the model itself. But there is no requirement that an expert utilize all possible variables and, if FCA and its expert believe different variables are appropriate, they can run the model with those variables and present the different conclusions to the jury. ECF No. 205, PageID.8514 ("Disputes about the . . . accuracy of a theory's results, generally speaking, provide grist for adversarial examination, not grounds for exclusion.") (citing *United States v. Gissantaner*, 990 F.3d 457, 464 (6th Cir. 2021)); *Bledsoe v. FCA US LLC*, 2022 WL 4596156, at *29 (E.D. Mich. Sept. 30, 2022) ("An expert is permitted to make reasonable

18

assumptions, which Stockton has done here…Any difference in opinion about those assumptions should be resolved by a jury and is not a proper basis to strike his opinions."); *Bertroche v. Mercy Physician Assocs., Inc.*, 2019 WL 7761809, at *5 (N.D. Iowa Oct. 28, 2019) ("An expert should not be precluded from presenting their findings to a fact-finder simply because they used different variables to reach a different outcome than another expert.")

Finally, none of the cases cited by FCA pertain to a similar damages model or any of the issues present here. *See, e.g.*, *In re Onglyza and Kombiglyze Prods. Liab. Litig.*, 93 F.4th 339, 346 (6th Cir. 2024) (excluding expert for relying solely on one study concerning a medication's effect on humans while ignoring four other studies performed on the same issue); *Hopson v. DaimlerChyrsler Corp.*, 157 Fed. Appx. 813, 818 (6th Cir. 2005) (excluding expert testimony as irrelevant in Title VII case because it was not grounded in the facts of the case); *Teenier v. Charter Comm., LLC*, 2017 WL 3141051, at *2-3 (E.D. Mich. July 25, 2017) (raising concerns about expert opinion using age 67 for retirement age without explanation when the study the expert relied on used age 64).

### 2.  Mr. Stockton reliably assumes relevant facts and data.

FCA next attacks Mr. Stockton for "ignore[ing] varying vehicle owner experiences." ECF No. 218, PageID.8795. But the Court has already rejected this argument.

> These criticisms do not undermine the admissibility of Stockton's opinion about the suitability of the loss-of-use model for estimating damages.
>
> …
>
> The defendant takes issue with the credibility of certain factual premises, such as whether class vehicle owners would have used the plug-in charge feature in the absence of the recall restrictions, but such matters are grist for cross-examination, not as a basis for wholesale exclusion of opinion testimony derived from an otherwise acceptable methodology.

ECF No. 205, PageID.8513-14 (collecting cases).

Further, Mr. Stockton did not "ignore" this factor. He addresses it squarely in his report:

> While a consumer's personal use and valuation of the hybrid feature may vary, this does not imply that the impact of the idling of the hybrid feature is not common across the Class. The relevant measure is the value the resale market has established for hybrid features of Class Vehicles, which JD Power provides. As noted in the Certification Declaration, JD Power analyzes over 20 million vehicle transactions per year to determine resale values. In relying on empirical data, these values are representative of actual consumer experiences. Of note, to the extent that some consumers may use their hybrid features relatively more or less often, this preference would be reflected at the beginning and end of the Idled Asset Period and, to the extent relevant, would be reflected in market prices for Class Vehicles.

See ECF No. 218-2, Stockton Merits Report ¶ 25. Mr. Stockton's opinion is that an individual consumer's varying use of the hybrid feature either before or during the Idled Asset Period is reflected in the JD Power data and does not affect his damage calculations. FCA's displeasure with this opinion does not mandate exclusion.

### 3.  Mr. Stockton's opinions are reliable and fit the facts of this case.

FCA's final argument is that Mr. Stockton "overextends the time periods underlying his damages calculation." ECF No. 218, PageID.8796. But, again, this argument is about the inputs Mr. Stockton utilized for his model, not about the model itself.

As for the Z11 Recall, FCA argues that "vehicle owners were not told to stop charging their vehicles until April 2022, and the final remedy was being implemented in the field as early as October 2022." *Id.* This is a twisting of the facts by FCA. While FCA delayed mailing the owner notification letters to Class Members until April 2022, FCA publicly announced the Z11 Recall and its instruction to not charge the vehicles in February 2022. *See* Ex. 5, Feb. 11, 2022, Part 573 Safety Recall Report; Ex. 6, February 14, 2022, NHTSA Letter; Ex. 7, Feb. 2022 Letter to Dealers. The recall and instructions not to charge the vehicles were also well-publicized in the media immediately in February 2022. *See, e.g.*, Ex. 8, *Chrysler Pacifica PHEV Owners Shouldn't Charge Their Minivan or Park It Inside Due To Fire Risk*, Carscoops, Feb. 156, 2022, https://www.carscoops.com/2022/02/chrysler-pacifica-phev-owners-shouldnt-charge-their-minivan-or-park-it-inside-due-to-fire-risk/. FCA itself issued a press release posted the information on its website on February 11, 2022. *See* Ex. 9.

As for the end date of the first Idled Asset Period, Mr. Stockton states that

"[t]he conceptual definition of the ending point of the Idled Asset Periods is the time at which the repairs were functionally available to the Class." ECF No. 218-2, Stockton Merits Report ¶ 21. For the Z11 Recall, he applies the "average of the months' values prior to and at the end of the first quarter of 2023, i.e., December 2022 and March 2023." *Id.* ¶ 22. This is because half of the vehicle population did not receive the Z11 remedy until sometime between January 2023 and March 2023. The fact that FCA announced a remedy does not mean that it is available or dealerships are able to perform it on all Class Vehicles. Whether Mr. Stockton's assumptions and opinions are reasonable is a question for the jury – these opinions are not unreliable or irrelevant.

The same is true for the 73B Recall. FCA announced and publicized the recall and the instructions not to charge in July 2024. Ex. 10. And, despite FCA announcing a remedy in December 2024, very few vehicles received the remedy even by the end of January 2025. Ex. 3 (reporting less than 10% of vehicles able to receive remedy by January 29, 2025). Mr. Stockton's February 2025 end date of the Second Idled Asset Period is actually conservative, as only 38% vehicles had received the remedy by the end of *April* 2025.

## V.    CONCLUSION

FCA's motion to exclude Mr. Stockton's opinions largely rests on previously denied arguments or on FCA's expert's critiques and personal preferences. FCA

does not raise any valid basis for exclusion of Mr. Stockton's opinions and, as a result, its motion should be denied.

Dated: November 20, 2025

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

/s/ *Dennis A. Lienhardt*
E. Powell Miller (P39487)
Dennis A. Lienhardt (P81118)
Dana E. Fraser (P82873)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dal@millerlawpc.com
def@millerlawpc.com

**HAGENS BERMAN SOBOL
SHAPIRO LLP**
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Rachel E. Fitzpatrick
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 224-2626
rachelf@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs
and the Proposed Class*

**BARRACK RODOS & BACINE**
Stephen R. Basser
Samuel M. Ward
600 W Broadway, Suite 900

San Diego, CA 92101
Telephone: (619) 230-0800
sbasser@barrack.com

**COTCHETT, PITRE & McCARTHY**
Niall McCarthy
Karin Swope
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
NMcCarthy@cpmlegal.com
Kswope@cpmlegal.com

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
Gayle Blatt
Camille Guerra
110 Laurel Street
San Diego, CA 92101-1486
Telephone: (619) 238-1811
gmb@cglaw.com

*Interim Plaintiffs' Steering Committee for Plaintiffs and the Proposed Class*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 20, 2025, I filed the foregoing document

using the electronic filing system which will serve all parties of record.

By: /s/ *Dennis A. Lienhardt*
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM PC**
950 West University Drive,
Rochester, Michigan 48307
(248) 841-2200
dal@millerlawpc.com

25