UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: CHRYSLER PACIFICA FIRE RECALL
PRODUCTS LIABILITY LITIGATION

MDL No. 3040

_____/

Case Number 22-md-03040
Honorable David M. Lawson
Magistrate Judge Elizabeth S. Stafford

## OPINION AND ORDER DENYING MOTION TO LIFT STAY PENDING ARBITRATION

The parties in this multidistrict litigation are familiar with the underlying factual allegations involving purportedly self-immolating Chrysler Pacifica Plug-in Hybrid minivans manufactured and sold by defendant FCA US LLC (known also as Chrysler or Chrysler Corporation). The plaintiffs have brought several putative class actions based on various commercial, consumer, and product defect theories directed at the defendant manufacturer. Chrysler filed a motion to compel arbitration as to 18 of the named plaintiffs based on language in sales agreements between the respective plaintiffs and their dealers. The Court eventually stayed the cases as to those plaintiffs pending arbitration. Plaintiffs Justin and Katherine Binder filed their arbitration demand with the American Arbitration Association, but the AAA dismissed the case because Chrysler failed to pay its share of the arbitration fee. The Binders have moved to dissolve the stay and allow their case to proceed as part of this MDL, arguing that Chrysler has waived its right to arbitrate. The Court held a hearing on the motion on January 21, 2026 and ordered supplementation of the record. Because Chrysler's failure to pay the arbitration fee appears to be the result of negligence and poor corporate management, it is difficult to conclude that it has engaged in an intentional relinquishment of its right to arbitrate. The Court will deny the motion to dissolve the stay without

prejudice to the Binders' right to renew the motion if Chrysler fails to cause the reinstatement of the arbitration case promptly before the AAA.

## I.

This multidistrict litigation was initiated on August 3, 2022 by an order of the Judicial Panel on Multidistrict Litigation (JPML) transferring to this Court for pretrial proceedings four civil actions pending in various districts for consolidation with three cases filed in this district. The parties engaged in extensive discovery and motion practice including two pleading challenges and a motion to compel certain plaintiffs to submit their claims to arbitration.  On June 20, 2024, the Court granted a motion to compel arbitration in one of the tag-along matters (*Bernardoni and Binder v. FCA USA LLC*, No. 23-12881, 2024 WL 3103316 (E.D. Mich. June 20, 2024) but subsequently denied the motion to compel arbitration by 18 other plaintiffs involved in earlier filed constituent cases.  The second ruling denying arbitration was reversed by the Sixth Circuit Court of Appeals, and the 18 plaintiffs involved subsequently were referred to binding arbitration by order of the Court.  Those arbitration proceedings seem to be ongoing and the arbitration plaintiffs other than the Binders have not yet returned to pursue their claims here.

In the June 20, 2024 order, the Court compelled California plaintiffs Justin and Katherine Binder to submit their claims to binding arbitration because their sales contract reserved to an arbitrator threshold questions of arbitrability, including the question whether an arbitration provision in the dealer sales agreement executed by the plaintiffs could be invoked by the defendant.

On August 19, 2025, plaintiffs' counsel emailed to defendant's counsel of record a copy of the demand for arbitration filed with the American Arbitration Association (AAA) by the Binder plaintiffs, *see* Email dated Aug. 19, 2025, ECF No. 216-3, PageID.8609.  The defendant contends,

- 2 -

however, that the plaintiffs never identified FCA's counsel of record in this matter in any of their submissions to the AAA.  The case notification and invoice for filing fees that were sent by AAA to the defendant were directed solely to defendant's in-house counsel James Sheridan, whom the plaintiff says is registered with the AAA as defendant's counsel generally responsible for arbitration proceedings.  *See* Correspondence dated Sept. 5, 2025, ECF No. 216-4, 216-5, PageID.8611-14.  When defendant failed timely to pay the invoice for arbitration fees, the AAA closed the case.  *See* Letter dated Oct. 14, 2025, ECF No. 216-8, PageID.8620.  The defendant says that its counsel of record in this case was not copied on any of the correspondence from the AAA, and that its attorneys here first learned of the administrative closure for non-payment during a phone conference with plaintiffs' counsel on October 14, 2025, during which plaintiffs advised of their intent to file their motion to dissolve the stay.

Defendant says that when it learned of the problem, it promptly contacted AAA and submitted a payment for the filing fee, but at oral argument the defendant acknowledged that the arbitration proceeding has not been reactivated.  The plaintiffs move the Court to find that defendant "waived" its right to pursue arbitration by failing to submit timely payment for the arbitrator's fee, and to reopen the litigation on the Binders' claims.

At oral argument, the defendant could not explain why it had not submitted a declaration or any other statement from Chrysler's legal department explaining its general practice for dealing with arbitration demands or the course of events in this case.  At the Court's direction, the defendant filed a supplement on February 4, 2026 with a declaration by in-house attorney Sheridan.  There, Sheridan admits that the nonpayment was an oversight, and that he took no action on the invoice based on the mistaken assumption that FCA's class action counsel were copied on the email and that they would pay the fee.  Sheridan says he does not recall receiving the email,

but having reviewed it later he observes that several well-known plaintiff-side class action lawyers were copied, and he believes based on that he mistakenly assumed because those lawyers were copied, then FCA's counsel of record in the class case also were copied on the email, which he says is in his experience typically is the case on other similar communications. Sheridan also attests that he is not a global point of contact for all arbitration related matters but just happened to be the person who was tasked to set up an online account with AAA, and he used his own email for that purpose only because some email was required to create the account.

## II.

The Sixth Circuit in its recent opinion reversing this Court's denial of defendant's motion to compel 18 plaintiffs to arbitrate their claims examined in some detail the contours of the concept of waiver of a right to compel arbitration under the Federal Arbitration Act. As a threshold matter, the court of appeals observed that it is presumed that federal "courts — and not arbitrators — decide whether a party has waived its right to compel arbitration through litigation conduct inconsistent with that right," and "that presumption applies with equal force even when the parties have agreed to a broad arbitration clause." *In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 722-23 (6th Cir. 2025) (citing *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008)). "As with any other contractual right, a party can waive its right to arbitration." *Id.* at 723 (citing *Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 357 (6th Cir. 2022)). "In determining whether a party has waived its right to arbitrate, [the Court must] apply 'ordinary waiver rules' and look for an 'intentional relinquishment or abandonment of a known right.'" *Ibid.* (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417-18 (2022); *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024)). "Because a party does not often express its intent to waive a right, however, [the Court may] infer that intent when a party 'takes actions that are

completely inconsistent with any reliance on [its] arbitration agreement.'" *Id.* at 723-24 (quoting *Solo v. UPS Co.*, 947 F.3d 968, 975 (6th Cir. 2020)).  As the Sixth Circuit noted, the Supreme Court in *Morgan* "eliminated the prejudice requirement" from the waiver analysis.

The plaintiffs (California residents) argue that under California Code of Civil Procedure § 1281.97, arbitration fees must be paid within 30 days, or the party responsible for non-payment waives its right to compel arbitration.  *See* Cal. Civ. Proc. Code § 1281.97(a)(1) ("In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2.").  They reason that the defendant knew that the arbitration proceeding had commenced because a copy of the plaintiffs' demand for arbitration was emailed to defendant's counsel of record on August 19, 2025, and the defendant knew about the demand for payment of the filing fee because an invoice was sent by AAA to defendant's lawyer James Sheridan on September 5, 2025.  Because the defendant failed to pay the fee timely, resulting in the AAA closing the proceeding for non-payment pursuant to the California state procedural requirement, the plaintiffs believe that the defendant's conduct is inconsistent with an intent to pursue arbitration, constituting a waiver of its rights.

Chrysler responds that AAA Commercial Rule 4(a)(iv) requires an arbitration claimant to identify "any known representative for any party" in any arbitration filing, but plaintiffs' counsel failed to identify defendant's counsel of record in this litigation in the demand for arbitration or any other correspondence with the AAA, and that Chrysler's lawyers in this matter were not copied

on any of the communications about the demand for payment or closure of the case.  The arbitration

demand, however, does contain a reference to the case number in this federal litigation.  But the

defendant contends that when it was notified by plaintiffs' counsel about the issue on October 14,

2025, it immediately submitted payment for the $600 filing fee, and it argues that an inadvertent

failure to pay a filing fee due to a failure of communication between counsel and the arbitrator

does not constitute a knowing and intentional waiver of arbitration rights.  As defense counsel

acknowledged at oral argument, however, the payment of the fee did not cause the case to be

reinstated.

The plaintiffs (California residents) cite principally the California state statutory

requirement for prompt payment and state decisions on point construing that provision.  However,

the Sixth Circuit in its interlocutory appellate ruling construed the concept of "waiver" in the

context of the FAA's arbitration mandate entirely by reference to federal law and its iteration of

the waiver doctrine.  Under that framework, this Court must scrutinize the record to see whether it

demonstrates the defendant's "intentional relinquishment or abandonment of a known right" to

compel arbitration.

As a threshold matter, it is notable that the arbitration demand makes explicit reference to

the tag-along litigation in this Court, ECF No. 216-2, PageID.8598, and to the MDL, *id.* at

PageID.8599.  The "notices" conveyed by the AAA to defendant's in-house counsel, however,  do

not disclose any reference to defense counsel of record in this matter, nor do they indicate that they

in any way were associated with the AAA's arbitration file, or that counsel in this matter were

notified by the AAA directly about the demand for payment.  The Court finds plaisible the in-

house lawyer Sheridan's attestation that his failure to take action on the demand for payment was

due to the hasty (but faulty) assumption that other counsel directly responsible for the

representation in arbitration were copied on the correspondence. The plaintiffs have not presented any evidence directly rebutting Sheridan's accounting for why he neglected to take appropriate action on the payment demand. Moreover, it is difficult to discern from the parties' presentations why the arbitrations of the other plaintiffs in this matter (18 plaintiffs altogether, aside from the Binders) seem to have commenced smoothly, while this one was derailed by the lack of payment of a minimal filing fee of just $600.

It is reasonable for the plaintiffs to believe that this arbitration gambit is another effort by the defendant to delay the case. The defendant bases its right to arbitration on an agreement that does not mention it by name. Instead, it argues that the arbitration language in the dealer agreements can be construed to sweep the manufacturer within their scope, even though the customers would not have understood reasonably that they were not agreeing to arbitrate with a non-party to the dealer agreement. That is not a question for the Court to decide here, however, because the arbitration language in the dealer agreements contains a clause delegating the arbitrability question to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."). But in several other cases where these automobile consumer cases have been stayed so that manufacturers could pursue similar arbitration arguments under delegation clauses, the arbitrators consistently have found that the dealer agreements cannot be construed to compel arbitration between the customer and the manufacturer. And in cases where there is no delegation clause, courts have reached similar conclusions. *See Wilkinson v. Gen. Motors, LLC*, 786 F. Supp. 3d 1089, 1097 (E.D. Mich. 2025); *Harrison v. Gen. Motors LLC*, 651 F. Supp. 3d 878, 889-92 (E.D. Mich. 2023). Delay tactics of this sort are among the factors that animate the rule that conduct inconsistent with an arbitration

clause can amount to a waiver of the right to arbitrate.  *See Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) ("UPS had already spent two years vigorously litigating the merits of the claims in the district court and on appeal.  By waiting to 'attempt to enforce [its] arbitration rights until *after* the [appellate] court entered an unfavorable decision' on its merits arguments, UPS's actions were inconsistent with reliance on an arbitration agreement.") (citations omitted). Nevertheless, the defendant has the right to test its defenses in an appropriate forum.

Taking defense counsel at their word, it is difficult to find from the record presented here any "intentional relinquishment" of a "known right" to pursue arbitration.  Certainly, Chrysler was aware in a generalized sense of its right to contest the Binders' claims in arbitration, since it filed a motion to compel arbitration of those claims which was granted.  However, it is conceivable that defense counsel in this case did not have timely notice of the demand for payment since the notices sent by AAA were conveyed exclusively to in-house counsel whom defendant says is not assigned to or in any way associated with this matter.  The defendant says that is because plaintiffs' counsel failed to honor the AAA's procedural requirement of designating counsel of record for the defendant as its representative on their initiating filings.  That position is plausible, particularly based on the observation that the invoices demanding payment made no reference to the MDL or the Binders' individual suit in this Court, despite the fact that the demand for arbitration explicitly referenced those proceedings, including docket file numbers.

As the defendant points out, the AAA specifies in its rules of procedure the "[i]nformation to be included with any arbitration filing [which] includes . . . if applicable, the names, addresses, telephone and fax numbers, and e-mail addresses of any known representative for each party." AAA Commercial Arbitration Rules R-4(e)(iii).  Furthermore, "[a]rbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration . . .

and a copy of any applicable arbitration agreement from the parties' contract which provides for arbitration," and "[t]he filing party shall include a copy of the court order."  AAA Rules R-4(b)(i). The record indicates that those procedural specifications were fulfilled by the plaintiffs' arbitration demand, which included references to the individual and MDL litigations.  However, the AAA omitted pertinent information in subsequent communications by failing to incorporate those same references, and by failing to copy counsel of record in the federal suits, when it conveyed its demands for payment solely to one of defendant's in-house lawyers.

Some federal courts have found that deliberate refusal to pay an arbitrator's fee despite multiple notices received by a party to arbitration can constitute waiver of the right to arbitrate. *E.g.*, *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) ("The parties agree and the record shows Mr. Cahill failed to pay his share of the arbitration fees. The AAA repeatedly asked him to pay. In the arbitration proceeding, Mr. Cahill did not show he was unable to afford payment, ask the arbitrators to modify his payment schedule, or move for an order requiring Pre–Paid to pay his share for him so that arbitration could continue. Instead, by refusing multiple requests to pay, he allowed arbitration to terminate.").  But the circumstances here are distinguishable where the defendant asserts that the non-payment was merely inadvertent and due to lack of notice to responsible counsel, not a deliberate refusal to pay following undisputed receipt of repeated demands for payment.

The Sixth Circuit is emphatic on the point that "[u]nder ordinary waiver rules, a party cannot waive a right *unless he first knows that right exists*."  *In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th at 724.  The usual rule is that notice to counsel suffices as notice to the client in litigation, but some federal courts have held the result otherwise where notice was not conveyed to counsel retained to represent a party in a particular matter.  *E.g.*, *Linder v. Trump's*

*Castle Assocs.*, 155 B.R. 102, 104-05 (D.N.J. 1993) ("The general rule in bankruptcy cases, as well as other types of cases, is that notice served upon counsel satisfies any requirement to give notice to the party.  It is not self-evident, however, that this rule applies to circumstances in which a lawyer's representation may have ended or in which a client who retained a lawyer for one purpose may subsequently choose a different lawyer to handle the matter where, as in this case, the nature of the action has changed. . . . Some courts have held that notice to the attorney binds the client only when given in the context of his or her representation of the client in the bankruptcy case itself.") (citing *Irwin v. Veterans Admin.*, 498 U.S. 89, 92 (1990); *Link v Wabash R. Co.*, 370 U.S. 626, 634 (1962)).  Here it is plausible that counsel responsible for the defense in this case — and consequently the defendant itself, in the context of this litigation — did not have effective knowledge of a demand for payment in connection with this case simply because counsel of record was left out of the loop on the notice of filing and invoice for payment.  Under those circumstances, it cannot be held conclusively that defendant had actual knowledge of the call to defend against the Binders' demand for arbitration.

Chrysler's in-house attorney Sheridan plainly dropped the ball.  He did receive an invoice for the arbitration fee.  And had he possessed even a modicum of curiosity, perhaps he could have obtained a copy of the arbitration demand, which would have led him to the present lawsuit and his employer's counsel of record.  But what has been shown in this instance is at most excusable neglect by defendant's in-house lawyer, who was not counsel of record in this case.  In light of the appellate court's frostiness to the waiver concept as it relates to the manufacturer's assertion of its arbitration rights in this case, this Court is reluctant to conclude that the record is sufficient to establish an intentional relinquishment of a known right to proceed in the Binder arbitration by failure of the timely payment of the required fee.

Chrysler's neglect here, however, shall not result in the deprivation of the Binders' right to adjudicate their claim in *some* forum.  Chrysler must take prompt action to reinstate the arbitration with AAA, at least so that the question of arbitrability can be adjudicated.  Failing that, the Binders may renew their motion to dissolve the stay and proceed with their case in this Court.

III.

The record does not conclusively establish that the defendant knowingly relinquished its right to arbitration by failing to pay the arbitration fee to AAA.

Accordingly, it is **ORDERED** that the motion to lift the stay pending arbitration (ECF No. 216) is **DENIED** without prejudice to renewal of their motion if the arbitration is not reinstated promptly.

It is further **ORDERED** that the defendant must take immediate steps to reinstate the Binders' arbitration case with AAA and report its status to the Court **on or before March 3, 2026**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  February 17, 2026

- 11 -